# EXHIBIT A

**CAUSE NO. 2022-51667**

| | | |
|---|---|---|
| **W&T OFFSHORE, INC.,** | § | **IN THE DISTRICT COURT OF** |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | **151st JUDICIAL DISTRICT** |
| | § | |
| **ALL ABOUT IT, INC. and** | § | |
| **SECURE CLOUD, LLC,** | § | |
| *Defendants.* | § | **HARRIS COUNTY, TEXAS** |

## COUNSEL OF RECORD

Benjamin L. Hall, III
THE HALL LAW GROUP, PLLC
530 Lovett Boulevard
Houston, Texas 77006
Telephone: (713) 942-9600

AND

William E. Ridgeway
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 N. Upper Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0449

**ATTORNEYS FOR PLAINTIFF W&T OFFSHORE, INC.**

Scott D. Ellis
Rey Rodriguez, IV
FOLEY & LARDNER LLP
1000 Louisiana Street, Suite 2000
Houston, Texas 77002
Telephone: (713) 276-5500

AND

Ethan G. Gibson
Jost Lunstroth
GIBSON | WUNDER, P.C.
4 Houston Center
1221 Lamar Street, Suite 1001
Houston, Texas 77010
Telephone: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

**HCDistrictclerk.com**          W&T OFFSHORE INC vs. ALL ABOUT IT INC          9/14/2022
Cause: 202251667          CDI: 7          Court: 151

## APPEALS
No Appeals found.

## COST STATMENTS
No Cost Statments found.

## TRANSFERS
No Transfers found.

## POST TRIAL WRITS
No Post Trial Writs found.

## ABSTRACTS
No Abstracts found.

## NOTICES
No Notices found.

## SUMMARY

### CASE DETAILS

| | | | |
|---|---|---|---|
| **File Date** | 8/19/2022 | | |
| **Case (Cause) Location** | | | |
| **Case (Cause) Status** | Active - Civil | | |
| **Case (Cause) Type** | OTHER CIVIL | | |
| **Next/Last Setting Date** | 9/20/2022 | | |
| **Jury Fee Paid Date** | 8/19/2022 | | |

### CURRENT PRESIDING JUDGE

| | |
|---|---|
| **Court** | 151st |
| **Address** | 201 CAROLINE (Floor: 11) HOUSTON, TX 77002 Phone:7133686222 |
| **JudgeName** | MIKE ENGELHART |
| **Court Type** | Civil |

## ACTIVE PARTIES

| Name | Type | Post Jdgm | Attorney |
|---|---|---|---|
| W&T OFFSHORE INC | PLAINTIFF - CIVIL | | HALL, BENJAMIN LEWIS III |
| ALL ABOUT IT INC | DEFENDANT - CIVIL | | |
| SECURE CLOUD LLC | DEFENDANT - CIVIL | | |
| HALL, BENJAMIN LEWIS III | PRO HAC VICE ATTORNEY | | HALL, BENJAMIN LEWIS III |
| ALL ABOUT IT INC (TEXAS CORPORATION) MAY BE SERVED BY SERVING ITS | REGISTERED AGENT | | |
| SECURE CLOUD LLC (TEXAS CORPORATION) MAY BE SERVED BY SERVING ITS | REGISTERED AGENT | | |

## INACTIVE PARTIES

No inactive parties found.

## JUDGMENT/EVENTS

| Date | Description | Order Signed | Post Jdgm | Pgs | Volume /Page | Filing Attorney | Person Filing |
|------|-------------|--------------|-----------|-----|--------------|-----------------|---------------|
| 9/12/2022 | ORDER SIGNED GRANTING ENTRY OF TEMPORARY ORDERS | 9/12/2022 | | 1 | | | |
| 9/7/2022 | ORDER APPROVING STIPULATION SIGNED | 9/7/2022 | | 8 | | | |
| 9/7/2022 | ORDER SIGNED CONFIDENTIAL AGREEMENT | 9/7/2022 | | 8 | | | |
| 9/7/2022 | ORD SGN GRNTNG PROTECTION FROM DISCOVERY REQUEST | 9/7/2022 | | 8 | | | |
| 8/26/2022 | ORDER GRANTING APPEARANCE PRO HAC VICE SIGNED | 8/26/2022 | | 1 | | | |
| 8/26/2022 | ORDER EXTENDING TEMPORARY RESTRAINING ORDER SIGNED | 8/26/2022 | | 2 | | | |
| 8/26/2022 | ORDER SIGNED SETTING HEARING | 8/26/2022 | | 2 | | | |
| 8/24/2022 | ORDER GRANTING EXPEDITED DISCOVERY IN PART SIGNED, SEE ORDER | 8/24/2022 | | 2 | | | |
| 8/24/2022 | ORDER GRANTING EXPEDITED DISCOVERY IN PART SIGNED, SEE ORDER | 8/24/2022 | | 16 | | | |
| 8/19/2022 | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | 8/19/2022 | | 2 | | | |
| 8/19/2022 | APPEARANCE ON TEMPORARY INJ OR TEMPORARY RESTRAINING ORD | | | 0 | | | |
| 8/19/2022 | ORDER SETTING BOND SIGNED | 8/19/2022 | | 2 | | | |
| 8/19/2022 | ORDER SIGNED SETTING HEARING | 8/19/2022 | | 2 | | | |
| 8/19/2022 | ORIGINAL PETITION | | | 0 | | HALL, BENJAMIN LEWIS III | W&T OFFSHORE INC |
| | SENSITIVE DATA DOCUMENT | 8/26/2022 | | 1 | | | |
| | SENSITIVE DATA DOCUMENT | 8/26/2022 | | 2 | | | |
| | SENSITIVE DATA DOCUMENT | 8/24/2022 | | 2 | | | |

## SETTINGS

| Date | Court Post Jdgm | Docket Type | Reason | Results | Comments | Requesting Party |
|------|-----------------|-------------|--------|---------|----------|------------------|
| 8/29/2022 03:30 PM | 151 | Law Day Docket | TEMPORARY INJUNCTION (MOTION FOR) | Re-Set | PER OS 8/26/22 | |
| 9/12/2022 03:30 PM | 151 | Law Day Docket | RE-HEARING (MOTION FOR) | | | ELLIS, SCOTT DAVID |
| 9/12/2022 | 151 | Law Day Docket | ENTRY OF TEMPORARY | Granted | OS 9/12/22 | ELLIS, SCOTT |

| | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| 03:30 PM | | | ORDERS (MOTION FOR) | | | | | | DAVID |
| 9/12/2022 03:30 PM | 151 | Law Day Docket | PROTECTION FROM DISCOVERY REQUEST (MOTION FOR) | | | | | | HALL, BENJAMIN LEWIS III |
| 9/20/2022 09:00 AM | 151 | Law Day Docket | TEMPORARY INJUNCTION (MOTION FOR) | | | | | | |
| 8/19/2022 02:30 PM | 157 | Ancillary Docket | TEMPORARY RESTRAINING ORDER (MOTION FOR) | Granted | O/S 8/19/2022 | | | | HALL, BENJAMIN LEWIS III |

## SERVICES

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|---|---|---|---|---|---|---|---|---|---|---|
| CITATION CORPORATE | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | | ALL ABOUT IT INC (TEXAS CORPORATION) MAY BE SERVED BY SERVING ITS | 8/23/2022 | 8/29/2022 | | | | 74044731 | E-MAIL |

12429 SHADY DOWNS DR HOUSTON TX 77082

| Type | Status | Instrument | Person | Requested | Issued | Served | Returned | Received | Tracking | Deliver To |
|---|---|---|---|---|---|---|---|---|---|---|
| CITATION CORPORATE | SERVICE ISSUED/IN POSSESSION OF SERVING AGENCY | | SECURE CLOUD LLC (TEXAS CORPORATION) MAY BE SERVED BY SERVING ITS | 8/23/2022 | 8/29/2022 | | | | 74044734 | E-MAIL |

8323 WILCREST DR APT 17002 HOUSTON TX 77072

## DOCUMENTS

| Number | Document | Post Jdgm | Date | Pgs |
|---|---|---|---|---|
| 104033686 | Filing Letter | | 09/14/2022 | 2 |
| -> 104033688 | Exhibit A | | 09/14/2022 | 2 |
| -> 104038666 | Exhibit B | | 09/14/2022 | 1 |
| -> 104033687 | Exhibit C | | 09/14/2022 | 9 |
| -> 104038667 | Proposed Order Granting Plaintiff W&T Offshore INCs Emergency Motion for a Protective Order and Motion for Appointment of Master (Revised) | | 09/14/2022 | 2 |
| 104035940 | Defendants Response to Plaintiffs Motion for Leave to Permit Plaintiffs Computer Expert and Chief Information Officer to Access Records Designated "AEO" and Request to Expedited Consideration | | 09/14/2022 | 7 |
| -> 104035941 | Proposed Order | | 09/14/2022 | 1 |
| 104037143 | AAITs Letter to Court | | 09/14/2022 | 2 |
| -> 104037144 | Proposed Order Granting, In Part, Plaintiffs W&T Offshore INCs Emergency Motion for a Protective Order and Motion for Appointment of Master | | 09/14/2022 | 2 |
| 103976501 | All About It, Inc. And Secure Cloud, Llc's Reply In Support Of Its Motion To Enforce The Parties' Stipulated Confidentiality Order | | 09/12/2022 | 4 |
| 103976550 | All About It, Inc. And Secure Cloud, Llc's Response To W&T Offshore, Inc.'S Emergency Motion For Protective Order And Motion For Appointment Of Master | | 09/12/2022 | 15 |
| 103986178 | W&T Offshore, Inc.'s Notice Of Corporate Representative Deposition Of All About It, Inc. And Secure Cloud, Llc And Subpoena Duces Tecum | | 09/12/2022 | 6 |
| 103993721 | Plaintiffs Motion for Leave to Permit Plaintiffs Computer Expert and Chief Information | | 09/12/2022 | 7 |

Officer to Access Records Designated "AEO" and Request to Expedite Consideration

| | | | |
|---|---|---|---|
| -> 103993722 | Proposed Order | 09/12/2022 | 1 |
| 103999731 | ORDER SIGNED GRANTING ENTRY OF TEMPORARY ORDERS | 09/12/2022 | 1 |
| 103944291 | Plaintiff's Response to Defendant's Motion to Enforce the Parties Stipulated Confidentiality Order | 09/09/2022 | 6 |
| -> 103944292 | Proposed Order Denying Defendants Motion to Enforce the Parties Stipulated Confidentiality Order | 09/09/2022 | 1 |
| 103953019 | Proposed Order | 09/09/2022 | 3 |
| 103927682 | Notice of Hearing | 09/08/2022 | 4 |
| 103904075 | ORDER SIGNED CONFIDENTIAL AGREEMENT | 09/07/2022 | 8 |
| | ORD SGN GRNTNG PROTECTION FROM DISCOVERY REQUEST | 09/07/2022 | |
| | ORDER APPROVING STIPULATION SIGNED | 09/07/2022 | |
| restricted | Plaintiff W&T Offshore INCs First Supplement to Plaintiffs Emergency Motion for a Protective Order and Motion for Appointment of Master | 09/07/2022 | 5 |
| -> restricted | Proposed Order Granting Plaintiff W&T Offshore INCs Emergency Motion for a Protective Order and Motion for Appointment of Master | 09/07/2022 | 2 |
| 103914507 | All About It, Inc. and Secure Cloud, LLC's Motion to Enforce the Parties Stipulated Confidentiality Order | 09/07/2022 | 7 |
| -> 103914509 | Exhibit A | 09/07/2022 | 11 |
| -> 103914508 | Proposed Order | 09/07/2022 | 1 |
| 103835928 | Agreed Motion for Entry of Joint Stipulated Confidentiality Order | 09/02/2022 | 6 |
| -> 103835929 | Proposed Joint Stipulated Confidentiality Order | 09/02/2022 | 8 |
| 103852750 | W&T INCs Notice of Corporate Representative of All About It, INC | 09/02/2022 | 5 |
| 103821447 | Notice of Hearing | 09/01/2022 | 4 |
| 103832207 | Agreed Motion for Entry of Joint Stipulated Confidentiality Order (order attached) | 09/01/2022 | 15 |
| 103787487 | Defendants Objection to and Motion for Reconsideration of the Courts Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference and Alternatively, Motion to Modify Order Extending TRO | 08/31/2022 | 12 |
| 103790395 | Plaintiff W&T Offshore INCs Emergency Motion for Protective Order and Motion for Appointment of Master | 08/31/2022 | 11 |
| -> 103790397 | Exhibit B | 08/31/2022 | 5 |
| -> 103790396 | Proposed Order Granting Plaintiff W&T Offshore INCs Emergency Motion for a Protective Order and Motion for Appointment of Master | 08/31/2022 | 3 |
| 103791895 | Notice of Hearing | 08/31/2022 | 3 |
| 103808507 | Plaintiffs Response to Defendants Objection and Motion for Reconsideration of the Courts Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference and Alternatively Motion to Modify Order Extending TRO | 08/31/2022 | 8 |
| restricted | Proposed Order Extending TRO and Rescheduling Temporary Injunction Hearing | 08/26/2022 | 2 |
| 103724601 | Unopposed Motion to Appear Pro Hac Vice and Request to Electronically Receive Notices of Electronic Filing | 08/26/2022 | 4 |
| -> 103724602 | Exhibit A | 08/26/2022 | 2 |
| -> restricted | Proposed Order Granting Unopposed Motion to Appear Pro Hac Vice and Request to Electronically Receive Notices of Electronic Filing | 08/26/2022 | 1 |
| 103724604 | Benjamin L Halls Motion in Support of William Ridgways Unopposed Motion to Appear Pro Hac Vice | 08/26/2022 | 3 |
| restricted | SENSITIVE DATA DOCUMENT | 08/26/2022 | 2 |
| | ORDER EXTENDING TEMPORARY RESTRAINING ORDER SIGNED | 08/26/2022 | |

| | | | |
|---|---|---|---|
| | ORDER SIGNED SETTING HEARING | 08/26/2022 | |
| restricted | SENSITIVE DATA DOCUMENT | 08/26/2022 | 1 |
| | ORDER GRANTING APPEARANCE PRO HAC VICE SIGNED | 08/26/2022 | |
| 103666131 | Defendants All About It INC and Secure Cloud LLCs Response to Plaintiffs Emergency Motion for Expedited Discovery | 08/24/2022 | 14 |
| -> 103666132 | Exhibit A | 08/24/2022 | 3 |
| -> 103666134 | Exhibit B | 08/24/2022 | 3 |
| -> 103666135 | Exhibit C | 08/24/2022 | 2 |
| -> 103666136 | Exhibit D | 08/24/2022 | 1 |
| -> 103666137 | Exhibit E | 08/24/2022 | 2 |
| -> 103666138 | Exhibit F | 08/24/2022 | 2 |
| -> 103666139 | Exhibit G | 08/24/2022 | 3 |
| -> 103666140 | Exhibit H | 08/24/2022 | 2 |
| 103667106 | Defendants All About It INC and Secure Cloud LLCs Motion for Expedited Discovery and Motion for Emergency Hearing | 08/24/2022 | 6 |
| -> 103667107 | Exhibit A | 08/24/2022 | 14 |
| -> 103667109 | Proposed Order Granting Defendants All About It INC and Secure Cloud LLCs Motion for Expedited Discovery and Motion for Emergency Hearing | 08/24/2022 | 2 |
| restricted | SENSITIVE DATA DOCUMENT | 08/24/2022 | 2 |
| | ORDER GRANTING EXPEDITED DISCOVERY IN PART SIGNED, SEE ORDER | 08/24/2022 | |
| 103680246 | ORDER GRANTING EXPEDITED DISCOVERY IN PART SIGNED, SEE ORDER | 08/24/2022 | 16 |
| 103645006 | Civil Process Request - AAIT | 08/23/2022 | 1 |
| -> 103645007 | Civil Process Request - Secure Cloud | 08/23/2022 | 1 |
| 103629438 | Plaintiffs Emergency Motion for Expedited Discovery | 08/22/2022 | 8 |
| -> 103629440 | Exhibit A | 08/22/2022 | 2 |
| -> 103629441 | Exhibit B | 08/22/2022 | 1 |
| -> restricted | Proposed Order Granting Plaintiffs Emergency Motion for Expedited Discovery | 08/22/2022 | 1 |
| 103594520 | W&T Offshore, Inc.s Verified Original Petition and Application for Temporary Restraining Order, Temporary Injunction, and Permanent Injunction | 08/19/2022 | 28 |
| restricted | Proposed Order Temporary Restraining Order | 08/19/2022 | 9 |
| 103604458 | ORDER SIGNED SETTING HEARING | 08/19/2022 | 2 |
| | ORDER SETTING BOND SIGNED | 08/19/2022 | |
| | ORDER SIGNED GRANTING TEMPORARY RESTRAINING ORDER | 08/19/2022 | |
| 103624918 | Clerks Certificate of Cash Deposit in Lieu of Injunction Bond per Order of the Court | 08/19/2022 | 1 |

8/19/2022 11:31 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 67470451
By: Wanda Chambers
Filed: 8/19/2022 11:31 AM

CAUSE NO. _____

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants.* | ) | \_\_\_\_ JUDICIAL DISTRICT |

## W&T OFFSHORE, INC.'S VERIFIED ORIGINAL PETITION AND APPLICATION FOR A TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

Plaintiff W&T Offshore, Inc. ("W&T") files this verified original petition and application for a temporary restraining order, temporary injunction, and permanent injunction against Defendants All About IT, Inc. ("AAIT") and Secure Cloud, LLC, ("Secure Cloud," together with AAIT, "Defendants"), and alleges as follows:

### BRIEF SUMMARY OF REQUESTED INJUNCTIVE RELIEF

1.      Plaintiff entrusted its trade secrets, proprietary data, and sensitive oil and gas drilling information to Defendants who agreed to act as fiduciaries and with an agreement of confidentiality with regard to the handling and possession of Plaintiff's data.  Defendants are now threatening to misappropriate Plaintiff's control over that data.  Plaintiff seeks immediate court relief to retain dominion and control over its data, trade secrets, property and sensitive oil and gas information.  To avoid irreparable harm.  Plaintiff prays for immediate injunctive relief that will prevent loss, misappropriation and/or conversion of its trade secrets, computer data, equipment and property presently in Defendants' possession.

## NATURE OF THE ACTION

2.      W&T is a publicly-traded oil and natural gas exploration and production company that operates exclusively in the Gulf of Mexico on state and federal offshore leases with the United States government being one if its largest royalty owners.  Several years ago, Defendants AAIT and Secure Cloud began providing information technology ("IT") services to W&T pursuant to an oral contract and Secure Cloud later entered into a written agreement with W&T.  Among other things, Defendants help maintain and operate certain of W&T's IT systems, including systems for using and storing W&T's emails and other electronic data (the "Systems and Electronic Data").  In essence, Defendants have functioned as W&T's *de facto* IT Department.  Indeed, AAIT's principal owner held himself out as an employee and *de facto* chief information officer of W&T until recently.  By necessity, that included maintenance and operation of W&T's systems that store valuable trade secrets, as defined below, which Defendants agreed to keep confidential.

3.      W&T recently hired a Chief Information Officer ("CIO").  The CIO initiated a fulsome review of W&T's IT systems and began to transition them back to internal resources at the company.  In the course of his review, the CIO requested information that should be readily available to any IT provider and expressed dissatisfaction with Defendants' responses.  Defendants soon recognized W&T's unhappiness with their performance.  On August 3, 2022, without prompting from W&T, AAIT sent W&T a letter purporting to terminate its contract with W&T.  But AAIT recognized that it could not simply walk away from W&T and that the parties "must work together to ensure that each respective party's assets are handled and transferred appropriately."  In particular, AAIT understood that the parties should "discuss cancelling the contract, an orderly removal of AAIT's equipment and software from all W&T platforms and systems, and the immediate transition of IT services to another provider."

4.     AAIT then stopped facilitating the orderly transition.  And much of the information and material that Defendants have provided was not usable for purposes of the transition.  W&T has made significant progress in preparing to transition its IT function to in-house and third party providers.  But Defendants are delaying providing W&T with the basic information that W&T already paid for and needs to effect an orderly transition, while AAIT continues to insist that it will stop providing services by September 2, 2022.  Defendants 'intransigence is creating an imminent risk that W&T's operations will be delayed or interrupted.  The potential consequences of Defendants 'conduct include loss, damage to, or unavailability of trade secret and other digital information, through Defendants refusing to take steps to support the return of W&T's Systems and Electronic Data.  Accordingly, W&T requests that the Court enter a temporary restraining order, temporary injunction, and permanent injunction compelling Defendants and their owners, employees, representatives, and agents to:

a.   Refrain from using or disclosing W&T's trade secrets;

b.   Provide a comprehensive list of all services Defendants were providing to W&T;

c.   Provide physical access to leased spaces containing W&T infrastructure, networking, and communications hardware at data centers located at (a) 5150 Westway Park Blvd., Houston, Texas 77041 (the "Houston Data Center"), and (b) 7301 Metropolis, Austin, Texas 78744 (the "Austin Data Centers") and collectively with the Houston Data Center the ("Data Centers") and assurance that the data center operator will provide W&T personnel with cross connections to such hardware;

d.   Provide a list of all service accounts and associated passwords for these accounts;

e.   Provide a list of (i) Cisco Maraki devices, including firewalls, routers, and switches; (ii) Palo Alto firewalls; (iii) HP servers; (iv) HP thin client computers; and (v) all other network devices, including firewalls, routers, switches, and network attached printers on W&T offshore platforms, at the Data Centers, or in W&T offices, including their IP addresses, configurations, administrator user names and passwords, and state whether Defendants claim to own these devices;

f.    Provide a list of all hardware used to backup W&T data, including details regarding the data stored on such hardware;

g.    Provide a list of all hardware used for network storage of W&T data, including their administrator user names and passwords, whether they are set up as storage area networks and/or network-attached storage, and whether Defendants claim to own this hardware;

h.    Provide a list of all wireless access points on W&T's wide area network;

i.    Provide a list of all workstations purchased by Defendants on behalf of W&T;

j.    Provide a list of all radios and televisions on W&T offshore platforms, including whether Defendants claim to own these devices;

k.    Provide a list of all telephones on W&T offshore platforms, including their administrator user names and passwords and whether Defendants claim to own these devices;

l.    Provide a list of all circuits, including but not limited to those provided by Lumen Technologies, Cogent Communications, Cox Communications, Tampnet, and Viasat, managed by Defendants for W&T, including for W&T offshore platforms or W&T offices;

m.    Provide a comprehensive network map of W&T's wide area network that includes all applicable IP addresses and ranges, subnets, and hardware;

n.    Provide (i) copies of all contracts with Cogent Communications, Cox Communications, and any other providers for communications services provided to W&T, including at W&T offshore platforms and W&T offices; (ii) account numbers with these providers; and (iii) user names and passwords for W&T accounts on these providers' access portals;

o.    Remove AAIT and Secure Cloud personnel from and add Alvin Haynes as the W&T point of contact to the W&T accounts at all communications service providers;

p.    Provide logical access to primary storage and backup locations, including the user name and password to the Veeam console, of all data owned or produced by W&T, including but not limited to, seismic data, drilling plans and locations, well and reserve information, financial data, human resources data, contracts, legal records, mergers and acquisitions information, and operations information;

q.    Provide logical access to (i) HP insight manager or the chassis management interface for the HP Blade servers used to host W&T's VMWare environment and (ii) Cisco call manager for configuration of W&T telephones;

4

r.  Provide a list of the Microsoft software owned by W&T, including the number and type of licenses, and all applicable license agreements with Microsoft;

s.  Provide the licenses and administrator user names and passwords for (i) the Cisco Servers hosting W&T's SQL Server environment, (ii) W&T's VMWare servers, and (iii) W&T's Cylance software;

t.  Provide the administrator user names and passwords and identify whether AAIT, Secure Cloud or W&T owns (i) the Deep Instinct software and (ii) any other software supported by W&T;

u.  Provide all source code for offshore platform monitoring software developed by W&T employee Yun Yang on behalf of W&T;

v.  Provide the names, contact information, and support contracts for all contractors AAIT or Secure Cloud has engaged to provide support to W&T for software used by W&T;

w.  Provide a list of all open information technology requests submitted by W&T to Defendants' ticket management system for IT helpdesk services;

x.  Transfer backup and replication hardware owned by W&T, including the CS3000 Hybrid Arrays, located at the Data Centers;

y.  Transfer direct inward dialing contract and associated telephone numbers for W&T offices and offshore platforms;

z.  Comply with their contractual obligation to cooperate with W&T to provide the same historic services and to facilitate an orderly transition of all IT services to another IT provider or to W&T to handle internally; and

aa.  Return W&T's trade secrets, including taking the steps necessary to turn control of W&T's IT back over to W&T.

## **LEVEL THREE DISCOVERY CONTROL PLAN**

5.      W&T intends to conduct discovery under Level 3 of Texas Rule of Civil Procedure 190.4.

## **PARTIES**

6.      Plaintiff W&T is a Texas corporation whose principal place of business is located at 5718 Westheimer Road, Suite 700, Houston, Texas 77057.

7.      Defendant AAIT is a Texas corporation whose principal place of business is in Houston, Texas.  It can be served through its registered agent for service of process, Vynette Nguyen, at 12429 Shady Downs Dr., Houston, Texas 77082.

8.      Defendant AAIT is represented by Scott Ellis at Foley & Lardner LLP, located at 1000 Louisiana Street, Suite 2000, Houston, Texas 77002 and Ethan Gibson at Gibson Wunder, located at 4 Houston Center, 1221 Lamar Street, Suite 1001, Houston, Texas 77010.

9.      Defendant Secure Cloud, LLC is a Texas corporation whose principal place of business is in Houston, Texas.  It can be served through its registered agent for service of process, Loan Nguyen, at 8323 Wilcrest Drive, Apartment 17002, Houston, Texas 77072.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this matter because the amount in controversy exceeds $500.  *See* Tex. Gov't Code § 24.007(b).

11.      This Court has general personal jurisdiction over AAIT because it maintains its principal place of business in Texas.

12.      This Court has general personal jurisdiction over Secure Cloud, LLC because it maintains its principal place of business in Texas.

13.      This Court has venue over this matter because (a) AAIT's and Secure Cloud's principal offices are in Harris County, and (b) the events that form the basis of the Petition substantially occurred in Harris County.  *See* Tex. Civ. Prac. & Rem. Code § 15.002(a)(1), (3).

## FACTUAL BACKGROUND

**A.      W&T developed valuable trade secrets in exploration, development, and acquisition of oil and natural gas.**

14.      W&T is publicly-traded and has been active in the Gulf of Mexico as an oil and natural gas exploration and production company for more than 35 years.  W&T operates

exclusively on state and federal offshore leases, and the United States government is one of W&T's largest royalty owners.

15.     W&T has expended significant resources developing and investing in proprietary trade secret technology in all facets of its operations.  W&T holds trade secrets across several disciplines, from geology to engineering, including but not limited to: (i) confidential and proprietary seismic data that W&T assembled, processed, and interpreted; (ii) drilling plans, drilling locations, hydrocarbon deposits, and the economic value of same; and (iii) confidential and proprietary information concerning reserves, decline rates, and well information (the "Trade Secrets").  W&T's Trade Secrets span selecting prospects and ongoing drilling activities, including seismic predictors and 3D seismic data.  This technology, in part, significantly reduced drilling risk and increases drilling success rate.

16.     W&T has taken reasonable measures to maintain the secrecy of its Trade Secrets. Indeed, W&T engaged Defendants to manage and operate its IT, including to provide services related to securing W&T's Trade Secret data.

17.     Defendants acknowledged their confidentiality obligations with respect to W&T's Trade Secret information.  For example, an excerpt of a "contract workers agreement" signed by one of Defendants 'employees included a provision requiring such employees to protect W&T's confidential information:

> a. During the term of the Contractor Agreement, it may be necessary for Company to make available to Contract Worker, or Contract Worker may become exposed to, Company's technical, geological, geophysical, operational, production or business information, as well as third party confidential information licensed or otherwise provided to Company under terms of confidentiality between the Company and the third party (collectively "Confidential Information"), whether disseminated orally in writing, or through observation. Contract Worker shall treat all Confidential Information as confidential property and shall not disclose, communicate, publish, or cause to be disclosed, communicated or published any of said Confidential Information to any person, firm, or corporation during or subsequent to the term of the Contractor Agreement. Excluded from the Confidential Information is information that

18.     The employee acknowledgment also  provides for injunctive relief:

19.     Secure Cloud signed an agreement that similarly included confidentiality obligations to protect W&T's information.

20.     Additional agreements signed by Defendants 'employees restrict access to corporate data, and specify that Defendants 'employees "are forbidden to disclose limited access or internal corporate data (as defined by the policy) or distribute such data in any medium, except as required by your job responsibilities." W&T's Policy to Access Corporate Data, which applied to Defendants as the Company's de facto IT department, includes the following obligations:

- "Data users will be expected to access corporate data only in their conduct of corporate business . . . ."

- "Corporate data should be used only in the conduct of corporate business."

- One should not "[d]islcose data to others, except as required by one's job responsibilities"; "use data for one's own personal gain, or for the gain or profit of others"; or "access data to satisfy one's personal curiosity."

21.     W&T employees are also contractually obligated to protect the secrecy of Trade Secret and other confidential company information via a "Non-Solicitation and Non-Disclosure Agreement."   One such agreement provides, *inter alia*, that W&T trade secrets and other confidential information must be "kept secret" and may not be "disclose[d] to any other person or entity . . . or use[d] . . . to Employee's own advantage or to the advantage of others":

**2.    Non-Disclosure of Confidential Information.** Employee agrees and acknowledges as follows:

(a)    The term "Confidential Information" includes information of any nature and in any form which at the time or times concerned is not generally known to those persons engaged in a business similar to that conducted or contemplated by the Company and which relates to any one or more of the aspects of the Company's business, research and development, or other actual or potential products or services of the Company, including, but not limited to, patents and patent applications; production techniques; research in progress; existing and proposed investments and investment strategies; seismic, well-log and other geologic and oil and gas operating and exploratory data; proposals; pricing information; development projects; methods, policies, processes, formulas, trade practices, trade secrets, techniques, know-how, and other knowledge; information relating to other employees of the Company; marketing strategies; sales, advertising, promotions, or financial matters; clients, lists of clients, or clients' purchases and purchasing history;

(e)    During Employee's employment with the Company, and thereafter, without regard to the reason(s) for such termination, he or she will keep secret and not disclose to any other person or entity the Confidential Information or use the Confidential Information to Employee's own advantage or to the advantage of others;

22.    Furthermore, W&T requires its employees to agree to W&T's Code of Ethics, which includes restrictions on employees 'access, use, and dissemination of confidential information, including W&T Trade Secrets.

23.    W&T also restricts and controls access to its Trade Secrets through the use of data and physical security measures.  W&T password-protects and limits access to applications and files containing Trade Secrets on its system, and it limits physical access to W&T facilities where Trade Secrets may be accessed to authorized personnel, including by requiring employee badges.

**B.    Over the years, Defendants gradually increased their footprint until they effectively served as W&T's *de facto* IT Department.**

24.    W&T has entrusted all of its information technology infrastructure and the management and servicing of such infrastructure to a limited number of third-party service providers.  In 2018, Defendants began providing information technology services to W&T pursuant to oral agreements which included an confidentiality requirement, and Secure Cloud later entered into a written agreement with W&T (each a "Data Management Contract").  Over the years, Defendants began providing an increasing number of IT-related services to W&T.  And

until recently, Defendants were acting as W&T's IT Department.  As part of their services, Defendants manage, maintain, and secure a variety of W&T's Systems and Electronic Data, including its Microsoft Exchange servers, Microsoft SharePoint servers and network drives, and associated data.

26. Defendants also manage, maintain, and secure W&T's Trade Secrets.  Because of their role as W&T's *de facto* IT Department, Defendants have access to W&T's Trade Secrets.

**C.    When W&T indicated it intended to bring its IT function in house, AAIT promised to facilitate W&T's orderly transition of IT services.**

26. W&T recently hired a Chief Information Officer who became concerned about Defendants 'contract performance and raised some of those concerns with Defendants.  Over the course of discussions between the parties, Defendants recognized that the parties 'contractual relationship might be ending and that they were obligated to commit to an orderly transition to another IT services provider.

27. For instance, on July 25, AAIT represented that it "does not dispute W&T's ownership of W&T's devices, applications, and data."  And AAIT stated that to "the extent AAIT and W&T's business relationship ceases, the parties *must work together* to ensure that each respective party's assets are handled and transferred appropriately.  AAIT is willing to work with W&T cooperatively to ensure that this occurs."

28. AAIT reiterated this understanding of the parties 'agreement three days later.  On July 28, AAIT suggested that the parties "discuss cancelling the contract, an orderly removal of AAIT's equipment and software from all W&T platforms and systems, and the immediate transition of IT services to another provider."

29. W&T recognized that the parties should move forward with the orderly transition. On a July 29 call, W&T requested – and AAIT agreed to provide – a comprehensive list of all

services Defendants were providing to W&T, the hardware and software systems Defendants control, and Defendants 'positions on the ownership of all hardware/software associated with Defendants 'IT services to W&T.

30.     On August 3, 2022, AAIT sent a letter purporting to formally terminate the Data Management Contract and stated that "AAIT intends to conclude its business relationship with W&T with regard to all services that AAIT currently provides to W&T by September 2, 2022." In that letter, AAIT again represented that it would "work cooperatively with W&T to facilitate an orderly transition of all IT services to another IT provider or, alternatively, to W&T to handle internally." In subsequent letters, AAIT recognized that the transition would not be simple, would require coordination between the parties in light of the "size and scope of th[e] transition," and might require AAIT to provide services beyond September 2, 2022.

**D.    Defendants are refusing to provide W&T with information it requires to implement a complete transition of its IT services.**

31.     Despite their representations, Defendants have continued to drag their feet and have failed to work expeditiously towards transitioning W&T's IT services. Most fundamentally, Defendants still have not detailed for W&T all services that they were/are providing, the hardware and software systems that they control, or their positions on who owns these systems. As a practical matter, W&T cannot complete its transition plan without this basic information. Accordingly, on August 8, W&T reminded AAIT that it needed this information before the parties 'planned transition meeting. W&T added that it could not evaluate whether a September 2, 2022 termination of service date is appropriate because AAIT had failed to provide this information. AAIT responded by denying that it had promised to provide this information. W&T also demanded that Defendants return W&T's Systems and Electronic Data to it in an orderly manner.

11

32.     To this date, Defendants are complicating the transfer of IT functions back to W&T's in-house IT department.  If W&T cannot transition its IT function in an orderly and timely manner from Defendants to either another IT provider or for W&T to handle internally, W&T's ability to monitor its production and accurately prepare its results of operations in a timely fashion may be impaired.  Additionally, without Defendants 'effective cooperation, W&T's Systems and Electronic Data may become damaged, compromised, and will irreparably injure W&T.

33.     Defendants 'refusal to take steps to transition the IT function to W&T is, in effect, a knowing refusal to return W&T's trade secrets to it and to return W&T's Systems and Electronic Data.  Defendants have refused to provide the support needed to transition the control over W&T's data back to W&T by September 2, 2022, while at the same time stating that they will cease providing services as of September 2, 2022.  Moreover, Defendants have also refused to provide back-up data of Trade Secret and other information in a form accessible to W&T, hampering W&T's efforts to use that back-up data to facilitate the process of transferring the IT function.

34.     Defendants have leveraged their refusal in negotiations with W&T, in an apparent attempt to gain monetary or other favorable terms.  Defendants 'conduct constitutes a transparent misappropriation of W&T's Trade Secrets.

## CAUSES OF ACTION

### Count 1: Misappropriation of Trade Secrets Under the Texas Uniform Trade Secrets Act

35.     W&T incorporates the preceding paragraphs by reference.

36.     W&T owns proprietary Trade Secrets across its business, as described above.

37.     W&T has taken reasonable measures to protect the secrecy of its Trade Secrets, as described above.

38.     W&T's Trade Secrets derive independent economic value from not being generally known or readily ascertainable.

39.     W&T spent significant time, money, and effort developing the Trade Secrets.

40.     W&T's Trade Secrets provide it with competitive advantage in its industry.

41.     Defendants received access to W&T's Trade Secrets in order to manage W&T's IT function and under obligations of confidentiality.

42.     As W&T's *de facto* IT Department, Defendants had a duty to maintain the secrecy of W&T's Trade Secrets.

43.     Having acquired W&T's Trade Secrets under circumstances giving rise to a duty to maintain their secrecy, Defendants unlawfully misappropriated W&T's Trade Secrets by unlawfully using them without W&T's consent, specifically, by refusing to return W&T's Trade Secrets and using that as leverage against W&T.

44.     As a direct and proximate cause of Defendants 'misappropriation, W&T has suffered and will continue to suffer irreparable harm.

45.     Defendants 'misappropriation was willful.

## **Count 2: Breach of Contract**

46.     W&T incorporates the preceding paragraphs by reference.

47.     W&T and Defendants contracted for Defendants to provide W&T data management services and technical support.

48.     These Data Management Contracts are valid contracts.

49.     All conditions precedent to W&T's claims for relief have been performed or have occurred.  W&T has fully performed and continues to perform its obligations under the Data Management Contracts by making payments as they are required.

50.     Under the Data Management Contracts, Defendants manage, maintain, and secure a variety of W&T's Systems and Electronic Data, communications, and physical security systems.

As part of the parties 'contracts, Defendants agreed to cooperate in the orderly transition of W&T's IT services to another IT provider or to W&T to handle internally.

51.     Among other things, Defendants have refused to provide the items listed in paragraph 3, including a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand.  And more broadly, they have failed to reasonably cooperate in the full transition of W&T's IT infrastructure to another IT provider or to W&T to handle internally before attempting to exit the relationship.

52.     Their breaches of contract threaten W&T with imminent irreparable harm due to the potential impairment of its ability to monitor its production and accurately prepare its results of operations in a timely fashion.

### Count 3: Breach of fiduciary duty

53.     W&T incorporates the preceding paragraphs by reference.

54.     Defendants have fiduciary relationships with W&T under the Data Management Contracts.  Defendants 'principal, Ramesh Arumugam, has affirmatively represented that they owe fiduciary duties to W&T.

55.     As fiduciaries to W&T, Defendants are obligated to act in the best interests of W&T at all times.

56.     Among other things, Defendants have breached their fiduciary duties by refusing to provide the items listed in paragraph 3, including a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand.  And more broadly, they have failed to reasonably cooperate in the full transition of

14

W&T's IT infrastructure to another IT provider or to W&T to handle internally before attempting to exit the relationships.

57.     Defendants 'breaches have injured W&T and threaten W&T with irreparable harm because W&T's ability to transition its IT infrastructure in an orderly manner to another IT provider or to W&T to handle internally could be impaired.

<u>**Count 4: Conversion**</u>

58.     W&T incorporates the preceding paragraphs by reference.

59.     W&T owns and has the right to immediately possess its Systems and Electronic Data.

60.     W&T's Systems and Electronic Data is W&T's personal property.

61.     W&T demanded that Defendants return its Systems and Electronic Data.

62.     Defendants wrongfully exercised dominion or control over W&T's property by failing to return it when demanded.

63.     Defendants 'wrongful exercise of dominion or control has injured W&T and threatens W&T with irreparable harm by hindering its ability to fully access its Systems and Electronic Data. APPLICATION FOR TEMPORARY RESTRAINING ORDER

<u>**AND TEMPORARY INJUNCTION**</u>

64.     W&T incorporates the prior paragraphs by reference.

65.     W&T asks that, to maintain the status quo, the Court order Defendants and their owners, employees, representatives, and agents to provide the information and services identified in paragraph 3 above.

66.     W&T asks this Court to set this Application for a temporary restraining order and temporary injunction for hearing as soon as possible.  Without this relief, W&T may not have access to its Systems and Electronic Data, which could have a material adverse effect on its

financial condition, liquidity, or results of operations or the integrity of the systems, processes, and data needed to run its business.

## A. TRO and Temporary Injunction Standard

67.     W&T is entitled to a writ of injunction under principles of equity and the laws of Texas relating to injunctions.  *See* Tex. Civ. Prac. & Rem. Code § 65.011(3).  To be entitled to a TRO or temporary injunction, W&T must show: (a) "a cause of action against the defendant;" (b) "a probable right to the relief sought;" and (c) "a probable, imminent, and irreparable injury in the interim."  *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002).

### *a. W&T has alleged claims against Defendants.*

68.     To meet the first requirement, an applicant "needs only to plead a cause of action." *Sun Oil Co. v. Whitaker*, 424 S.W.2d 216, 218 (Tex. 1968); *Walling v. Metcalfe*, 863 S.W.2d 56, 57–58 (Tex. 1993).  As outlined above, W&T has established a Texas Uniform Trade Secrets Act ("TUTSA") claim, breach of contract, fiduciary duty, conversion, and Texas Theft Liability Act ("TTLA") claims against Defendants.

### *b. W&T has a probable right to the relief it seeks.*

69.     ***Defendants have misappropriated trade secrets.***  To successfully establish a TUTSA claim, the claimant must show that (1) it owns a trade secret, and (2) the defendant misappropriated the trade secret.  Tex. Civ. Prac. & Rem. Code §§ 134A.002(3-a) ("Owner" means, with respect to a trade secret, the person or entity in whom or in which rightful, legal, or equitable title to, or the right to enforce rights in, the trade secret is reposed."), (3) (defining "misappropriation"), (6) (defining "trade secret"); *Reilly v. Premier Polymers, L.L.C.*, No. 14-19-00336-CV, 2020 WL 7074253, at *4 (Tex. App.—Houston [14th Dist.] Dec. 3, 2020, pet. dism'd). A trade-secret owner may seek damages or injunctive relief for the misappropriation of its trade

secrets.  Tex. Civ. Prac. & Rem. Code §§ 134A.003 (injunctive relief), 134A.004 (damages);

*Reilly*, 2020 WL 7074253, at *4.

70.     The TUTSA defines a "trade secret" as follows:

all forms and types of information, including business . . .economic . . . and
any . . . compilation . . . if: (A) the owner of the trade secret has taken reasonable
measures under the circumstances to keep the information secret; and (B) the
information derives independent economical value, actual or potential, from not
being generally known to, and not being readily ascertainable through proper means
by, another person who can obtain economic value from the disclosure or use of
the information.

Tex. Civ. Prac. & Rem. Code § 134A.002(6). "This standard requires that the owner of the trade

secret take reasonable measures but does not require proof that the alleged trade secrets have been

held in absolute secrecy in order to establish the existence of a trade secret or that information is

worthy of trade secret protection pending final resolution on the merits."  *TASF, LLC v. Turn2*

*Specialty Cos.*, NO. 01-21-00089-CV, 2022 WL 709836, at *8 (Tex. App.—Houston [1st Dist.]

Mar. 10, 2022, no pet. (citing *HouseCanary, Inc. v. Title Source, Inc.*, 622 S.W.3d 254, 266 (Tex.

2021)).

71.     As discussed *supra*, W&T has expended considerable efforts and resources to

develop, invest in, and protect Trade Secrets related to all facets of its business, including but not

limited to confidential and proprietary (i) seismic data, (ii) drilling plans and locations, and (iii)

well and reserve information.  These Trade Secrets are valuable to W&T's ongoing success in the

oil and natural gas industry, and provide benefits that flow to W&T by virtue of the fact that these

Trade Secrets are kept proprietary to W&T and are not generally known to the public or others in

the oil and natural gas industry.

72.     To that end, W&T has made reasonable efforts to keep these Trade Secrets

confidential, including by: (i) requiring W&T employees to sign confidentiality agreements

prohibiting unauthorized disclosure or use of Trade Secret information; (ii) requiring W&T

employees to assent to a Code of Ethics containing restrictions on access, use, and dissemination of confidential information and Trade Secrets; (iii) contracting with Defendants for the provision of services related to securing Trade Secret data; (iv) password-protecting and limiting access to applications and files containing Trade Secrets; and (v) limiting physical access to W&T facilities where Trade Secrets may be accessed to authorized personnel, including by requiring employee badges. Defendants 'employees have even signed agreements acknowledging confidentiality obligations with respect to W&T's information.

73.     Second, TUTSA provides that "misappropriation" includes the "use of a trade secret of another without express or implied consent" by a person who "at the time of . . . use, knew or had reason to know" that his "knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain the secrecy of or limit the use of the trade secret[.]" Tex. Civ. Prac. & Rem. Code § 134A.002(3)(B)(ii)(b). Defendants are currently misappropriating W&T's Trade Secrets by withholding their effectual and orderly return. Throughout the duration of the parties 'contractual relationship, W&T provided Defendants with access to Trade Secret information – along with other W&T company data – to facilitate Defendants 'provision of IT services, including security-related services. Yet now, as the parties 'contractual term approaches its end, Defendants have refused to return W&T's Trade Secret information, including by refusing to provide back-up data of Trade Secret and other information in a form accessible to W&T and refusing to take steps necessary to transition IT functionality back to W&T, in an apparent attempt to gain monetary or other favorable terms. Defendants 'transparent attempt to "hijack" W&T's Trade Secrets constitutes misappropriation. *See Sears Authorized Hometown Stores, LLC v. Y&O WF, LLC*, No. 7:18-cv-00083-O-BP, 2018 WL 6608354, at *4 (N.D. Tex. Nov. 29, 2018), *report and recommendation adopted*, No. 7:18-cv-00083-O-BP, 2018 WL 6603813 (N.D. Tex. Dec. 17,

2018) (applying TUTSA and holding that a defendant's "refusal to return trade secrets . . . to the potential disadvantage" of the plaintiff constitutes a "use" of trade secrets sufficient to allege misappropriation).

74.     ***Defendants have breached their Data Management Contracts.***  Since 2018, W&T has contracted with Defendants to (among other things) manage, maintain, and secure W&T's Systems and Electronic Data, communications, and physical security systems.  In exchange for Defendants 'services, W&T compensates Defendants.  W&T has fully performed its contractual obligations.  *See Valero Mktg. & Supply Co. v. Kalama Int 'l.*, 51 S.W.3d 345, 351 (Tex. App.— Houston [1st Dist.] 2001, no pet.) (holding that an essential element of a breach of contract claim is plaintiff performing or tendering performance).

75.     A breach of contract occurs when a contracting party fails – without a legal excuse – to perform a promise that is part of the agreement or does something inconsistent with the agreement.  *See B&W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied).  Here, W&T retained Defendants to maintain and store its Systems and Electronic Data, communications, and physical security systems.  These contractual obligations included cooperating with the transition to another IT provider or to W&T to handle internally – as AAIT recognized when it agreed to:

- provide a comprehensive list of all services it was providing to W&T, the hardware and software systems it controls, and its position on the ownership of all hardware and software associated with its IT services to W&T; and

- "work *cooperatively* with W&T to facilitate an *orderly transition of all IT services* to another IT provider or, alternatively, to W&T to handle internally."

76.     Defendants have since refused to deliver their end of the bargain.  They are not providing the information they are obligated to provide, nor are they otherwise cooperating in the orderly transition of W&T's IT services to another IT provider or to W&T to handle internally.

These refusals are breaches of Defendants'obligations under the Data Management Contracts. *See Texas Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 78 (Tex. App.— Houston [1st Dist.] 2015, no pet.); *Hernandez v. Gulf Grp. Lloyds*, 875 S.W.2d 691, 693 (Tex. 1994) (material breach occurs when injured party is deprived of the benefit it reasonably could have anticipated from the breaching party's performance); *see, e.g., Yeh v. Praire E&L Mgmt., LLC*, Case No. 20-3124, 2020 WL 6930519, at *4–5 (C.D. Ill. Aug. 28, 2020) (concluding that in an Administrative Services Agreement between plaintiff eye doctor and defendant Prairie E&L Management, defendant was obligated to cooperate in the transition of the doctor to a new management services provider – per the parties Administrative Services Agreement – and could not otherwise unilaterally transfer the doctor's stock to new physicians).

77.     W&T's Systems and Electronic Data are its property.  And, of course, W&T uses its Systems and Electronic Data to run its business.  By refusing to (1) supply the list of services Defendants provided to W&T, or (2) assist in the orderly transition of services to another IT provider or to W&T to handle internally, Defendants have created an imminent risk of injury to W&T.  That decision could impair W&T's ability to monitor its production and accurately prepare its results of operations in a timely fashion.  W&T's imminent risk of injury is a natural, probable, and foreseeable consequence of Defendants'breaches.  *See Winograd v. Clear Lake City Water Auth.*, 811 S.W.2d 147, 156 (Tex. App.—Houston [1st Dist.] 1991, writ denied) (concluding there was "natural, probable, and foreseeable" causation from a water authority's denial of sewage services – which it contracted to provide to plaintiff developer – to the developer's inability to continue an apartment development).

78.     ***Defendants have breached their fiduciary duties***.  A fiduciary duty may arise from certain formal legal relationships or informal personal relationships, and may be created by

contract.  *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet.

denied).  A fiduciary relationship is created by contract when a party specifically promises to act

as a fiduciary with respect to another in the course of a relationship.  *See Lincoln Gen. Ins. Co. v.*

*U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716, 727 (5th Cir. 2015) (applying Texas law and noting that

fiduciary relationship may be created by explicitly agreeing to act as a fiduciary under a contract).

That is the case here: Defendants 'principal has recognized that Defendants act as fiduciaries to

W&T, recently writing W&T that he "did not violate anything on my fiduciary responsibility."

The fiduciary relationship is particularly important here, given Defendants 'role as W&T's

outsourced IT Department.  A company's data is its lifeblood; if the flow of information stops or

is hindered, the company risks significant harm.

     79.    Fiduciaries are obliged to place the interests of their beneficiaries before their own.

*Cruz v. Ghani*, No. 05-17-00566-CV, 2018 WL 6566642, at *6–12 (Tex. App.—Dallas Dec. 13,

2018, pet. denied) (affirming jury verdict that found breach of fiduciary duty because defendant

placed his own interests before the interests of the party to whom he owed fiduciary duties).  By

refusing to cooperate with the orderly transition, Defendants have breached their fiduciary duties

to W&T by placing their own interests over the interests of W&T.  *See, e.g., Daniel v. Falcon*

*Interest Realty Corp.*, 190 S.W.3d 177, 185 (Tex. App.—Houston [1st Dist.] 2005, no pet.) (noting

fiduciary duties require fiduciary to act primarily for the benefit of another in matters connected

with fiduciary's undertaking).  As explained above, Defendants 'refusal to cooperate in an orderly

transition has caused W&T's immediate and imminent injury.

     80.    ***Defendants have wrongfully converted W&T's Systems, Computer equipment,***

***and Electronic Data.***  "The tort of conversion involves the unauthorized and unlawful assumption

and exercise of dominion and control over the personal property of another to the exclusion of and

inconsistent with the other's superior rights in the property." *Hilburn v. Storage Tr. Properties, LP*, 586 S.W.3d 501, 508 (Tex. App.—Houston [14th Dist.] 2019, no pet.). To prove conversion, W&T must establish that it is the owner of the personal property or is entitled to its immediate possession. *See FCLT Loans, L.P. v. Estate of Bracher*, 93 S.W.3d 469, 482 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *see also Cage Bros v. Whiteman*, 163 S.W.2d 638, 640–41 (Tex. 1942) (converted property must be personal property). The Systems and Electronic Data is the personal property of W&T. *See McGuire-Sobrino v. TX Cannalliance LLC*, No. 05-19-01261-CV, 2020 WL 4581649, at *6 (Tex. App.—Dallas Aug. 10, 2020, no pet.) (analyzing conversion claim over digital assets and treating the assets as personal property); *see also Cuidad Casero Home Health v. Ayuda Home Health Care Servs.*, 404 S.W.3d 737, 749 (Tex. App.—El Paso 2013, no pet.) (confidential information can be converted).

81.     Any act that interferes with W&T's free use and enjoyment of its property is an act of dominion or control. *See Hilburn*, 586 S.W.3d at 509. The interference need not be permanent or a physical taking. *See Waisath v. Lack's Stores*, 474 S.W.2d 444, 447 (Tex. 1971). That is the case here: W&T demanded that Defendants return its Systems and Electronic Data. Defendants' refusal to return W&T's Services and Electronic Data has interfered with W&T's use of its data and hinders W&T's ability to effectively run its IT operations. Accordingly, Defendants' have wrongfully converted W&T's property.

82.     Additionally, W&T must establish that Defendants committed theft as defined under certain enumerated sections of the Texas Penal Code. Tex. Civ. Prac. & Rem. Code § 134.002(2); *Universal Plant Servs., Inc.*, 571 S.W.3d at 363. One of those provisions, Section 31.03(a) of the Texas Penal Code, provides that "[a] person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property." Tex. Pen. Code § 31.03(a);

*Universal Plant Servs., Inc.*, 571 S.W.3d at 363.  Like in *Universal Plant Services, Inc.*, Defendants here intentionally deprived W&T of its back up data and other valuable information by refusing to provide it to W&T in an accessible form.  *See Universal Plant Servs., Inc.*, 571 S.W.3d at 363.  As a result of Defendants 'actions, W&T has suffered actual damages by the hindering of its ability to fully access its Systems and Electronic Data, which may impair W&T's ability to accurately prepare its results of operations in a timely fashion, among others.  *See* Tex. Civ. Prac. & Rem. Code §§ 134.003, 134.005(a)(1).

   *c.*  ***Because damages are inadequate, W&T faces irreparable injury.***

   83.  An injury is irreparable when it "cannot be adequately compensated in damages or if the damages cannot be measured by any certain pecuniary standard." *Butnaru*, 84 S.W.3d at 204.  Similarly, "[a] legal remedy is inadequate if damages are difficult to calculate or their award may come too late." *T-N-T Motorsports, Inc. v. Hennessey Motorsports, Inc.*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, pet. dism'd).  Harm to a business that is difficult to quantify cannot adequately be remedied at law.  *Intercontinental Terminals Co. v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 896 (Tex. App.—Houston [1st Dist.] 2011, no pet.).  In particular, "[d]isruption to a business can be irreparable harm."  *See Frequent Flyer Depot, Inc. v. Am. Airlines, Inc.*, 281 S.W.3d 215, 228 (Tex. App.—Fort Worth 2009, pet. denied).  That is the case here.  "[C]ourts around the country agree that the interference with an entity's control of its computer systems constitutes irreparable injury." *Fla. Atl. Univ. Bd. of Trs. v. Parsont*, 465 F. Supp. 3d 1279, 1296 (S.D. Fla. 2020) (collecting cases and finding that activities that impact the integrity of plaintiff's computer system cause irreparable harm); *see also Enargy Power Co. v. Xiaolong Wang*, No. 13-11348-DJC, 2013 WL 6234625, at *10 (D. Mass. Dec. 3, 2013) (finding that the defendant's accessing and encrypting information on his former employer's server, preventing the former employer from enjoying uninterrupted use of its property and potentially impacting goodwill,

constitutes irreparable harm). Additionally, "[t]he threatened disclosure of trade secrets constitutes irreparable injury as a matter of law" in Texas. *Heil Trailer Int'l. Co. v. Kula*, 542 F. App'x 329, 336 (5th Cir. 2013) (alteration in original) (citation omitted).

84. The holdings in *Florida Atlantic* and *Enargy* make sense. In today's world, public companies need access to electronic data and IT systems to operate effectively. This is why W&T paid Defendants handsomely for their IT services. W&T needs to have access to all of its Systems and Electronic Data to ensure that it can operate effectively in the ordinary course of business. If W&T cannot access or effectively use its Systems and Electronic Data, that could harm its ability to operate in a wide range of areas. For instance, without an orderly transition to either another IT provider or to W&T to handle internally, W&T's ability to perform its management and operational duties, to monitor its production, or to prepare its results of operation could be impaired. There is no way to quantify damages to W&T that will be caused by failing to transition W&T's Systems and Electronic Data to either another IT provider or to W&T to handle internally without engaging in speculation. Compounding matters, AAIT has threatened to stop providing services on September 2 – and yet is not taking the necessary steps to ensure that the IT services can be transitioned by then to either another IT provider or to W&T to handle internally. And Defendants 'refusal to turn over and hold hostage W&T's Trade Secrets constitutes irreparable harm. Accordingly, without this Court's immediate intervention, W&T faces an imminent risk of additional injury.

**B. The Court may issue a TRO requiring Defendants to maintain the status quo.**

85. The purpose of a TRO is to preserve the status quo. *Butnaru*, 84 S.W.3d at 204. The "status quo" is the "last, actual, peaceable, non-contested status which preceded the pending controversy." *TASF, LLC v. Turn2 Specialty Cos.*, No. 01-21-00089-CV, 2022 WL 709836, at *6 (Tex. App.—Houston [1st Dist.] Mar. 10, 2022, no pet.) (citation omitted). Accordingly, courts

may order a party to engage in affirmative acts to preserve the status quo.  *See, e.g., Kjellander v. Smith*, 652 S.W.2d 595, 598 (Tex. App.—Tyler 1983, no writ) (affirming issuance of a temporary injunction requiring defendant to remove a fence); *Rhodia, Inc. v. Harris Cnty.*, 470 S.W.2d 415, 422 (Tex. App.—Houston [1st Dist.] 1971, no writ) (issuing injunction for defendant to "take whatever steps are necessary to prevent surface waters and tidal waters from directly or indirectly carrying arsenic in concentrations of more than one part per million from [defendant's] property into or adjacent to Vince Bayou").

86.     The affirmative relief W&T seeks maintains the status quo.  The status quo is that W&T is able to operate effectively and has a functioning and effective IT system.  Defendants have communicated that they will no longer provide IT services but refuse to take the steps needed to maintain W&T's IT system with a new provider.  Defendants should be required to cooperate in the orderly transition of IT services to either another IT provider or to W&T to handle internally.  Where parties have agreed to continue a course of conduct under a contract, the status quo may be the continued provision of services a party provides.  Where parties have agreed to continue a course of conduct under a contract, the status quo may be the continued provision of services a party provides.  *See Merchants Group, Inc. v. OM & Dev Shah, LLC,* No. 01-19-00294-CV, 2021 WL 1537517, at *2–3 (Tex. App.—Houston [1st Dist.] Apr. 20, 2021, no pet.) (noting that trial court granted a TRO requiring fuel supplier to fulfil retailer's fuel orders as required by the parties contract while retailer transferred to a new fuel supplier); *see also Axia NetMedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1, 12 (1st Cir. 2018) (upholding preliminary injunction requiring a party to "continue to provide, through its affiliates . . . the same level of service that those affiliates are currently providing" (alteration in original) (citation omitted)).  And the Court can order Defendants to provide a comprehensive list of the services they are providing, the hardware and

software IT systems they control, and their position on the ownership of those systems.  *See DirecTV, LLC v. E&E Enters. Glob., Inc.*, No. 17-06110-DDP-PLA, 2017 WL 4325585, at *7 (C.D. Cal. Sept. 25, 2017) (ordering defendant to turn over a list of customer contract information so DirecTV could complete a transition in service).

**C.  The bond should be nominal.**

87.  Before the Court grants a TRO or temporary injunction, W&T must post a bond in the amount set by the Court.  *See* Tex. R. Civ. P. 684.  The Court "has considerable discretion" in setting the bond.  *Biodynamics, Inc. v. Guest*, 817 S.W.2d 128, 130–31 (Tex. App.—Houston [14th Dist.] 1991, writ dism'd by agr.).  Here, a nominal bond, or even no bond, is justified.  Enjoining Defendants from ceasing to continue to service a long-time customer will not harm them.  To the contrary, it merely requires Defendants to do what IT vendors do in the ordinary course – and what AAIT affirmed it would do just days ago.  W&T will pay the reasonable and necessary fees for the work that Defendants perform under their contracts and for the reasonable costs of a transition master to supervise the smooth and timely transfer of Plaintiff's property identified above.

## PRAYER

In accordance with Texas Rule of Civil Procedure 47, W&T seeks injunctive relief as well as monetary relief over $250,000 but not more than $1,000,000.  W&T respectfully requests that the Court:

A.  Enter a temporary restraining order, preliminary and permanent injunction refraining and enjoining Defendants from using or disclosing W&T's Trade Secrets;

B.  Enter a preliminary and permanent injunction ordering the return of W&T's Trade Secrets, including ordering Defendants to take the steps necessary to turn control of W&T's IT over to W&T;

C.     Enter judgment that Defendants misappropriated W&T's Trade Secrets;

D.     Award W&T compensatory damages for actual losses caused by Defendants' misappropriation of Trade Secrets, and for any unjust enrichment caused by the misappropriation, or in lieu of damages measured by any other methods, a reasonable royalty for the unauthorized disclosure or use of the Trade Secrets;

E.     Enter judgment that Defendants' misappropriation was willful and malicious;

F.     Award W&T exemplary damages and reasonable attorney's fees for the willful and malicious misappropriation;

G.     Award W&T damages in an amount to be determined at trial for Defendants' breaches of the Data Management Contracts;

H.     Award W&T damages in an amount to be determined at trial for Defendants' breach of fiduciary duty;

I.     Award W&T damages in an amount to be determined at trial for Defendants' conversion of W&T's property;

J.     Grant a temporary restraining order, temporary injunction, and permanent injunction as requested in paragraph 3 above; and

K.     all other relief to which W&T is entitled.

Dated:  August 19, 2022                          **Respectfully submitted,**

                                                 */Benjamin L. Hall, III*
                                                 **Benjamin L. Hall, III**
                                                 **TBN: 08743745**
                                                 **The Hall Law Group, PLLC**
                                                 **530 Lovett Blvd.**
                                                 **Houston, Tx 77006**
                                                 **713.942.9600 (o)**
                                                 **713.942.9566 (f)**
                                                 **Bhall@thlf.us**
                                                 *Attorneys for W&T Offshore, Inc.*

## VERIFICATION UNDER PENALTY OF PERJURY

My name is Alvin Haynes, and I am the Chief Information Officer of Plaintiff W&T Offshore, Inc. in the above captioned case. My date of birth is _12/27/1961_, and my address is _19307 Yearling Mdws, Houston, Tx 77094_ I have reviewed the factual allegations made in this verified original petition and application for a temporary restraining order, temporary injunction, and permanent injunction (the "Petition"), and the allegations of which I have personal knowledge are true and correct. As to those allegations of which I do not have personal knowledge, I relied on information or documents provided to me and believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.


EXECUTED in Harris County, State of Texas, on the 18, day of August, 2022.


_Alvin Haynes_

8/19/2022 1:44 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 67474834
By: Keeley Hodgins
Filed: 8/19/2022 1:44 PM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**<u>TEMPORARY RESTRAINING ORDER</u>**

After considering W&T Offshore, Inc.'s ("W&T") Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Application"), the responses, if any, filed by Defendants, all documents on file with the Court, and hearing arguments of counsel, the Court finds that W&T has shown that:

1.  W&T is entitled to a temporary restraining order and probable injunctive relief.

2.  W&T has shown a reasonable probability of success on the merits of its Texas Uniform Trade Secrets Act ("TUTSA") claim that:

    a.  W&T has confidential and proprietary trade secrets — including seismic data, drilling plans and locations, and well and reserve information — that are valuable to W&T's ongoing success in the oil and natural gas industry and that provide benefits which flow to W&T by virtue of the fact that these Trade Secrets are kept proprietary to W&T and are not generally known to the public or others in the oil and natural gas industry;

    b.  W&T has taken reasonable efforts to maintain the secrecy of its trade secrets;

    c.  Defendants, who have a duty to maintain the secrecy of the trade secrets, are misappropriating W&T's trade secrets by withholding their effectual and orderly return to the disadvantage of W&T;

    d.  Defendants' misappropriation of W&T's trade secrets threatens W&T with immediate and irreparable harm by potentially impairing W&T's ability to recover and secure its trade secret information, potentially resulting in the

1

destruction of that information or the potential impairment of its ability to monitor its production and accurately prepare its results of operations in a timely fashion.

3.      W&T has a reasonable probability of success on the merits of its breach of contract claims that:

- Defendants contracted with W&T to provide information technology ("IT") services;

- W&T has performed all of its contractual obligations;

- Defendants have breached their contractual obligations by refusing (1) to provide a comprehensive list of all services they were providing to W&T, the hardware and software systems they control that were used to provide such services to W&T, and their position on the ownership of all such hardware and software and (2) to cooperate in the full transition of W&T's IT infrastructure to another IT provider or to W&T to handle internally before attempting to exit the relationship.

- Defendants' breach of contract threatens W&T with imminent irreparable harm due to the potential impairment of its ability to monitor its production and accurately prepare its results of operations in a timely fashion.

4.      W&T has a reasonable probability of success on the merits of its breach of fiduciary duty claim that:

- W&T and Defendants are in a fiduciary relationship under the parties' contract;

- Defendants have breached their fiduciary duties because they have refused (1) to provide a comprehensive list of all services they were providing to W&T, the hardware and software systems they control that were used to provide such services to W&T, and their position on the ownership of all such hardware and software and (2) to cooperate in the full transition of W&T's IT infrastructure to another IT provider or to W&T to handle internally before attempting to exit the relationship.

- Their breaches of fiduciary duty threaten W&T with imminent irreparable harm due to the potential impairment of its ability to monitor its production and accurately prepare its results of operations in a timely fashion.

5.      W&T has a reasonable probability of success on the merits of its conversion claim that:

- W&T owns and has the right to immediately possess its IT systems and related computer equipment, including systems for using and storing W&T's emails and other electronic data ("Systems and Electronic Data");

- W&T's Systems and Electronic Data is W&T's personal property;

- W&T demanded that Defendants return its Systems and Electronic Data;

- Defendants' refusal to return W&T's Systems and Electronic Data interferes with W&T's use, benefit, and enjoyment of its property;

- Defendants' conversion threatens W&T with imminent irreparable harm due to the potential impairment of its ability to monitor its production and accurately prepare its results of operations in a timely fashion.

6.    W&T will suffer probable, imminent, and irreparable injury unless the Court enters a temporary restraining order to enjoin and restrain Defendants from jeopardizing and misappropriating Plaintiff's and their owners, employees, representatives, and agents):

- to provide a comprehensive list of all services Defendants were providing to W&T, the hardware, programs and software systems Defendants control that were used to provide such services to W&T, and Defendants' positions on the ownership of all such hardware and software, as outlined below; and

- to comply with their contractual obligation to cooperate with W&T to provide the same historic services and to facilitate an orderly transition of all IT services to another IT provider or to W&T to handle internally, as outlined below.

7.    Without a temporary restraining order, W&T's ability to perform its management and operational duties, to monitor its production, or to prepare its results of operations foreseeably could be impaired.  There is no way to quantify damages to W&T caused by Defendants failing properly to transition W&T's IT systems, trade secrets and electronic data to either another IT provider hired or retained by W&T or to W&T itself.

For these reasons, W&T's application for a temporary restraining order is **GRANTED**.  It is therefore **ORDERED, ADJUDGED, AND DECREED** that Defendants, All About IT, Inc. and Secure Cloud, LLC (and their owners, employees, representatives, attorneys, and agents), are hereby enjoined from taking any further actions, or failing to take necessary actions, that would damage, impair, frustrate, put at risk, jeopardize, and/or delay in any way W&T from regaining

and/or taking total control and possession of all its trade secrets, computer equipment, electronic and computer data and operations, email systems, electronic programs, audio and telecommunication systems, and all other aspects of its trade secrets and property presently in the possession and/or under the control of Defendants (" the Data").  Defendants are further enjoined from interfering with, interrupting, turning off, or otherwise compromising W&T's ability to access, transfer and/or use any of the Data. The acts and character of such prohibited and enjoined conduct are also outlined in accompanying Attachment "A" to this order, which Attachment is incorporated herein by reference .

It is further **ORDERED** that _____ is appointed to serve as a "Transition Master" to ensure the orderly and timely  return of W&T's possession and control over the Data, trade secrets, computer equipment, electronic data, electronic systems—including audio and telephonic systems— computer programs and all other aspects of its Systems and Electronic Data presently in the possession of or under the control of Defendants and also to supervise, monitor,  promote and enforce compliance with this order until the later of (1) timely completion of the transition of all of the Data, trade secrets, computer equipment, electronic data, electronic systems—including audio and telephonic systems— computer programs and all other aspects of its Systems and Electronic Data back into the control of W&T and/or its designee or (2) further order of a court having jurisdiction over this matter.   Cost for the services of the Transition Master shall be paid by W&T and the Transition Master shall have authority and power to require complete and timely compliance and fulfillment by Defendants of all of the items identified in Attachment "A" to this order and Defendants are **ORDERED** to comply with the instructions and directions of the Transition Master.  Any party having an issue with an instruction or decision of the Transition Master must bring the matter to the attention of this court within 24 hrs of knowing

4

of the issue or the complaint will be deemed waived.  Without objection, the Court may rule on the complaint without a hearing to expedite resolution of the dispute.

It is further **ORDERED** that W&T is to post a surety or cash bond with the Clerk of Court in the amount of _____.

This matter is set for a temporary injunction hearing in the _____ Judicial District Court of Harris County, Texas at _____ a.m./p.m. on the _____ day of _____, 2022.

**SO ORDERED.**

SIGNED on _____ ___, 2022, at ___ a.m./p.m.

_____
The Honorable Tanya Garrison
Sitting as Ancillary Judge, Harris County,
Texas

CAUSE NO. 2022-51667

**ATTACHMENT "A" TO TEMPORARY RESTRAINING ORDER**

The named Transition Master in the foregoing temporary restraining order is authorized to ensure each and all of the following acts/omissions, if appropriate, are performed by Defendants in a timely manner in compliance with the foregoing court order. Defendants All About IT, Inc. and SECURE CLOUD, LLC are ordered to do all of the following actions/omissions as instructed, directed, requested, or instructed by the Transition Master:

  o  Refrain from using or disclosing W&T's trade secrets;

  o  Provide to W&T or its designee a complete list of all services Defendants were providing to and/or on behalf of W&T up to the date of this order;

  o  Provide W&T or its designee physical access to all spaces containing W&T infrastructure, networking, and communications hardware at data centers located at (a) 5150 Westway Park Blvd., Houston, Texas 77041 (the "Houston Data Center"), and (b) 7301 Metropolis, Austin, Texas 78744 (the "Austin Data Centers" and collectively with the Houston Data Center the ("Data Centers") and assurance that the data center operator(s) will provide W&T personnel and designees with cross connections to such hardware;

  o  Provide to W&T or its designee a complete list of all service accounts and associated passwords for these accounts and to reasonably access all Systems and Electronic Data;

  o  Provide to W&T or its designee a complete list of (i) Cisco Maraki devices, including firewalls, routers, and switches; (ii) Palo Alto firewalls; (iii) HP servers; (iv) HP thin client computers; and (v) all other network devices, including firewalls, routers, switches, and network attached printers on W&T offshore platforms, at the Data Centers, or in W&T offices, including their IP addresses, configurations, administrator user names and passwords, and identify all hardware and equipment belonging to W&T;

  o  Provide to W&T or its designee a complete list of all hardware used to backup, store and/or maintain any and all of W&T's data, including needed details regarding the data stored on such hardware;

  o  Provide to W&T or its designee a complete list of all hardware used for network storage of W&T data, including their administrator user names and passwords, whether they are set up as storage area networks and/or network-attached storage, and identify all hardware, equipment and data belonging to W&T;

  o  Identify and provide to W&T or its designee a complete list of all wireless access points on W&T's wide area network;

o   Identify and provide to W&T or its designee a complete list of all workstations purchased by Defendants on behalf of W&T;

o   Identify and provide to W&T or its designee a complete list of all radios and televisions on W&T offshore platforms belonging to W&T and identifying any of such devices Defendants now claim to own, if any;

o   Identify and provide to W&T or its designee a complete list of all telephones on W&T offshore platforms, including their administrator user names and passwords and whether Defendants now claim to own any of such devices;

o   Identify and provide  to W&T or its designee a complete list of all circuits, including but not limited to those provided by Lumen Technologies, Cogent Communications, Cox Communications, Tampnet, and Viasat, managed by Defendants for W&T, including for W&T offshore platforms or W&T offices;

o   Identify and provide to W&T or its designee a comprehensive network map of W&T's wide area network that includes all applicable IP addresses and ranges, subnets, and hardware;

o   Identify and provide to W&T or its designee (i) copies of all contracts with Cogent Communications, Cox Communications, and any other providers for communications services provided to or on behalf of W&T, including at W&T offshore platforms and W&T offices; (ii) account numbers with these providers; and (iii) user names and passwords for W&T accounts on these providers' access portals;

o   Remove AAIT and Secure Cloud personnel from and add W&T employee Alvin Haynes as the W&T point of contact to all W&T accounts at all communications service providers;

o   Provide to W&T or its designee logical access to primary storage and backup locations, including the user name and password to the Veeam console, of all data owned or produced by W&T, including but not limited to, seismic data, drilling plans and locations, well and reserve information, financial data, human resources data, contracts, legal records, mergers and acquisitions information, and operations information;

o   Provide to W&T or its designee logical access to (i) HP insight manager or the chassis management interface for the HP Blade servers used to host W&T's VMWare environment, and (ii) Cisco call manager for configuration of W&T telephones;

o   Provide to W&T or its designee a complete list of the Microsoft software owned by W&T, including the number and type of licenses, and all applicable license agreements with Microsoft;

o Provide to W&T or its designee all licenses and administrator user names and passwords for (i) the Cisco Servers hosting W&T's SQL Server environment, (ii) W&T's VMWare servers, and (iii) W&T's Cylance software;

o Provide to W&T or its designee all administrator user names and passwords and identify whether AAIT, Secure Cloud or W&T owns (i) the Deep Instinct software and (ii) any other software supported by W&T;

o Provide to W&T or its designee all source code for offshore platform monitoring software developed by W&T employee Yun Yang on behalf of W&T;

o Provide to W&T or its designee the names, contact information, and support contracts for all contractors AAIT or Secure Cloud has engaged and/or is engaging to provide support to W&T for software used by W&T;

o Provide to W&T or its designee a list of all open information technology requests submitted by W&T to Defendants' ticket management system for IT helpdesk services;

o Transfer backup and replication hardware owned by W&T, including the CS3000 Hybrid Arrays, located at the Data Centers;

o Transfer direct inward dialing contract and associated telephone numbers for W&T offices and offshore platforms; and

o Cooperate with W&T to provide the same historic services and to facilitate an orderly transition of all IT services to another IT provider or to W&T to handle internally until the herein designated Transition Master determines there is no further need for Defendants' services to complete the turnover and/or transition of all of W&T's trade secrets and IT services in compliance with this order.

o W&T is responsible for paying its customary payments to Defendants for their services until this order is complied with or up to the time the Transition Master determines Defendants have satisfied all of the requirements of the court's order(s).

o Defendants shall as soon as practicable return to W&T all of W&T's trade secrets, including taking all expedient steps necessary to turn complete control of W&T's IT and trade secrets back over to W&T or its designee. The Transition Master is authorized to implement procedures and a schedule to promote efficient and speedy compliance with the requirements set forth in this Attachment and the court's accompanying order.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Kimberly Bobb on behalf of Benjamin Hall, III
Bar No. 08743745
kbobb@bhalllawfirm.com
Envelope ID: 67474834
Status as of 8/19/2022 2:46 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Benjamin L. Hall, III | | bhall@thlf.us | 8/19/2022 1:44:48 PM | SENT |
| Ryan Finnegan | | rfinnegan@thlf.us | 8/19/2022 1:44:48 PM | SENT |
| Kimberly Bobb | | kbobb@thlf.us | 8/19/2022 1:44:48 PM | SENT |
| William L.Van Fleet, II | | bvfleet@comcast.net | 8/19/2022 1:44:48 PM | SENT |

**FILED**
Marilyn Burgess
District Clerk

CAUSE NO. _2022-51667_          Time: _4:19pm_

AUG 19 2022

Harris County, Texas

By _____
Deputy

W&T OFFSHORE, INC.                   )
                                      )
                    *Plaintiff,*      )
                                      )          IN THE DISTRICT COURT OF
        v.                            )
                                      )          HARRIS COUNTY, TEXAS
ALL ABOUT IT, INC.;                   )
SECURE CLOUD, LLC                     )
                                      )          _151_ JUDICIAL DISTRICT
                    *Defendants.*     )
                                      )

*[handwritten: P-2 TRORA STBNX CASO]*

## TEMPORARY RESTRAINING ORDER

After considering W&T Offshore, Inc.'s ("W&T") Verified Original Petition and

Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

(the "Application"), the responses, if any, filed by Defendants, all documents on file with the

Court, and hearing arguments of counsel, the Court finds that W&T has shown that:

1.  W&T is entitled to a temporary restraining order and has satisfied the requirements for a TRO to be granted, *although defendants don't agree w/this and this finding is for purposes of this order only.*

2.  W&T's application for a temporary restraining order is therefore **GRANTED AND AGREED TO AS FOLLOWS:** It is **AGREED AND ORDERED** that Defendants, All About IT, Inc. and Secure Cloud, LLC (and their owners, employees, representatives, and agents) are to provide and W&T Offshore, Inc. agrees to accept the same level of services that Defendants were providing to W&T Offshore, Inc up to and including the date of June 30, 2022. Also, W&T Offshore, Inc. agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022. It is the express intent of this order to return the parties to the status quo *ante* that existed between the parties as of June 30, 2022. No party shall take any action or fail to perform any action that would interfere with, frustrate or prejudice the interests of either

4

**RECORDER'S MEMORANDUM**
This Instrument is of poor quality
at the time of imaging.

party. It is further agreed and ORDERED that W&T Offshore, Inc. is not required to provide any access to the Plaintiff's Corporate Email and Defendant shall have no responsibility to maintain or service same. Also, this agreement does not apply to MB113. Plaintiff shall not be obligated to reinstate the company credentials of Mr. Ramesh Arumugam but Defendants' technicians will continue to have the same access as existed on June 30, 2022.

It is further **ORDERED** that W&T is to post a surety or cash bond with the Clerk of Court in the amount of $500.00.

This matter is set for a temporary injunction hearing in the 151st Judicial District Court of Harris County, Texas at 3:30 p.m. on the 29th day of August, 2022.

**SO ORDERED.**
SIGNED on _August 19_, 2022, at _4:16_ a.m./p.m.

The Honorable Tanya Garrison
Sitting as Ancillary Judge, Harris County, Texas

4

CAUSE NUMBER _2022- S16667_

W&T Offshore, Inv.     §      **IN THE DISTRICT COURT OF**
_____
**PETITIONER**

All About It, Inc.     §      **HARRIS COUNTY, TEXAS**

vs.

Secure Cloud, LLC     §      _151_ **JUDICIAL DISTRICT**
_____
**RESPONDENT**

## CLERK'S CERTIFICATE OF CASH DEPOSIT IN LIEU
## OF INJUNCTION BOND PER ORDER OF THE COURT

**THE STATE OF TEXAS §**
**COUNTY OF HARRIS    §**

    **THIS DOCUMENT IS TO CERTIFY** that I, the undersigned Clerk of the District Courts of Harris County, Texas have received a cash deposit, as ordered by the Court, in the amount of ___Five Hundred___ Dollars ($___500___), to be deposited with the Registry of the Court in lieu of a **Temporary Restraining Order Bond** or a **Temporary Injunction Bond**, as required by Rule 684, T.R.C.P., in the above styled and numbered cause as provided by the order entered on the _____ day of _____, 20___.

    This cash deposit is made and received in lieu of **TEMPORARY RESTRAINING ORDER** or a **TEMPORARY INJUCTION**, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part, and this certificate is issued to have the force and effect of a **TEMPORARY RESTRAINING ORDER BOND** or a **TEMPORARY INJUCTION BOND** in accordance with the Order of the Court.

    **WITNESS** my hand and seal of office this _19_ day of _August_ A.D., 20_22_.

**FILED**
**Marilyn Burgess**
**District Clerk**

AUG 19 2022

Time: _4:25_
Harris County, Texas
By_____
    Deputy

**Marilyn Burgess, District Clerk**
**Harris County, Texas**
**PO BOX 4651**
**Houston, Texas 77210-4651**

By: _____
    **Deputy District Clerk**

Principal: _W&T Offshore, Inv._

Attorney: _Daniel Mayerfeld_

Bar Number: _24076136_

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

S:\FormsLib\Civil Bureau\Civ Fam Intake & Customer Svc\Famintake\Post Bond      Created 3/2/04

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiff W&T Offshore, Inc. ("W&T") asks this Court to enter an order for expedited and targeted discovery in advance of the temporary injunction hearing presently scheduled to occur in (7) days on August 29, 2022.

## STATEMENT OF EMERGENCY

Time is an enemy in this case!

1.       According to Defendants, in less than 11 days—i.e., by September 2, 2022—Plaintiff will be at risk of losing control of more than 4+ years of sensitive computer data, proprietary programs, software, and other electronic data that Plaintiff hired Defendants to store, steward, maintain, service and implement relating to Plaintiff's offshore oil and gas business operations.  Plaintiff entrusted this information to Defendants as fiduciaries and subject to a confidentiality agreement.  Defendants are now threatening to leave Plaintiff

1

with no assured methods, procedures or plans to transfer, retrieve, access, use, or control all of the data, computer operations, trade secrets, etc. for which Plaintiff has already paid.

2. Because of Defendants' threat, Plaintiff sued them to obtain a temporary restraining order to stop their harmful actions. Ancillary Judge Tanya Garrison granted Plaintiff's request for a TRO within hours of the lawsuit being filed. Judge Garrison suggested, however, that some of Plaintiff's requested relief needed discovery or evidentiary support developed in this court where since the case was assigned to this court. Plaintiff agrees and now requests an emergency discovery order granting limited expedited discovery before the temporary injunction hearing presently scheduled in this court for August 29, 2022, at 3:30 p.m. The requested discovery is needed to be used at the hearing to identify locations, systems, controls, data, components, equipment, communication networks, operations, and other means and methods that Defendants have used to capture, store, secret, maintain, manipulate, process, activate, protect, etc. Plaintiff's trade secrets, operations, and information over the last 4+ years. Additionally, Plaintiff needs discovery to determine how to safely migrate years of their data in-house and away from Defendants.

3. A proposed order identifying the targeted and expedited discovery requests accompanies this motion.

## **BACKGROUND**

4. This case arises out of the failure of Defendants All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud," and together with AAIT, "Defendants") to comport with their contractual and fiduciary obligation to provide W&T with information,

data, and hardware related to its information technology ("IT") systems — information necessary to (i) transition those systems back to internal resources at W&T; and (ii) to return W&T's confidential and proprietary trade secrets.

5.      As relevant to this dispute, Defendants began providing IT services to W&T in 2018 pursuant to an oral contract, and Secure Cloud later entered into a written agreement with W&T (the "Data Management Contract").   Among other things, Defendants maintain and operate certain of W&T's IT systems, including systems for using and storing W&T's emails and other electronic data.  On August 3, 2022, Defendant AAIT informed W&T that it intends to conclude its business relationship with W&T with regard to all services that AAIT currently provides to W&T by September 2, 2022.

6.      Considering AAIT's representation — and in keeping with Defendants' contractual obligation to cooperate in the orderly transition of W&T's IT services — W&T requested that Defendants provide it with information necessary for the orderly removal of AAIT's equipment and software from all W&T platforms and systems, and the immediate transition of IT services to another provider.  However, to date, Defendants have not provided W&T with basic information necessary for W&T to complete its transition plan, including:  (i) a list of all services that Defendants were providing to W&T; (ii) the hardware and software systems that Defendants control, and (iii) Defendants' positions on who owns these systems.  Defendant s' refusal to provide this basic information is creating an imminent risk that W&T's operations will be delayed or interrupted and that W&T will suffer loss, damage to, or unavailability its digital information — including information related to W&T's confidential and proprietary trade secrets.

7.    W&T brought suit against Defendants for (i) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act ("TUTSA"); (ii) breach of contact; (iii) breach of fiduciary duty; and (iv) conversion.   W&T also petitioned this Court for a temporary restraining order that would order Defendants to, inter alia, return W&T's trade secrets, including taking the steps necessary to turn control of W&T's IT back over to W&T.  After a hearing on W&T's petition for a temporary restraining order held on August 19, the Court ordered the Defendants to preserve the "status quo ante" between the parties by continuing to "provide . . . the same level of services that Defendants were providing to W&T Offshore, Inc [sic] up to and including the date of June 30, 2022."   (TRO 1.)  The matter is currently set for a temporary injunction hearing in this Court at 3:30 p.m. on August 29th, 2022.  (See id. at 2.)

8.    W&T now brings this emergency motion for expedited discovery seeking, for good cause, to modify this Court's standard discovery deadlines and procedures in order to obtain relevant and material discovery in advance of the temporary injunction hearing — discovery that W&T can obtain only if the Court expedites the discovery schedule.

## ARGUMENT

### I.    The Court can order expedited discovery if good cause exists.

9.    The Court can modify the standard discovery deadlines if "good cause" exists.  Tex. R. Civ. P. 191.1 ("[T]he procedures and limitations set forth in the rules pertaining to discovery may be modified . . . by court order for good cause."); *see also In re BP Prods.  N. Am., Inc.*, 244 S.W.3d 840, 846 (Tex. 2008) (orig. proceeding) ("[A] trial court may modify discovery procedures and limitations for 'good cause.'" (citation omitted)); *In re Colonial Pipeline Co.*, 968 S.W.2d

938, 943 (Tex. 1998) (orig. proceeding) (per curiam) ("[T]he trial court may shorten or lengthen the time for making a response [to discovery] for good cause."). "Generally, 'good cause' for a discovery order is shown where the movant establishes: (1) the discovery sought is relevant and material, that is, the information will in some way aid the movant in the preparation or defense of the case; and (2) the substantial equivalent of the material cannot be obtained through other means." *In re SWEPI L.P.*, 103 S.W.3d 578, 584 (Tex. App.—San Antonio 2003, no pet.) (orig. proceeding) (citation omitted). "Parties frequently seek, and trial courts order, expedited discovery in the course of proceedings pertaining to temporary restraining orders." *In re Nat'l Lloyds Ins. Co.*, No. 13-15-00390-CV, 2015 WL 6759153, at *4–5 (Tex. App.—Corpus Christi–Edinburg Nov. 3, 2015, orig. proceeding [mand. denied]) (denying petition for writ of mandamus seeking to vacate trial court's order requiring defendant to respond to discovery requests "during the course of a temporary restraining order").

## II.     Good cause exists for expedited discovery.

10.     ***The discovery sought is relevant and material.***  W&T seeks targeted discovery on the core issues that the Court will decide at the temporary injunction hearing.  W&T's proposed requests for production, interrogatories, and deposition notices are narrowly tailored to obtain this information.  (*See* Ex.  B (Proposed Discovery Requests), the "Proposed Discovery Requests.") Further, all of the information requested is highly relevant to Plaintiff's claims against Defendants for (i) breach of their contractual obligations to W&T; (ii) breach of their fiduciary duty to W&T; and (iii) misappropriation and conversion of W&T confidential and proprietary trade secret data. Because a temporary injunction hearing is an evidentiary hearing, W&T needs this discovery so it can prepare for and present evidence at the hearing and establish its entitlement to the relief that it seeks. *See Intercontinental Terminals Co., LLC v. Vopak N. Am., Inc.*, 354 S.W.3d 887, 891 (Tex.

App.—Houston [1st Dist.] 2011, no pet.) (stating that the temporary injunction hearing is an evidentiary hearing, and the "applicant . . . must offer some evidence" of its entitlement to relief). The information will facilitate W&T's ability to request effectual and narrowly tailored injunctive relief at the temporary injunction hearing, as the specific relief that is necessary to avoid irreparable injury will be influenced by information related to Defendants' ownership and control of hardware and software systems containing W&T data.

11.     ***W&T can acquire this information from Defendants only if the Court expedites the discovery schedule.***  Given the imminent temporary injunction hearing, W&T can acquire this discovery only if the Court expedites the normal discovery schedule and shortens the designated time for making a response to fewer than the usual thirty days.  Texas courts have recognized that expedited discovery is appropriate during the pendency of a temporary restraining order when a party is further seeking a temporary injunction.  *See Nat'l Lloyds Ins. Co.*, 2015 WL 6759153, at *4 (collecting cases); *see also In re Aludogbu*, No. 05-19-00078-CV, 2019 WL 311801, at *1 (Tex. App.—Dallas Jan. 24, 2019, orig. proceeding) (denying petition for mandamus seeking to vacate orders granting expedited discovery and continuing temporary injunction hearing).  Accordingly, an expedited discovery schedule is proper.

## CONCLUSION

12.     For the reasons set forth herein, W&T respectfully requests that the Court set a schedule for expedited discovery in advance of the temporary injunction hearing set to be held on August 29, 2022.  A proposed form of an Order is attached hereto as Exhibit A.

## NOTICE OF REQUEST FOR IMMEDIATE SUBMISSION

13.     Plaintiff respectfully requests immediate submission of its Emergency Motion for Expedited Discovery.

Dated:  August 22, 2022                Respectfully submitted,

                                  /s/  *Benjamin L. Hall, III*
                                  Benjamin L. Hall, III
                                  TBN: 08743745
                                  The Hall Law Group, PLLC
                                  530 Lovett Blvd.
                                  Houston, Tx 77006
                                  713.942.9600 (o)
                                  713.942.9566 (f)
                                  Bhall@thlf.us

                                  *Attorney for W&T Offshore, Inc.*

## CERTIFICATE OF CONFERENCE

I certify that I conferred with defense counsel Ethan Gibson, on August 22, 2022, regarding this motion and other matters.  Even though the call appeared productive, we were not able to reach an agreement on the matters set forth in this motion.  The court's assistance is needed to resolve this dispute.

                                  /s/  *Benjamin L. Hall, III*
                                  Benjamin L. Hall, III

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of this document was served via the Court's electronic filing system on counsel for Defendants on August 22, 2022.

                                  /s/  *Benjamin L. Hall, III*
                                  Benjamin L. Hall, III

# EXHIBIT A

**FILED**
Marilyn Burgess
District Clerk

AUG 19 2022

CAUSE NO. _2022-51667_   Time: _4:19pm_

By _____

Harris County, Texas

Deputy

P-2

| | |
|---|---|
| W&T OFFSHORE, INC. | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| ALL ABOUT IT, INC.; | ) |
| SECURE CLOUD, LLC | ) |
| | ) |
| *Defendants.* | ) |

IN THE DISTRICT COURT OF

HARRIS COUNTY, TEXAS

_151_ JUDICIAL DISTRICT

TRORA
STBNX
CASO

## TEMPORARY RESTRAINING ORDER

After considering W&T Offshore, Inc.'s ("W&T") Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (the "Application"), the responses, if any, filed by Defendants, all documents on file with the Court, and hearing arguments of counsel, the Court finds that W&T has shown that:

1.     W&T is entitled to a temporary restraining order and has satisfied the requirements for a TRO to be granted, *although defendants don't agree w/ this and this finding is for purposes of this order only.*

2.     W&T's application for a temporary restraining order is therefore **GRANTED AND AGREED TO AS FOLLOWS:** It is **AGREED AND ORDERED** that Defendants, All About IT, Inc. and Secure Cloud, LLC (and their owners, employees, representatives, and agents) are to provide and W&T Offshore, Inc. agrees to accept the same level of services that Defendants were providing to W&T Offshore, Inc up to and including the date of June 30, 2022. Also, W&T Offshore, Inc. agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022. It is the express intent of this order to return the parties to the status quo *ante* that existed between the parties as of June 30, 2022. No party shall take any action or fail to perform any action that would interfere with, frustrate or prejudice the interests of either

4

**RECORDER'S MEMORANDUM**
This instrument is of poor quality
at the time of imaging.

# EXHIBIT A

party. It is further agreed and ORDERED that W&T Offshore, Inc. is not required to provide any access to the Plaintiff's Corporate Email and Defendant shall have no responsibility to maintain or service same. Also, this agreement does not apply to MB113. Plaintiff shall not be obligated to reinstate the company credentials of Mr. Ramesh Arumugam but Defendants' technicians will continue to have the same access as existed on June 30, 2022.

It is further **ORDERED** that W&T is to post a surety or cash bond with the Clerk of Court in the amount of $500.00.

This matter is set for a temporary injunction hearing in the 151st Judicial District Court of Harris County, Texas at 3:30 p.m. on the 29th day of August, 2022.

**SO ORDERED.**

SIGNED on _August 19_, 2022, at _4:16_ a.m./p.m.

The Honorable Tanya Garrison
Sitting as Ancillary Judge, Harris County, Texas

4

## **EXHIBIT B**

**Interrogatories**
1. Identify in detail the list of the HP and Cisco services that reside in the Data Centers and the HP servers, HP thin client computers, and other computing and networking hardware that reside on W&T offshore platforms used for the operation of supervisory control and data acquisition ("SCADA") systems and/or industrial control systems and identify whether these devices belong to W&T.
2. Identify in detail the steps needed to provide (1) W&T or its designee physical access to all spaces containing infrastructure, networking, and communications hardware that store or maintain W&T data, including but not limited to production data and back-up data, at the Data Centers and (2) assurance that the data center operator(s) will provide W&T personnel and designees with cross connections to such hardware to transfer W&T data to other hardware.
3. Identify in detail the administrator user names and passwords for all firewalls on W&T offshore platforms, in the Data Centers, or in W&T offices, including but not limited to Cisco Maraki firewalls and Palo Alto firewalls, to enable W&T or its designee the ability to export routing information and configurations for the devices.
4. Identify in detail the equipment and/or computer data or programs at W&T that allegedly belong to AAIT or Secure Cloud and/or that AAIT or Secure Cloud believes they have a right to remove from W&T facilities at the end of the relationship with W&T.
5. Identify a complete list of all service accounts running security or administrative services on W&T servers and associated passwords for these accounts.

**Requests for Production**
1. Produce documents sufficient to show the HP and Cisco services that reside in the Data Centers and the HP servers, HP thin client computers, and other computing and networking hardware that reside on W&T offshore platforms used for the operation of supervisory control and data acquisition ("SCADA") systems and/or industrial control systems and whether these devices belong to W&T.
2. Produce documents sufficient to show the network map of W&T's IT infrastructure, including all firewalls, switches, routers, servers, and end points.
3. Produce documents sufficient to show the services Defendants have provided and/or are providing to or on behalf of W&T.
4. Produce documents sufficient to show the administrator user names and passwords for all firewalls on W&T offshore platforms, in the Data Centers, or in W&T offices, including but not limited to Cisco Maraki firewalls and Palo Alto firewalls, to enable W&T or its designee the ability to export routing information and configurations for the devices.
5. Produce documents sufficient to show the equipment and/or computer data or programs used at W&T that allegedly belong to AAIT or Secure Cloud and/or that AAIT or Secure Cloud believe they have a right to remove from W&T facilities at the end of the relationship with W&T.
6. Produce documents sufficient to show all network devices, including routers, switches, and network attached printers, on W&T offshore platforms, at the Data Centers, or in W&T offices, including their IP addresses, configurations, administrator user names and passwords, and identify all hardware belonging to W&T.
7. Produce documents sufficient to show the hardware used to backup, store and/or maintain any and all of W&T's data.

**Corporate Representative Deposition Topics**
1. The services Defendants have provided and are providing to and/or on behalf of W&T.
2. Oral and/or written agreements between Defendants and W&T, and the parties' performance under the agreements and the transition of services to W&T.
3. Defendants' invoices to W&T, including but not limited to disputed and/or unpaid invoices.
4. The hardware, software, and third party services that Defendants have used at and/or for W&T.
5. Hardware or software at W&T that AAIT or Secure Cloud believes they own and/or have a right to remove from W&T facilities at the end of the relationship with W&T.

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF 'S
## <u>EMERGENCY MOTION FOR EXPEDITED DISCOVERY</u>

After considering Plaintiff's Emergency Motion for Expedited Discovery, responses filed

by Defendants, if any, and all other pertinent matters and documents on file with the Court, the

Court **GRANTS** the Motion as follows:

1. The Court approves Plaintiff's discovery requests submitted with the motion and orders Defendants to file provide complete responses to same.

2. By August 23: Plaintiff must serve its requests for production, interrogatories, and deposition notice upon Defendants by and through their counsel.

3. By August 25: Defendants must provide appropriate responses and answers to Plaintiff's requests for production and interrogatories.

4. By August 27: Defendants must substantially complete all document production covered by this order.

5. By August 27: Defendants must present in Houston, Harris County, Texas the corporate representative(s) for all defendants to testify about any and all matters covered by Plaintiff's requests for production, interrogatories and matters alleged in plaintiff's petition.

**SO ORDERED.**

Signed on this the _____ day of August, 2022.

_____

Judge, District Court of Harris County,
Texas, 151st Judicial District

8/23/2022 10:14 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 67549200
By: Brittany Hall
Filed: 8/23/2022 10:14 AM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

**CASE NUMBER:** 2022-51667

## Request for Issuance of Service

**CURRENT COURT:** _____151st_____

**Name(s) of Documents to be served:** W&T Offshore, Inc.'s Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

**FILE DATE:** 08/19/2022          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be**

**Served):**

**Issue Service to**: All About It, Inc.

Address of Service:  12429 Shady Downs Dr.

City, State & Zip: Houston, TX 77082

Agent (if applicable) Vynette Nguyen_____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

- ☒ **Citation**    ☐ **Citation by Posting**    ☐ **Citation by Publication**    ☐ **Citations Rule 106 Service**
- ☐ **Citation Scire Facias**    **Newspaper**_____
- ☐ **Temporary Restraining Order**    ☐ **Precept**    ☐ **Notice**
- ☐ **Protective Order**
- ☐ **Secretary of State Citation ($12.00)**    ☐ **Capias** (not by E-Issuance)    ☐ **Attachment** (not by E-Issuance)
- ☐ **Certiorari**    ☐ **Highway Commission ($12.00)**
- ☐ **Commissioner of Insurance ($12.00)**    ☐ **Hague Convention ($16.00)**    ☐ **Garnishment**
- ☐ **Habeas Corpus** (not by E-Issuance)    ☐ **Injunction**    ☐ **Sequestration**
- ☐ **Subpoena**
- ☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

---

**SERVICE BY** (*check one*):
- ☐ **ATTORNEY PICK-UP (phone)** _____    ☒ **E-Issuance by District Clerk**
- ☐ **MAIL to attorney   at:** _____    **(No Service Copy Fees Charged)**
- ☐ **CONSTABLE**    *Note***:** The email registered with EfileTexas.gov must be
- ☐ **CERTIFIED MAIL by District Clerk**    used to retrieve the E-Issuance Service Documents.
  Visit www.hcdistrictclerk.com for more instructions.

- ☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____    Phone: _____

- ☐ **OTHER**, *explain* _____

---

**Issuance of Service Requested By:** Attorney/Party Name:  Benjamin L. Hall, III Bar # or ID  08743745

Mailing Address: 530 Lovett Blvd. Houston, Texas  77006
Phone Number: (713) 942-9600

8/23/2022 10:14:39 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 67549200
By: HALL, BRITTANY
Filed: 8/23/2022 10:14:39 AM

# Marilyn Burgess

## HARRIS COUNTY DISTRICT CLERK

201 Caroline | P.O. Box 4651 | Houston, Texas 77210-4651 | 832-927-5800 | www.hcdistrictclerk.com

**CASE NUMBER:** 2022-51667

### Request for Issuance of Service

**CURRENT COURT:** _____151st _____

**Name(s) of Documents to be served:** W&T Offshore, Inc.'s Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction

**FILE DATE:** 08/19/2022          Month/Day/Year

**SERVICE TO BE ISSUED ON (Please List Exactly As The Name Appears In The Pleading To Be Served):**

**Issue Service to**: Secure Cloud, LLC

Address of Service:  8323 Wilcrest Dr., Apt. 17002

City, State & Zip: Houston, TX 77072

Agent (if applicable) Loan Nguyen__ _____

**TYPE OF SERVICE/PROCESS TO BE ISSUED**: (Check the proper Box)

| | | | |
|---|---|---|---|
| ☒ **Citation** | ☐ **Citation by Posting** | ☐ **Citation by Publication** | ☐ **Citations Rule 106 Service** |

☐ **Citation Scire Facias**     Newspaper_____

☐ **Temporary Restraining Order**      ☐ **Precept**        ☐ **Notice**

☐ **Protective Order**

☐ **Secretary of State Citation ($12.00)**    ☐ **Capias** (not by E-Issuance)    ☐ **Attachment** (not by E-Issuance)

☐ **Certiorari**        ☐ **Highway Commission ($12.00)**

☐ **Commissioner of Insurance ($12.00)**   ☐ **Hague Convention ($16.00)**    ☐ **Garnishment**

☐ **Habeas Corpus** (not by E-Issuance)      ☐ **Injunction**          ☐ **Sequestration**

☐ **Subpoena**

☐ **Other (Please Describe)** _____

**(See additional Forms for Post Judgment Service)**

**SERVICE BY** (*check one*):
☐ **ATTORNEY PICK-UP (phone)** _____   ☒ **E-Issuance by District Clerk**
☐ **MAIL to attorney   at:** _____        **(No Service Copy Fees Charged)**
☐ **CONSTABLE**                *Note*: The email registered with EfileTexas.gov must be
☐ **CERTIFIED MAIL by District Clerk**      used to retrieve the E-Issuance Service Documents.
                                Visit www.hcdistrictclerk.com for more instructions.

☐ **CIVIL PROCESS SERVER -** Authorized Person to Pick-up: _____   Phone: _____

☐ **OTHER**, *explain* _____

**Issuance of Service Requested By:** Attorney/Party Name:  Benjamin L. Hall, III Bar # or ID  08743745

Mailing Address: 530 Lovett Blvd. Houston, Texas  77006
Phone Number: (713) 942-9600

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S MOTION FOR EXPEDITED DISCOVERY AND MOTION FOR EMERGENCY HEARING

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), file this Motion for Expedited Discovery and Motion for Emergency Hearing and would respectfully show the Court as follows:

## I.
### BACKGROUND

On August 19, 2022, W&T Offshore, Inc. ("W&T") filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against AAIT. W&T asserts the following causes of action against AAIT in its petition: (1) misappropriation of trade secrets under the Texas Uniform Trade Secrets Act; (2) breach of contract; (3) breach of fiduciary duty; and (4) conversion. AAIT vehemently denies any wrongdoing. Ancillary Judge Tanya Garrison, recognizing the impropriety of the relief W&T requested in its proposed temporary restraining order, requested that the parties confer, and

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

ultimately entered an agreed order of the parties maintaining the status quo for 10 days. The agreed order is set to expire on Monday, August 29, 2022, the date of the temporary injunction hearing.

AAIT now files this Motion for Expedited Discovery and Motion for Emergency Hearing and requests that the Court promptly issue an order permitting it to obtain necessary discovery from W&T. In order to adequately prepare its defense for presentment at the temporary injunction hearing, AAIT needs to obtain discovery on an expedited basis. AAIT therefore moves for entry of an order granting it expedited discovery to prepare for a hearing on W&T's application for injunctive relief. Specifically, AAIT requests that the Court permit it to:

(1) Serve W&T with Requests for Production as set forth in **Exhibit A**. So that AAIT may use the documents W&T produces in response to said Requests for Production, AAIT requests that the responses and production be due no later than Friday, August 26, 2022; and

(2) Serve W&T with Interrogatories as set forth in **Exhibit A**. So that AAIT may use the answers W&T provides in response to said Interrogatories, AAIT requests that the answers be due no later than Friday, August 26, 2022.

(3) Depose W&T's designated corporate representative(s) on the topics set forth in **Exhibit A** by Friday, August 26, 2022.

## II.
### ARGUMENT & AUTHORITIES

Texas Rule of Civil Procedure 191.1 provides that, "the procedures and limitations set forth in the rules pertaining to discovery may be modified in any suit by the agreement of the parties or **by court order for good cause**." *See* TEX. R. CIV. P 191.1 (emphasis added).  Accordingly, this Court is empowered to order the expedited discovery that AAIT requests from W&T.

Good cause exists in this case because the Court has set W&T's application for a temporary injunction for hearing on August 29, 2022, and AAIT must adequately prepare for said hearing. To fully prepare for its defense at the temporary injunction hearing, AAIT must engage in expedited discovery. Expedited discovery will also likely decrease the testimony and time

necessary for the temporary injunction hearing. Accordingly, AAIT has shown, and can show, good cause for the granting of this motion.

AAIT has tailored the requested discovery in this motion to matters that directly relate to W&T's burden at the hearing on its application for a temporary injunction—discovery that is necessary for AAIT to adequately prepare for the temporary injunction hearing—and that will further the ends of justice by providing relevant and important evidence that will assist this Court in its consideration of W&T's application for an injunction.

Moreover, because time is of the essence, AAIT further requests that if the Court does not grant this Motion for Expedited Discovery immediately, that the Court set an emergency hearing at its earliest convenience, so that it may rule on this motion promptly and provide AAIT with sufficient time to conduct discovery prior to the hearing on W&T application for a temporary injunction.

## **PRAYER**

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court grant its Motion for Expedited Discovery; that it be allowed to engage in expedited discovery in order to prepare its defense to Plaintiff, W&T Offshore, Inc.'s application for injunctive relief; that the Court order that AAIT be permitted to serve the Requests for Production and Interrogatories in Exhibit A on W&T, which shall be responded to, and responsive documents produced, by August 26, 2022, and conduct the deposition of W&T's designated corporate representative(s) on the topics set forth in Exhibit A by August 26, 2022; and for all further relief that they may show themselves justly entitled.

3

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

       – and –

**GIBSON | WUNDER, P.C.**

By: _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

4

## **CERTIFICATE OF SERVICE**

This is to certify that on August 24, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

5

## <u>EXHIBIT A</u>

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

### **DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S EXPEDITED DISCOVERY REQUESTS TO PLAINTIFF W&T OFFSHORE, INC.**

TO:   Plaintiff, W&T Offshore, Inc., by and through its counsel of record, Benjamin L. Hall, THE HALL LAW GROUP, PLLC, 530 Lovett Blvd., Houston, Texas 77006.

Pursuant to the Texas Rules of Civil Procedure, Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), serves its Expedited Discovery Requests on Plaintiff, W&T Offshore, Inc. ("W&T"). Your responses and responsive documents to these requests must be served by **Friday, August 26, 2022**. You are further advised that your responses may be offered in evidence during these proceedings.

In answering this discovery, use all information that is available to You, including information in the possession of Your attorneys, investigators, experts, and representatives, and not merely information known of Your own personal knowledge.  If, subsequent to service of an answer to any discovery request, You or Your representatives obtain or become aware of any further information pertaining to any discovery request, You are required to promptly amend and

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

supplement Your answers setting forth the new and additional information and serve a copy upon all counsel.  You are also further advised that You are under a continuing duty to supplement and amend Your responses to these discovery requests as set forth by the Texas Rules of Civil Procedure.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  _/s/ Scott D. Ellis_____
 Scott D. Ellis
 Texas Bar No. 24044606
 sellis@foley.com
 Rey Rodriguez, IV
 Texas Bar No. 24107357
 rrodrigueziv@foley.com
 1000 Louisiana Street, Suite 2000
 Houston, Texas 77002-2099
 Telephone:  (713) 276-5500
 Facsimile:  (713) 276-5555

  – and –

**GIBSON | WUNDER, P.C.**

By:  _/s/ Ethan Gibson_____
 Ethan Gibson
 Texas Bar No. 24073131
 ethan@gibsonwunder.com
 4 Houston Center
 1221 Lamar St. Ste. 1001
 Houston, Texas 77010
 Main: (713) 897-8008
 Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 24, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_
Rey Rodriguez, IV

3

## **DEFINITIONS**

1.  "AAIT" refers to All About IT, Inc., a named defendant in the above-entitled action and its predecessors, affiliates, assigns, officers, directors and employees.

2.  "Secure Cloud" refers to Secure Cloud, LLC, a named defendant in the above-entitled action and its predecessors, affiliates, assigns, officers, directors and employees.

3.  "W&T" refers to Plaintiff W&T Offshore, Inc., a Texas corporation, its predecessors and successors in interest, its and their affiliates, and its and their current or former officers, directors, executive committee members, members, employees, attorneys, agents, representatives, and any other persons or entities currently or formerly acting on or for its or their behalf.

4.  "You," "you," "your," or "Your" shall be understood to refer to W&T.

5.  "Petition" refers to W&T's Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (filed August 19, 2022).

6.  "Document(s)" is used in its broadest sense and means and includes all written, printed, typed, recorded, or graphic matter of any kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, "document(s)" includes all agreements, contracts, communications, correspondence (including emails and their attachments, text messages, SMS messages, and MMS messages), letters, telegrams, telexes, memoranda, records, reports, books, summaries, and any other records or telephone conversations, summary or other records of personal conversations, notes or other records of negotiations, diaries, diary entries, calendars, appointment books, time records instructions, work assignments, visitors records, worksheets, work papers, drafts, graphs, charts, accounts, notes, notices, marginal notations, notebooks, records, files, lists, recommendations, printouts, compilations, tabulations, folders or similar containers, studies, surveys, transcripts of conversations, tape or disc recordings, sound recordings, video recordings, film, tape, photographs, data compilation from which information can be obtained (including matter used in data processing) and other printed, written, handwritten, typewritten, recorded, stenographic, computer generated, computed stored, or electronically stored information, however and by whomever produced, prepared, reproduced, disseminated or made. Any email produced must be produced in its entirety, including the full text of any attachment. The term "document(s)" expressly includes all digital files, databases, emails, and other documents maintained in digital and/or electronic form.

7.  "Communication(s)" means and includes any transmittal or exchange of information between two or more persons, whether orally or in writing, including without limitation any conversation by means of letter, note, email, memorandum, telephone, telegraph, telex, telecopies, cables or some other electronic or other medium.

8.   "Concern(ing)," "relat(ing)," "pertain(ing)," or "regard(ing)" mean and include pertain, discuss, refer, indicate, contain, evidence, explain, review, analyze, describe, mention, relate, detail or be in any way logically or factually connected with the matter discussed.

9.   "Possession" and "possession, custody or control" includes documents actually within the possession, custody or control of the responding party and each consultant, agent, or representative of the responding party, including, without limitation, attorneys and accountants, and each other person acting for or in concert with the responding party, and including documents prepared by, obtained, or placed in the possession, custody, or control of any such person within the scope of his/her duties or relationship to the responding party, or documents that the responding party has a right to copy or have access to, and documents having been placed in the temporary possession, custody, or control of any third party. The document is deemed to be in the responding party's possession, custody, or control if the responding party has the right to secure the document or a photocopy thereof from another person or entity, whether public or private, having actual physical possession, custody, or control thereof.

10.   "And" and "or" shall be construed either disjunctively or conjunctively to bring within the scope of the request all information and responses within the general scope of the request.

11.   "Person" includes natural persons, corporations, public corporations, governments, governmental agencies, boards, commissions, regulatory commissions, committees, partnerships, joint ventures, groups, firms, associations, or other organizations.

12.   Whenever you are asked to "identify" a person, You are requested to identify the person's:

   a.   full name;
   b.   business and residential address;
   c.   business and residential telephone numbers; and
   d.   his or her present or last known employment position and/or business affiliation at the time in question.

13.   Whenever you are asked to "identify" a document, You are requested to identify:

   a.   the author thereof and the parties thereto;
   b.   its title or other identifying data; and
   c.   the date, or if no date appears thereon, the approximate date.

14.   The terms "refer(s) to," "referring to," "relate(s) to," "relating to," and "evidencing," shall mean regarding, concerning, containing, setting forth, illustrating, mentioning, showing, disclosing, describing, explaining, summarizing, supporting, substantiating, or negating, whether directly or indirectly, in whole or in part, and should be given the broadest possible constructions consistent with the Texas Rules of Civil Procedure.

15.   The term "communication," or any variant thereof, means any contact between two or more persons by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mails, text messages, social media

5

messages or posts, or any other document, and any oral contact, such as face-to-face meetings or telephone conversations and any writing, documents, or notes reflecting such communications.

16.     In order to bring within the scope of these Interrogatories and Requests for Production any information that might otherwise be construed to be outside their scope:

   a.   the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary;

   b.   the term "each" shall be construed to include "every" and vice versa;

   c.   the present tense shall be construed to include the past tense and vice versa; and

   d.   the singular of each word shall be construed to include its plural and vice versa.

## INSTRUCTIONS

1.    The documents described in these requests shall be produced in the files as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories specified in this request. If the items described are not produced in their files, then the selection of documents from files and other sources shall be performed in such a manner to ensure that the file or other source from which a document is obtained may be identified. Additionally, documents attached to other documents or materials shall not be separated unless sufficient records are kept to permit reconstruction of the original grouping.

2.    Pursuant to Tex. R. Civ. P. 196.4, AAIT and Secure Cloud hereby specifically request production of electronic or magnetic data responsive to these requests in the form in which it is kept in the ordinary course of business and that is reasonably readable by and compatible with computers running the Windows operating systems and Microsoft Office software or by any other software.  Specifically, any documents existing in Microsoft Word, Microsoft Excel, Microsoft Power Point, WordPerfect, PDF, or TIF formats shall be produced in those formats.  E-mail maintained in Microsoft Outlook shall be produced in the form of a PST file.  E-mail maintained in Lotus Notes shall be produced in the form of a NSF file.  All documents produced in electronic or digital format shall be produced with all metadata intact.

3.    Each draft, original, and non-identical duplicate, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and all writings, records, documents and data compilations from which the information requested can be obtained or translated, that are in the possession, custody, or control of the party to whom this request is addressed shall be produced. In any instance in which this request names documents for production, it will be acceptable to provide a legible, true, and correct photocopy or other reproduction of the complete document named.

4.    Unless otherwise indicated, each request shall be construed as requesting the production of all documents described herein that were created, received, or otherwise entered the control, custody, or possession of the responding party, including but not limited to, documents created, produced, received, or that otherwise entered the possession, custody or control of any agent or representative of the responding party.

5.    If any information called for by an Interrogatory is withheld on any basis, set forth the nature of the information withheld, the author and recipients of the information, and the basis for withholding the information.

6.    If any document is withheld, in whole or in part, for any reason, including, but not limited to, the claim of privilege or confidentiality, identify separately with respect to each document, the following: (a) the privilege under which the document is being withheld; (b) a description of the type of document involved; (c) a general description of the subject matter and purpose of the document; (d) the date the document was prepared; (e) the author or authors and signatory or signatories of the document; (f) the recipient or recipients of

7

the document and any person having received copies of the document; and (g) the circumstances surrounding the making of the document. Any responsive document withheld from production pursuant to a claim of privilege (including attorney work product) shall be segregated and maintained for possible *in camera* submission to the court.

7.      Unless otherwise indicated, the requests seek documents on or after **<u>January 1, 2012</u>**.

## <u>REQUEST FOR ELECTRONIC AND MAGNETIC DATA</u>

Electronically-stored documents will be produced as electronically Bates-numbered single-page TIFF images with appropriate document breaks, corresponding load file for the images, and a generic delimited data file for the corresponding metadata. The following metadata or fielded information, to the extent applicable to a produced electronic document, will be included in the generic delimited data file:

1.  Beginning Production Number
2.  Ending Production Number
3.  Parent ID (if applicable)
4.  Attachment ID (if applicable)
5.  File Type (e.g., Word, Excel, email, etc.)
6.  Last Modified Date (if collected from source system or custodian, rather than image)
7.  Last Modified Time (if collected from source system or custodian, rather than image)
8.  Sent Date
9.  Sent Time
10. Document Author or From
11. To
12. CC
13. BCC
14. Subject Line (emails only)
15. Custodian or Source
16. Attachment Count
17. Native File Link
18. File Name
19. File path/folder
20. Received Date
21. Full text
22. De-duplicated instances (by full path)
23. Redacted flag
24. Embedded content flag

Documents that should not be rendered to TIFF images (i.e., Excel files, multimedia files, voice mail, sound files, databases, etc.) will be placed as native files in a separate folder.  The files will be named by pre-pending a Bates number to the original file name.  A confidentiality designation can also be inserted into the file name.  A slip sheet will be provided containing the Bates number, the native file name, along with the note "Document Provided in Native Format."  A link to the relative path of the natively produced document will be included in the metadata load file (Field no. 17 in list above).  All embedded content shall be provided, including tracked changes, hidden comments, speaker notes, etc.

Emails and their attachments will be referenced to each other in the generic delimited data file, and will be numbered sequentially wherein the attachment Bates number follows the parent email Bates number.  Emails and their attachments will be designated in the generic delimited data file

by the beginning and ending Bates numbers of the email or individual attachments (Fields nos. 1 and 2 in list above), and those of the entire family (Fields nos. 3 and 4 in list above).

Multipage OCR or extracted text (i.e., TXT files) will be named to the corresponding TIFF images and placed in a separate folder named TEXT.

The searchable content of electronically-stored documents will be extracted from the source documents, e.g., emails and their attachments, and will not be generated through optical character recognition (OCR) of the corresponding TIFF images, with the exception of redacted documents, which may be OCR-ed. Redacted documents will contain the searchable endorsement "Redacted."

<u>**REQUESTS FOR PRODUCTION OF DOCUMENTS**</u>

1.      Produce all contracts between W&T and AAIT.

2.      Produce all contracts between W&T and Secure Cloud.

3.      Produce all documents and communications concerning or referencing any and all contracts between W&T and AAIT.

4.      Produce all documents and communications concerning or referencing any and all contracts between W&T and Secure Cloud.

5.      Produce all documents and communications concerning or referencing W&T's dissatisfaction with AAIT or Secure Cloud's services.

6.      Produce all documents and communications concerning, referencing, or evidencing the terms of the "oral contract" between AAIT and Secure, on the one hand, and W&T, on the other, as referenced in paragraph 2 or W&T's Petition.

7.      If W&T contends that AAIT or Secure Cloud is not permitted to terminate IT services to W&T on September 2, 2022, produce all documents and communications supporting W&T's contention.

8.      Produce all documents and communications supporting W&T's contention that "[i]n 2018, Defendants began providing information technology services to W&T pursuant to oral agreement which included an [sic] confidentiality requirement," as referenced in paragraph 24 of W&T's Petition.

9.      Produce all documents and communications supporting W&T's contention that "Defendants have also refused to provide back-up data of Trade Secret and other information in a form accessible to W&T," as referenced in paragraph 33 of W&T's Petition.

10.     Produce all documents and communications supporting W&T's contention that AAIT and/or Secure Cloud have "unlawfully misappropriated W&T's Trade Secrets by unlawfully using them without W&T's consent," as referenced in paragraph 43 of W&T's Petition.

11.     If W&T contends that AAIT or Secure Cloud are under a contractual obligation to "provide … a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand," as referenced in paragraph 51 of W&T's Petition, produce all documents and communications supporting W&T's contention.

11

12.     Produce all documents and communications supporting W&T's contention that "Defendants have fiduciary relationships with W&T under the Data Management Contracts", as referenced in paragraph 54 of W&T's Petition.

13.     Produce all documents and communications supporting W&T's contention that "Defendants' principal, Ramesh Arumugam, has affirmatively represented that they owe fiduciary duties to W&T", as referenced in paragraph 54 of W&T's Petition.

14.     All documents and communications supporting W&T's contention that AAIT or Secure Cloud have a fiduciary relationship with, or owe fiduciary duties to, W&T.

15.     Produce all documents and communications supporting W&T's contention that AAIT and/or Secure Cloud have failed to return W&T's property, as referenced in paragraph 62 of W&T's Petition.

16.     Produce all internal W&T documents and communications concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.

17.     Produce all documents and communications with any third parties concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.

## INTERROGATORIES

1.      Identify all contracts that W&T contends exist between W&T and AAIT or Secure Cloud.

2.      Identify and describe the terms of any and all oral contracts that W&T contends exist between W&T and AAIT or Secure Cloud.

3.      If W&T contends that AAIT or Secure Cloud may not cease the provision of IT services to W&T on September 2, 2022, describe the legal and factual bases for this contention.

4.      Describe the legal and factual bases for W&T's contention that AAIT or Secure Cloud are under a contractual obligation to "provide … a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand," as referenced in paragraph 51 of W&T's Petition.

5.      Identify all documents and communications wherein AAIT and/or Secure Cloud have "refused to provide back-up data of Trade Secret and other information in a form accessible to W&T," as referenced in paragraph 33 of W&T's Petition.

6.      Describe the legal and factual bases for W&T's contention that AAIT and/or Secure Cloud have "unlawfully misappropriated W&T's Trade Secrets by unlawfully using them without W&T's consent," as referenced in paragraph 43 of W&T's Petition.

7.      Describe the legal and factual bases for W&T's contention that "Defendants have fiduciary relationships with W&T under the Data Management Contracts", as referenced in paragraph 54 of W&T's Petition.

8.      Identify each and every document and communication wherein "Defendants' principal, Ramesh Arumugam, has affirmatively represented that they owe fiduciary duties to W&T", as referenced in paragraph 54 of W&T's Petition.

9.      Describe the legal and factual bases for W&T's contention that AAIT or Secure Cloud have a fiduciary relationship with, or owe fiduciary duties to, W&T.

10.     Describe the legal and factual bases for W&T's contention that AAIT and/or Secure Cloud have failed to return W&T's property, as referenced in paragraph 62 of W&T's Petition.

11.     Identify each and every internal W&T document and/or communication concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.

13

## <u>CORPORATE REPRESENTATIVE TOPICS</u>

1.    All contracts between W&T and AAIT or Secure Cloud, including, but not limited to, the terms thereof.

2.    AAIT and/or Secure Cloud's provision of services to W&T.

3.    The factual and legal bases for W&T's claims against AAIT and Secure Cloud in this lawsuit.

4.    W&T's transition of IT services away from AAIT or Secure Cloud.

5.    W&T's communications with any third parties regarding AAIT or Secure Cloud's provision of services to W&T.

14

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

### ORDER GRANTING DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S MOTION FOR EXPEDITED DISCOVERY

On this day, the Court considered Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC's ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[2]), Motion for Expedited Discovery and Motion for Emergency Hearing (the "Motion"), requesting the Court's permission to conduct expedited discovery on Plaintiff, W&T Offshore, Inc. ("W&T"). After considering the Motion, the response of W&T, if any, and all other evidence and arguments of counsel, the Court is of the opinion that the Motion is meritorious and should be in all things GRANTED.

It is, therefore ORDERED that the Motion is in all things GRANTED.

It is further ORDERED that AAIT shall be permitted to serve on W&T the Requests for Production, Interrogatories, and Corporate Representative Topics (the "Discovery Requests") set forth in Exhibit A to the Motion. The Interrogatories shall not count against the limit set forth in the Texas Rules of Civil Procedure.

It is further ORDERED that W&T shall fully respond to and produce documents to the Discovery Requests by Friday, August 26, 2022, and shall produce for deposition its designated

---

[2] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

6

corporate representative(s) on the deposition topics set forth in Exhibit A by Friday, August 26, 2022.

SIGNED on this _____ day of August, 2022.


_____
PRESIDING JUDGE

CAUSE NO. 2022-51667

| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
|---|---|---|
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S RESPONSE TO PLAINTIFF'S EMERGENCY MOTION FOR EXPEDITED DISCOVERY**

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), file the following response to Plaintiff, W&T Offshore, Inc.'s ("W&T") Emergency Motion for Expedited Discovery (the "Motion").

**I.**

**SUMMARY OF RESPONSE**

W&T's so-called "emergency" is a request to save it from its own neglect and actions, or *inactions*, as it never secured anything other than a service-at-will relationship with its IT/communications service provider (AAIT), nor has it made any reasonable attempt to transition those services. By this *lawsuit*, W&T seeks to improperly force AAIT to continue servicing W&T in the absence of any contractual or legal obligation to do so. By this *Motion*, W&T seeks to improperly use the expedited discovery procedure to gain access to Secure Cloud's proprietary network design (in violation of the terms of its written contract with Secure Cloud) so that it does not have to pay another provider to design a network that Secure Cloud spent millions of dollars

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

and thousands of hours to create and implement. W&T has even demanded AAIT and Secure Cloud's user names and passwords for its networks that host data for other clients.

On July 27, W&T suggested that the parties discuss canceling AAIT's services to W&T. AAIT provided a formal notice of termination on August 3. By August 8, W&T admitted to its shareholders in its SEC filing that AAIT had given its notice and that it was terminating its services with W&T effective September 2. W&T readily admitted in its 10-Q Disclosure that it had no written contract with AAIT and "[w]e may not be able to fully complete a transition before such termination." W&T, a publicly traded company with a market valuation over 900 million dollars seeks the Court to rescue it from its own failures to timely transition these services or to negotiate a reasonable transition agreement with AAIT – W&T refuses to pay AAIT for the additional work required to actively move and transition this data to a new network. AAIT has been waiting for instructions for weeks as to where to put W&T's data, but W&T has refused to provide those instructions or to pick up its servers. Admittedly, the parties have different valuations of what a transition should cost, but the fact that W&T can't negotiate with a willing partner simply is not an emergency, nor does it create "good cause" for a temporary injunction, expedited discovery, or any other emergency relief. Filing a lawsuit and a TRO to gain leverage in a contract negotiation should not be rewarded.

In W&T's "Emergency" Motion for Expedited Discovery, W&T states that "by September 2, 2022, [W&T] will be at risk of losing control of more than 4+ years of sensitive computer data, proprietary programs, software, and other electronic data." This is simply false. What W&T will lose on September 2, 2022 is its service provider. W&T will not lose its data. At W&T's instruction on July 24, 2022, AAIT created a backup of all of W&T's data, and offered to immediately provide the data to W&T once W&T instructed AAIT where to deliver the data.

Despite following up by letter on numerous occasions, W&T has failed to instruct AAIT as to where to deliver the data.  Neither AAIT nor Secure Cloud have disclosed or improperly held any W&T trade secrets or data; instead AAIT stands ready to return W&T's data upon receiving instructions from W&T.  This is simply another example of how W&T has created its own self-fulfilling emergency.

If AAIT has already offered the return of all of W&T's proprietary data, what is W&T seeking to achieve through its "Emergency" Motion for Expedited Discovery? W&T is really after Secure Cloud's confidential network design that Secure Cloud spent millions of dollars and thousands of hours to create and implement—a network that Secure Cloud developed to service not only W&T, but several other customers in the Gulf of Mexico.  This proprietary network design and the physical hardware comprising the network is owned by Secure Cloud, as W&T is fully aware. What is most appalling about W&T's "Emergency" Motion is that W&T represents to this Court, and to its shareholders (in its August 8, 2022 Form 10-Q Disclosure), that it doesn't "have written agreements with its primary service provider."   While W&T never secured a written contract with Defendants for the provision of IT/Communication *services*, W&T's CEO, Tracy Krohn, signed a License of Platform Space Agreement with Defendant Secure Cloud in September 2019 ("Licensing Agreement") acknowledging that the communication and transmission equipment on W&T's platforms in the Gulf (the same equipment at issue in W&T's "Emergency" Motion for Expedited Discovery) is owned by Defendants. Notably, Mr. Krohn also signed the August 8, 2022 Form 10-Q Disclosure, but failed to disclose the Licensing Agreement. W&T is not entitled to something it does not own—and that it expressly has acknowledged is owned by Defendants.

W&T's "Emergency" Motion for Expedited Discovery is an abuse of the legal process and should be denied.

## II.
### FACTUAL BACKGROUND

**A.     AAIT's Business and Relationship with W&T.**

Founded in 2010, AAIT is a Managed Service Provider of IT services. AAIT provides its clients with complete end-to-end IT solutions. AAIT provides such IT services to W&T using AAIT's own proprietary network and equipment configuration, and has done so for approximately ten years. AAIT helps operate W&T's email systems, phone systems, and storage systems. Despite the parties' long-term business relationship, there is no contract between the parties that requires AAIT to continue to service W&T.   In fact, both parties are free to terminate their IT/communications services relationship at any time, although there is a three-year term that just recently renewed that permits Secure Cloud to use space on W&T's platforms to operate its proprietary Gulf-centered communications and internet network.

In September 2019, Secure Cloud (AAIT's sister company) and W&T executed a license agreement (the "License Agreement"), whereby W&T granted Secure Cloud a non-exclusive license to install, maintain, repair, and remove the equipment[2] necessary for the provision of communications services to its customers, including W&T, in the Gulf of Mexico—the same proprietary network design and hardware that W&T is improperly seeking discovery on in its Motion. Importantly, the License Agreement makes clear that ownership of the subject equipment, and all rights to operate and manage the equipment, which at all times remains with Secure Cloud

---

[2] The "Equipment" is defined in the License Agreement as the "equipment necessary to provide [Secure Cloud] services, including but not limited to [Secure Cloud] backbone, MAX ll and 4G and 5g LTE backbone equipment, antenna/antennas, dishes, and/or tower, or other similar communications/transmission equipment ... Equipment shall include both equipment owned by [Secure Cloud] and equipment owned by third-parties but managed by [Secure Cloud] on [W&T]'s Platforms."

4

and that equipment are the same devices that W&T now seeks an inventory of and username and passwords to access – even though they do not belong to W&T.

**B.    The Present Dispute and AAIT's Efforts to Ensure Orderly Transition.**

In July 2022, W&T hired a Chief Information Officer—Mr. Alvin Haynes—who began an overhaul of W&T's IT systems, with a focus on taking over the IT services AAIT historically provided.[3] Rather than communicate its intent to terminate its business relationship with AAIT and transition IT services to itself, W&T began sending an exorbitant number of "emergency" requests for information, which AAIT responded to with reasonable promptness. To give a sense of scale, in the last month, AAIT received, serviced, and closed *1,002* tickets for W&T.

As the number and absurdity of W&T's requests increased, it became apparent to AAIT that W&T desired that the parties' business relationship come to an end—a fact that W&T readily admits.[4] Accordingly, by letter dated July 28, 2022, AAIT notified W&T of its belief that W&T's recent conduct indicated a desire to terminate AAIT's IT services.[5] AAIT suggested a discussion regarding termination of services, including whether that process should occur over time or whether it should be an immediate transition of IT services to another provider.[6] Despite W&T's admission that it and Mr. Haynes desired a termination and transition of AAIT's services for internal handling,[7] W&T never responded to AAIT's repeated requests for the necessary information to transfer all of W&T's information to W&T. Attached as **Exhibit A** is a chart outlining AAIT's diligent efforts to ensure an orderly transition of its IT services and W&T's utter lack of care.

---

[3] *See* W&T's Petition, at ¶ 3.
[4] *See* W&T's Petition, at ¶ 3 ("The CIO initiated a fulsome review of W&T's IT systems and began to transition them back to internal resources at the company.").
[5] *See* Exhibit C, July 28, 2022 Correspondence.
[6] *See* Exhibit C, July 28, 2022 Correspondence.
[7] *See* W&T's Petition, at ¶ 3.

**C.      W&T files suit.**

Rather than confer with AAIT regarding the transition of IT services, hire a third party consultant to facilitate the transition, or develop its own a strategy for said transition, on August 19, 2022, W&T filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, seeking expedited discovery and various other forms of relief veiled as a temporary restraining order. By this suit, W&T seeks to utilize the power of the Court force AAIT to do the work W&T should have been doing for weeks, if not months.

But AAIT urges this Court not to buy W&T's misstatements of fact or realities of the parties' relationship, as outlined in the chart at Exhibit A. W&T did so in its petition and now repeats in its Motion. W&T's Motion states that "Ancillary Judge Tanya Garrison granted Plaintiff's request for a TRO within hours of the lawsuit being filed."[8] The fact of the matter is that W&T sought the entry of an eight-page order that required AAIT to perform various steps toward the transition, totaling **twenty-seven (27)** different directives, including creating and providing lists of information, physically transferring hardware and other items to W&T, creating documents to aid W&T, and transitioning IT services to another provider.[9]

Rather than granting the inordinate relief requested by W&T, Judge Garrison entered an agreed order of the parties whereby AAIT and Secure Cloud agreed to provide W&T, until August 29, 2022, with the same services they provided as of June 30, 2022[10]—i.e., do exactly what AAIT had already committed to do until September 2, 2022.

---

[8] W&T's Motion, at ¶ 2.
[9] *See* W&T's Proposed Temporary Restraining Order (filed August 19, 2022).
[10] *See* Agreed Order (signed August 19, 2022).

**III.**

**R̲E̲S̲P̲O̲N̲S̲E̲**

Rather than demonstrate to the Court why "good cause" exists for granting its request for expedited discovery, W&T's Motion simply recites the legal standard and expresses its opinion that "good cause exists." Even with a cursory examination, it is clear that W&T's proposed expedited discovery is nothing more than an attempt to obtain Secure Cloud's proprietary and trade secret information, which reaches far beyond the permissible scope of discovery. W&T's proposed discovery is also an impermissible attempt to get the Court to do what W&T has refused to do since July—develop a transition plan. Finally, AAIT has already provided the vast majority of documents and information requested by W&T in its Motion.

**A.      W&T's expedited discovery is a veiled attempt to have the Court develop and execute a transition plan.**

As demonstrated by the chart at Exhibit A, AAIT has been imploring W&T for a month to develop, or at the very least *discuss*, an orderly transition of IT services from AAIT to another provider or to W&T to handle internally. Rather than heed AAIT's advice and repeated requests, W&T waited until fourteen (14) days before the termination date of AAIT's IT services and filed its petition for injunctive relief. Now, by way of its Motion, W&T asks this Court to force AAIT to provide comprehensive lists of information within **_three (3) days_** of its Motion, and produce all responsive documents within **_five (5) days_**—much of which would have been performed in an orderly fashion and according to a reasonable timeframe had W&T worked cooperatively with AAIT to develop a transition plan starting in *July*. More critically, the majority of the information sought relates to the separate networks built on the platforms by Secure Cloud, even though W&T's contract admits it has no ownership in those systems, and that information would permit W&T to build it own competing Gulf-based communications network to compete with Secure

7

Cloud. The "data" owned by W&T hosted at AAIT's data centers, on the other hand, could be turned over by the end of day if ordered. In fact, AAIT has been asking for instructions on where to send this data for weeks.

AAIT repeatedly attempted to confer with W&T regarding an orderly transition of AAIT's IT services to a third party IT provider or to W&T to handle internally—W&T refused. Now, without legal basis or even an inkling of legal support, W&T seeks to have this Court take the reigns of its transition strategy when it refused to. W&T's Motion should be denied.

**B.    W&T's discovery requests impermissibly seek Defendants' trade secret and proprietary information, information risking Defendants' other customers' confidential information, and information previously provided to W&T.**

As the chart below summarizes, the information W&T seeks in its Motion is entirely improper, as it involves the divulging of Secure Cloud's trade secrets and proprietary information, Defendants' other customers' sensitive information, information previously provided to W&T, and equipment which AAIT and/or Secure Cloud have the right to possess.

| Requests | Topics | Reason AAIT is Objecting |
|---|---|---|
| Rog No. 1<br><br>RFP No. 1 | Information and documents demonstrating the list of the HP and Cisco services that reside in the Data Centers and the HP servers, HP thin client computers, and other computing and networking hardware that reside on W&T offshore platforms used for the operation of supervisory control and data acquisition ("SCADA") systems and/or industrial control systems and identify whether these devices belong to W&T. | AAIT has already produced this to W&T. AAIT has also provided W&T with the usernames and passwords to W&T-owned devices. W&T has locked AAIT out of the W&T-owned systems. This is an attempt to grab data and information related to Secure Cloud's proprietary network on the platforms. |
| Rog No. 2 | Identify in detail the steps needed to provide (1) W&T or its designee physical access to all spaces containing infrastructure, networking, and communications hardware that store or | This interrogatory would require AAIT to explain to W&T and/or its next service provider how to do its/their |

| | | |
|---|---|---|
| | maintain W&T data, including but not limited to production data and back-up data, at the Data Centers and (2) assurance that the data center operator(s) will provide W&T personnel and designees with cross connections to such hardware to transfer W&T data to other hardware. | job and asks AAIT to provide "assurance that the data center operator(s) will provide W&T personnel and designees with cross connections to such hardware to transfer W&T data to other hardware." By this interrogatory, W&T is requesting that AAIT undertake a legal obligation that it otherwise has no duty to undertake.<br><br>AAIT has been waiting for weeks to provide a delivery location for W&T's data. |
| RFP No. 2 | Documents sufficient to show the network map of W&T's IT infrastructure, including all firewalls, switches, routers, servers, and end points. | AAIT has already produced this to W&T. *See* Exh. A. |
| RFP No. 3<br><br>Deposition Topic No. 1 | Information and documents sufficient to show the services Defendants have provided and/or are providing to or on behalf of W&T | AAIT has already produced this to W&T. *See* Exh. A. |
| Rog No. 3<br><br>RFP No. 4 | Information and documents regarding the administrator user names and passwords for all firewalls on W&T offshore platforms, in the Data Centers, or in W&T offices, including but not limited to Cisco Maraki firewalls and Palo Alto firewalls, to enable W&T or its designee the ability to export routing information and configurations for the devices | AAIT has already produced this to W&T as it relates to usernames and admin access for W&T's data and documents. Moreover, this information would cover Secure Cloud-owned firewalls and networks, which service other customers unrelated to W&T. This would post great risks to these customers' confidential information, and would give W&T proprietary data that it agreed under the terms of its written contract with Secure Cloud it does not own. |

9

| | | |
|---|---|---|
| Rog No. 5 | A complete list of all service accounts running security or administrative services on W&T servers and associated passwords for these accounts | W&T is already in control of their own data and should already possess this information. Mr. Haynes was granted both Enterprise and Domain admin privileges on July 12, 2022. W&T has also been provided with the list of service accounts and passwords. |
| RFP No. 6 | Produce documents sufficient to show all network devices, including routers, switches, and network attached printers, on W&T offshore platforms, at the Data Centers, or in W&T offices, including their IP addresses, configurations, administrator user names and passwords, and identify all hardware belonging to W&T | W&T seeks AAIT and Secure Cloud's business know-how, structures, and techniques. This is proprietary and trade secret information and Defendants should not be compelled to reveal the same to W&T and allow it to recreate AAIT's business, especially in the face of the written agreement that makes clear that W&T has no ownership or rights to this system. |
| Deposition Topic No. 3 | Defendants' invoices to W&T, including but not limited to disputed and/or unpaid invoices. | W&T does not even attempt, much less satisfy, its burden to demonstrate that good cause exists to permit this line of questioning, presumably because it does not relate to any cause of action pled by W&T |
| Deposition Topic No. 4 | The hardware, software, and third party services that Defendants have used at and/or for W&T | So long as this topic excludes Secure Cloud's network that provides Gulf-connectively, AAIT does not take issue with providing limited information, so long as it does not drill down to a level that would permit W&T how to recreate AAIT's internal network and management. |

10

W&T's Motion is nothing more than a veiled attempt to have the Court order AAIT to develop a transition plan for W&T, and to obtain information on Secure Cloud's network that it is not entitled to. AAIT implored W&T to take this transition seriously for some time. This is not the proper function of the Court to force parties to work together outside the terms of their contracts and AAIT respectfully requests that the Court deny W&T's Motion.

**C.**  **W&T's request for "immediate submission" is improper and should be rejected.**

Finally, without legal support or authority, W&T's Motion "requests immediate submission of its Emergency Motion for Expedited Discovery."[11] AAIT respectfully requests that the Court reject W&T's baseless request for immediate submission and set this dispute for hearing as soon as practicable.

## <u>REQUEST FOR RELIEF</u>

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court deny Plaintiff, W&T Offshore, Inc.'s Emergency Motion for Expedited Discovery, and that the Court award Defendants all further relief that they may show themselves justly entitled.

---

[11] *See* W&T's Motion, at p. 6.

11

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

      – and –

**GIBSON | WUNDER, P.C.**

By: _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

12

## CERTIFICATE OF SERVICE

This is to certify that on August 24, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

         */s/ Rey Rodriguez, IV*
         Rey Rodriguez, IV

13

**EXHIBIT A**

| Date | Topics | W&T's Response |
|------|--------|----------------|
| July 25, 2022 | **Transfer of Data Backups.** In response to W&T's demand that AAIT immediately deliver W&T's data backups, AAIT expressed its willingness to provide said data backups. AAIT further requested W&T's cooperation in facilitating the delivery, including additional logistical information for the transfer. AAIT offered to provide the data backups in three different formats—.vbm, .vbk, and .vib.[12] | **NONE** |
| July 28, 2022 | **Call Regarding Data Backups.** On a conference call, the parties agreed that W&T would provide AAIT with a portal to facilitate the transfer of W&T's data backups.[13] Nearly a month later, W&T has still not provided AAIT with the portal. | **NONE** |
| | **Suggestion of Terminating Relationship & Transition of IT Services.** W&T's conduct made it increasingly apparent that it no longer wished to continue its relationship with AAIT. To that end, AAIT suggested that the parties discuss the termination of its business relationship, an orderly removal of AAIT's equipment and software from all W&T platforms and systems, and the immediate transition of IT services to another provider.[14] | **NONE** |
| August 3, 2022 | **Notice of Termination.** Following W&T's continued harassment of AAIT, AAIT provided W&T with formal notice of its intent to conclude the parties business relationship with regard to all services AAIT provides to W&T on September 2, 2022.[15] | **NONE** |
| | **Follow-up on Transition of Services.** AAIT reiterated its position to W&T that "AAIT intends to work | **NONE** |

---

[12] *See* Exhibit B, July 25, 2022 Correspondence.
[13] *See* Exhibit C, July 28, 2022 Correspondence.
[14] *See* Exhibit C, July 28, 2022 Correspondence.
[15] *See* Exhibit D, August 3, 2022 Notice of Termination.



**EXHIBIT**

**A**

| | | |
|---|---|---|
| | cooperatively with W&T to facilitate an orderly transition of all IT services to another IT provider or, alternatively, to W&T to handle internally." AAIT specifically requested that W&T "provide detailed instructions as to how W&T would like AAIT to transition these services[.]"[16] | |
| | **Follow-up on Backup Data Delivery.** AAIT sent a follow-up letter to W&T concerning W&T's failed promise to provide AAIT with a portal to enable the transfer of W&T's data backups.[17] | **NONE** |
| August 6, 2022 | **Follow-up on Transition of Services.** Following W&T's repeated failure to provide AAIT with any semblance of a transition strategy or even a call to discuss said transition, AAIT again requested dates and times for the parties to discuss the transition. AAIT emphasized its intent to terminate the parties' business relationship on September 2, 2022 and stressed that "[g]iven the size and scope of this transition, W&T needs to immediately begin developing a transition strategy[.]"[18] | **NONE** |
| | **Request for Reasons to Halt AAIT's Termination.** AAIT also requested that W&T provide it with *any* reason that AAIT would not be permitted to cease services to W&T on September 2, 2022.[19] | **NONE** |
| August 10, 2022 | **Follow-up on Transition of Services.** Following yet another failure by W&T to respond to AAIT's requests to discuss transition of services or to provide a transition strategy, AAIT *again* stressed to W&T the importance of preparing for the transition: "Given AAIT's termination of services in the near future, AAIT again advises W&T of the need to make all necessary preparations for the transition of AAIT's services, including, but not limited to, locating another service provider; taking all steps to understand the critical nature of the platform; upgrading all outdated systems[;] installing additional systems … to | **NONE** |

---

[16] *See* Exhibit D, August 3, 2022 Notice of Termination.
[17] *See* Exhibit E, August 6, 2022 Correspondence.
[18] *See* Exhibit E, August 6, 2022 Correspondence.
[19] *See* Exhibit E, August 6, 2022 Correspondence.

| | | |
|---|---|---|
| | protect W&T's operations[;] and gaining a fulsome understanding of all cybersecurity concerns and remedying any and all W&T conduct compromising the same, as previously highlighted by AAIT[.]"[20] | |
| August 18, 2022 | **Follow-up on Transition of Services.** Following W&T's most recent failure to respond to AAIT's request for transition discussions or a transition strategy, AAIT once again reiterated to W&T of the need for W&T "to immediately make all necessary preparations for the transition of AAIT's services[.]"[21] | **NONE** |
| | **AAIT Warns of Licensing Issues.** Given the September 2, 2022 termination of AAIT's services to W&T and W&T's lack of urgency to develop a transition strategy, AAIT notified W&T that W&T would need to secure a new IT services provider and/or secure licensing to ensure that its systems continued to run smoothly.[22] | **NONE** |

---

[20] *See* Exhibit F, August 10, 2022 Correspondence.
[21] *See* Exhibit G, August 18, 2022 Correspondence.
[22] *See* Exhibit H, August 18, 2022 Correspondence.



ATTORNEYS AT LAW

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

July 25, 2022

**Via Email**
Ms. Noelle M. Reed
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
noelle.reed@skadden.com

Re:     Response to W&T Offshore, Inc.'s Cease and Desist Letter

Noelle:

Please be aware that this firm has been retained by All About IT Inc. ("AAIT") regarding the various demands and allegations made in your Sunday, July 24, 2022 correspondence on behalf of W&T Offshore, Inc. ("W&T"). Accordingly, in addition to Hessam Perzivand, please direct all further communications to me and Rey Rodriguez, IV (rrodrigueziv@foley.com).

As to the demands and allegations contained in your correspondence, AAIT provides the following assurances and responses:

- **Surreptitious Monitoring.** AAIT is not, and has never been, engaged in the improper monitoring, tracking, and/or surveillance of W&T's employees, nor their devices, by keystroke monitoring or other electronic means. As you are aware, AAIT is a fully outsourced managed service provider for W&T, hosting all of its servers, systems, applications, etc. Any monitoring, tracking, and/or surveilling by AAIT is part of AAIT's provision of services to W&T, which includes, but is not limited to, cyber security and operating camera systems. W&T is aware of all of AAIT's functions, as is evident by the following message that is displayed to W&T personnel accessing its data or otherwise accessing W&T's devices:

EXHIBIT

B



**FOLEY & LARDNER LLP**

July 25, 2022
Page 2



Should W&T have any issue(s) with a particular service AAIT is currently providing to W&T that it no longer wishes to receive, please identify said service(s) so that AAIT may address those concerns. Finally, I understand that W&T possesses the necessary administrative access and authority to remove AAIT from the performance of its security functions should it desire to.

- **Data Backups & Deletion/Overwriting of W&T Data.** AAIT is willing and able to deliver the requested data backups, but will need W&T's cooperation in supplying additional information necessary for its delivery. It is my understanding that AAIT has communicated to W&T its willingness to transfer certain hardware owned by W&T containing the stored backup data, but the logistics of said transfer must be discussed in further detail. AAIT can provide the current data backup in three formats (.vbm, .vbk, and .vib).

- **Asset Ownership.** W&T's next issue appears to relate to the ownership of assets (e.g., devices, applications, and data), although W&T's correspondence is vague as to what assets W&T seeks to clarify its ownership. AAIT does not dispute W&T's ownership of W&T's devices, applications, and data, which include the servers listed in your letter. AAIT does, of course, assert ownership as to its own equipment and hardware utilized in servicing W&T. To the extent AAIT and W&T business relationship ceases, the parties must work together to ensure that each respective party's assets are handled and transferred appropriately. AAIT is willing to work with W&T cooperatively to ensure that this occurs.



**FOLEY & LARDNER LLP**

July 25, 2022
Page 3

- **Improper Use and Disclosure of W&T Data.** AAIT has not improperly deleted, modified, removed, disclosed, or otherwise used W&T's devices, applications, or data, nor done so for the benefit of any third party. Counsel for both parties have discussed and come to a common understanding that the requests of W&T in no way effect AAIT's normal practices regarding backing up data, which includes the replacement of prior backups by new backups.

- **Phone System.** Regarding the phone system, administrator access is proprietary to AAIT. AAIT is willing, however, to provide logs of activity or respond to any specific request of W&T. AAIT cannot grant administrator access, as this would also grant W&T access to confidential information of other AAIT clients. It is worth noting that the parties' course of dealings has been to not grant administrator privileges regarding the phone system for this exact reason.

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:     Rey Rodriguez, IV (firm)
        Hessam Perzivand (hp@parzfirm.com)
        Ethan Gibson (ethan@gibsonwunder.com)



**ATTORNEYS AT LAW**

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX 77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

July 28, 2022

<u>**Via Email**</u>
Ms. Noelle M. Reed
Mr. Joe Molosky
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
noelle.reed@skadden.com
joe.molosky@skadden.com

Re:   Cease and Desist – Improper Solicitation, Hardware Tampering, Access to AAIT-owned Systems, and False Accusations.

Noelle:

As you know, this firm has been retained by All About IT Inc. ("<u>AAIT</u>") regarding W&T Offshore, Inc.'s ("<u>W&T</u>") various requests for information. This firm has also been retained to protect AAIT's reputation and interests, including, but not limited to, its trade secret and proprietary information.

**Requests for Access to AAIT-owned Systems & Interview.**  As discussed during my phone calls with you and Joe, AAIT has been agreeable to providing W&T admin access to its various systems and accounts. First, W&T asked for backups—AAIT agreed to provide those.  Then, W&T asked for card and camera access—AAIT gave those to you.  It appears, however, that every time AAIT solves W&T's alleged emergency, W&T invents a new one. Now, W&T is so emboldened by AAIT's cooperation that W&T is asking for admin access to AAIT's systems that contain its other clients' information. AAIT is not willing to provide such admin access, but is happy to provide W&T its data held in those systems. W&T is also requesting an interview of our client by W&T's counsel. AAIT will not allow this to be conducted. The time that AAIT has been forced to expend in responding to W&T's improper demands is valuable time that it should have been spent servicing W&T and AAIT's other clients. AAIT demands that W&T halt further improper and unreasonable requests.

**Cancellation of Contract.** It is becoming increasingly apparent that W&T wants its business relationship with AAIT to cease. To that end, we suggest that the parties discuss cancelling the contract, an orderly removal of AAIT's equipment and software from all W&T platforms and systems, and the immediate transition of IT services to another provider.

**EXHIBIT C**



July 28, 2022
Page 2

**Solicitations.** It has come to AAIT's attention that W&T's operations team has been interfering with AAIT's contracts by soliciting employees of AAIT's subcontracting companies. In order to most effectively service W&T's needs, AAIT brought its relationships and contacts with its subcontracting companies, whose employees are privy to proprietary and trade secret information belonging to AAIT. W&T's solicitations of these employees have not only interfered with and put these contractual relationships at risk, but also put AAIT's trade secret and proprietary information at risk as well. AAIT demands that W&T immediately cease its solicitations of its subcontracting companies' employees.

**Hardware Tampering.** It has further come to AAIT's attention that W&T's employees have engaged in tampering and unauthorized modifications of AAIT's hardware and equipment (e.g., antennas) utilized for servicing W&T, its platforms, rigs, and operations. AAIT demands that W&T immediately cease such tampering. To the extent any of AAIT's hardware and/or equipment is damaged by W&T, directly or indirectly, AAIT will pursue any and all remedies available to it under applicable Texas and federal law.

**False Accusations.** W&T continues to engage in false accusations that AAIT has failed to deliver SOX controls and has threatened suit based on the same. W&T's accusations are false and should cease immediately.

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' contract, Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies. As previously mentioned, let's plan a call to discuss the immediate termination of all services provided by AAIT to W&T and the immediate turnover of all AAIT hardware and software in use by W&T.

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:   Rey Rodriguez, IV (firm)
      Hessam Parzivand (hp@parzfirm.com)
      Ethan Gibson (ethan@gibsonwunder.com)



**ATTORNEYS AT LAW**

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX 77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

August 3, 2022

<u>**Via Email**</u>
Ms. Noelle M. Reed
Mr. Joe Molosky
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
noelle.reed@skadden.com
joe.molosky@skadden.com

<u>**NOTICE OF TERMINATION OF CONTRACT**</u>

Noelle and Joe:

W&T Offshore, Inc.'s ("W&T") recent conduct has made it abundantly clear that it wants its business relationship with All About IT Inc. ("AAIT") to end. AAIT shares this sentiment. Please consider this formal notice that AAIT intends to conclude its business relationship with W&T with regard to all services that AAIT currently provides to W&T by September 2, 2022.

As stated in my July 28, 2022 letter, AAIT intends work cooperatively with W&T to facilitate an orderly transition of all IT services to another IT provider or, alternatively, to W&T to handle internally. Accordingly, please provide detailed instructions as to how W&T would like AAIT to transition these services. Should W&T wish to further discuss the transition of AAIT's services, please let me know.

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' agreement(s), Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:   Rey Rodriguez, IV (firm)
      Hessam Parzivand (hp@parzfirm.com)
      Ethan Gibson (ethan@gibsonwunder.com)

| | | | | |
|---|---|---|---|---|
| AUSTIN | DETROIT | MEXICO CITY | SACRAMENTO | TALLAHASSEE |
| BOSTON | HOUSTON | MIAMI | SALT LAKE CITY | TAMPA |
| CHICAGO | JACKSONVILLE | MILWAUKEE | SAN DIEGO | WASHINGTON, D.C. |
| DALLAS | LOS ANGELES | NEW YORK | SAN FRANCISCO | BRUSSELS |
| DENVER | MADISON | ORLANDO | SILICON VALLEY | TOKYO |

**EXHIBIT**

**D**



**ATTORNEYS AT LAW**

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

August 6, 2022

**<u>Via Email</u>**
Ms. Noelle M. Reed
Mr. Joe Molosky
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
noelle.reed@skadden.com
joe.molosky@skadden.com

RE:    Backup Data; Transition of Services

Noelle and Joe:

I am writing regarding All About IT Inc.'s ("AAIT") transfer of data backups to W&T Offshore, Inc. ("W&T"), as well as the transition of services currently provided by AAIT to either another IT provider or to W&T to handle internally.

As to the transfer of data backups, as you are aware, you sent a letter to AAIT on the evening of July 24, 2022 demanding that AAIT deliver to W&T data backups "no later than noon Central time on July 26." Due to the urgent nature of your request, AAIT responded the next day and provided assurances that it was willing and able to deliver the requested data backups. AAIT provided the specific formats by which it could transfer the data backups (i.e., .vbm, .vbk, and .vib) to W&T. The parties held a conference call on July 28, 2022, and it was agreed that W&T would provide AAIT with a portal to facilitate such transfer.  More than a week has passed, and W&T has still not provided the information for the transfer. AAIT is working diligently to ensure that W&T receives the data backups it has requested as quickly as practicable, but AAIT needs W&T's cooperation in doing so. Please provide the information necessary to complete the data backups transfer.

Next, please provide dates and times early next week that W&T is available to discuss the transition of AAIT's IT services. Per my August 3, 2022 letter to you, AAIT has provided notice of its intent to conclude its business relationship with W&T regarding all services AAIT furnishes by September 2, 2022. Given the size and scope of this transition, W&T needs to immediately begin developing a transition strategy.  If you contend that there is any reason that AAIT is not permitted to cease services on September 2, 2022, please let me know immediately.

**EXHIBIT
E**



**FOLEY & LARDNER LLP**

August 6, 2022
Page 2

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' agreement(s), Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies.

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:    Rey Rodriguez, IV (firm)
       Hessam Parzivand (hp@parzfirm.com)
       Ethan Gibson (ethan@gibsonwunder.com)

4872-4656-5165.3



ATTORNEYS AT LAW

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

August 10, 2022

**Via Email**
Ms. Noelle M. Reed
Mr. Joe Molosky
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
1000 Louisiana Street, Suite 6800
Houston, Texas 77002
noelle.reed@skadden.com
joe.molosky@skadden.com

     RE:    Termination of Magnolia GB783 Platform Support; Transition of Services.

Noelle and Joe:

As you are aware, on July 27, 2022, All About IT Inc. ("AAIT") sent W&T Offshore Inc. ("W&T") a cease and desist letter, demanding that W&T cease certain improper conduct, and suggesting that the parties discuss the cancellation of all agreements between them. Failing to receive a response from W&T, on August 3, 2022, AAIT provided W&T with formal notice of its termination of any and all agreements it currently has with W&T, including, but not limited to, AAIT's agreement(s) to provide IT services to W&T, effective September 2, 2022. I write today to specifically address the termination and necessary transition of AAIT's Magnolia GB783 Platform Support to W&T, as well as AAIT's submission of, and obtaining payment for, final invoices for said support.

While AAIT is terminating its Magnolia GB783 Platform Support to W&T, AAIT reassures W&T that it has, and will continue until said termination, done everything necessary to keep the platform up and running for W&T's benefit, including, but not limited to, working with the Bureau of Safety and Environmental Enforcement during the tenure of the parties' engagement to fulfill AAIT's duties and responsibilities. Given AAIT's termination of services in the near future, AAIT again advises W&T of the need to make all necessary preparations for the transition of AAIT's services, including, but not limited to, locating another service provider; taking all steps to understand the critical nature of the platform; upgrading all outdated systems (e.g., backups and fire and safety systems) per AAIT's recommendations to W&T; installing additional systems (e.g., a secondary HMI and backup of all production configurations, etc.) to protect W&T's operations, as recommended by AAIT; and gaining a fulsome understanding of all cybersecurity concerns and remedying any and all W&T conduct compromising the same, as previously highlighted by AAIT.

**EXHIBIT F**

4864-8531-3837.3



**FOLEY & LARDNER LLP**

August 10, 2022
Page 2

AAIT has satisfied, and will continue to satisfy, its responsibilities under any and all agreements to provide Magnolia GB783 Platform Support, but AAIT reiterates its position that its contractual obligations ended as of July 27, 2022. AAIT reiterates that the transition of services to a third party provider or to W&T to handle internally requires additional preparations and action by W&T that have yet to be taken.

Further, AAIT makes the following demands to W&T: that W&T remit payment to AAIT for the attached invoice, which W&T has failed to do; that W&T take all necessary steps to grant AAIT access to visit the site to recover its assets and equipment; that W&T correct their violations around checks and balances as to "WRITE" privileges; that, given W&T's failure to heed AAIT's recommendations and warnings, which has placed W&T's operations at risk, W&T and AAIT execute a release in AAIT's favor, releasing it of any and all liability related to damages caused by W&T's failures to heed said recommendations and warnings; and, to the extent AAIT is forced to continue supporting W&T after September 2, 2022, that W&T compensate AAIT for these services, which includes, but is not limited to, paying for the upkeep of assets, licenses, software, and hardware, and the costs associated with human resources.

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' agreement(s), Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies.

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:   Rey Rodriguez, IV (firm)
      Hessam Parzivand (hp@parzfirm.com)
      Ethan Gibson (ethan@gibsonwunder.com)

4864-8531-3837.3



**ATTORNEYS AT LAW**

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

August 18, 2022

**<u>Via Email</u>**
Jonathan Curth
W&T Offshore, Inc.
5718 Westheimer Road, Suite 700
Houston, Texas 77057
jcurth@wtoffshore.com

      RE:    Follow-up to August 10, 2022 Letter Regarding Termination of Magnolia GB783
             Platform Support and Transition of Services.

Jonathan:

As you are aware, on July 27, 2022, All About IT Inc. ("<u>AAIT</u>") sent W&T Offshore Inc. ("<u>W&T</u>") a cease and desist letter, demanding that W&T cease certain improper conduct, and suggesting that the parties discuss the cancellation of all agreements between them. Failing to receive a response from W&T, on August 3, 2022, AAIT provided W&T with formal notice of its termination of any and all agreements it currently has with W&T, including, but not limited to, AAIT's agreement(s) to provide IT services to W&T, effective September 2, 2022. On August 10, 2022, AAIT again wrote W&T regarding the transition of AAIT's Magnolia GB783 Platform Support, demanded payment for certain invoices, and responded to W&T's allegations that AAIT had ceased providing its services to W&T— I write today to follow up on AAIT's August 10, 2022 letter, which W&T has entirely failed to address.

To reiterate AAIT's position, which has been made painstakingly clear, AAIT is terminating all services to W&T on September 2, 2022. AAIT's contractual obligations to provide Magnolia GB783 Platform Support expired on July 27, 2022. While AAIT continues to provide W&T with Magnolia GB783 Platform Support, this will also terminate on September 2, 2022. W&T needs to immediately make all necessary preparations for the transition of AAIT's services, including, but not limited to, securing an alternative service provider. To AAIT's knowledge, W&T has failed to prepare for said transition by failing to locate another service provider and failing to address the concerns laid out in AAIT's August 10, 2022 letter.

W&T has also failed to respond to AAIT's demand for payment of Invoice No. 101582, which is attached. W&T's utilization of AAIT's services, both in the past and at present, without compensation for the same will not be tolerated. AAIT again demands immediate payment for the attached invoice for $65,500.00.

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' agreement(s), Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies.

**EXHIBIT**

**G**



**FOLEY & LARDNER LLP**

August 15, 2022
Page 2

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:    Rey Rodriguez, IV (firm)
       Hessam Parzivand (hp@parzfirm.com)
       Ethan Gibson (ethan@gibsonwunder.com)



# INVOICE

Acct: 9700.172 / AL401012 / Vendor#:14684

**AAIT, LLC**
P.O. Box 440543
Houston, Texas 77244
United States

Fax: 831-302-9796
Toll free: 866-322-6606
www.aaitpro.com

BILL TO
**W&T Offshore Inc.**
Accounts Payable Customer ID: WTO-7895
5718 Westheimer Rd
Suite 700
Houston, Texas 77057
United States

(713) 624-7221
AP_Openinv@wtoffshore.com

| | |
|---|---|
| **Invoice Number:** | 103023 |
| **Invoice Date:** | July 1, 2022 |
| **Payment Due:** | July 31, 2022 |
| **Amount Due (USD):** | **$65,500.00** |

| Services | Quantity | Rate | Amount |
|---|---|---|---|
| **Magnolia**<br>Magnolia Project Assessment and Planning - See attached approved proposal | 1 | $65,500.00 | $65,500.00 |

| | |
|---|---|
| **Total:** | $65,500.00 |
| **Amount Due (USD):** | **$65,500.00** |

**Notes / Terms**
1. Total payment due in 30 days
2. Any invoices not paid in full after 30 days will incur a 10% late fee monthly until paid in full

Please reference your invoice number(s) on your payment remittance:
Check  - AAIT, LLC  P.O. Box 440543  Houston, TX 77244
ACH - Bank of Texas, ABA = 111014325, Account # = 8096551875, Account Name = AAIT, LLC
Wire - Bank of Texas, ABA = 111014325, Account # = 8096551875, Account Name = AAIT, LLC

Thank you for your business!



**ATTORNEYS AT LAW**

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM

WRITER'S DIRECT LINE
713.276.5615
sellis@foley.com

August 18, 2022

**<u>Via Email</u>**
Jonathan Curth
W&T Offshore, Inc.
5718 Westheimer Road, Suite 700
Houston, Texas 77057
jcurth@wtoffshore.com

      RE:    Termination of Licenses

Jonathan:

As you are aware, on July 27, 2022, All About IT Inc. ("AAIT") sent W&T Offshore Inc. ("W&T") a cease and desist letter, demanding that W&T cease certain improper conduct, and suggesting that the parties discuss the cancellation of all agreements between them. Failing to receive a response from W&T, on August 3, 2022, AAIT provided W&T with formal notice of its termination of any and all agreements it currently has with W&T, including, but not limited to, AAIT's agreement(s) to provide IT services to W&T, effective September 2, 2022. Finally, on August 10, 2022, AAIT again wrote W&T regarding the transition of AAIT's Magnolia GB783 Platform Support, demanded payment for certain invoices, and responded to W&T's allegations that AAIT had ceased providing its services to W&T. I write today to specifically address the licensing of W&T's environment.

Prior to termination of any and all agreements between AAIT and W&T, W&T shall have all rights to utilize (only to use and no modification or alteration or upgrade, etc.) any licenses that are assigned to its environment. W&T's access to AAIT Servers and tampering with the license is prohibited. Any new projects/systems/servers/applications or implementation requires licenses to be purchased. In terms of Microsoft Licensing, for example, AAIT is a direct partner and a CSP.  Any licenses that are delivered to W&T as part of the Cloud tenancy via portal.office.com are owned by W&T, which include Office 365 and Windows 10 licenses. In anticipation of the termination of AAIT's services on September 2, 2022, W&T needs to immediately identify its next CSP and ensure that the new CSP continues to pay for the active users. The new CSP also needs to ensure that W&T does not violate any licensing terms. Although W&T maintains approximately 170 active users, AAIT has maintained 522 users to be safe. For example, if you are a tenant in Microsoft, all active users need to continue to have their respective licenses to ensure the customer does not violate any of Microsoft's licensing terms. You can continue to consume these licenses from AAIT or identify an MSP. The same applies to other major vendors, such as Cisco. AAIT has had two audits directly from vendors and, during AAIT's tenure, has provided all inventory to stay compliant.

AUSTIN
BOSTON
CHICAGO
DALLAS
DENVER

DETROIT
HOUSTON
JACKSONVILLE
LOS ANGELES
MADISON

MEXICO CITY
MIAMI
MILWAUKEE
NEW YORK
ORLANDO

SACRAMENTO
SALT LAKE CITY
SAN DIEGO
SAN FRANCISCO
SILICON VALLEY

TALLAHASSEE
TAMPA
WASHINGTON, D.C.
BRUSSELS
TOKYO

**EXHIBIT**

**H**



**FOLEY & LARDNER LLP**

August 16, 2022
Page 2

Upon termination of all agreements between AAIT and W&T on September 2, 2022, for any new projects, W&T needs to ensure that it, or its new CSP/MSP, purchases all applicable and necessary licenses, including, but not limited to, all licenses for W&T's Servers Infrastructure, SharePoint, Exchange, and/or any other services.  All rights and licenses granted shall immediately terminate as of September 2, 2022. To the extent W&T utilizes any licenses provided by AAIT after the termination date, AAIT will not be liable for any licenses' discrepancies or misuse of said licenses, including, but not limited to, use of any third-party tools and removing any of AAIT licenses.  AAIT expects that W&T will indemnify and hold AAIT harmless from and against any and all costs, claims, damages, expenses, fees, liabilities, losses, or suits incurred. AAIT puts W&T on notice that it may use, store, retain, sell, or otherwise dispose of such abandoned possessions in such manner, and upon such terms, as AAIT shall elect in its sole discretion without liability of any kind whatsoever to W&T, and any proceeds derived therefrom shall be the sole property of AAIT after the termination of any of the parties' agreements.

AAIT reserves all rights and, by this letter, does not intend in any way to waive any rights or remedies held by it under the parties' agreement(s), Texas and/or federal law, nor shall this letter be construed in any way as a waiver of those rights or remedies.

Should you wish to discuss further, please feel free to reach out.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:     Rey Rodriguez, IV (firm)
        Hessam Parzivand (hp@parzfirm.com)
        Ethan Gibson (ethan@gibsonwunder.com)

8/24/2022 11:58:38 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 67612060
By: HODGINS, KEELEY M
Filed: 8/24/2022 11:58:38 AM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**ORDER GRANTING DEFENDANTS ALL ABOUT IT, INC. AND
SECURE CLOUD, LLC'S MOTION FOR EXPEDITED DISCOVERY**

On this day, the Court considered Defendants, All About IT, Inc. ("AAIT") and Secure

Cloud, LLC's ("Secure Cloud") (sometimes collectively referred to herein for convenience,

"AAIT"[2]), Motion for Expedited Discovery and Motion for Emergency Hearing (the "Motion"),

requesting the Court's permission to conduct expedited discovery on Plaintiff, W&T Offshore,

Inc. ("W&T"). After considering the Motion, the response of W&T, if any, and all other evidence

and arguments of counsel, the Court is of the opinion that the Motion is meritorious and should be

in all things GRANTED, in part.

It is, therefore ORDERED that the Motion is ~~in all things~~ GRANTED, in part.

It is further ORDERED that AAIT shall be permitted to serve on W&T the Requests for

Production, Interrogatories, and Corporate Representative Topics (the "Discovery Requests") set

forth in Exhibit A ~~to the Motion~~ attached hereto. ~~The Interrogatories shall not count against the limit set forth in~~

~~the Texas Rules of Civil Procedure.~~

It is further ORDERED that W&T shall fully respond to and produce documents to the

Discovery Requests by ~~Friday~~ Sunday, August ~~26~~ 28, 2022, at noon and shall produce for deposition its designated

---

[2] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same
management team.

6

corporate representative(s) on the deposition topics set forth in Exhibit A by ~~Friday, August 26,~~ *Monday morning, August 28,* 2022.

SIGNED on this _____ day of August, 2022.

Signed:
8/24/2022

_____
PRESIDING JUDGE

7

**EXHIBIT A**

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S
EXPEDITED DISCOVERY REQUESTS TO PLAINTIFF W&T OFFSHORE, INC.**

TO:     Plaintiff, W&T Offshore, Inc., by and through its counsel of record, Benjamin L. Hall, THE HALL LAW GROUP, PLLC, 530 Lovett Blvd., Houston, Texas 77006.

Pursuant to the Texas Rules of Civil Procedure, Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), serves its Expedited Discovery Requests on Plaintiff, W&T Offshore, Inc. ("W&T"). Your responses and responsive documents to these requests must be served by **Friday, August 26, 2022**. You are further advised that your responses may be offered in evidence during these proceedings.

In answering this discovery, use all information that is available to You, including information in the possession of Your attorneys, investigators, experts, and representatives, and not merely information known of Your own personal knowledge.  If, subsequent to service of an answer to any discovery request, You or Your representatives obtain or become aware of any further information pertaining to any discovery request, You are required to promptly amend and

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

supplement Your answers setting forth the new and additional information and serve a copy upon all counsel.  You are also further advised that You are under a continuing duty to supplement and amend Your responses to these discovery requests as set forth by the Texas Rules of Civil Procedure.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

– and –

**GIBSON | WUNDER, P.C.**

By:  _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on August 24, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

3

## <u>DEFINITIONS</u>

1.      "AAIT" refers to All About IT, Inc., a named defendant in the above-entitled action and its predecessors, affiliates, assigns, officers, directors and employees.

2.      "Secure Cloud" refers to Secure Cloud, LLC, a named defendant in the above-entitled action and its predecessors, affiliates, assigns, officers, directors and employees.

3.      "W&T" refers to Plaintiff W&T Offshore, Inc., a Texas corporation, its predecessors and successors in interest, its and their affiliates, and its and their current or former officers, directors, executive committee members, members, employees, attorneys, agents, representatives, and any other persons or entities currently or formerly acting on or for its or their behalf.

4.      "You," "you," "your," or "Your" shall be understood to refer to W&T.

5.      "Petition" refers to W&T's Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction (filed August 19, 2022).

6.      "Document(s)" is used in its broadest sense and means and includes all written, printed, typed, recorded, or graphic matter of any kind and description, both originals and copies, and all attachments and appendices thereto. Without limiting the foregoing, "document(s)" includes all agreements, contracts, communications, correspondence (including emails and their attachments, text messages, SMS messages, and MMS messages), letters, telegrams, telexes, memoranda, records, reports, books, summaries, and any other records or telephone conversations, summary or other records of personal conversations, notes or other records of negotiations, diaries, diary entries, calendars, appointment books, time records instructions, work assignments, visitors records, worksheets, work papers, drafts, graphs, charts, accounts, notes, notices, marginal notations, notebooks, records, files, lists, recommendations, printouts, compilations, tabulations, folders or similar containers, studies, surveys, transcripts of conversations, tape or disc recordings, sound recordings, video recordings, film, tape, photographs, data compilation from which information can be obtained (including matter used in data processing) and other printed, written, handwritten, typewritten, recorded, stenographic, computer generated, computed stored, or electronically stored information, however and by whomever produced, prepared, reproduced, disseminated or made. Any email produced must be produced in its entirety, including the full text of any attachment. The term "document(s)" expressly includes all digital files, databases, emails, and other documents maintained in digital and/or electronic form.

7.      "Communication(s)" means and includes any transmittal or exchange of information between two or more persons, whether orally or in writing, including without limitation any conversation by means of letter, note, email, memorandum, telephone, telegraph, telex, telecopies, cables or some other electronic or other medium.

4

8.  "Concern(ing)," "relat(ing)," "pertain(ing)," or "regard(ing)" mean and include pertain, discuss, refer, indicate, contain, evidence, explain, review, analyze, describe, mention, relate, detail or be in any way logically or factually connected with the matter discussed.

9.  "Possession" and "possession, custody or control" includes documents actually within the possession, custody or control of the responding party and each consultant, agent, or representative of the responding party, including, without limitation, attorneys and accountants, and each other person acting for or in concert with the responding party, and including documents prepared by, obtained, or placed in the possession, custody, or control of any such person within the scope of his/her duties or relationship to the responding party, or documents that the responding party has a right to copy or have access to, and documents having been placed in the temporary possession, custody, or control of any third party. The document is deemed to be in the responding party's possession, custody, or control if the responding party has the right to secure the document or a photocopy thereof from another person or entity, whether public or private, having actual physical possession, custody, or control thereof.

10.  "And" and "or" shall be construed either disjunctively or conjunctively to bring within the scope of the request all information and responses within the general scope of the request.

11.  "Person" includes natural persons, corporations, public corporations, governments, governmental agencies, boards, commissions, regulatory commissions, committees, partnerships, joint ventures, groups, firms, associations, or other organizations.

12.  Whenever you are asked to "identify" a person, You are requested to identify the person's:

    a.  full name;
    b.  business and residential address;
    c.  business and residential telephone numbers; and
    d.  his or her present or last known employment position and/or business affiliation at the time in question.

13.  Whenever you are asked to "identify" a document, You are requested to identify:

    a.  the author thereof and the parties thereto;
    b.  its title or other identifying data; and
    c.  the date, or if no date appears thereon, the approximate date.

14.  The terms "refer(s) to," "referring to," "relate(s) to," "relating to," and "evidencing," shall mean regarding, concerning, containing, setting forth, illustrating, mentioning, showing, disclosing, describing, explaining, summarizing, supporting, substantiating, or negating, whether directly or indirectly, in whole or in part, and should be given the broadest possible constructions consistent with the Texas Rules of Civil Procedure.

15.  The term "communication," or any variant thereof, means any contact between two or more persons by which any information or knowledge is transmitted or conveyed between two or more persons and shall include, without limitation, written contact by means such as letters, memoranda, telegrams, telecopies, telexes, e-mails, text messages, social media

5

messages or posts, or any other document, and any oral contact, such as face-to-face meetings or telephone conversations and any writing, documents, or notes reflecting such communications.

16. In order to bring within the scope of these Interrogatories and Requests for Production any information that might otherwise be construed to be outside their scope:

    a. the terms "and" as well as "or" shall be construed either disjunctively or conjunctively, as necessary;

    b. the term "each" shall be construed to include "every" and vice versa;

    c. the present tense shall be construed to include the past tense and vice versa; and

    d. the singular of each word shall be construed to include its plural and vice versa.

## INSTRUCTIONS

1.  The documents described in these requests shall be produced in the files as they are kept in the usual course of business or shall be organized and labeled to correspond with the categories specified in this request. If the items described are not produced in their files, then the selection of documents from files and other sources shall be performed in such a manner to ensure that the file or other source from which a document is obtained may be identified. Additionally, documents attached to other documents or materials shall not be separated unless sufficient records are kept to permit reconstruction of the original grouping.

2.  Pursuant to Tex. R. Civ. P. 196.4, AAIT and Secure Cloud hereby specifically request production of electronic or magnetic data responsive to these requests in the form in which it is kept in the ordinary course of business and that is reasonably readable by and compatible with computers running the Windows operating systems and Microsoft Office software or by any other software.  Specifically, any documents existing in Microsoft Word, Microsoft Excel, Microsoft Power Point, WordPerfect, PDF, or TIF formats shall be produced in those formats.  E-mail maintained in Microsoft Outlook shall be produced in the form of a PST file.  E-mail maintained in Lotus Notes shall be produced in the form of a NSF file.  All documents produced in electronic or digital format shall be produced with all metadata intact.

3.  Each draft, original, and non-identical duplicate, whether different from the original because of marginal notes or other material inserted therein or attached thereto or otherwise, and all writings, records, documents and data compilations from which the information requested can be obtained or translated, that are in the possession, custody, or control of the party to whom this request is addressed shall be produced. In any instance in which this request names documents for production, it will be acceptable to provide a legible, true, and correct photocopy or other reproduction of the complete document named.

4.  Unless otherwise indicated, each request shall be construed as requesting the production of all documents described herein that were created, received, or otherwise entered the control, custody, or possession of the responding party, including but not limited to, documents created, produced, received, or that otherwise entered the possession, custody or control of any agent or representative of the responding party.

5.  If any information called for by an Interrogatory is withheld on any basis, set forth the nature of the information withheld, the author and recipients of the information, and the basis for withholding the information.

6.  If any document is withheld, in whole or in part, for any reason, including, but not limited to, the claim of privilege or confidentiality, identify separately with respect to each document, the following: (a) the privilege under which the document is being withheld; (b) a description of the type of document involved; (c) a general description of the subject matter and purpose of the document; (d) the date the document was prepared; (e) the author or authors and signatory or signatories of the document; (f) the recipient or recipients of

7

the document and any person having received copies of the document; and (g) the circumstances surrounding the making of the document. Any responsive document withheld from production pursuant to a claim of privilege (including attorney work product) shall be segregated and maintained for possible *in camera* submission to the court.

7.    Unless otherwise indicated, the requests seek documents on or after ~~January 1, 2012~~

January 1, 2017

## REQUEST FOR ELECTRONIC AND MAGNETIC DATA

Electronically-stored documents will be produced as electronically Bates-numbered single-page TIFF images with appropriate document breaks, corresponding load file for the images, and a generic delimited data file for the corresponding metadata. The following metadata or fielded information, to the extent applicable to a produced electronic document, will be included in the generic delimited data file:

1. Beginning Production Number
2. Ending Production Number
3. Parent ID (if applicable)
4. Attachment ID (if applicable)
5. File Type (e.g., Word, Excel, email, etc.)
6. Last Modified Date (if collected from source system or custodian, rather than image)
7. Last Modified Time (if collected from source system or custodian, rather than image)
8. Sent Date
9. Sent Time
10. Document Author or From
11. To
12. CC
13. BCC
14. Subject Line (emails only)
15. Custodian or Source
16. Attachment Count
17. Native File Link
18. File Name
19. File path/folder
20. Received Date
21. Full text
22. De-duplicated instances (by full path)
23. Redacted flag
24. Embedded content flag

Documents that should not be rendered to TIFF images (i.e., Excel files, multimedia files, voice mail, sound files, databases, etc.) will be placed as native files in a separate folder. The files will be named by pre-pending a Bates number to the original file name. A confidentiality designation can also be inserted into the file name. A slip sheet will be provided containing the Bates number, the native file name, along with the note "Document Provided in Native Format." A link to the relative path of the natively produced document will be included in the metadata load file (Field no. 17 in list above). All embedded content shall be provided, including tracked changes, hidden comments, speaker notes, etc.

Emails and their attachments will be referenced to each other in the generic delimited data file, and will be numbered sequentially wherein the attachment Bates number follows the parent email Bates number. Emails and their attachments will be designated in the generic delimited data file

9

by the beginning and ending Bates numbers of the email or individual attachments (Fields nos. 1 and 2 in list above), and those of the entire family (Fields nos. 3 and 4 in list above).

Multipage OCR or extracted text (i.e., TXT files) will be named to the corresponding TIFF images and placed in a separate folder named TEXT.

The searchable content of electronically-stored documents will be extracted from the source documents, e.g., emails and their attachments, and will not be generated through optical character recognition (OCR) of the corresponding TIFF images, with the exception of redacted documents, which may be OCR-ed. Redacted documents will contain the searchable endorsement "Redacted."

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.   Produce all contracts between W&T and AAIT.

2.   Produce all contracts between W&T and Secure Cloud.

3.   ~~Produce all documents and communications concerning or referencing any and all contracts between W&T and AAIT.~~

4.   ~~Produce all documents and communications concerning or referencing any and all contracts between W&T and Secure Cloud.~~

5.   Produce all documents and communications concerning or referencing W&T's dissatisfaction with AAIT or Secure Cloud's services.

6.   Produce all documents and communications concerning, referencing, or evidencing the terms of the "oral contract" between AAIT and Secure, on the one hand, and W&T, on the other, as referenced in paragraph 2 or W&T's Petition.

7.   If W&T contends that AAIT or Secure Cloud is not permitted to terminate IT services to W&T on September 2, 2022, produce all documents and communications supporting W&T's contention.

8.   Produce all documents and communications supporting W&T's contention that "[i]n 2018, Defendants began providing information technology services to W&T pursuant to oral agreement which included an [sic] confidentiality requirement," as referenced in paragraph 24 of W&T's Petition.

9.   Produce all documents and communications supporting W&T's contention that "Defendants have also refused to provide back-up data of Trade Secret and other information in a form accessible to W&T," as referenced in paragraph 33 of W&T's Petition.

10.   Produce all documents and communications supporting W&T's contention that AAIT and/or Secure Cloud have "unlawfully misappropriated W&T's Trade Secrets by unlawfully using them without W&T's consent," as referenced in paragraph 43 of W&T's Petition.

11.   If W&T contends that AAIT or Secure Cloud are under a contractual obligation to "provide … a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand," as referenced in paragraph 51 of W&T's Petition, produce all documents and communications supporting W&T's contention.

12.   ~~Produce all documents and communications supporting W&T's contention that "Defendants have fiduciary relationships with W&T under the Data Management Contracts", as referenced in paragraph 54 of W&T's Petition.~~

13.   Produce all documents and communications supporting W&T's contention that "Defendants' principal, Ramesh Arumugam, has affirmatively represented that they owe fiduciary duties to W&T", as referenced in paragraph 54 of W&T's Petition.

14.   All documents and communications supporting W&T's contention that AAIT or Secure Cloud have a fiduciary relationship with, or owe fiduciary duties to, W&T.

15.   Produce all documents and communications supporting W&T's contention that AAIT and/or Secure Cloud have failed to return W&T's property, as referenced in paragraph 62 of W&T's Petition.

16.   ~~Produce all internal W&T documents and communications concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.~~

17.   ~~Produce all documents and communications with any third parties concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.~~

## **INTERROGATORIES**

1.      Identify all contracts that W&T contends exist between W&T and AAIT or Secure Cloud.

2.      Identify and describe the terms of any and all oral contracts that W&T contends exist between W&T and AAIT or Secure Cloud.

3.      If W&T contends that AAIT or Secure Cloud may not cease the provision of IT services to W&T on September 2, 2022, describe the legal and factual bases for this contention.

4.      Describe the legal and factual bases for W&T's contention that AAIT or Secure Cloud are under a contractual obligation to "provide … a comprehensive list of all services they provide to W&T, the hardware and software systems they control, and their positions on the ownership of all hardware and software associated with their IT services to W&T upon W&T's demand," as referenced in paragraph 51 of W&T's Petition.

5.      Identify all documents and communications wherein AAIT and/or Secure Cloud have "refused to provide back-up data of Trade Secret and other information in a form accessible to W&T," as referenced in paragraph 33 of W&T's Petition.

6.      Describe the legal and factual bases for W&T's contention that AAIT and/or Secure Cloud have "unlawfully misappropriated W&T's Trade Secrets by unlawfully using them without W&T's consent," as referenced in paragraph 43 of W&T's Petition.

7.      Describe the legal and factual bases for W&T's contention that "Defendants have fiduciary relationships with W&T under the Data Management Contracts", as referenced in paragraph 54 of W&T's Petition.

8.      Identify each and every document and communication wherein "Defendants' principal, Ramesh Arumugam, has affirmatively represented that they owe fiduciary duties to W&T", as referenced in paragraph 54 of W&T's Petition.

9.      Describe the legal and factual bases for W&T's contention that AAIT or Secure Cloud have a fiduciary relationship with, or owe fiduciary duties to, W&T.

10.     Describe the legal and factual bases for W&T's contention that AAIT and/or Secure Cloud have failed to return W&T's property, as referenced in paragraph 62 of W&T's Petition.

11.     Identify each and every internal W&T document and/or communication concerning, referencing, or evidencing W&T's transition of IT services away from AAIT or Secure Cloud.

## <u>CORPORATE REPRESENTATIVE TOPICS</u>

1. All contracts between W&T and AAIT or Secure Cloud, including, but not limited to, the terms thereof.

2. AAIT and/or Secure Cloud's provision of services to W&T.

3. The factual ~~and legal~~ bases for W&T's claims against AAIT and Secure Cloud in this lawsuit.

4. W&T's transition of IT services away from AAIT or Secure Cloud.

5. ~~W&T's communications with any third parties regarding AAIT or Secure Cloud's provision of services to W&T.~~

14

8/22/2022 4:05:41 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 67522945
By: HODGINS, KEELEY M
Filed: 8/22/2022 4:05:41 PM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants.* | ) | 151ST JUDICIAL DISTRICT |

## ORDER GRANTING PLAINTIFF'S
## EMERGENCY MOTION FOR EXPEDITED DISCOVERY
AND ATTACHING THE COURT'S REVISIONS TO PERMISSIBLE DISCOVERY

After considering Plaintiff's Emergency Motion for Expedited Discovery, responses filed

by Defendants, if any, and all other pertinent matters and documents on file with the Court, the

Court **GRANTS** the Motion as follows: *in part* **\*\***

1. The Court approves Plaintiff's discovery requests submitted with the motion and orders Defendants to file provide complete responses to same.

2. By August ~~23~~ 24:  Plaintiff must serve its requests for production, interrogatories, and deposition notice upon Defendants by and through their counsel.

3. By August ~~25~~ 26:  Defendants must provide appropriate responses and answers to Plaintiff's requests for production and interrogatories, as indicated in the attached "Exhibit B."

4. By August ~~27~~ 28 at noon: Defendants must substantially complete all document production covered by this order, as indicated in the attached "Exhibit B."

5. By August ~~27~~ 28 at noon: Defendants must present in Houston, Harris County, Texas the corporate representative(s) for all defendants to testify about ~~any and all matters covered by Plaintiff's requests for production, interrogatories and matters alleged in plaintiff's petition.~~ the topics listed on "Exhibit B" under "Corporate Representative Deposition Topics."

**SO ORDERED.**

Signed on this the _____ day of August, 2022.   Signed: 8/24/2022

_____
Judge, District Court of Harris County,
Texas, 151st Judicial District

**\*\*** It is further ORDRED that nothing in this Order or Exhibit B should be interpreted to require Defendants to disclose, at this time, Defendant Secure Cloud's allegedly confidential network design as described in their Response to Plaintiff's Emergency Motion.

## **EXHIBIT B**

**Interrogatories**

1. Identify ~~in detail~~ the list of the HP and Cisco services that reside in the Data Centers and the HP servers, HP thin client computers, and other computing and networking hardware that reside on W&T offshore platforms used for the operation of supervisory control and data acquisition ("SCADA") systems and/or industrial control systems and identify whether these devices belong to W&T.

2. ~~Identify in detail the steps needed to provide (1) W&T or its designee physical access to all spaces containing infrastructure, networking, and communications hardware that store or maintain W&T data, including but not limited to production data and back-up data, at the Data Centers and (2) assurance that the data center operator(s) will provide W&T personnel and designees with cross-connections to such hardware to transfer W&T data to other hardware.~~

3. ~~Identify in detail the administrator user names and passwords for all firewalls on W&T offshore platforms, in the Data Centers, or in W&T offices, including but not limited to Cisco Maraki firewalls and Palo Alto firewalls, to enable W&T or its designee the ability to export routing information and configurations for the devices.~~

4. Identify ~~in detail~~ the equipment and/or computer data or programs at W&T that allegedly belong to AAIT or Secure Cloud and/or that AAIT or Secure Cloud believes they have a right to remove from W&T facilities at the end of the relationship with W&T.

5. ~~Identify a complete list of all service accounts running security or administrative services on W&T servers and associated passwords for these accounts.~~

**Requests for Production**

1. Produce documents sufficient to show the HP and Cisco services that reside in the Data Centers and the HP servers, HP thin client computers, and other computing and networking hardware that reside on W&T offshore platforms used for the operation of supervisory control and data acquisition ("SCADA") systems and/or industrial control systems and whether these devices belong to W&T.

2. ~~Produce documents sufficient to show the network map of W&T's IT infrastructure, including all firewalls, switches, routers, servers, and end points.~~

3. Produce documents sufficient to show the services Defendants have provided and/or are providing to or on behalf of W&T.

4. ~~Produce documents sufficient to show the administrator user names and passwords for all firewalls on W&T offshore platforms, in the Data Centers, or in W&T offices, including but not limited to Cisco Maraki firewalls and Palo Alto firewalls, to enable W&T or its designee the ability to export routing information and configurations for the devices.~~

5. Produce documents sufficient to show <span style="color:blue">in general terms</span> the equipment and/or computer data or programs used at W&T that allegedly belong to AAIT or Secure Cloud and/or that AAIT or Secure Cloud believe they have a right to remove from W&T facilities at the end of the relationship with W&T.

6. Produce documents sufficient to show all network devices, including routers, switches, and network attached printers, on W&T offshore platforms, at the Data Centers, or in W&T offices, including their IP addresses, ~~configurations, administrator user names and passwords~~, and identify all hardware belonging to W&T.

7. Produce documents sufficient to show <span style="color:blue">in general terms</span> the hardware used to backup, store and/or maintain any and all of W&T`s data.

**Corporate Representative Deposition Topics**

1. The services Defendants have provided and are providing to and/or on behalf of W&T.

2. Oral and/or written agreements between Defendants and W&T, and the parties' performance under the agreements and the transition of services to W&T.

3. Defendants' invoices to W&T, including but not limited to disputed and/or unpaid invoices.

4. The hardware, software, and third party services that Defendants have used at and/or for W&T.

5. Hardware or software at W&T that AAIT or Secure Cloud believes they own and/or have a right to remove from W&T facilities at the end of the relationship with W&T.

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

### BENJAMIN L. HALL'S MOTION IN SUPPORT OF
### WILLIAM RIDGWAY'S UNOPPOSED MOTION TO APPEAR *PRO HAC VICE*

I, Benjamin L. Hall, III, file this Motion in Support of William Ridgway's Unopposed Motion to Appear Pro Hac Vice before this Court.

### BACKGROUND

1.     I am associated with William Ridgway on this case.  I am employed as an attorney on this case and will personally participate in the hearings and trial.

2.     I am a practicing attorney and a member in good standing with the State Bar of Texas.  My State Bar number, office address, telephone number, fax number and email address are included below my signature.

3.     William Ridgway is a reputable attorney in his state, and I recommend that the Court permit him to appear in this case.

### PRAYER

For these reasons, I ask this Court to grant William Ridgway's Unopposed Motion to Appear Pro Hac Vice and allow him to appear before this Court.

Dated:  August 26, 2022                          Respectfully submitted,

                                                 /s/  *Benjamin L. Hall, III*
                                                 Benjamin L. Hall, III
                                                 TBN: 08743745
                                                 The Hall Law Group, PLLC
                                                 530 Lovett Blvd.
                                                 Houston, Tx 77006
                                                 713.942.9600 (o)
                                                 713.942.9566 (f)
                                                 Bhall@thlf.us

                                                 *Attorney for W&T Offshore, Inc.*

## CERTIFICATE OF CONFERENCE

On August 26, 2022, I emailed counsel for all other parties and asked whether they opposed

the relief sought in this motion; no party opposes the relief sought.

                                                 */s/Benjamin L. Hall, III*
                                                 Benjamin L. Hall, III

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion has been served on all parties who have appeared

in this case by electronic filing on August 26, 2022.

                                                 */s/Benjamin L. Hall, III*
                                                 Benjamin L. Hall, III

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**UNOPPOSED MOTION TO APPEAR *PRO HAC VICE*, AND REQUEST TO ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING**

I, William E. Ridgway, file this Unopposed Motion to Appear Pro Hac Vice before this Court, under the authority of the Rules Governing Admission to the Bar of Texas, Rule 19.

**BACKGROUND**

1.      I am associated with Benjamin L. Hall, III, who will personally participate in the hearings and trial of this case. Benjamin L. Hall, III, is a practicing attorney and a member of the State Bar of Texas. His information is as follows:

> Texas Bar No. 08743745
> The Hall Law Group, PLLC
> 530 Lovett Blvd.
> Houston, TX 77006
> 713.942.9600 (tel)
> 713.942.9566 (fax)
> bhall@thlf.us

2.      I am an active member in good standing with the State Bar of Illinois, Bar No. 6325417 and the State Bar of California, Bar No. 247529.

3.      I have not been the subject of disciplinary action in the last five years by the bar or courts of any jurisdiction where I have been licensed.

4.      I have not been denied admission to any state or federal court during the last five years.

5.      I am familiar with the State Bar Act, the State Bar Rules, and Texas Disciplinary Rules of Professional Conduct governing the conduct of members of the State Bar of Texas. I will at all times abide by and comply with these rules as long as this case is pending and I have not withdrawn as counsel from the proceeding.

6.      I have not appeared or sought leave to appear in Texas courts in the last two years. I am currently seeking to appear pro hac vice in this case, Cause No. 2022-51667, *W&T Offshore, Inc. v. All About IT, Inc., and Secure Cloud, LLC* in the 151st Judicial District Court of Harris County, Texas.

7.      My office address, telephone number, fax number, and email address are included below in my signature.

8.      I hereby acknowledge that I have made payment to the Board of Law Examiners and hereby attach a copy of proof of payment as Exhibit "A" to this Motion.

9.      For these reasons, I ask this Court to grant my unopposed motion pro hac vice and allow me to appear before this Court until the conclusion of this case.

### REQUEST FOR IMMEDIATE SUBMISSION

10.     Movant respectfully requests immediate submission of his Unopposed Motion to Appear *Pro Hac Vice* and Request to Electronically Receive Notices of Electronic Filing.

Date:  August 26, 2022

Respectfully submitted,

*/s/ William E. Ridgway*
William E. Ridgway
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

155 N. Upper Wacker Drive
Chicago, Illinois 60606
Tel:   (312) 407-0449
Fax:  (312) 827-9445
william.ridgway@skadden.com
*Attorneys for W&T Offshore, Inc.*

## CERTIFICATE OF CONFERENCE

On August 26, 2022, I emailed counsel for all other parties and asked whether they opposed the relief sought in this motion; no party opposes the relief sought.

*/s/Benjamin L. Hall, III*
Benjamin L. Hall, III

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Motion has been served on all parties who have appeared in this case by electronic filing on this 26th day of August 2022.

*/s/ Benjamin L. Hall, III*
Benjamin L. Hall, III

# EXHIBIT A

# Board of Law Examiners

Appointed by the Supreme Court of Texas

August 26, 2022

William E. Ridgway
Via: E-Mail

Acknowledgment Letter

Non-Resident Attorney Fee

According to Texas Government Code §82.0361, "a nonresident attorney requesting permission to participate in proceedings in a court in this state shall pay a fee of $250 for each case in which the attorney is requesting to participate."

**This Acknowledgement Letter serves as proof that the Board of Law Examiners has received $250 in connection with the following matter:**

**Non-resident attorney: William E. Ridgway**

**Case: 2022-51667**

**Texas court or body: The District Court in Harris County, Texas; 151st Judicial District**

After satisfying the fee requirement, a non-resident attorney shall file a motion in the Texas court or body in which the non-resident attorney is requesting permission to appear. The motion shall contain the information and statements required by Rule 19(a) of the Rules Governing Admission to the Bar of Texas. The motion must be accompanied by this Acknowledgment Letter and by a motion from a resident practicing Texas attorney that contains the statements required by Rule 19(b).

The decision to grant or deny a non-resident attorney's motion for permission to participate in the proceedings in a particular cause is made by the Texas court or body in which it is filed.

For more information, please see Rule 19 of the Rules Governing Admission to the Bar of Texas and §82.0361, of the Texas Government Code, which can be found on the Board's website.

Cordially,

Nahdiah Hoang
Executive Director

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**ORDER GRANTING UNOPPOSED MOTION TO APPEAR**
**_PRO HAC VICE_, AND REQUEST TO**
**ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING**

On this date, the Court considered William E. Ridgway's Unopposed Motion to Appear

Pro Hac Vice (the "Motion"). The Court, having considered the relief requested in the Motion,

finds that the Motion should be **GRANTED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that William E. Ridgway

is allowed to appear before this Court in the above-referenced matter until the conclusion of the

case. The Clerk shall provide notification of all electronic filings to William E. Ridgway at

william.ridgway@skadden.com.

Signed on this the _____ day of _____ 2022.

_____
Judge, District Court of Harris County,
Texas, 151st Judicial District

8/26/2022 3:13:10 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 67713661
By: HODGINS, KEELEY M
Filed: 8/26/2022 3:13:10 PM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants.* | ) | 151ST JUDICIAL DISTRICT |

## ORDER GRANTING UNOPPOSED MOTION TO APPEAR
## *PRO HAC VICE*, AND REQUEST TO
## ELECTRONICALLY RECEIVE NOTICES OF ELECTRONIC FILING

On this date, the Court considered William E. Ridgway's Unopposed Motion to Appear

Pro Hac Vice (the "Motion"). The Court, having considered the relief requested in the Motion,

finds that the Motion should be **GRANTED**.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that William E. Ridgway

is allowed to appear before this Court in the above-referenced matter until the conclusion of the

case. The Clerk shall provide notification of all electronic filings to William E. Ridgway at

william.ridgway@skadden.com.

Signed on this the _____ day of _____ 2022.

Signed:
8/26/2022

_____
Judge, District Court of Harris County,
Texas, 151st Judicial District

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**<u>ORDER EXTENDING  TRO AND
RESCHEDULING TEMPORARY INJUNCTION HEARING</u>**

The Temporary Restraining Order in this case, entered on August 19, 2022, at 4:16 p.m., is extended.  The Temporary Injunction Hearing is rescheduled to _____, 2022 at _____ a.m./p.m.

SO ORDERED

Signed on ____ _____ , 2022.

_____
The Honorable Mike Engelhart,  Presiding

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| **W&T OFFSHORE, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| **ALL ABOUT IT, INC.;** | § | |
| **SECURE CLOUD, LLC** | § | |
| | § | |
| *Defendants.* | § | **151ST JUDICIAL DISTRICT** |

**PLAINTIFF W&T OFFSHORE, INC.'S RESPONSE TO DEFENDANTS
ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S OBJECTION TO AND MOTION
FOR RECONSIDERATION OF THE COURT'S ORDER EXTENDING TRO AND
RESCHEDULING TEMPORARY INJUNCTION HEARING, MOTION FOR
EMERGENCY STATUS CONFERENCE, AND, ALTERNATIVELY, MOTION TO
<u>MODIFY ORDER EXTENDING TRO</u>**

Plaintiff W&T Offshore, Inc. ("W&T") files the following response to Defendants All About IT, Inc. and Secure Cloud, LLC's ("Defendants'") Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, Alternatively, Motion to Modify Order Extending TRO (the "Objection and Motion").  Defendants' Objection should be **OVERRULED**, and its Motion should be **DENIED**.

**I.
<u>BACKGROUND</u>**

1.1     W&T filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendants on August 19, 2022, describing, *inter alia*, the immediate and irreparable harm that it would suffer should Defendants cease providing the same level of information technology ("IT") services to W&T that Defendants have historically provided for the past several years.  After a hearing held on August

19, Ancillary Judge Garrison found that W&T's Application satisfied all necessary requirements and entered a Temporary Restraining Order (the "TRO") requiring Defendants to preserve the "status quo *ante*" between the parties by continuing to "provide . . . the same level of services that Defendants were providing to W&T Offshore, Inc [sic] up to and including the date of June 30, 2022."  (TRO 1.)  The TRO was entered, and a bond was set, with Defendants 'agreement.

1.2     Judge Garrison originally set a hearing date of August 29, 2022 for W&T's request for a temporary injunction.  (*Id.* at 2.)  As the Court is aware, it was unable to hold a full hearing before September 20, 2022 — despite W&T's readiness to proceed on August 29, 2022 — and the Court entered an August 26 Order postponing the temporary injunction hearing until 9:00 AM on September 20, 2022. (Order Extending TRO and Rescheduling Temporary Injunction Hearing, dated August 26, 2022, at 1.)  The Court's Order also extended the TRO issued by Judge Garrison. Despite the Court's staff emailing all Parties about this issue on August 26 before the Court entered its Order, Defendants did not file an objection or otherwise inform the Court that day that they objected to the Court's Order.

1.3     Aware of Defendants 'position (which has now been made clear in the Objection and Motion) that the TRO would expire prior to the temporary injunction hearing on September 20, W&T filed an Emergency Motion for Protective Order on August 31.   In that Emergency Motion, W&T seeks an order that would prevent Defendants from ceasing to provide all IT services to W&T before W&T has an opportunity to be heard on its application for injunctive relief.  W&T's Emergency Motion for Protective Order is scheduled to be heard by this Court on September 12, 2022, at 3:30 p.m.

1.4     Having let a full five days pass since this Court's August 26 Order extending the TRO, Defendants raise for the first time their Objection to the Court's Order.  Defendants set forth

6

a variety of arguments as to why they should not be compelled to maintain the status quo *ante* for a mere **four** additional days in order to accommodate the Court's schedule and docket, and why Defendants should be fully entitled to simply stop providing needed IT services to W&T on September 16th.  Defendants should not be allowed to use this Court's crowded docket to threaten immediate and irreparable harm to W&T's interests, and their attempt to do so should be rejected.

## II.
## ARGUMENT

2.1     As set forth in greater detail in W&T's Emergency Motion for Protective Order, if Defendants completely cease providing W&T with IT services prior to the temporary injunction hearing — which Defendants forecast in their Objection and Motion they intend to do on September 16th —W&T's business faces irreparable harm.  Judge Garrison recognized this fact when she entered the TRO on August 19th, requiring Defendants to continue to provide the "same level of services" they had been providing to W&T, with W&T continuing to pay for such services. (TRO at 1.)  W&T intends to present those reasons to the Court in greater detail at the September 12th hearing on its Emergency Motion for Protective Order and at the September 20th injunction hearing.

2.2     Yet Defendants are dead-set on causing irreparable harm to W&T, and asks the Court to rule that the TRO will expire on September 16th, four days before the temporary injunction hearing can commence—leaving W&T  no protection during the gap.  Defendants know that the temporary injunction hearing has been set for September 20th — and not on August 29th as previously contemplated — in order to accommodate the Court's calendar and scheduling needs.  Defendants' rigid interpretation of the governing law — as advanced in their Objection and Motion — would unfairly penalize W&T and deprive this court of its opportunity to address the grievous harm at issue in this case.

6

2.3     The crux of Defendants' argument is that, pursuant to Rule 680 of the Texas Rules of Civil Procedure, a temporary restraining order may only be in place, without the restrained party's consent, for a maximum of two fourteen-day periods.  (Objection and Motion at 6.)  W&T recognizes the existence of this limitation under Texas law.  That is why W&T filed its Emergency Motion for *Protective Order*:  to seek the Court's assistance in ensuring that the court retains jurisdiction over this controversy's and to provide W&T with an opportunity to obtain injunctive relief to avoid irreparable damage being done.  Defendants oppose Plaintiff's Emergency Motion — and also oppose W&T's contemporaneous Motion for Appointment of Master which W&T filed to help facilitate the transition of IT operations in the intervening period, and to limit the universe of relief that W&T will be constrained to seek from the Court at the temporary injunction hearing.  Defendants' instant Objection and Motion is simply one more attempt by Defendants to forestall W&T's legitimate right to ensure its legal rights to protect and maintain its trade secrets and confidential intellectual computer property.   Plaintiff needs time to get to September 20th in order to present evidence to the Court in support of its request for injunctive relief.

2.4     The fact that Defendants cannot seem to agree to maintain the status quo *ante* of service to W&T for a mere four days in order to accommodate the Court's schedule and docket— especially when W&T is continuing to pay for those services— is particularly troubling.  Defendants should not be able to use the Court's congested schedule as a tool to completely disrupt the status quo and immediately place W&T's confidential and proprietary data in jeopardy before the temporary injunction hearing.  The Court should enter a protective order to retain jurisdiction and control over the matters in controversy in this case until the Court can take up and render a decision after a temporary injunction hearing.

2.5     Defendants also ask the Court to reconsider the agreed-upon bond that they agreed

to before Judge Garrison on August 19th — which, much like the rest of their Objection and Motion— is an argument they are only now raising for the first time.  Defendants do not explain why a requirement that they continue to provide services to W&T for a mere four days to protect against irreparable harm would now render the agreed-upon bond amount "wildly insufficient." (Objection and Motion at 9) Defendants agreed the bond amount would be sufficient for the duration of the TRO, did not raise any objection to that amount at any time prior to their present motion, and are continuing to be paid their normal payments from W&T, at the rate agreed upon in the TRO, for the services they are providing.   The bond amount should not be adjusted.

2.6     Ultimately, by refusing to agree to an additional extension of the agreed TRO, opposing W&T's Emergency Motion for a Protective Order, and bringing the instant Objection and Motion, Defendants have forced W&T to engage in a significant amount of motion practice and legal work in order to ensure that its business and trade secrets will not be thrown into disarray four days before a temporary injunction hearing.  The parties' resources would be better directed at preparing their evidence and witnesses for the hearing, at which W&T's entitlement to continued injunctive relief will be fully disclosed to and determined by this court.  To that end, Defendants make a number of other factual arguments in their Objection and Motion, contending that Defendants have no contractual or legal obligation to provide IT services to W&T, that W&T has "failed to prepare itself for AAIT's termination of services," and that AAIT has cooperated with the transition by "provid[ing] [W&T] certain information for the transfer of assets and equipment." (Objection and Motion at 3.)  W&T will be fully prepared to address these factual issues at the temporary injunction hearing on September 20th.

## CONCLUSION

For the reasons set forth herein, W&T respectfully requests that the Court **OVERRULE** Defendants' Objection, **DENY** Defendants' (i) Motion for Reconsideration of that Order; (ii) Motion for Emergency Status Conference; and (iii) Motion to Modify Order Extending TRO; and, alternatively, that the Court grant Plaintiff's Motion for Protective Order and Appointment of Master.  W&T asks for all further relief to which it may show itself justly entitled.

Dated:  August 31, 2022                    Respectfully submitted,

                                           **THE HALL LAW GROUP, PLLC**

                                           /s/ *Benjamin L. Hall, III*
                                           **Benjamin L. Hall, III**
                                           TBN: 08743745
                                           530 Lovett Blvd.
                                           Houston, Tx 77006
                                           713.942.9600 (o)
                                           713.942.9566 (f)
                                           Bhall@thlf.us

                                           *Attorney for W&T Offshore, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served via the Court's electronic filing system on counsel for Defendants on August 31, 2022.

/s/ *Benjamin L. Hall, III*
**Benjamin L. Hall, III**

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff,* | ) | IN THE DISTRICT COURT OF |
| | ) | |
| v. | ) | |
| | ) | HARRIS COUNTY, TEXAS |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants.* | ) | 151ST JUDICIAL DISTRICT |

## PLAINTIFF W&T OFFSHORE, INC.'S
## EMERGENCY MOTION FOR A PROTECTIVE ORDER
## AND MOTION FOR APPOINTMENT OF MASTER

TO THE HONORABLE MIKE ENGELHART, PRESIDING:

Plaintiff W&T Offshore, Inc. ("W&T") brings this emergency Motion to request that this Court enter a Protective Order safeguarding W&T from the imminent harm that will result should All About IT, Inc. and Secure Cloud, LLC ("Defendants") cease providing information technology ("IT") services to W&T prior to the date of the temporary injunction hearing in this matter.   W&T further moves for the Court to enter an Order, pursuant to Rule 171 of the Texas Rules of Civil Procedure and other applicable law, appointing Andy Antunez as a master to assist the Court in adjudicating disputes between the parties that concern the highly technical computer infrastructure at issue in this case.

**First**, W&T seeks the aforementioned Protective Order at least until the time of the temporary injunction hearing in this matter (presently scheduled for September 20, 2022) in order to prevent Defendants from ceasing to provide IT services to W&T pursuant to their asserted belief that the temporary restraining order entered in this matter will expire prior to September 20. **Second**, as set forth in greater detail below, W&T believes that the Court's appointment of a master

in this matter would provide a practical and efficient avenue for the parties to resolve certain outstanding disputes in advance of the impending hearing on W&T's entitlement to temporary injunctive relief, and will minimize the relief that W&T will need to request from the Court at that hearing.

## **BACKGROUND**

On August 19, 2022, W&T filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction against Defendants (the "Verified Original Petition"). In the Verified Original Petition, W&T requests that the Court, *inter alia*, order Defendants to provide W&T with information, data, and hardware related to its IT systems — information and equipment necessary to (i) transition control of W&T's IT systems to internal resources at W&T; and (ii) facilitate the return of W&T's confidential and proprietary trade secrets. After a hearing on W&T's Application for a Temporary Restraining Order held before this Court on August 19, 2022, Ancillary Judge Garrison ordered the Defendants to, and Defendants agreed to, preserve the "status quo *ante*" between the parties by continuing to "provide . . . the same level of services that Defendants were providing to W&T Offshore, Inc [sic] up to and including the date of June 30, 2022." (TRO 1.) The TRO set a hearing date of August 29, 2022 for W&T's application for a temporary injunction. (*Id.* at 2.)

In anticipation of the impending hearing on W&T's entitlement to temporary injunctive relief, W&T filed an Emergency Motion for Expedited Discovery with this Court on August 22, 2022, which motion was granted in part by this Court; Defendants also filed a Motion for Expedited Discovery on August 24, 2022, which the Court granted in part (collectively, the "Motions for Expedited Discovery.") The parties are currently working together in good faith to

complete discovery before the temporary injunction hearing.[1]

On August 26, 2022, the Court informed W&T's counsel that — despite W&T's readiness to proceed with the temporary injunction hearing scheduled for August 29, 2022 — a full hearing could not be held on that date, due to conflicts with other matters on the Court's docket and schedule.  In working with the Court and Defendants' counsel to find a suitable alternative date for the hearing, the Court ultimately informed W&T's counsel that the Court would not be able to hold a full hearing on the matter on any date before September 20, 2022.  Accordingly, the Court entered an August 26 Order postponing the temporary injunction hearing, which hearing is now scheduled before this Court at 9:00 AM on September 20, 2022. (Order Extending TRO and Rescheduling Temporary Injunction Hearing, dated August 26, 2022, at 1.)  The Court's Order also extended the TRO issued by Judge Garrison.  Defendants have now taken the position that the TRO, as extended by the Court, will expire prior to the date of the temporary injunction hearing.

W&T now brings the instant Emergency Motion for a Protective Order in order to respectfully request that the Court enter an Order safeguarding W&T from imminent harm should the Defendants proceed according to their asserted belief that the TRO will expire before September 20.  Specifically, W&T seeks an Order that would maintain the status quo and prevent Defendants from ceasing to provide IT services to W&T prior to the temporary injunction hearing on September 20 — as such an action by Defendants would threaten the irreparable loss of confidential and proprietary W&T data.

Further, W&T brings the instant Motion for Appointment of Master because it believes that — in tandem with the parties' exchange of documentary and written discovery, as ordered by

---

[1]   The discovery sought by W&T is highly relevant to W&T's ongoing efforts to transition its IT infrastructure back to its internal resources, and W&T intends to continue to work toward that transition contemporaneously with its preparation for the temporary injunction hearing.

the Court — the appointment of a master with technical expertise to facilitate the parties' ongoing transition efforts (hereinafter a "Transition Master") would be the most effective, efficient, and practical vehicle for resolving certain of the parties' disputes in advance of the temporary injunction hearing.  Accordingly, W&T respectfully requests that (i) the Court order that the Temporary Restraining Order entered in this matter remain in place until September 20, 2022; and (ii) the Court appoint Andy Antunez ("Mr. Antunez") as Transition Master, and that the Court grant Mr. Antunez all authority requested by W&T in its Proposed Order (attached hereto as Exhibit A), and any other such authority as the Court deems appropriate.

## **ARGUMENT**

### 1. *W&T is entitled to a Protective Order maintaining the status quo until the date of the temporary injunction hearing.*

W&T seeks the instant Protective Order to prevent the manifest injustice that would result if Defendants — seeking to capitalize on the fact that the Court's scheduling conflicts mandate that the temporary injunction hearing be held after the date that the Defendants contend the TRO will expire — simply cease providing all IT services to W&T before W&T has an opportunity to be heard on its application for injunctive relief.  In the event that Defendants take such an action, W&T would be at immediate risk to irreparably lose, or be precluded from accessing, all of its data being managed by Defendants' services, including data comprising W&T's confidential and proprietary trade secrets.  As recognized by the Court's entrance of a TRO in this matter, Defendants' failure to continue to provide the same level of services to W&T, or failure to otherwise maintain the status quo with respect to W&T's IT infrastructure, would threaten W&T with immediate and irreparable harm.  Accordingly, W&T respectfully requests that this Court enter an Order prohibiting Defendants from ceasing to provide W&T with the same level of

4

services that they have provided to date until at least the date of the temporary injunction hearing, set to be heard on September 20, 2022.

2.   ***Good cause exists for the appointment of a master in this exceptional case.***

Rule 171 of the Texas Rules of Civil Procedure provides, in relevant part, that "[t]he court may, in exceptional cases, for good cause appoint a master in chancery . . . who shall perform all of the duties required of him by the court, and shall be under orders of the court, and have such power as the master in chancery has in a court of equity."  Tex. R. Civ. P. 171.  "The appointment of a master lies within the sound discretion of the trial court . . . ."  *Tollett v. Carmona*, 915 S.W.2d 562, 564 (Tex. App.—Houston [14th Dist.] 1995, orig. proceeding) (citing *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991)).  Courts have used this discretion to appoint masters to assist with complex and technical subject matter related to the master's specialized expertise, and to supervise disputes between the parties arising from any such technical subject matter.  *See Hourani v. Katzen*, 305 S.W.3d 239, 247-48 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (upholding trial court's appointment of a "special master with engineering training and expertise" to provide assistance to the court in a "highly technical" engineering matter, finding the "good cause" and "exceptional case" standards satisfied).

This is plainly an exceptional case, involving the parties' obligations with respect to technically complex computer infrastructure to be adjudicated on a highly time-sensitive basis. Good cause exists for the appointment of a Transition Master to facilitate this process, as W&T believes the oversight of a Transition Master would resolve certain outstanding disputes prior to the temporary injunction hearing, and would therefore limit the relief that W&T would need to request from the Court at the hearing in order to successfully complete the transition of its IT infrastructure.  W&T believes that the Transition Master would be able to assist the Court by:  (i) evaluating the parties' forthcoming documentary and written discovery related to each party's

5

claim of ownership and control of certain devices and programs comprising W&T's IT infrastructure; (ii) advising and instructing the parties on the most orderly and efficient manner for those devices and programs to be transferred or provided to W&T so that W&T may recover all information necessary for the transition; and (iii) proposing safeguards for the parties to implement that would most effectively secure and protect W&T's confidential and proprietary information, which currently resides in various locations within that infrastructure.

In order to facilitate the orderly and efficient transition contemplated above, W&T further believes that the Transition Master should possess the authority — subject to this Court's review — to impose obligations on the parties to complete certain actions related to the transition; to require the parties' complete and timely compliance with those obligations; and to adjudicate any dispute between the parties arising from those obligations.

As demonstrated by the CV of W&T's proposed Transition Master, Mr. Antunez (attached hereto as Exhibit B), Mr. Antunez has extensive experience handling matters involving digital forensic investigations, complex data preservation issues, and data collection efforts. W&T respectfully suggests that Mr. Antunez would be a suitable candidate to serve as Transition Master given that his extensive experience directly pertains to the matters that W&T seeks to resolve prior to the temporary injunction hearing — the identification of information necessary for the transition of W&T's IT infrastructure back to W&T resources, and the safeguarding of W&T data and hardware until such time as that transition can be completed.[2]  Should the Court appoint Mr. Antunez as Transition Master and grant him the authority necessary to adjudicate certain outstanding disputes between the parties related to the exchange of information and equipment

---

[2]   Upon the Court's request, W&T would be happy to identify for the Court a list of other individuals that W&T believes are qualified to serve as Transition Master in this matter.

relevant to the transition process, W&T believes that these outstanding disputes will be promptly resolved and, accordingly, the scope of injunctive relief that W&T will need to request from the Court at the temporary injunction hearing will be significantly narrowed.

## **CONCLUSION**

For the reasons set forth herein, W&T respectfully requests that the Court enter an Order: (i) prohibiting Defendants from ceasing to provide W&T with the same level of services that they have provided to date until at least the date of the temporary injunction hearing; and (ii) appointing Andy Antunez as Transition Master to supervise the transition process and adjudicate disputes between the Parties.  A proposed form of an Order is attached hereto as Exhibit A.

Dated:  August 31, 2022                    Respectfully submitted,

                                           /s/  *Benjamin L. Hall, III*
                                           Benjamin L. Hall, III
                                           TBN: 08743745
                                           The Hall Law Group, PLLC
                                           530 Lovett Blvd.
                                           Houston, Tx 77006
                                           713.942.9600 (o)
                                           713.942.9566 (f)
                                           Bhall@thlf.us

                                           *Attorney for W&T Offshore, Inc.*

## **CERTIFICATE OF CONFERENCE**

I certify that I conferred with counsel for Defendants on August 31, 2022 regarding

this motion.  Defendants oppose this motion.

/s/  *Benjamin L. Hall, III*
Benjamin L. Hall, III

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of this document was served via the Court's electronic filing system on counsel for Defendants on August 30, 2022.

/s/  *Benjamin L. Hall, III*
Benjamin L. Hall, III

EXHIBIT A

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) ) ) | |
| *Plaintiff*, | ) ) | IN THE DISTRICT COURT OF |
| v. | ) ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

**PROPOSED ORDER GRANTING PLAINTIFF W&T OFFSHORE, INC.'S
EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION FOR
APPOINTMENT OF MASTER**

After considering Plaintiff W&T Offshore, Inc.'s ("W&T's") Emergency Motion for a

Protective Order and Motion for Appointment of Master, the Defendants' Response, and all

documents on file with the Court, and finding that good cause has been shown and that this case

is an exceptional case warranting issuance of this Order, the Court GRANTS the Motion as

follows:

1. Defendants All About IT, Inc. and Secure Cloud, LLC, and their owners, employees,
   representative, and agents ("Defendants"), are prohibiting from ceasing to provide the same
   level of services that Defendants were providing to W&T up to and including the date of
   June 30, 2022. Defendants shall continue to provide W&T with that same level of services
   until September 20, 2022.

2. W&T agrees to continue to pay Defendants at the same rate for the same services as were
   being provided and paid on June 30, 2022.

3. Neither W&T nor Defendants shall take any action, or fail to perform any action, that
   would interfere with, frustrate, or prejudice the interests of either party.

4. The Court appoints Andy Antunez as its master to supervise and adjudicate disputes related
   to the parties' ongoing efforts to transition W&T's information technology ("IT") systems
   back to internal resources at W&T (the "Transition Master.")

5.  The Transition Master shall ensure the orderly and timely return of W&T's possession and control over the trade secrets, equipment, data, electronic systems—including audio and telephonic systems and computer programs—and all other aspects of W&T's systems and data presently in the possession of or under the control of Defendants.

6.  The Transition Master shall have authority and power to require complete and timely compliance with its decisions. Any party objecting to an instruction or decision of the Transition Master may raise the objection with the Court within two (2) business days of receiving notice of the issue or the complaint will be deemed waived. Responses to any objections brought to the Court are due three (3) business days later. The Court may rule on the complaint without a hearing to expedite resolution of the dispute.

7.  The costs for the services of the Transition Master shall be paid by W&T, except that if the Transition Master finds that Defendants have abused the process or frustrated the purposes of the Transition Master's appointment, the Transition Master may assign costs to Defendants, as it deems appropriate.

SO ORDERED.

Signed on this the _____ day of August, 2022.

_____
The Honorable Mike Engelhart, Presiding



---



## Andy Antunez, EnCE, P.I. (Texas)

Alvarez and Marsal LLC
Senior Director – Disputes and Investigations, LLC
2100 Ross Avenue, 21st Floor
Dallas, TX  75201
Office:  214.438.8438
Cell:     214.450.8717
aantunez@alvarezandmarsal.com

**Certifications**

-EnCase Certified Examiner (EnCE)

-Microsoft Certified Systems Engineer (MCSE)

-AccessData Certified Examiner (ACE)

-Cellebrite Certified Logical Operator (CCLO) and Certified Physical Analyst (CCPA)

**Professional Associations**

-Association of Latino Professionals in Finance and Accounting (ALPFA)

**Education**

-University of Dallas- Master of Business Administration (MBA)
-West Texas A&M University- Bachelor of Business Administration (BBA)

Andy Antunez is a Senior Director in Forensic Technology Services in the Disputes & Investigations practice at Alvarez and Marsal in Dallas, TX.  With over 24 years of experience, specializing in digital forensic investigations, complex preservation and data collections, eDiscovery consulting, and digital forensics expert testimony services.

Mr. Antunez is a licensed private investigator in the State of Texas, earned a Master's degree in Information Technology Management from the University of Dallas and a Bachelor's degree in Computer Information Systems from West Texas A&M University.

Mr. Antunez's areas of focus includes digital forensic analysis and expert testimony related to civil and federal litigations consisting of data destruction investigations, data manipulation investigations, employment and insider risk investigations (Data exfiltration\IP theft), fraud investigations, misappropriation of trade secrets investigations, and unauthorized data access investigations. In addition, Mr. Antunez has provided expert testimony in multiple Federal and State courts, including arbitrations since 2009.

During investigations, Mr. Antunez performs various types of digital forensic analyses (Windows, OSX, IOS, Android) including deleted files, connected USB devices, internet browsing history, file hash (MD5) comparison, Link files\shellbags, and cloud-based services (Dropbox, Box, iCloud). Mr. Antunez builds an exhaustive evidential record of these activities and the forensic analysis methodology supporting these findings through detailed expert reports and depositions.

Mr. Antunez has worked with various global clients in a wide range of industries, including Energy, Banking, Healthcare, Manufacturing, Insurance, Financial Services, Industrial Services, and Telecommunications. He has provided on-site forensic technology services on multiple Foreign Corrupt Practices Act (FCPA) investigations in various countries including China (Hong Kong & Mainland China), Japan, Singapore, United Kingdom, Germany, India, Canada, Mexico, Trinidad and Tobago, Guatemala, Brazil, and Argentina.

Prior to joining Alvarez & Marsal, Mr. Antunez provided forensic technology services at Grant Thornton LLP (2 years), Ernst & Young LLP (9 years), five years as a Regional Network Manager and four years as a Computer Forensics Manager. Additionally, Mr. Antunez spent five (5) years in the energy sector delivering Information Technology solutions at a large independent oil and natural gas company, Pioneer Natural Resources Company.

Mr. Antunez has received industry credentials including EnCase Certified Examiner (EnCE), AccessData Certified Examiner (ACE), Microsoft Certified Systems Engineer (MCSE), Microsoft Certified Professional (MCP) and Microsoft Certified Trainer (MCT).  Mr. Antunez holds two mobile device certifications including Cellebrite Certified Logical Operator (CCLO) and Cellebrite Certified Physical Analyst (CCPA). Mr. Antunez is a member of the Association of Latino Professionals in Finance and Accounting (ALPFA).  Mr. Antunez is also fluent in English and Spanish.



Andy Antunez, EnCE

## Trial and Testimony Experience

**August 22, 2022 – Testimony via Affidavit**
Compressor Engineering Corp., Plaintiff, vs.
Randy L. Anderson, Charles G. Ely, II and Cooper Machinery Services LLC, Defendants.
Case Nos.: 202252394
In the District Court of Harris, County, Texas 270th Judicial District

**May 31, 2022 – Testimony via Affidavit**
Gray Construction, Inc., a Kentucky Corporation, Plaintiff, vs.
Sofidel America Corp., a Florida Corporation, Defendant.
Case Nos.: 19-cv-00057-CVE-JFJ
In the United States District Court for the Northern District of Oklahoma

**March 15, 2022 – Testimony by Declaration**
Lula Jones, CNA, Plaintiff, vs.
Duval Medial Investors, LLC, d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc., Defendants.
Case Nos.: 3:20-cv-00488-TJC-PDB
In the United States District Court for the Middle District of Florida, Jacksonville Division

**January 27, 2022 – Testimony by Declaration**
Roberto Zayas, Jr., Plaintiff, vs.
Arta "Shaun" Noorian and Empower Clinic Services, LLC, Defendants.
Case Nos.: 2019-78001
In the District Court of Harris, County, Texas 295th Judicial District

**January 26, 2022 – Testimony by Oral Deposition 30(b)(6)**
Gray Construction, Inc., a Kentucky Corporation, Plaintiff, vs.
Sofidel America Corp., a Florida Corporation, Defendant.
Case Nos.: 19-cv-00057-CVE-JFJ
In the United States District Court for the Northern District of Oklahoma

**May 25, 2021 – Trial Testimony (Video)**
Colin Spencer, Complainant, vs.
Waste Connection, Inc., Respondent.
Case Nos.: 2020-CER-00002, 2020-SWD-00002
OSHA Arbitration- U.S. Department of Labor

**December 2, 2020 – Trial Testimony (Telephone)**
Colin Spencer, Complainant, vs.
Waste Connection, Inc., Respondent.
Case Nos.: 2020-CER-00002, 2020-SWD-00002
OSHA Arbitration- U.S. Department of Labor

**February 7, 2020 – Trial Testimony**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**October 10, 2019 – Testimony by Oral Deposition**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District

**May 30, 2019 – Testimony by Expert Report via Affidavit**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District

**January 31, 2019 – Testimony by Supplemental Declaration**
Chemoil Corporation, Plaintiff, vs.
Apex Fuels, LLC, a Delaware limited Liability Company; Cunningham Holdings, INC., a Delaware Corporation; Gregory S. Cunningham, individually; Apex Fuels INC., a California corporation; Apex Energy Ventures, LLC, a California limited liability company, dba Apex Fuels Stations, f/k/a Cunningham Holdings, LLC, a California limited liability company, dba Apex Fuels Stations; Apex Tank Lines Inc., a Delaware Corporation; SHELLY Cunningham, individually; Scott Cunningham, individually; Brian Cunningham, individually; and Rachel Pust, individually; Bogart, LLC, a Wyoming limited liability company; Pacwest Financial Services LLC, a California limited liability company; and Does 10 through 50, inclusive, Defendants.
No. MCC1500325
Superior court of the state of California County of Riverside

**September 17, 2018 – Testimony by Declaration**
Chemoil Corporation, Plaintiff, vs.
Apex Fuels, LLC, a Delaware limited Liability Company; Cunningham Holdings, INC., a Delaware Corporation; Gregory S. Cunningham, individually; Apex Fuels INC., a California corporation; Apex Energy Ventures, LLC, a California limited liability company, dba Apex Fuels Stations, f/k/a Cunningham Holdings, LLC, a California limited liability company, dba Apex Fuels Stations; Apex Tank Lines Inc., a Delaware Corporation; SHELLY Cunningham, individually; Scott Cunningham, individually; Brian Cunningham, individually; and Rachel Pust, individually; Bogart, LLC, a Wyoming limited liability company; Pacwest Financial Services LLC, a California limited liability company; and Does 10 through 50, inclusive, Defendants.
No. MCC1500325
Superior court of the state of California County of Riverside



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**December 1, 2017 – Testimony by Oral Deposition**
Universal Engraving, Inc.,Plaintiff, vs.
Polsinelli PC, and Monica M. Fanning, Eric E. Packel, Anthony J. Romano, and
Donald C. Stevens, Defendants.
No. 1616-CV09292
The District Court of Jackson County, Missouri

**August 8, 2017 – Testimony by Appearance**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**July 18, 2017 – Testimony by Supplemental Expert Report**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**June 29, 2017 – Testimony by Oral Deposition**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**June 9, 2017 – Testimony by Supplemental Declaration**
D & D, LLP, Plaintiff, vs.
Goldfarb PLLC and H.P.L., Defendants.
No. DC 16-07193
The District Court of Dallas County, Texas, 116th Judicial District

**May 11, 2017 – Testimony by Declaration**
D & D, LLP, Plaintiff, vs.
Goldfarb PLLC and H.P.L., Defendants.
No. DC 16-07193
The District Court of Dallas County, Texas, 116th Judicial District

**April 28, 2017 – Testimony by Expert Report**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**April 11, 2017 – Testimony by Oral Deposition**
William T. Obeid, Directly and Derivatively on Behalf of Gemini Real Estate Advisors, LLC, et
al., Plaintiff, vs.
Christopher La Mack, et al., Defendants and Gemini Real Estate Advisors, LLC, et al.,
Nominal Defendants
No. 14-CV-06498-LTS
United States Southern District Court, for the District of New York, New York



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**February 27, 2017 – Testimony by Expert Report**
William T. Obeid, Directly and Derivatively on Behalf of Gemini Real Estate Advisors, LLC, et al., Plaintiff, vs.
Christopher La Mack, et al., Defendants and Gemini Real Estate Advisors, LLC, et al., Nominal Defendants
No. 14-CV-06498-LTS
United States Southern District Court, for the District of New York, New York

**September 2, 2016 – Testimony by Expert Report via Affidavit**
Ashley Tyler Hokanson, and Jamila Cutliff Hokanson, Plaintiff vs.
United Investexusa 2, LLC D/B/A New Western Acquisitions; Rodolfo Gonzales; and Zachary Steinberg, defendants.
No. CC-15-03602-B
The District Court of Dallas County, Texas, County Court at Law Number 2

**June 30, 2015 – Testimony by Expert Report via Affidavit**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
No. 2014cv31356
United States District Court, for the District of Denver County, Colorado

**March 9, 2015 – Testimony by Rebuttal Report**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
No. 2014cv31356
United States District Court, for the District of Denver County, Colorado

**January 19, 2015 – Testimony by Expert Report**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
2014cv31356
United States District Court, for the District of Denver County, Colorado

**April 11, 2012 - Trial Testimony**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**September 1, 2009 - Testimony by Supplemental Expert Report**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**August 14, 2009 - Testimony by Oral Deposition**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**July 17, 2009 - Testimony by Expert Report**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

CAUSE NO. 2022-51667

|  |  |  |  |
|---|---|---|---|
| _____ | ) | | |
| W&T OFFSHORE, INC. | ) | | |
| | ) | | |
| *Plaintiff*, | ) | | |
| | ) | IN THE DISTRICT COURT OF | |
| v. | ) | | |
| | ) | | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS | |
| SECURE CLOUD, LLC | ) | | |
| | ) | | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT | |
| _____ | | | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that Plaintiff W&T Offshore, Inc.'s Emergency Motion

For A Protective Order And Motion For Appointment Of Master is set for oral hearing on

**Monday, September 12, 2022, at 3:30 p.m.** in the 151st Judicial District Court of Harris

County, Texas.

Dated:  August 31, 2022                     Respectfully submitted,

/s/  *Benjamin L. Hall, III*
Benjamin L. Hall, III
TBN: 08743745
The Hall Law Group, PLLC
530 Lovett Blvd.
Houston, Tx 77006
713.942.9600 (o)
713.942.9566 (f)
Bhall@thlf.us

*Attorney for W&T Offshore, Inc.*

## **CERTIFICATE OF SERVICE**

I certify that a true and correct copy of this document was served via the Court's electronic filing system on counsel for Defendants on August 31, 2022.

/s/ *Benjamin L. Hall, III*
Benjamin L. Hall, III

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S OBJECTION TO AND MOTION FOR RECONSIDERATION OF THE COURT'S ORDER EXTENDING TRO AND RESCHEDULING TEMPORARY INJUNCTION HEARING, MOTION FOR EMERGENCY STATUS CONFERENCE, AND, ALTERNATIVELY, <u>MOTION TO MODIFY ORDER EXTENDING TRO</u>**

Defendants, All About IT, Inc. ("<u>AAIT</u>") and Secure Cloud, LLC ("<u>Secure Cloud</u>") (sometimes collectively referred to herein for convenience, "<u>AAIT</u>"[1]), file the following Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, alternatively, Motion to Modify Order Extending TRO.

**I.**
**SUMMARY**

AAIT objects to the Court's August 26, 2022 Order extending the temporary restraining order (the "<u>Extension Order</u>") and moves it to reconsider its extension of the temporary restraining order for the following reasons:

(1) **The Extension Order does not comply with Rule 680:** Texas law provides that a TRO can *only* be extended, with good cause shown, by fourteen (14) days. The latest possible effective date of the original TRO (signed by Judge Garrison on August 19, 2022) was September 2, 2022. Thus, the last permissible date that the TRO could be extended is fourteen (14) days later—i.e., September 16, 2022. Pursuant to Rule 680,

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

the TRO will expire at midnight on September 16, 2022.  AAIT objects to the Extension Order because it exceeds the maximum time for an extension allowed under Texas law.

(2)   **The Extension Order forces AAIT to continue providing service to W&T without a contractual or legal obligation to do so.**  As conceded by W&T, no written contract exists requiring AAIT to continue providing IT/communication services to W&T. On August 3, 2022, AAIT provided W&T with written notice that it would cease providing IT/communication services on September 2, 2022. Rather than transition IT/communication services to another provider, W&T has asked this Court to force AAIT to continue to provide such services in the absence of legal authority to do so. AAIT does not consent to continuing to provide IT/communication services to W&T, and the Court's Extension Order forces AAIT to provide services without a legitimate legal basis.

(3)   **W&T's bond is wildly inadequate.** Given the Court's extension of the TRO and AAIT's associated opportunity cost in being forced to continue providing IT services to W&T at a discount, W&T's $500 bond is insufficient. The Court should, at the very least, modify the Extension Order to drastically increase the amount of the bond.

For these reasons, AAIT respectfully requests that the Court reconsider its Extension Order and that it hold an emergency status conference regarding the same.

## II.
### PROCEDURAL BACKGROUND

**A.    AAIT's pre-suit relationship with W&T.**

AAIT has been W&T's IT service provider for approximately ten (10) years and has provided W&T with around-the-clock support from eight to ten on-site engineers, backend support of approximately twenty additional engineers, platforms support, and full network, phone, internet, and email connectivity. These services were provided to W&T on a service-at-will relationship, with no contractual obligation by either party to continue their relationship as it relates to the provision of IT services. In July 2022, W&T hired a Chief Information Officer—Mr. Alvin Haynes—who began an overhaul of W&T's IT systems, with a focus on taking over the IT services AAIT historically provided. Following an influx of outrageous demands from W&T, on July 28,

2022, AAIT suggested the parties discuss terminating their business relationship and a transition of AAIT's services to a third party or to W&T for internal handling.

On August 3, 2022, AAIT provided W&T with formal written notice that it would cease providing of IT/communication services to W&T on September 3, 2022. AAIT specifically requested that if W&T was aware of any reason that AAIT could not terminate its services, that W&T provide such reasoning—W&T never responded, much less formulated a single reason that AAIT was not entitled to terminate its services. In anticipation of its termination of services to W&T, AAIT continued to advise W&T of the need to prepare for a transition of services and to provide it certain information for the transfer of assets and equipment. To date, W&T has wholly failed to prepare itself for AAIT's termination of services on September 2, 2022, instead opting to have this Court force AAIT to continue providing services in the absence of any written agreement or other legal obligation requiring it to do so.

## B.     The lawsuit, TRO, and Extension Order.

On August 19, 2022, W&T filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction, seeking expedited discovery and various other forms of relief veiled as a temporary restraining order. W&T sought the entry of an eight-page order that required AAIT to perform various steps toward the transition, totaling **_twenty-seven (27)_** different directives, including creating and providing lists of information, physically transferring hardware and other items to W&T, creating documents to aid W&T, and transitioning IT services to another provider.[2] Rather than granting the inordinate relief requested by W&T, Judge Garrison entered an **agreed** order of the parties (the "<u>TRO</u>") whereby AAIT and Secure Cloud agreed to provide W&T, until August 29, 2022, with the same services

---

[2] _See_ W&T's Proposed Temporary Restraining Order (filed August 19, 2022).

they provided as of June 30, 2022[3]—i.e., do exactly what AAIT had already committed to do until September 2, 2022.

The TRO requires that AAIT continue to provide W&T the same IT/communication services that it had historically provided:

> *and this finally to the purpose of*
>
> 2. W&T's application for a temporary restraining order is therefore **GRANTED AND AGREED TO AS FOLLOWS:** It is **AGREED AND ORDERED** that Defendants, All About IT, Inc. and Secure Cloud, LLC (and their owners, employees, representatives, and agents) are to provide and W&T Offshore, Inc. agrees to accept the same level of services that Defendants were providing to W&T Offshore, Inc up to and including the date of June 30, 2022. Also, W&T Offshore, Inc. agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022. It is the express intent of this order to return the parties to the status quo *ante* that existed between the parties as of June 30, 2022. No party shall take any action or fail to perform any action that would interfere with, frustrate or prejudice the interests of either[4]

The TRO set the temporary injunction hearing for August 29, 2022.[5]

On Friday, August 26, 2022, this Court entered the Extension Order, resetting the temporary injunction hearing for September 20, 2022 at 9:00 a.m., and appearing to extend the TRO until said date:

> **ORDER EXTENDING TRO AND RESCHEDULING TEMPORARY INJUNCTION HEARING**
>
> The Temporary Restraining Order in this case, entered on August 19, 2022, at 4:16 p.m., is extended. The Temporary Injunction Hearing is rescheduled to September 20, 2022
>
> at 9:00 a.m./p.m. IN PERSON[6]

---

[3] *See* Agreed Order (signed August 19, 2022).
[4] *See* TRO (signed August 19, 2022).
[5] *See* TRO (signed August 19, 2022).
[6] *See* Extension Order (signed August 26, 2022).

4

By entering the Extension Order, the Court is forcing AAIT to continue to provide W&T with IT/communication services until September 20, 2022, even though there is no agreement between the parties, or other legal obligation requiring AAIT to continue to provide W&T with IT services. To be clear, AAIT is willing and has *always* been willing to provide W&T its confidential information—and this Court has already ruled on what information AAIT needs to provide to W&T.

AAIT respectfully requests that the Court reconsider the Extension Order and hold an emergency status conference regarding the Extension Order and the expiration of the TRO on September 16, 2022 pursuant to Rule 680.

### III.
### ARGUMENT & AUTHORITIES

**A.** **Governing Texas law.**

Rule 680 of the Texas Rules of Civil Procedure governs injunctive relief including temporary restraining orders. Rule 680 provides that a temporary restraining order "shall expire by its terms within such time after signing, **not to exceed fourteen days**, as the court fixes[.]" TEX. R. CIV. P. 680 (emphasis added). A temporary restraining order must state the date that the order expires and set a hearing on a temporary injunction. *Id.*; *see also In re Office of Attorney Gen.*, 257 S.W.3d 695, 697 (Tex. 2008).

As for extensions of a temporary restraining order, a temporary restraining order may only be extended a single time for a maximum of fourteen (14) days, unless "the party against whom the order is directed consents that it may be extended for a longer period." *In re Hallas*, No. 03-22-00413-CV, 2022 WL 3650090, at *2 (Tex. App.—Austin Aug. 25, 2022, no pet. h.) (quoting TEX. R. CIV. P. 680); *see also In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204–05 (Tex. 2002) ("We hold that Rule 680 governs an extension of a temporary restraining order,

5

whether issued with or without notice, and permits but one extension for no longer than fourteen days unless the restrained party agrees to a longer extension.").

**B.      The Extension Order does not meet the requirements of Rule 680.**

The Extension Order does not comply with Texas law because it (1) fails to state the date that the Extension Order expires, and (2) purports to extend the TRO beyond fourteen (14) days without AAIT's consent.

      *(i)*      *The Extension Order extends the TRO beyond the limits set forth under the Texas Rules.*

The Extension Order purports to extend the TRO **eighteen (18) days** without AAIT's consent. As explained above, Texas law provides that a temporary restraining order may only be extended a single time for a maximum of fourteen (14) days unless "the party against whom the order is directed consents that it may be extended for a longer period." *In re Hallas*, No. 03-22-00413-CV, 2022 WL 3650090, at *2 (quoting TEX. R. CIV. P. 680). Here, AAIT has not consented to any extension, much less an eighteen-day extension. Therefore, the longest extension the Court was permitted to grant is one for fourteen (14) days.

As stated above, Judge Garrison signed the agreed TRO on August 19, 2022 and set the temporary injunction hearing for August 29, 2022.[7] Even assuming that the TRO did not expire on August 29, 2022, and instead lasted fourteen (14) days from August 19, 2022—i.e., September 2, 2022—a fourteen-day extension from September 2, 2022 would only last until September 16, 2022. Here, the Court, without AAIT's consent and subject to its objection, entered the Extension Order, extending the TRO for eighteen (18) days until September 20, 2022. This eighteen-day extension does not comport with Texas law and AAIT respectfully requests that the Court reconsider its Extension Order.

---

[7] *See* TRO (signed August 19, 2022).

*(ii)      The Extension Order does not state the date it will expire.*

By failing to state the date by which it will expire, the Extension Order fails to comport with Rule 680's requirements. *See In re Office of Attorney Gen.*, 257 S.W.3d at 697. Rather, the Extension Order merely states that the "Temporary Restraining Order in this case … is extended":

---

**ORDER EXTENDING  TRO AND
RESCHEDULING TEMPORARY INJUNCTION HEARING**

The Temporary Restraining Order in this case, entered on August 19, 2022, at 4:16 p.m.,

is extended.  The Temporary Injunction Hearing is rescheduled to  September 20               , 2022

at  9:00    a.m./p.m.  IN PERSON

---

Thus, the Extension Order is facially invalid. AAIT respectfully requests that the Court reconsider its entry of the Extension Order.

**C.      The Extension Order forces AAIT to perform services and amounts to price control.**

W&T readily admits that there is no written agreement governing AAIT's provision of IT/communication services. Per its August 3, 2022 Notice of Termination and to allow for a smooth transition, AAIT committed to continue to provide IT services to W&T until September 2, 2022. The TRO, agreed to by the parties, confirmed AAIT's commitment until August 29, 2022. The Extension Order imposes a legally-binding obligation on AAIT to continue providing IT/communication services to W&T in the absence of any contractual or legal obligation to do so, and past the permissible fourteen-day extension afforded to temporary restraining orders under the Texas Rules.

W&T, by way of the TRO and the Extension Order, is utilizing this Court's power to force AAIT to perform unconsented to labor and to, for all intents and purposes, impose price controls

upon AAIT. Specifically, the TRO provides that W&T is to pay AAIT at the same rates as it did as of June 30, 2022:

> *and this finding is for purposes of*
>
> 2. W&T's application for a temporary restraining order is therefore **GRANTED AND AGREED TO AS FOLLOWS**: It is **AGREED AND ORDERED** that Defendants, All About IT, Inc. and Secure Cloud, LLC (and their owners, employees, representatives, and agents) are to provide and W&T Offshore, Inc. agrees to accept the same level of services that Defendants were providing to W&T Offshore, Inc up to and including the date of June 30, 2022. Also, W&T Offshore, Inc. agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022. It is the express intent of this order to return the parties to the status quo *ante* that existed between the parties as of June 30, 2022. No party shall take any action or fail to perform any action that would interfere with, frustrate or prejudice the interests of either [8]

AAIT only agreed to accept payment at the same rate as it did on June 30, 2022 due to its expectation that it was only required to continue providing IT services to W&T until September 2, 2022 at the latest. By entering the Extension Order, however, not only is the Court forcing AAIT to continue providing W&T with IT services without its consent, but is also forcing AAIT to continue accepting payments at a non-negotiated rate. AAIT is being deprived of its right in this free market economy to take various factors—e.g., inflation's adverse impact on AAIT's costs of doing business—in setting the prices it will charge for its services.

AAIT respectfully requests that the Court reconsider its Extension Order and hold an emergency status conference regarding the same.

**D.    In the alternative, the Court should modify the Extension Order to increase the bond.**

Alternatively, the Court should hold an emergency hearing to consider a modification to the Extension Order to drastically increase the amount of the bond currently set at a mere $500.[9]

---

[8] *See* TRO, at p. 1.
[9] *See* TRO, at p. 2 ("W&T is to post a surety or cash bond with the Clerk of the Court in the amount of $500.00.").

It is well recognized that the purpose of an injunction bond is to secure payment to the party against whom the injunction is granted of the amount of damages that it would suffer if the injunction is secured improperly or if the injunction is dissolved. *See, e.g., Montemayor v. Ortiz*, 208 S.W.3d 627 (Tex. App.—Corpus Christi 2006, pet. denied) (explaining that purpose of injunction bond is to protect defendant from harm he may sustain as result of temporary relief granted upon reduced showing required of injunction plaintiff).

Here, given the Extension Order and AAIT's associated opportunity cost of continuing to provide IT services to W&T at a discounted rate, $500 is wildly insufficient to adequately compensate AAIT for the amount of damages that it would suffer if W&T's injunctive relief is secured improperly, which it was here. AAIT requests that in the event the Court does not reconsider and withdraw its Extension Order, that the Court hold a hearing to modify the Extension Order to increase W&T's bond.

## **REQUEST FOR RELIEF**

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court reconsider its entry of the Extension Order, hold an emergency status conference regarding the same, and that the Court award Defendants all further relief that they may show themselves justly entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

– and –

**GIBSON | WUNDER, P.C.**

By:  _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on August 31, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

11

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## **ORDER**

On this day, the Court considered Defendants All About IT, Inc. ("AAIT") and Secure Cloud, LLC's ("Secure Cloud") (together, "AAIT") Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, alternatively, Motion to Modify Order Extending TRO (filed August 31, 2022) (the "Motion"). After considering the Motion, the response of Plaintiff W&T Offshore, Inc., the arguments of counsel, and the relevant authorities, the Court is of the opinion that the Motion should be GRANTED.

It is, therefore, ORDERED that the Motion is GRANTED.

It is further ORDERED that the Court's *Order Extending TRO and Rescheduling Temporary Injunction Hearing* (entered August 26, 2022) is withdrawn.

It is further ORDERED that the *Temporary Restraining Order* (entered August 19, 2022) is expired and has no force or effect.

It is further ORDERED that for the services that AAIT and Secure Cloud provided to W&T after September 2, 2022 under the *Temporary Restraining Order*, and for the services that AAIT and Secure Cloud continue to provide to W&T, W&T shall pay AAIT and Secure Cloud $_____ per day while said services were, and are, provided.

It is further ORDERED that the temporary injunction hearing in this matter shall take place on September 20, 2022 at 9:00 a.m. in person.

It is further ORDERED that W&T shall post a surety or cash bond with the Clerk of the Court in the amount of $_____.

Signed this _____ day of _____, 2022.

_____
The Honorable Mike Engelhart, Presiding

2

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**AGREED MOTION FOR ENTRY OF**
**JOINT STIPULATED CONFIDENTIALITY ORDER**

Plaintiff, W&T Offshore, Inc., and Defendants, All About IT, Inc. and Secure Cloud, LLC (collectively, the "Parties"), file this Agreed Motion for Entry of Joint Stipulated Confidentiality Order.

In connection with the above-captioned case, the Parties anticipate the production of documents and other information that will be regarded as confidential by the producing party. It is also anticipated that pleadings and other discovery papers in this case may include reference to documents regarded as confidential and proprietary by the party producing them or otherwise refer to confidential and proprietary information.

As such, the Parties have reached an agreement with respect to the production of such information memorialized in the Joint Stipulated Confidentiality Order attached hereto as **Exhibit**

**A**. Accordingly, the Parties respectfully request that the Court enter the Joint Stipulated Confidentiality Order.

Dated: September 1, 2022.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

– and –

**GIBSON | WUNDER, P.C.**

By:  _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

**THE HALL LAW GROUP, PLLC**

By:  _/s/Benjamin L. Hall, III_
    Benjamin L. Hall, III
    TBN: 08743745
    530 Lovett Blvd.
    Houston, Texas 77006
    713.942.9600 (o)
    713.942.9566 (f)
    bhall@thlf.us

**ATTORNEY FOR PLAINTIFF
W&T OFFSHORE, INC.**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on the 1st day of September 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall, III
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

5

# EXHIBIT A

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## JOINT STIPULATED CONFIDENTIALITY ORDER

WHEREAS, it is anticipated that Plaintiff, W&T Offshore, Inc., and Defendants, All About IT, Inc. and Secure Cloud, LLC (collectively, the "Parties," and each individually, a "Party"), will be producing documents and supplying information during the discovery phase of this action that a Party may regard as proprietary or otherwise confidential;

WHEREAS, it is also anticipated that court filings and discovery papers in this matter will include references to documents and/or information that a Party may regard as proprietary or otherwise confidential;

WHEREAS, it is further anticipated that deposition testimony in this matter will include references to documents and/or information that a Party may regard as proprietary or otherwise confidential;

WHEREAS, the Parties to this action desire to protect the confidentiality of any such proprietary or otherwise confidential documents or testimony furnished in the course of such actions or proceedings;

IT IS HEREBY stipulated and made an Order of the Court that, until this Joint Stipulated Confidentiality Order is amended or superseded, all Parties and their employees who are provided with Confidential Information (as hereinafter defined) shall follow the procedures set forth below with respect to certain documents, information, or testimony provided or exchanged in these or related actions or proceedings.

**A.      Scope**

1.      This Order shall govern all documents and information produced by any Party or persons or entities not a party to this action, whether produced informally or pursuant to a formal discovery request and shall also include all documents or information contained in a document, or information revealed during a deposition or in any interrogatory answer or otherwise disclosed in discovery.

2.      Nothing in this Order precludes a Party from seeking relief from the Court with regard to the production of documents or information.

3.      This Order does not alter any confidentiality obligations that a Party may have at law or under another agreement.

4.      Nothing in this Order shall be construed as an agreement or acknowledgment by the non-producing Party that any document, testimony, or other information designated as "Confidential" or "Confidential—Attorneys' Eyes Only" constitutes a trade secret or is in fact confidential.

**B.      Confidential Information**

1.      Materials that contain sensitive information may be designated as "Confidential" or as "Confidential – Attorneys' Eyes Only." The producing Party will make such a designation only as to those documents or discovery responses that are in good faith believed to contain or constitute valuable confidential, proprietary, trade secret, or other sensitive information. Materials so designated are referred to herein as "Confidential Information."

2.      Documents shall be designated as Confidential Information by marking or stamping each page of any such document "Confidential," "Confidential—Attorney's Eyes Only," or identifying such documents by bates production numbers or other unequivocal identifier in writing to each Party receiving the Confidential Information. In lieu of marking the originals of documents, any Party may mark the copies of such documents that are produced or exchanged.

3.      With respect to testimony that constitutes or references Confidential Information, confidential portions of the transcript may be designated as such on the record at the time the testimony is given, and additional portions of the testimony may be designated as "Confidential" or "Confidential – Attorneys' Eyes Only" within ten (10) days after receipt of the transcript.  Until the ten (10) day period has expired, the entire transcript shall be treated as Confidential Information. In addition, any deposition in which documents designated as containing Confidential Information are marked as exhibits or shown to the deponent or otherwise employed shall be considered confidential and subject to the provisions of this Order.

**C.     Treatment of Confidential Information**

1.      Except as otherwise provided in this or subsequent court orders, documents designated as "Confidential" shall not be disclosed or shown to anyone other than:

(a)      The Parties, the employees of such Parties, or the agents of the Parties (or the parent or beneficial owner of such Party) to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

(b)      Outside counsel for the Parties, the employees of such attorneys, and agents of such attorneys, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

(c)      Inside counsel for each Party and the employees of such attorneys or support staff of inside counsel employed by the Parties themselves, including but not limited to paralegals and e-discovery collection staff, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

(d)      Persons employed by any Party or its attorneys solely for the purpose of assisting in the preparation of this action for trial, including but not limited to experts, their staff, and support personnel to whom it is necessary that Confidential Information be shown for purposes of assisting in such preparation;

(e)      The Court or persons employed by the Court and the jury;

(f)      Duly qualified court reporters and videographers participating in these proceedings;

(g)      Persons who were the authors or recipients of the documents in the ordinary course of business;

(h)      Witnesses in preparation for or in the course of depositions or the trial of this matter; and

(i)      Persons who, in addition to those identified above, are permitted access by order of the Court or upon stipulation of the Party that produced or disclosed the Confidential Information, after notice to all Parties and an opportunity has been had to object.

2.      In the event that documents or testimony are designated as "Confidential— Attorneys' Eyes Only," such information shall not be disclosed or shown to anyone other than the persons described in paragraph C.1(b), C.1(d), C.1(e), C.1(f), C.1(g) and C.1(i).

To the extent a Party wishes to disclose or show documents or testimony designated as "Confidential—Attorneys' Eyes Only" to the persons described in paragraph C.1(d), the Party wishing to make such disclosure shall provide written notice to the other Party and provide said Party an opportunity to assert an objection, if any. If the Parties are unable to resolve the objection, the Court shall resolve the same. Such information may also be disclosed to the support staff described in C.1(c) only if necessary to process incoming document productions for review.

3.     Confidential Information shall be used by the receiving Party solely for the prosecution and/or defense of this litigation and only as provided in this Joint Stipulated Confidentiality Order. Confidential Information shall not be used or employed for the purpose of any other action, use or proceeding, or for any commercial, business or other purpose whatsoever. It is specifically recognized that information marked "Confidential" or "Confidential—Attorneys' Eyes Only", shall not be utilized by the receiving Party for any purpose other than the prosecution and/or defense of this litigation.

4.     No person shall disclose Confidential Information to any third party, except as provided by this Order, without prior written notice of the specific disclosures and persons involved to the producing Party and any other person or entity which claims the information is Confidential Information. Such disclosure shall not be made until the Party seeking to disclose the document provides 10 days written notice to the person or Party claiming information is Confidential Information, although this may not be the "producing party", and (1) such Party consents to the disclosure; or (2) the court resolves any objections to the disclosure, whichever is earlier. Any objections to such disclosure shall be made in

writing by the producing Party within 10 days after receipt of notice of any intent to disclose.

5.      Notwithstanding anything to the contrary in the foregoing paragraphs, any Party may use without restriction the following documents, regardless of whether such document or information has been designated by the producing Party as Confidential Information:

      (a)      its own documents or information; and

      (b)      documents or information developed or obtained by a receiving Party independently of discovery in these or related actions or proceedings.

6.      Each person given access to designated Confidential Information shall be advised that the information is being disclosed pursuant and subject to the terms of this Joint Stipulated Confidentiality Order and may not be disclosed other than as provided by this Order. To the extent such person is neither a Party nor employed by a Party, such person must sign an agreement to be bound to this order before any Confidential Information is disclosed.

7.      No Confidential Information, including but not limited to transcripts, depositions, exhibits, and pleadings, may be filed with the Court or used in a hearing unless the Party seeking to file or use the Confidential Information has provided, at least five (5) business days before the intended use, written notice to all Parties and any person claiming the information is Confidential Information, of its intent to use any information designated as Confidential Information.  This pre-filing notice must specify the specific information that the Party intends to file with the Court, and allow the other Party's counsel sufficient time to seek a temporary or permanent sealing order, if desired, pursuant to Rule 76a.

8.      In the event of an emergency, a Party seeking to file or use Confidential Information shall not file or use any such information but shall instead tender to the Court for *in camera*

inspection the Confidential Information that it seeks to file and seek a ruling permitting the use of the material. During the pendency of a motion for protection or in the event of an emergency, the Parties must treat Confidential Information in dispute as subject to this Confidentiality Order until the Court enters an order determining otherwise.

9.      The inadvertent or unintentional disclosure of Confidential Information, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver, in whole or in part, of a Party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto on the same or related subject matter if, within ten (10) days of discovering the inadvertent failure to designate the material as confidential, the person or entity that provided the Confidential Information identifies the material produced and amends the designation.

10.     Pursuant to Rule 511 of the Texas Rules of Evidence and Rule 193.3(d) of the Texas Rules of Civil Procedure, the inadvertent production of any material or information shall not waive any claim that such material is privileged or protected from disclosure under the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection, including, but not limited to, the common interest privilege or settlement privilege ("**Privileged Material**"). If a producing Party believes that Privileged Material was inadvertently produced, the producing Party shall promptly notify in writing any Party that received such material of the claim of privilege and the basis for such claim to the extent required by Rule 193.3(d) of the Texas rules of Civil Procedure (the "**Privileged Material Notice**"). After receipt of a Privileged Material Notice, the Party to whom the deemed Privileged Material was produced (i) shall use commercially reasonable efforts to promptly return, sequester or destroy the Privileged Material; (ii) must not use or

7

disclose such material until the claim is resolved; and (iii) may notify the producing Party whether it objects to the designation of such material as privileged or protected. Following the receipt of any objection, the objecting Party and the producing Party shall promptly meet and confer in an effort to resolve any disagreement regarding the producing Party's designation of the material as privileged or protected. If the parties cannot resolve their disagreement, the objecting Party may present the issue to the Court in accordance with Rule 193.4 of the Texas Rules of Civil Procedure.

11.     Within thirty (30) days after the settlement or final adjudication, including appeals, of the action or actions in which the documents have been produced, all Confidential Information supplied by the Parties and non-parties and all copies thereof shall, upon request, be certified to have been destroyed or deleted. However, it is understood that each Party may retain a complete file of all litigation documents filed with the Court in these actions and that work product in the possession or control of counsel for any Party that reflects or includes information derived from documents or testimony designated as confidential will not be destroyed or deleted.

Any dispute concerning the application of this Joint Stipulated Confidentiality Order shall be heard by the Court upon motion by the objecting Party. This Joint Stipulated Confidentiality Order in no manner circumvents the requirements of Rule 76a of the Texas Rules of Civil Procedure. Any abuse of this Joint Stipulated Confidentiality Order may result in sanctions/costs being taxed against the abusive Party.


**SIGNED _____**, 2022.


_____

**PRESIDING JUDGE**

8

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## NOTICE OF HEARING

Please take notice that Defendants, All About IT, Inc. and Secure Cloud, LLC's Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, alternatively, Motion to Modify Order Extending TRO (filed August 31, 2022) is set for oral hearing on **Monday, September 12, 2022, at 3:30 p.m.** before the 151st Judicial District Court of Harris County, Texas.

Dated: September 1, 2022.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  */s/ Scott D. Ellis*
　　Scott D. Ellis
　　Texas Bar No. 24044606
　　sellis@foley.com
　　Rey Rodriguez, IV
　　Texas Bar No. 24107357
　　rrodrigueziv@foley.com
　　1000 Louisiana Street, Suite 2000
　　Houston, Texas 77002-2099
　　Telephone:  (713) 276-5500
　　Facsimile:  (713) 276-5555

　　　　　– and  –

**GIBSON | WUNDER, P.C.**

By:  */s/ Ethan Gibson*
　　Ethan Gibson
　　Texas Bar No. 24073131
　　ethan@gibsonwunder.com
　　4 Houston Center
　　1221 Lamar St. Ste. 1001
　　Houston, Texas 77010
　　Main: (713) 897-8008
　　Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

2

## CERTIFICATE OF CONFERENCE

This is to certify that All About IT, Inc. and Secure Cloud, LLC's counsel has conferred with W&T Offshore, Inc.'s counsel regarding the relief sought in All About IT, Inc. and Secure Cloud, LLC's Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, alternatively, Motion to Modify Order Extending TRO (filed August 31, 2022), and W&T Offshore, Inc.'s counsel indicated opposition to the same.

_/s/ Rey Rodriguez, IV_
Rey Rodriguez, IV


## CERTIFICATE OF SERVICE

This is to certify that on September 1, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_
Rey Rodriguez, IV

3

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants. | § | 151ST JUDICIAL DISTRICT |

**ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S MOTION TO ENFORCE
THE PARTIES' STIPULATED CONFIDENTIALITY ORDER**

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), file the following Motion to Enforce the Parties' Stipulated Confidentiality Order.

**I.
SUMMARY OF MOTION**

In contravention of the parties' September 2, 2022 Joint Stipulated Confidentiality Order, Plaintiff, W&T Offshore, Inc. ("W&T"), seeks to violate the terms and purpose of the Stipulated Confidentiality Order and disclose AAIT's trade secret "Confidential-Attorneys' Eyes Only" ("AEO") documents to W&T's Chief Information Officer, Alvin Haynes, by simply referring to him as an "expert." The Joint Stipulated Confidentiality Order is very clear and provides that "**Persons employed** by any Party or its attorneys **solely for the purpose of assisting in the preparation of this action for trial**, including but not limited to experts… [may review AEO documents.]." Mr. Haynes is W&T's CIO. He is not, like an expert would be, employed by W&T **solely for the purpose of assisting in the preparation of this action**. Thus, he is not permitted

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

to review AEO documents. This is a blatant attempt by W&T to provide its CIO with Defendants' confidential trade secret information.

By this Motion, AAIT seeks an order directing W&T to comply with the Joint Stipulated Confidentiality Order and to refrain from providing documents designated as AEO to any of its employees, including its CIO Mr. Haynes.

## II.
### BACKGROUND

As noted in AAIT's Response to W&T's Motion for Expedited Discovery,[2] by this lawsuit—and fabricated "emergency"—W&T seeks to improperly use the expedited discovery procedure to gain access to AAIT's propriety network design and trade secrets. To alleviate concerns over the disclosure of trade secret information during discovery, the parties negotiated, agreed upon, and requested entry of a Joint Stipulated Confidentiality Order, which was filed by W&T on September 2, 2022—before the parties exchanged documents later that day.

As with most confidentiality orders, the Joint Stipulated Confidentiality Order permits the parties to designate sensitive documents as (1) "Confidential" or (2) "Confidential—Attorneys' Eyes Only." "Confidential" materials can be viewed by a larger group of people, while distribution of "Confidential-Attorneys Eyes Only" material is understandably more restricted. Section C of the parties' Joint Stipulated Confidentiality Order very clearly sets forth the persons permitted to view documents that are designated as AEO:

---

[2] Defendants' Response to Plaintiff's Expedited Discovery, filed on August 24, 2022, is incorporated herein.

1.  Except as otherwise provided in this or subsequent court orders, documents designated as "Confidential" shall not be disclosed or shown to anyone other than:

   (a)  The Parties, the employees of such Parties, or the agents of the Parties (or the parent or beneficial owner of such Party) to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

   (b)  Outside counsel for the Parties, the employees of such attorneys, and agents of such attorneys, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

   (c)  Inside counsel for each Party and the employees of such attorneys or support staff of inside counsel employed by the Parties themselves, including but not limited to paralegals and e-discovery collection staff, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

   (d)  Persons employed by any Party or its attorneys solely for the purpose of assisting in the preparation of this action for trial, including but not limited to experts, their staff, and support personnel to whom it is necessary that Confidential Information be shown for purposes of assisting in such preparation;

   (e)  The Court or persons employed by the Court and the jury;

   (f)  Duly qualified court reporters and videographers participating in these proceedings;

   (g)  Persons who were the authors or recipients of the documents in the ordinary course of business;

   (h)  Witnesses in preparation for or in the course of depositions or the trial of this matter; and

   (i)  Persons who, in addition to those identified above, are permitted access by order of the Court or upon stipulation of the Party that produced or disclosed the Confidential Information, after notice to all Parties and an opportunity has been had to object.

2.  In the event that documents or testimony are designated as "Confidential—Attorneys' Eyes Only," such information shall not be disclosed or shown to anyone other than the persons described in paragraph C.1(b), C.1(d), C.1(e), C.1(f), C.1(g) and C.1(i).

On September 6, 2022, W&T's counsel emailed the undersigned, stating that W&T intended to provide its "corporate representatives and experts" a copy of AAIT's AEO documents "unless I hear otherwise."[3] The undersigned responded, stating that W&T should abide by the

---

[3] *See* Email String, attached as Exhibit A.

terms of the Joint Stipulated Confidentiality Order, which (1) does not permit AEO documents to be provided to "corporate representatives," but (2) *does* permit AEO documents to be provided to outside experts—experts retained "**solely for the purpose of assisting in the preparation of this action for trial.**"

W&T's counsel then countered that because W&T's CIO is an "expert" in computer systems, he should be able to review AEO documents—completely ignoring the express language and purpose  of the Stipulated Confidentiality Order, which only allows AEO documents to be provided to "**[p]ersons employed** by any Party or its attorneys **solely for the purpose of assisting in the preparation of this action for trial**, including but not limited to experts[.]" *See* Section C.1(d).  Mr. Haynes is W&T's CIO.  He is not employed by W&T "solely for the purpose of assisting in the preparation of this action for trial[.]" This is a blatant attempt by W&T to provide its CIO with AAIT's confidential trade secret information in direct violation of the parties' Stipulated Confidentiality Order.

Mr. Haynes nor any other employee of W&T should gain unauthorized access to AAIT's confidential network design that AAIT has spent millions of dollars and thousands of hours to create and implement—a network that AAIT developed to service not only W&T, but several other of their customers in the Gulf. This is the entire purpose of the Joint Stipulated Confidentiality Order.

## **REQUEST FOR RELIEF**

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court order Plaintiff to comply with the Joint Stipulated Confidentiality Order, and refrain from providing documents designated as Confidential-Attorneys' Eyes Only to any of its

employees, including Mr. Alvin Haynes, and that the Court award All About IT, Inc. and Secure Cloud, LLC all further relief that they may show themselves justly entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: */s/ Scott D. Ellis*

Scott D. Ellis
Texas Bar No. 24044606
sellis@foley.com
Rey Rodriguez, IV
Texas Bar No. 24107357
rrodrigueziv@foley.com
1000 Louisiana Street, Suite 2000
Houston, Texas 77002-2099
Telephone:  (713) 276-5500
Facsimile:  (713) 276-5555

– and –

**GIBSON | WUNDER, P.C.**

By: */s/ Ethan Gibson*

Ethan Gibson
Texas Bar No. 24073131
ethan@gibsonwunder.com
4 Houston Center
1221 Lamar St. Ste. 1001
Houston, Texas 77010
Main: (713) 897-8008
Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

5

## CERTIFICATE OF CONFERENCE

This is to certify that All About IT, Inc. and Secure Cloud, LLC's counsel has conferred with W&T Offshore, Inc.'s counsel regarding the relief sought in this Motion. W&T Offshore, Inc.'s counsel indicated opposition to the same.

_/s/ Rey Rodriguez, IV_

Rey Rodriguez, IV

## CERTIFICATE OF SERVICE

This is to certify that on September 7, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_

Rey Rodriguez, IV

**Davis, Amy**

| | |
|---|---|
| **From:** | Ellis, Scott D. |
| **Sent:** | Wednesday, September 7, 2022 7:12 AM |
| **To:** | Benjamin Hall |
| **Cc:** | Daniel S Mayerfeld; MyTeam; Rodriguez IV, Rey; Ethan Gibson; William Ridgway |
| **Subject:** | Re: W&T's update on certain discovery matters. (.40) |

Ben,

Thank you for the response.

We will file our motion today.  Until the judge rules, please do not provide Attorneys Eyes Only material to your client, Mr. Haynes.  Providing AEO material to your client because you've decided to call him an expert will undermine the purpose of the Stipulated Confidentiality Order.  If you've already provided material to Mr. Haynes, or any other employee of W&T (including Mr. Curth), please let me know immediately.

Thank you,

Scott

**Scott D. Ellis**
*Partner*

**Foley & Lardner LLP**
1000 Louisiana Street | Suite 2000
Houston, TX 77002-2099
P 713.276.5615

View My Bio
Visit Foley.com



**From:** Benjamin Hall <penman13@aol.com>
**Date:** Tuesday, September 6, 2022 at 10:33 PM
**To:** Ellis, Scott D. <sellis@foley.com>
**Cc:** Daniel S Mayerfeld <Daniel.Mayerfeld@skadden.com>, MyTeam <myteam@thlf.us>, Rodriguez IV, Rey <rrodrigueziv@foley.com>, Ethan Gibson <ethan@gibsonwunder.com>, William Ridgway <william.ridgway@skadden.com>
**Subject:** Re: W&T's update on certain discovery matters. (.40)

**** EXTERNAL EMAIL MESSAGE ****
Thank you for the question, Scott!

EXHIBIT

A

Alvin Haynes is an expert being used by us solely to assist in the preparation of this case for trial. We are not using him as an expert in any other matter and his expert services are intended to be used at trial. Thus, Section C.1(d) of the Confidentiality Order applies : "[p]ersons employed by any party or its attorneys **solely for the purpose of assisting in the preparation of this action for trial**, including but not limited to an expert…." We are "employing" and using Alvin as an expert solely for the purpose of assisting us (the attorneys) in the preparation of this case for trial.

Be well!

Ben

**Benjamin L. "Ben" Hall, III, Ph.D., J.D.**
**The Hall Law Group, PLLC**
530 Lovett Blvd.
Houston, Tx. 77006
713.942.9600 (o)
713.942.9566 (f)
bhall@thlf.us
**Board Certified: Personal Injury Trial Law (Texas)**
**Board Certified: Civil Trial Law (Texas)**
**TOP 10 BEST OF THE BEST LAWYERS (Texas)**
**TOP 10 BEST OF THE BEST PERSONAL INJURY LAW FIRMS (Texas)**
**TOP 100 TRIAL ATTORNEYS (NBA)**
**TOP 100 PERSONAL INJURY TRIAL LAWYERS  (Texas)**
**TEXAS SUPER LAWYER (*Since 2004*)**
**AV-RATED, *MARTINDALE-HUBBELL* (*Since 1998*)**
**MEMBER: ABOTA, TTLA, ABA, NBA, TLA**
**BOARD MEMBER: Texas Board of Legal Specialization (2008-2014)**


On Sep 6, 2022, at 9:41 PM, Ellis, Scott D. <sellis@foley.com> wrote:


Ben,

Which category/paragraph do you think Mr. Haynes falls into?

Scott

**Scott D. Ellis**
*Vice Chair – Energy Litigation*
*Hiring Partner – Houston*
*Adjunct Professor – Univ. of Houston Law Center*

**Foley & Lardner LLP**
1000 Louisiana Street | Suite 2000
Houston, TX 77002-2099
P 713.276.5615
View My Bio
Visit Foley.com

**From:** Benjamin Hall <penman13@aol.com>
**Sent:** Tuesday, September 6, 2022 9:37:08 PM
**To:** Ellis, Scott D. <sellis@foley.com>
**Cc:** Daniel S Mayerfeld <Daniel.Mayerfeld@skadden.com>; MyTeam <myteam@thlf.us>; Rodriguez IV,

Rey <rrodriguezlv@foley.com>; Ethan Gibson <ethan@gibsonwunder.com>
**Subject:** Re: W&T's update on certain discovery matters. (.40)

** EXTERNAL EMAIL MESSAGE **
Scott,

Feel free to call the court on this matter  if you think you must.  I think your point about the expert who
is also a corporate representative is wrong.

Ben

**Benjamin L. "Ben" Hall, III, Ph.D., J.D.**
**The Hall Law Group, PLLC**
530 Lovett Blvd.
Houston, Tx. 77006
713.942.9600 (o)
713.942.9566 (f)
bhall@thlf.us
**Board Certified: Personal Injury Trial Law (Texas)**
**Board Certified: Civil Trial Law (Texas)**
**TOP 10 BEST OF THE BEST LAWYERS (Texas)**
**TOP 10 BEST OF THE BEST PERSONAL INJURY LAW FIRMS (Texas)**
**TOP 100 TRIAL ATTORNEYS (NBA)**
**TOP 100 PERSONAL INJURY TRIAL LAWYERS  (Texas)**
**TEXAS SUPER LAWYER (*Since 2004*)**
**AV-RATED, *MARTINDALE-HUBBELL* (*Since 1998*)**
**MEMBER: ABOTA, TTLA, ABA, NBA, TLA**
**BOARD MEMBER: Texas Board of Legal Specialization (2008-2014)**


> On Sep 6, 2022, at 8:41 PM, Ellis, Scott D. <sellis@foley.com> wrote:


Ben,

Section C.1(d) of the Confidentiality Order only covers "[p]ersons employed by any
party or its attorneys **solely for the purpose of assisting in the preparation of this
action for trial**, including but not limited to an expert…."  Mr. daCrean is such a
person.  Mr. Haynes is not.  Mr. Haynes was not hired solely for the purpose of
assisting in the preparation of this action for trial. Accordingly, Mr. Haynes is not
authorized to review AEO designated documents.

Section C.1(a) of the Confidentiality Order covers "Parties, the employees of such
Parties…."  Mr. Haynes is such a person.  He is authorized by the Order to review
Confidential information (but not AEO documents) so long as the terms of the Order
are followed.

If you intend to stand on your position that Mr. Haynes is authorized to review AEO
documents, please let me know immediately.  We will seek court intervention.  Please
do not provide Mr. Haynes any AEO documents before the Judge makes a ruling on
your position.

Thank you,

Scott

**Scott D. Ellis**
*Partner*

**Foley & Lardner LLP**
1000 Louisiana Street | Suite 2000
Houston, TX 77002-2099
P 713.276.5615

View My Bio
Visit Foley.com



**From:** bhall@bhalllawfirm.com <bhall@thlf.us>
**Date:** Tuesday, September 6, 2022 at 5:25 PM
**To:** Ellis, Scott D. <sellis@foley.com>
**Cc:** Daniel S Mayerfeld <Daniel.Mayerfeld@skadden.com>, MyTeam
<myteam@thlf.us>, Rodriguez IV, Rey <rrodrigueziv@foley.com>, Ethan Gibson
<ethan@gibsonwunder.com>
**Subject:** Re: W&T's update on certain discovery matters. (.40)

**\*\* EXTERNAL EMAIL MESSAGE \*\***
Scott,

Thank you for your quick response…..deCraen is an expert on the computer network
issues in this case and the Defendants' computer service operations.  Alvin Haynes is
both a computer system expert and corporate representative.  Accordingly, we read
the agreed confidentiality order to accommodate these experts being permitted to
access documents your clients have produced.  We intend to have our experts access
all of Defendants' AEO documents with a written acknowledgment by them that they
(our experts) are subject to the terms of the agreed confidentiality order.

Hope the above clarifies our positions.

Ben

**Benjamin L. "Ben" Hall, III, Ph.D., J.D.**
**The Hall Law Group, PLLC**
530 Lovett Blvd.
Houston, Tx. 77006
713.942.9600 (o)
713.942.9566 (f)
bhall@thlf.us
**Board Certified: Personal Injury Trial Law (Texas)**

4

**Board Certified: Civil Trial Law (Texas)**
**TOP 10 BEST OF THE BEST LAWYERS (Texas)**
**TOP 10 BEST OF THE BEST PERSONAL INJURY LAW FIRMS (Texas)**
**TOP 100 TRIAL ATTORNEYS (NBA)**
**TOP 100 PERSONAL INJURY TRIAL LAWYERS  (Texas)**
**TEXAS SUPER LAWYER (*Since 2004*)**
**AV-RATED, *MARTINDALE-HUBBELL* (*Since 1998*)**
**MEMBER: ABOTA, TTLA, ABA, NBA, TLA**
**BOARD MEMBER: Texas Board of Legal Specialization (2008-2014)**

On Sep 6, 2022, at 5:15 PM, Ellis, Scott D. <sellis@foley.com> wrote:

Ben,

1. Thank you.
2. If the Rule 195.5 materials are not provided, we may object to his testimony.
3. The Stipulated Confidentiality Order does not permit Mr. Haynes to review AEO documents.  If you read the Stipulated Confidentiality Order differently, please let me know.  Pursuant to Paragraph C.2, please let me know which AEO documents you would like to show Mr. deCrean.

Scott

**Scott D. Ellis**
*Partner*

**Foley & Lardner LLP**
1000 Louisiana Street | Suite 2000
Houston, TX 77002-2099
P 713.276.5615

View My Bio
Visit Foley.com



**From:** bhall@bhalllawfirm.com <bhall@thlf.us>
**Date:** Tuesday, September 6, 2022 at 5:02 PM
**To:** Ellis, Scott D. <sellis@foley.com>
**Cc:** Daniel S Mayerfeld <Daniel.Mayerfeld@skadden.com>, MyTeam <myteam@thlf.us>, Rodriguez IV, Rey <rrodrigueziv@foley.com>, Ethan Gibson <ethan@gibsonwunder.com>
**Subject:** Re: W&T's update on certain discovery matters. (.40)

**\*\* EXTERNAL EMAIL MESSAGE \*\***

1) I will try to get you depo dates the moment we have a better grasp on Alvin's health.

2) I must disagree with your Rule 195.5 objection for purposes of these expedited proceedings, but not for trial in the case.

3) Corporate Representative Alvin Haynes and the expert John deCraen are the only other persons we intend to have review AEO documents .

Ben

**Benjamin L. "Ben" Hall, III, Ph.D., J.D.**
**The Hall Law Firm, PLLC**
**530 Lovett Blvd.**
**Houston, Tx. 77006**
**713.942.9600 (o)**
**713.942.9566 (f)**
**bhall@bhalllawfirm.com**
**Board Certified: Personal Injury Trial Law**
**Board Certified: Civil Trial Law**
**TOP 100 LAWYERS (NBA)**
**TOP 100 TRIAL LAWYERS**
**TOP 10 BEST OF BEST ATTORNEYS (Tx)**
**TOP 10 BEST OF BEST LAW FIRMS (PI)**
*Texas Super Lawyer* **(Since 2004)**
*Martindale-Hubbell AV® Rated*
**MILLION DOLLAR ADVOCATE**
**Member: ABOTA, TTLA, ABA, NBA, BLA**


On Sep 6, 2022, at 4:27 PM, Ellis, Scott D. <sellis@foley.com> wrote:


Ben,

Responses to your points below:

1. AAIT's preference was to proceed with the depositions this week. As you know, Mr. Mayerfeld informed us yesterday afternoon that Mr. Haynes is ill and will not be able to sit for W&T's corporate representative deposition scheduled for this Thursday.  We suggested that W&T present an alternative corporate representative so that we could proceed this week. If W&T cannot proceed this week, then I see no other option than to schedule the depositions back to back next week to accommodate Mr. Haynes' health.  As you know, AAIT believes that it is being forced to unlawfully

6

perform services without a contract and against its will.  Our objective is to get this resolved as soon as possible.  Please provide available dates for the corporate representative next week as soon as possible, and I will work with my client to do the same.

1. Thank you for letting me know that you've retained Mr. deCrean.  Before Mr. deCrean, or any other expert, testifies at a hearing or provides any expert opinions, I request that you provide the information outlined in Rule 195.5.  We reserve the right, of course, to object to Mr. deCrean as an expert, and to object to Mr. deCrean's testimony, if he is permitted to testify.  We also may make use of the documents produced by Defendants or W&T at any hearings or briefing in this matter.

1. We plan to abide by (as we expect that your team will) the treatment of documents as agreed in the parties' Joint Stipulated Confidentiality Order that was submitted to the Court last week.  The Joint Stipulated Confidentiality Order outlines to whom designated documents can be disclosed.  Confidential Documents have different disclosure requirements than Confidential – AEO documents.  Note that Confidential – AEO documents can be disclosed or shown to experts [See C.1(d)], but not corporate representatives, including deposition/trial witnesses [C.1(h)] or inside counsel [C.1(c)].  Also, pursuant to Paragraph C.2, please let me know which AEO documents you would like to show the persons described in C.1(d), including Mr. deCrean.  Please also let me know if there is anyone else (other than Mr. deCrean) that falls into the category of C.1(d), that you would like to show Defendants' AEO documents.

Thank you,

Scott

**Scott D. Ellis**
*Partner*

**Foley & Lardner LLP**
1000 Louisiana Street | Suite 2000
Houston, TX 77002-2099
P 713.276.5615

View My Bio
Visit Foley.com



**From:** bhall@bhalllawfirm.com <bhall@thlf.us>
**Date:** Tuesday, September 6, 2022 at 11:32 AM
**To:** Ellis, Scott D. <sellis@foley.com>, Ethan Gibson <ethan@gibsonwunder.com>
**Cc:** Daniel S Mayerfeld <Daniel.Mayerfeld@skadden.com>, Jonathan Curth <jcurth@wtoffshore.com>, MyTeam <myteam@thlf.us>
**Subject:** W&T's update on certain discovery matters. (.40)

**\*\* EXTERNAL EMAIL MESSAGE \*\***

Scott:

Sorry I have been out of the loop the last few days, but I have been kept abreast of your communications with Daniel.  Here are W&T's positions on various discovery issues you have been discussing with Daniel:

1) We agree with your request to move all corporate representative depositions to agreeable dates during the week of September 12th, with AAIT/Secure Clouds' corporate representatives going first followed in order by W&T's corporate representative.

2) We are providing you with notice that (1) John deCraen with Kroll Associates, Inc. has been engaged as an expert to assist W&T in this matter, and (2) we intend to make use of all documents produced by the parties at the upcoming September 12th and 20th hearings as well as any other hearings the court may schedule in this matter.  We will of course follow the provisions of the agreed protective order when using documents marked "Confidential" and "Highly Confidential."

3) We intend to allow our corporate representative(s) and experts to have

8

access to and review documents
marked by Defendants
as "Confidential" and "Confidential-
AEO." We assume you will do the
same on a limited basis with your
corporate representative(s). Unless I
hear otherwise, I will assume you have
no objection to this limited usage of
such documents by corporate
representative(s) and experts.

Ben

**Benjamin L. "Ben" Hall, III, Ph.D., J.D.**
**The Hall Law Group, PLLC**
530 Lovett Blvd.
Houston, Tx. 77006
713.942.9600 (o)
713.942.9566 (f)
bhall@thlf.us
**Board Certified: Personal Injury Trial Law (Texas)**
**Board Certified: Civil Trial Law (Texas)**
**TOP 10 BEST OF THE BEST LAWYERS (Texas)**
**TOP 10 BEST OF THE BEST PERSONAL INJURY LAW**
**FIRMS (Texas)**
**TOP 100 TRIAL ATTORNEYS (NBA)**
**TOP 100 PERSONAL INJURY TRIAL LAWYERS  (Texas)**
**TEXAS SUPER LAWYER (*Since 2004*)**
**AV-RATED, *MARTINDALE-HUBBELL* (*Since 1998*)**
**MEMBER: ABOTA, TTLA, ABA, NBA, TLA**
**BOARD MEMBER: Texas Board of Legal Specialization**
**(2008-2014)**

The information contained in this message, including
but not limited to any attachments, may be
confidential or protected by the attorney-client or
work-product privileges. It is not intended for
transmission to, or receipt by, any unauthorized
persons. If you have received this message in error,
please (i) do not read it, (ii) reply to the sender that
you received the message in error, and (iii) erase or
destroy the message and any attachments or copies.
Any disclosure, copying, distribution or reliance on the
contents of this message or its attachments is strictly
prohibited, and may be unlawful. Unintended
transmission does not constitute waiver of the
attorney-client privilege or any other privilege. Legal
advice contained in the preceding message is solely for
the benefit of the Foley & Lardner LLP client(s)
represented by the Firm in the particular matter that is
the subject of this message, and may not be relied

9

upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

The information contained in this message, including but not limited to any attachments, may be confidential or protected by the attorney-client or work-product privileges. It is not intended for transmission to, or receipt by, any unauthorized persons. If you have received this message in error, please (i) do not read it, (ii) reply to the sender that you received the message in error, and (iii) erase or destroy the message and any attachments or copies. Any disclosure, copying, distribution or reliance on the contents of this message or its attachments is strictly prohibited, and may be unlawful. Unintended transmission does not constitute waiver of the attorney-client privilege or any other privilege. Legal advice contained in the preceding message is solely for the benefit of the Foley & Lardner LLP client(s) represented by the Firm in the particular matter that is the subject of this

message, and may not be relied upon by any other party. Unless expressly stated otherwise, nothing contained in this message should be construed as a digital or electronic signature, nor is it intended to reflect an intention to make an agreement by electronic means.

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## <u>ORDER</u>

On this day, the Court considered Defendants All About IT, Inc. ("<u>AAIT</u>") and Secure Cloud, LLC's ("<u>Secure Cloud</u>") (together, "<u>AAIT</u>") Motion to Enforce the Parties' Stipulated Confidentiality Order (the "<u>Motion</u>"). After considering the Motion, the Stipulated Confidentiality Order agreed to and filed by the parties, the response of Plaintiff W&T Offshore, Inc., the arguments of counsel, and the relevant authorities, the Court is of the opinion that the Motion should be GRANTED.

It is, therefore, ORDERED that the Motion is GRANTED.

It is further ORDERED that W&T shall not disclose documents designated by AAIT as "Confidential-Attorneys' Eyes Only" to W&T's employees, including, but not limited to, Alvin Haynes.

Signed this _____ day of _____, 2022.


_____
The Honorable Mike Engelhart, Presiding

CAUSE NO. 2022-51667

_____

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

_____

## PLAINTIFF W&T OFFSHORE, INC.'S  FIRST SUPPLEMENT TO PLAINTIFF'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION FOR APPOINTMENT OF MASTER

TO:    THE HONORABLE MIKE ENGELHART, PRESIDING

Plaintiff files this First Supplement to Plaintiff's Emergency Motion for a Protective Order and Motion for Appointment of Master ("First Supplement") for the following reasons:

### BACKGROUND

1.      This case concerns a complex computer network that comprises Plaintiff's information technology ("IT") infrastructure, including systems for using and storing Plaintiff's emails and other electronic data related to Plaintiff's business as a publicly-traded oil and natural gas exploration and production company.  Plaintiff has paid Defendants more than $13,000,000.00 during the last 4+ years to manage and maintain the computer network, which includes, *inter alia*, various computer equipment owned by Plaintiff, as well as infrastructure that safeguards Plaintiff's trade secrets and confidential and proprietary data.

2.      Plaintiff filed this lawsuit against Defendants because, despite the impending termination of the parties' contractual relationship, Defendants have failed to contribute to an

1

orderly transition of Plaintiff's IT services to another IT services provider.  While Defendants have indicated that they intend to abruptly cease providing IT services to Plaintiff upon the expiration of the temporary restraining order ("TRO") entered in this case, Defendants have entirely failed to provide Plaintiff with information and equipment necessary to reasonably and efficiently transition control of Plaintiff's IT systems.

3.     It is not credibly disputed that if Defendants cease providing IT services in this abrupt manner, a significant amount of data — including evidence of the structure and function of Plaintiff's IT infrastructure — would be irreparably lost.  It is simply impossible to transfer the necessary operational components of the computer network in a usable format to Plaintiff within Defendants' preferred, expedited timeline.  Indeed, experts in computer infrastructure and data security that have been retained by Plaintiff have estimated it will take no less than 90 days to transfer and integrate all needed data and systems from Defendants' control to Plaintiff's internal or alternate IT operations.  Defense counsel has implicitly admitted this to be the case when he acknowledged in writing that the transfer will require the parties to "work cooperatively."  A cooperative and coordinated transfer of the operational computer network is precisely what Plaintiff is seeking in this case.

4.     Plaintiff's instant Emergency Motion is a request to preserve evidence—*i.e.*, evidence of the structure and function of Plaintiff's computer network.  This evidence — which is necessary for Plaintiff to facilitate an effective transfer of its IT infrastructure to internal resources or to another service provider — would be irreparably lost if Defendants abruptly cease providing IT services to Plaintiff.  For that reason, a failure to protect this evidence before this court can resolve this dispute would effectively deprive Plaintiff of the very relief it is trying to obtain in the case.  Defendants' rash decision to abruptly cease providing IT services is not reasonable nor

appropriate.  Computer infrastructure with the size, scale, and complexity of Plaintiff's cannot be abruptly halted within 30 days without evidence and the use of the system being lost.  Plaintiff is asking that the *evidence* and use of the operational computer network not be altered or changed until this court resolves the issues in this case or for 90 days, whichever is shorter.  As such, a protective order that preserves the operational computer network in place is necessary and appropriate, given the risk of permanent loss of material evidence.

5.      Plaintiff is offering to pay Defendants' customary service charges to maintain the use and operation of the computer network while the network is being transitioned.  Additionally, to avoid protracted court hearings that would tie up the court's docket, Plaintiff is also offering to pay for a competent and qualified special master with computer infrastructure, data security, and data collection expertise be appointed for the purpose of refereeing reasonable disagreements between Plaintiff and Defendants concerning the transition of the operational computer network to Plaintiff.  As such, Defendants will suffer no prejudice because all reasonable costs and customary expenses incurred to protect the use and operation of the computer network during the transition, as well as the costs of a master, will be paid by Plaintiff.

**PRAYER**

6.      For all the reasons outlined in Plaintiff's Emergency Motion for a Protective Order and Motion for Appointment of Master and any and all supplements filed in connection with same, Plaintiff asks the Court to grant the requested relief.  A copy of a proposed order granting Plaintiff's motion accompanies this supplement.

**NOTICE OF HEARING**

7.      This supplement will be argued at the hearing on Plaintiff's Emergency Motion for

Protective Order and Motion for Appointment of Master scheduled for September 12, 2022, at

3:30 PM or whenever the court permits its consideration.


Dated:  September 7, 2022                                  Respectfully submitted,

                                                          /s/  *Benjamin L. Hall, III*
                                                          Benjamin L. Hall, III
                                                          TBN: 08743745
                                                          The Hall Law Group, PLLC
                                                          530 Lovett Blvd.
                                                          Houston, Tx 77006
                                                          713.942.9600 (o)
                                                          713.942.9566 (f)
                                                          Bhall@thlf.us

                                                          *Attorney for W&T Offshore, Inc.*


**CERTIFICATE OF CONFERENCE**

       I certify that we have previously conferred with counsel for Defendants on Plaintiff's

Emergency Motion and Motion for Master.  Defendants oppose this motion.


                                                          /s/  *Benjamin L. Hall, III*
                                                          Benjamin L. Hall, III


**CERTIFICATE OF SERVICE**

       I certify that a true and correct copy of this document was served via the court's electronic

filing system on counsel for Defendants on September 7, 2022.


                                                          /s/  *Benjamin L. Hall, III*
                                                          Benjamin L. Hall, III

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| _____ | ) | |
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | IN THE DISTRICT COURT OF |
| | ) | |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |
| _____ | | |

**PROPOSED ORDER GRANTING PLAINTIFF W&T OFFSHORE, INC.'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION FOR <u>APPOINTMENT OF MASTER</u>**

After considering Plaintiff W&T Offshore, Inc.'s ("W&T's") Emergency Motion for a Protective Order and Motion for Appointment of Master, the Defendants' Response, and all documents on file with the Court, and finding that good cause has been shown and that this case is an exceptional case warranting issuance of this Order, the Court GRANTS the Motion as follows:

1. Defendants All About IT, Inc. and Secure Cloud, LLC, and their owners, employees, representative, and agents ("Defendants") are prohibited from ceasing to provide the same level of services that Defendants were providing to W&T up to and including the date of June 30, 2022. Defendants shall continue to provide W&T with that same level of services until September 20, 2022.

2. W&T agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022.

3. Neither W&T nor Defendants shall take any action or fail to perform any action that would interfere with, frustrate, or prejudice the interests of either party.

4. The Court appoints Andy Antunez as its master to supervise and adjudicate disputes related to the parties' ongoing efforts to transition W&T's information technology ("IT") systems back to internal resources at W&T (the "Transition Master.")

5.   The Transition Master shall ensure the orderly and timely return of W&T's possession and control over the trade secrets, equipment, data, electronic systems—including audio and telephonic systems and computer programs—and all other aspects of W&T's systems and data presently in the possession of or under the control of Defendants.

6.   The Transition Master shall have authority and power to require complete and timely compliance with its decisions.  Any party objecting to an instruction or decision of the Transition Master may raise the objection with the Court within two (2) business days of receiving notice of the issue, or the complaint will be deemed waived.  Responses to any objections brought to the Court are due three (3) business days later.  The Court may rule on the complaint without a hearing to expedite resolution of the dispute.

7.   The costs for the services of the Transition Master shall be paid by W&T, except that if the Transition Master finds that Defendants have abused the process or frustrated the purposes of the Transition Master's appointment, the Transition Master may assign costs to Defendants as it deems appropriate.

SO ORDERED.

Signed on this the _____ day of _____ 2022.


_____
The Honorable Mike Engelhart, Presiding

2

9/2/2022 9:35:38 AM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 67915693
By: HODGINS, KEELEY M
Filed: 9/2/2022 9:35:38 AM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**JOINT STIPULATED CONFIDENTIALITY ORDER**

WHEREAS, it is anticipated that Plaintiff, W&T Offshore, Inc., and Defendants, All About IT, Inc. and Secure Cloud, LLC (collectively, the "Parties," and each individually, a "Party"), will be producing documents and supplying information during the discovery phase of this action that a Party may regard as proprietary or otherwise confidential;

WHEREAS, it is also anticipated that court filings and discovery papers in this matter will include references to documents and/or information that a Party may regard as proprietary or otherwise confidential;

WHEREAS, it is further anticipated that deposition testimony in this matter will include references to documents and/or information that a Party may regard as proprietary or otherwise confidential;

WHEREAS, the Parties to this action desire to protect the confidentiality of any such proprietary or otherwise confidential documents or testimony furnished in the course of such actions or proceedings;

IT IS HEREBY stipulated and made an Order of the Court that, until this Joint Stipulated Confidentiality Order is amended or superseded, all Parties and their employees who are provided with Confidential Information (as hereinafter defined) shall follow the procedures set forth below with respect to certain documents, information, or testimony provided or exchanged in these or related actions or proceedings.

A.      **Scope**

1.      This Order shall govern all documents and information produced by any Party or persons or entities not a party to this action, whether produced informally or pursuant to a formal discovery request and shall also include all documents or information contained in a document, or information revealed during a deposition or in any interrogatory answer or otherwise disclosed in discovery.

2.      Nothing in this Order precludes a Party from seeking relief from the Court with regard to the production of documents or information.

3.      This Order does not alter any confidentiality obligations that a Party may have at law or under another agreement.

4.      Nothing in this Order shall be construed as an agreement or acknowledgment by the non-producing Party that any document, testimony, or other information designated as "Confidential" or "Confidential—Attorneys' Eyes Only" constitutes a trade secret or is in fact confidential.

B.      **Confidential Information**

1.      Materials that contain sensitive information may be designated as "Confidential" or as "Confidential – Attorneys' Eyes Only." The producing Party will make such a designation only as to those documents or discovery responses that are in good faith believed to contain or constitute valuable confidential, proprietary, trade secret, or other sensitive information. Materials so designated are referred to herein as "Confidential Information."

2.      Documents shall be designated as Confidential Information by marking or stamping each page of any such document "Confidential," "Confidential—Attorney's Eyes Only," or identifying such documents by bates production numbers or other unequivocal identifier in writing to each Party receiving the Confidential Information. In lieu of marking the originals of documents, any Party may mark the copies of such documents that are produced or exchanged.

3.      With respect to testimony that constitutes or references Confidential Information, confidential portions of the transcript may be designated as such on the record at the time the testimony is given, and additional portions of the testimony may be designated as "Confidential" or "Confidential – Attorneys' Eyes Only" within ten (10) days after receipt of the transcript.  Until the ten (10) day period has expired, the entire transcript shall be treated as Confidential Information. In addition, any deposition in which documents designated as containing Confidential Information are marked as exhibits or shown to the deponent or otherwise employed shall be considered confidential and subject to the provisions of this Order.

**C.      Treatment of Confidential Information**

1.     Except as otherwise provided in this or subsequent court orders, documents designated as "Confidential" shall not be disclosed or shown to anyone other than:

    (a)    The Parties, the employees of such Parties, or the agents of the Parties (or the parent or beneficial owner of such Party) to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

    (b)    Outside counsel for the Parties, the employees of such attorneys, and agents of such attorneys, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

    (c)    Inside counsel for each Party and the employees of such attorneys or support staff of inside counsel employed by the Parties themselves, including but not limited to paralegals and e-discovery collection staff, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;

    (d)    Persons employed by any Party or its attorneys solely for the purpose of assisting in the preparation of this action for trial, including but not limited to experts, their staff, and support personnel to whom it is necessary that Confidential Information be shown for purposes of assisting in such preparation;

    (e)    The Court or persons employed by the Court and the jury;

    (f)    Duly qualified court reporters and videographers participating in these proceedings;

    (g)    Persons who were the authors or recipients of the documents in the ordinary course of business;

    (h)    Witnesses in preparation for or in the course of depositions or the trial of this matter; and

    (i)    Persons who, in addition to those identified above, are permitted access by order of the Court or upon stipulation of the Party that produced or disclosed the Confidential Information, after notice to all Parties and an opportunity has been had to object.

2.     In the event that documents or testimony are designated as "Confidential— Attorneys' Eyes Only," such information shall not be disclosed or shown to anyone other than the persons described in paragraph C.1(b), C.1(d), C.1(e), C.1(f), C.1(g) and C.1(i).

To the extent a Party wishes to disclose or show documents or testimony designated as "Confidential—Attorneys' Eyes Only" to the persons described in paragraph C.1(d), the Party wishing to make such disclosure shall provide written notice to the other Party and provide said Party an opportunity to assert an objection, if any. If the Parties are unable to resolve the objection, the Court shall resolve the same. Such information may also be disclosed to the support staff described in C.1(c) only if necessary to process incoming document productions for review.

3.      Confidential Information shall be used by the receiving Party solely for the prosecution and/or defense of this litigation and only as provided in this Joint Stipulated Confidentiality Order. Confidential Information shall not be used or employed for the purpose of any other action, use or proceeding, or for any commercial, business or other purpose whatsoever. It is specifically recognized that information marked "Confidential" or "Confidential—Attorneys' Eyes Only", shall not be utilized by the receiving Party for any purpose other than the prosecution and/or defense of this litigation.

4.      No person shall disclose Confidential Information to any third party, except as provided by this Order, without prior written notice of the specific disclosures and persons involved to the producing Party and any other person or entity which claims the information is Confidential Information. Such disclosure shall not be made until the Party seeking to disclose the document provides 10 days written notice to the person or Party claiming information is Confidential Information, although this may not be the "producing party", and (1) such Party consents to the disclosure; or (2) the court resolves any objections to the disclosure, whichever is earlier. Any objections to such disclosure shall be made in

writing by the producing Party within 10 days after receipt of notice of any intent to disclose.

5.      Notwithstanding anything to the contrary in the foregoing paragraphs, any Party may use without restriction the following documents, regardless of whether such document or information has been designated by the producing Party as Confidential Information:

(a)      its own documents or information; and

(b)      documents or information developed or obtained by a receiving Party independently of discovery in these or related actions or proceedings.

6.      Each person given access to designated Confidential Information shall be advised that the information is being disclosed pursuant and subject to the terms of this Joint Stipulated Confidentiality Order and may not be disclosed other than as provided by this Order. To the extent such person is neither a Party nor employed by a Party, such person must sign an agreement to be bound to this order before any Confidential Information is disclosed.

7.      No Confidential Information, including but not limited to transcripts, depositions, exhibits, and pleadings, may be filed with the Court or used in a hearing unless the Party seeking to file or use the Confidential Information has provided, at least five (5) business days before the intended use, written notice to all Parties and any person claiming the information is Confidential Information, of its intent to use any information designated as Confidential Information.  This pre-filing notice must specify the specific information that the Party intends to file with the Court, and allow the other Party's counsel sufficient time to seek a temporary or permanent sealing order, if desired, pursuant to Rule 76a.

8.      In the event of an emergency, a Party seeking to file or use Confidential Information shall not file or use any such information but shall instead tender to the Court for *in camera*

6

inspection the Confidential Information that it seeks to file and seek a ruling permitting the use of the material. During the pendency of a motion for protection or in the event of an emergency, the Parties must treat Confidential Information in dispute as subject to this Confidentiality Order until the Court enters an order determining otherwise.

9.      The inadvertent or unintentional disclosure of Confidential Information, regardless of whether the information was so designated at the time of the disclosure, shall not be deemed a waiver, in whole or in part, of a Party's claim of confidentiality, either as to the specific information disclosed or as to any other information relating thereto on the same or related subject matter if, within ten (10) days of discovering the inadvertent failure to designate the material as confidential, the person or entity that provided the Confidential Information identifies the material produced and amends the designation.

10.      Pursuant to Rule 511 of the Texas Rules of Evidence and Rule 193.3(d) of the Texas Rules of Civil Procedure, the inadvertent production of any material or information shall not waive any claim that such material is privileged or protected from disclosure under the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection, including, but not limited to, the common interest privilege or settlement privilege ("**Privileged Material**"). If a producing Party believes that Privileged Material was inadvertently produced, the producing Party shall promptly notify in writing any Party that received such material of the claim of privilege and the basis for such claim to the extent required by Rule 193.3(d) of the Texas rules of Civil Procedure (the "**Privileged Material Notice**"). After receipt of a Privileged Material Notice, the Party to whom the deemed Privileged Material was produced (i) shall use commercially reasonable efforts to promptly return, sequester or destroy the Privileged Material; (ii) must not use or

7

disclose such material until the claim is resolved; and (iii) may notify the producing Party whether it objects to the designation of such material as privileged or protected. Following the receipt of any objection, the objecting Party and the producing Party shall promptly meet and confer in an effort to resolve any disagreement regarding the producing Party's designation of the material as privileged or protected. If the parties cannot resolve their disagreement, the objecting Party may present the issue to the Court in accordance with Rule 193.4 of the Texas Rules of Civil Procedure.

11.     Within thirty (30) days after the settlement or final adjudication, including appeals, of the action or actions in which the documents have been produced, all Confidential Information supplied by the Parties and non-parties and all copies thereof shall, upon request, be certified to have been destroyed or deleted. However, it is understood that each Party may retain a complete file of all litigation documents filed with the Court in these actions and that work product in the possession or control of counsel for any Party that reflects or includes information derived from documents or testimony designated as confidential will not be destroyed or deleted.

Any dispute concerning the application of this Joint Stipulated Confidentiality Order shall be heard by the Court upon motion by the objecting Party. This Joint Stipulated Confidentiality Order in no manner circumvents the requirements of Rule 76a of the Texas Rules of Civil Procedure. Any abuse of this Joint Stipulated Confidentiality Order may result in sanctions/costs being taxed against the abusive Party.

**SIGNED** _____, 2022.

Signed:
9/7/2022

_____
**PRESIDING JUDGE**

8

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

## NOTICE OF HEARING

Please take notice that Defendants, All About IT, Inc. and Secure Cloud, LLC's Motion to Enforce the Parties' Stipulated Confidentiality Order (filed September 7, 2022) is set for oral hearing on **Monday, September 12, 2022, at 3:30 p.m.** before the 151st Judicial District Court of Harris County, Texas.

Dated: September 8, 2022.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  */s/ Scott D. Ellis*
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

      – and –

**GIBSON | WUNDER, P.C.**

By:  */s/ Ethan Gibson*
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

2

## CERTIFICATE OF CONFERENCE

This is to certify that All About IT, Inc. and Secure Cloud, LLC's counsel has conferred with W&T Offshore, Inc.'s counsel regarding the relief sought in All About IT, Inc. and Secure Cloud, LLC's Motion to Enforce the Parties' Stipulated Confidentiality Order (filed September 7, 2022), and W&T Offshore, Inc.'s counsel indicated opposition to the same.

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

## CERTIFICATE OF SERVICE

This is to certify that on September 8, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

3

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| _____ | ) | |
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |
| _____ | | |

## PLAINTIFF W&T OFFSHORE, INC.'S RESPONSE TO DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S MOTION TO ENFORCE THE PARTIES' STIPULATED CONFIDENTIALITY ORDER

Plaintiff W&T Offshore, Inc. ("W&T") files the following response to Defendants All About IT, Inc. and Secure Cloud, LLC's ("Defendants'") Motion to Enforce the Parties' Stipulated Confidentiality Order (the "Motion").

## I.
## ARGUMENT

1.1     Defendants frame W&T's legitimate attempt to share documents produced in this litigation with the person best able to understand them — W&T's computer systems expert — as a "blatant attempt . . . to provide [W&T's CIO, Mr. Alvin Haynes] with AAIT's confidential trade secret information."   (Motion at 4.)   Much to the contrary, Defendants' effort to designate documents as Attorneys Eyes Only and prevent Mr. Haynes — the individual most knowledgeable about the process of transitioning W&T's IT infrastructure — from seeing documents related to that infrastructure is a clear and improper attempt to *prevent* W&T from securing and reclaiming its own confidential and proprietary trade secrets and IT infrastructure.   Defendants' Motion

5

should be **DENIED** for at least two separate and distinct reasons:

1.2     First, Defendants' assertion that Mr. Haynes cannot be considered an "expert" merely because he is "W&T's CIO" is without merit.  (Motion at 4.)  The Texas Rules of Civil Procedure explicitly contemplate — and Texas courts routinely deal with — situations where an employee of a party is also designated as an expert witness.  *See* Tex. R. Civ. P. 195.5(4) ("[I]f the expert is . . . employed by . . . the responding party . . ."); *In re State Farm Mut. Ins. Co.*, 100 S.W.3d 338, 343 (Tex. App.—San Antonio 2002, orig. proceeding) (in dispute relating to attorney-client privilege, noting that party had "designat[ed] [its employee] as an expert witness.")  Issues related to the nature and function of computer systems and data stored in electronic formats are appropriate matters for expert testimony.  *See Prosper Fla., Inc. v. Spicy World of USA, Inc.*, No. 01-20-00104-CV, --- S.W.3d ----, 2022 WL 1249955, at *2, *13 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (noting that "computer systems administrator" was qualified to testify as an expert about "certain technical issues relating to computers and e-mails," and that "his testimony helped the trial court to understand the evidence." (internal quotation omitted)).

1.3     Mr. Haynes — who has acknowledged in writing to be bound by the terms of the agreed confidentiality order — is an expert in the field of computer systems and data security. W&T is utilizing Mr. Haynes' specialized, expert knowledge to prosecute this case.  To read the agreed confidentiality order to exclude this expert, Mr. Haynes, from access to these documents, as Defendants contend, would unnecessarily impair W&T's preparation of this case for trial and delay resolution of the matter.  Defendants provide the court with no case law to support their spurious argument, and their claim should be denied on this basis alone.

1.4     Second, Defendants are purposely and improperly misusing the Attorneys Eyes Only designation to try to shield documents in this case.  For example, Defendants produced as

Attorneys Eyes Only a one-page, undated and unsigned document with a single sentence on it. (*See* Bates No. AAIT-0000029, which is being filed under seal with this response as Exhibit A). Even a cursory review of the simple sentence on the page shows that it does not contain any purported "trade secrets." The remaining 16 documents that AAIT designated as Attorneys Eyes Only consist largely of information about the configuration of the infrastructure used to service W&T's own computer system. Defendants even designated as Attorneys Eyes Only materials that appear to be substantially the same materials that Defendants *already* provided directly to W&T, *i.e.*, Defendants' purported "network diagram" and a so-called list of "services." Defendants' attempt to shield information through the Attorneys Eyes Only designation is improper, and Mr. Haynes, as an expert working with counsel, should not be prevented from  accessing and reviewing these materials for purposes of his work in this case.

## CONCLUSION

For the reasons above, W&T respectfully asks the Court to deny Defendants' Motion and award W&T all further relief that it may show itself justly entitled.  A proposed Order denying Defendants' Motion accompanies this response.

Dated:  September 9, 2022                    Respectfully submitted,

                                            /s/  *Benjamin L. Hall, III*
                                            **Benjamin L. Hall, III**
                                            TBN: 08743745
                                            The Hall Law Group, PLLC
                                            530 Lovett Blvd.
                                            Houston, Tx 77006
                                            713.942.9600 (o)
                                            713.942.9566 (f)
                                            Bhall@thlf.us

                                            *Attorney for W&T Offshore, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document was served via the Court's electronic filing system on counsel for Defendants on September 9, 2022.

/s/  *Benjamin L. Hall, III*
Benjamin L. Hall, III

CAUSE NO. 2022-51667

_____

|  |  |  |
|---|---|---|
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

_____
_

## ORDER DENYING DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S MOTION TO ENFORCE THE PARTIES 'STIPULATED CONFIDENTIALITY ORDER

After considering Defendants All About IT, Inc. and Secure Cloud, LLC's ("Defendants'") Motion to Enforce the Parties 'Stipulated Confidentiality Order (the "Motion"), Plaintiff W&T Offshore, Inc.'s ("W&T's") Response to same, all documents on file in this matter, the relevant arguments of counsel, and legal authorities, the Court is of the opinion that the Defendants' Motion should be **DENIED**.

It is therefore **ORDERED** that Defendants' Motion is **DENIED**.

It is further **ORDERED** that W&T may disclose documents designated by Defendants as "Highly Confidential – Attorneys' Eyes Only" to W&T's expert witnesses working on this case, including Mr. Alvin Haynes.

**SO ORDERED**.

**Signed** this _____ day of September, 2022.

_____
The Honorable Mike Engelhart, Presiding

9/7/2022 5:04:01 PM
Marilyn Burgess - District Clerk
Harris County
Envelope No: 68041215
By: HODGINS, KEELEY M
Filed: 9/7/2022 5:04:01 PM

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**<u>ORDER</u>**

On this day, the Court considered Defendants All About IT, Inc. ("<u>AAIT</u>") and Secure Cloud, LLC's ("<u>Secure Cloud</u>") (together, "<u>AAIT</u>") Motion to Enforce the Parties' Stipulated Confidentiality Order (the "<u>Motion</u>"). After considering the Motion, the Stipulated Confidentiality Order agreed to and filed by the parties, the response of Plaintiff W&T Offshore, Inc., the arguments of counsel, and the relevant authorities, the Court is of the opinion that the Motion should be GRANTED.

It is, therefore, ORDERED that the Motion is GRANTED.

It is further ORDERED that W&T shall not disclose documents designated by AAIT as "Confidential-Attorneys' Eyes Only" to W&T's employees, including, but not limited to, Alvin Haynes.

Signed this _____ day of _____, 2022.

Signed:
9/12/2022

_____

The Honorable Mike Engelhart, Presiding

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| _____ | ) | |
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | 151ST JUDICIAL DISTRICT |
| *Defendants*. | ) | |
| _____ | ) | |

## PLAINTIFF'S MOTION FOR LEAVE TO PERMIT PLAINTIFF'S COMPUTER EXPERT AND CHIEF INFORMATION OFFICER TO ACCESS RECORDS DESIGNATED "AEO" AND REQUEST TO EXPEDITE CONSIDERATION

Plaintiff files the above-identified motion for the following reasons:

### I.

1.1     Plaintiff alleges Defendants have misappropriated and are misappropriating Plaintiff's computer network and infrastructure that is required to operate Plaintiff's oil and gas business.  Plaintiff is in the process of transitioning all its computer IT equipment and services from Defendants.

1.2     Plaintiff has hired an internal computer expert, Alvin Haynes, to spearhead and supervise the transition of its entire computer infrastructure and electronic services away from Defendants.  Defendants object to Mr. Haynes accessing or reviewing any documents they (Defendants) choose to designate for "Attorney's Eyes Only" (AEO).  Defendants admit that experts engaged by Plaintiff solely for purposes of the instant litigation are permitted to access AEO records.  However, they make the argument, which the Court has adopted, that because Mr.

1

Haynes was not hired "solely" to assist with the pending litigation he is not authorized to access AEO records.

1.3     Notwithstanding the above argument, there is another provision in the Court's agreed confidentiality order that permits a party to appeal directly to the Court for permission to allow an expert like Mr. Haynes to have access to AEO records. *See* Paragraph C1(i) of the agreed confidentiality order.  This motion requests leave from the Court to permit Mr. Haynes to access and review AEO-designated documents.

1.4     Mr. Haynes' computer expertise is pivotal to Plaintiff's efficient and orderly preparation of this case for trial.  He is the expert Plaintiff is using to transition Plaintiff's computer network and infrastructure away from Defendants.  As such, Mr. Haynes is the primary computer expert who has knowledge and expertise on the following necessary issues in preparing for trial and any interim hearings:

- The existing infrastructure supporting Plaintiff's operations that the Plaintiff needs to transition to a new provider;
- The necessary administrator credentials for equipment and accounts currently in use for Plaintiff's operations that will need to be transferred;
- The verification of information regarding the current equipment on and design of the Plaintiff's network;
- The identity of the computer equipment purchased by Plaintiff and which Defendants are wrongly claiming is their equipment; and
- The planned future state of the Plaintiff's infrastructure to confirm the necessary steps to the transition of IT services from Defendants to Plaintiff.

1.5     Mr. Haynes' expertise is indispensable to Plaintiff's ability to prove its claims in this case and to disprove Defendants' claims of ownership to Plaintiff's trade secrets, computer equipment, and infrastructure.  However, at present, Defendants are choosing to designate a substantial number of documents as AEO which identify the computer equipment they are refusing to return to Plaintiff.  Effectively, Defendants are using the AEO designation to hinder Plaintiff

from identifying its pilfered computer equipment that Defendants are now falsely claiming to own. The agreed confidentiality order was not intended to be used in this way.

       1.6     Mr. Haynes is a computer expert necessary to assist plaintiff counsel to prepare for trial.  He is agreeing to be subject to all the terms of the confidentiality order.  And, his access to Defendants' AEO-designated documents is needed to disprove Defendants' false claim that they own the computer equipment and infrastructure at issue in this case.

**II.**
**REQUEST FOR EXPEDITED CONSIDERATION**

       2.1     There is a scheduled temporary injunction hearing in this case set for September 20, 2022.  Plaintiff intends to have Mr. Alvin Haynes serve as a witness and expert at that hearing. However, in order for Mr. Haynes to be sufficiently prepared to assist counsel and the Court in this case he needs access to documents Defendants are designating AEO.  Because the injunction hearing is only 7 days away, Plaintiff asks the Court to expedite consideration and approval of this motion so Mr. Haynes can be prepared to provide competent testimony in this case.

**CONCLUSION**

     For the above reasons, pursuant to Paragraph C1(i) of the Court's Confidentiality Order, Plaintiff asks the Court for permission to allow plaintiff computer expert Alvin Haynes to have access to all AEO designated documents produced by Defendants in this case in accordance with the terms of the confidentiality order.  A suggested order granting the requested leave accompanies this Motion.

     September 12, 2022                Respectfully submitted,

                                   */s/  Benjamin L. Hall, III*
                                   **Benjamin L. Hall, III**
                                   TBN: 08743745
                                   The Hall Law Group, PLLC

3

530 Lovett Blvd.
Houston, TX 77006
713.942.9600 (o)
713.942.9566 (f)
Bhall@thlf.us

*Attorneys for W&T Offshore, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I certify that a true and correct copy of Plaintiff's Motion For Leave To Permit Plaintiff's Computer Expert and Chief Information Officer To Access Records Designated "AEO" And Request to Expedite Consideration was served via the Court's electronic filing system on counsel for Defendants on September 12, 2022.


*/s/  Benjamin L. Hall, III__*
**Benjamin L. Hall, III**

## <u>CERTIFICATE OF CONFERENCE</u>

I, Ben Hall, attempted to contact defense counsel Scott Ellis regarding this motion immediately following the September 12, 2022 hearing in this case.  As of the filing of this Motion, Mr. Ellis has not responded.  Accordingly, this motion should be considered to be opposed by Defendants.

*/s/  Benjamin L. Hall, III*
**Benjamin L. Hall, III**

CAUSE NO. 2022-51667

<table>
<tr><td>_____</td><td>)</td><td></td></tr>
<tr><td>W&T OFFSHORE, INC.</td><td>)</td><td>IN THE DISTRICT COURT OF</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td><i>Plaintiff</i>,</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>v.</td><td>)</td><td>HARRIS COUNTY, TEXAS</td></tr>
<tr><td></td><td>)</td><td></td></tr>
<tr><td>ALL ABOUT IT, INC.;</td><td>)</td><td></td></tr>
<tr><td>SECURE CLOUD, LLC</td><td>)</td><td></td></tr>
<tr><td></td><td>)</td><td>151ST JUDICIAL DISTRICT</td></tr>
<tr><td><i>Defendants</i>.</td><td>)</td><td></td></tr>
<tr><td>_____</td><td>)</td><td></td></tr>
</table>

**ORDER**

The Court **GRANTS** Plaintiff's Motion For Leave To Permit Plaintiff's Computer Expert and Chief Information Officer To Access Records Designated "AEO" And Request to Expedite Consideration.  Leave is granted to shorten to time to consider Plaintiff's motion.  Mr. Alvin Haynes may have access to and review all AEO-designated documents provided in this case subject to all other terms of the court's confidentiality order.

**SO ORDERED.**

**SIGNED** on _____ ___, 2022, at ___ a.m./p.m.

_____
Judge Presiding

1

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S
RESPONSE TO W&T OFFSHORE, INC.'S EMERGENCY MOTION
<u>FOR PROTECTIVE ORDER AND MOTION FOR APPOINTMENT OF MASTER</u>**

Defendants, All About IT, Inc. ("<u>AAIT</u>") and Secure Cloud, LLC ("<u>Secure Cloud</u>") (sometimes collectively referred to herein for convenience, "<u>AAIT</u>"[1]), file the following Response to W&T Offshore, Inc.'s ("<u>W&T</u>") Emergency Motion for Protective Order and Motion for Appointment of Master.

**I.**
**<u>S</u><u>UMMARY</u>**

For the following reasons, W&T's Emergency Motion for a Protective Order and Motion for Appointment of Master should be denied by the Court:

(1)  **Texas law does not permit specific performance of service contracts.** The relief W&T seeks in this suit is a mandatory injunction to specifically enforce an (oral) service agreement between itself and AAIT. Texas law is clear that this type of relief, whereby a court forces an unwilling service provider to continue providing services, is prohibited. As the Texas Supreme Court has aptly stated, such a "decree would seem like the enforcement of an involuntary servitude."

(2)  **W&T is improperly seeking a *<u>second</u>* extension of the TRO.** W&T's request for a "protective order" is a mischaracterization of what is actually a request for an extension of the TRO beyond the 14 days permitted by Texas Rule of Civil Procedure 680. Texas law provides that absent consent of the parties, a TRO can only be extended by 14 days.

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

W&T's desire to rename a TRO extension a "protective order" does not remedy what is otherwise impermissible under Texas law.

(3) **No evidence will be destroyed.** In its First Supplement (filed September 7, 2022), W&T now argues that it seeks a protective order to preserve evidence. AAIT ceasing IT services, however, will in no way alter or delete any evidence. More importantly, since late July 2022 (over a month), AAIT has repeatedly told W&T that it is ready, willing, and able to provide W&T with full copies of all of its data. As recently as September 2, 2022, W&T said that it is still figuring out how it wants to receive its data. W&T is manufacturing an issue where no issue exists because it is unwilling to pay the high cost of a new IT service provider.

(4) **A special master is unnecessary because this Court is entirely able to oversee this case.** W&T argues that the Court should appoint a special master and vest the special master with the power to order AAIT to continue providing IT services to W&T and order the turnover of certain equipment and assets. The Court should deny W&T's request because: (1) this Court is perfectly capable of overseeing this dispute, (2) Texas law does not permit forcing a service provider to continue providing services, and (3) AAIT is, and has always been, willing to provide W&T with all of its data, proprietary and otherwise.

## II.
### PROCEDURAL BACKGROUND

**A.     AAIT and W&T's Pre-Suit Relationship.**

Founded in 2010, AAIT is a Managed Service Provider of IT services. AAIT provides such IT services to W&T using AAIT's own proprietary network and equipment configuration, and has done so for approximately ten years. As both parties agree, there is no written agreement requiring AAIT to continue servicing W&T—both parties are free to terminate their IT/communications services relationship at any time.[2] W&T concedes in its 10-Q Disclosure that it had no written contract with AAIT.

In July 2022, W&T hired Mr. Alvin Haynes as its Chief Information Officer, who began an overhaul of W&T's IT systems, with a focus on taking over the IT services AAIT historically

---

[2] Secure Cloud and W&T are parties to a license agreement whereby W&T granted Secure Cloud a non-exclusive license to install, maintain, repair, and remove the equipment necessary for the provision of communications services to its customers, including W&T, in the Gulf of Mexico. A three-year term that just recently renewed permits Secure Cloud to use space on W&T's platforms to operate its proprietary Gulf-centered communications and internet network.

2

provided.[3] Rather than communicate its intent to terminate its business relationship with AAIT and transition IT services, W&T began sending an exorbitant number of "emergency" requests for information, which AAIT responded to with reasonable promptness. AAIT received, serviced, and closed *1,002* tickets for W&T in a little over a month.

As the number and absurdity of W&T's requests increased, W&T's impending termination of the parties' business relationship became apparent to AAIT.[4] Accordingly, by letter dated July 28, 2022 (over 40 days ago), AAIT notified W&T of its belief that W&T's recent conduct indicated a desire to terminate AAIT's IT services. AAIT suggested a discussion regarding termination of services. Despite W&T's confirmation that it and Mr. Haynes desired a termination and transition of AAIT's services for internal handling,[5] W&T never responded to AAIT's repeated requests for where, when, and to whom W&T's services should be transferred, nor the necessary information to transfer W&T's information. AAIT requested such information on the following dates:

- July 28, 2022;

- August 3, 2022;

- August 6, 2022;

- August 10, 2022; and

- August 18, 2022.

On August 3, 2022, AAIT provided W&T with formal written notice that it would cease providing IT services to W&T by September 2, 2022. AAIT agreed to continue providing IT services until that date and again suggested that the parties discuss transition of said services—

---

[3] *See* W&T's Petition, at ¶ 3.
[4] *See* W&T's Petition, at ¶ 3 ("The CIO initiated a fulsome review of W&T's IT systems and began to transition them back to internal resources at the company.").
[5] *See* W&T's Petition, at ¶ 3.

W&T responded by filing this lawsuit. Notably, and to this day (over a month later), as confirmed by W&T's letter, W&T still has not told AAIT where AAIT should deliver W&T's data.

**B.      The Lawsuit, TRO, and Extension Order.**

On August 19, 2022, W&T filed its Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction to halt AAIT from exiting the parties' business relationship. The parties agreed to an order (the "<u>TRO</u>") whereby AAIT and Secure Cloud agreed to provide W&T, until the August 29, 2022 temporary injunction hearing date, with the same services AAIT had historically provided to W&T[6]—i.e., do exactly what AAIT had already committed to do until September 2, 2022. The TRO set the temporary injunction hearing for August 29, 2022.[7]

On August 26, 2022, this Court entered the Extension Order, resetting the temporary injunction hearing for September 20, 2022 at 9:00 a.m., and extending the TRO until said date:

---

**ORDER EXTENDING  TRO AND
RESCHEDULING TEMPORARY INJUNCTION HEARING**

The Temporary Restraining Order in this case, entered on August 19, 2022, at 4:16 p.m., is extended.  The Temporary Injunction Hearing is rescheduled to   September 20   , 2022 at   9:00   a.m./p.m.   IN PERSON

[8]

---

By entering the Extension Order, the Court is forcing AAIT to continue its business relationship with W&T, requiring AAIT to provide W&T with IT/communication services until September 20, 2022, (1) despite there being no agreement between the parties, or other legal obligation requiring

---

[6] *See* Agreed Order (signed August 19, 2022).
[7] *See* TRO (signed August 19, 2022).
[8] *See* Extension Order (signed August 26, 2022).

AAIT to do so, and (2) despite Texas law expressly prohibiting a mandatory injunction specifically enforcing contracts for the performance of personal services.

On August 31, 2022, AAIT filed its Objection to and Motion for Reconsideration of the Court's Order Extending TRO and Rescheduling Temporary Injunction Hearing, Motion for Emergency Status Conference, and, Alternatively, Motion to Modify Order Extending TRO. AAIT objected to the Court's Extension Order as failing to specify the date it expires and improperly extending the TRO through September 20, 2022—an eighteen-day extension—without AAIT's consent. AAIT further argued that under Texas law, the latest that the TRO could be extended till is September 16, 2022. However, while the additional 4 days is procedurally flawed, the more important issue is that AAIT is impermissibly being forced to provide labor to W&T simply because W&T has failed to secure another IT provider.

## C. W&T's Emergency Motion for "Protective Order" and Motion for Appointment of Master.

Recognizing that September 16, 2022 is the latest that the Texas Rules permit the TRO to be extended, W&T filed its Emergency Motion for a Protective Order and Motion for Appointment of Master. W&T requests that the Court force AAIT to continue to provide IT support until September 20, 2022, and that it appoint a special master to oversee a transition of AAIT's IT services to W&T. As explained below, however, W&T's Emergency Motion for a Protective Order is nothing more than a (very thinly) veiled attempt to have the Court impermissibly extend the TRO, and an appointment of a special master which is wholly unnecessary.

## III.
### ARGUMENT & AUTHORITIES

**A.      W&T cannot obtain the relief it seeks.**

   *(i)      Texas law does not permit mandatory injunctions requiring parties to provide services.*

"It is hornbook contract law that specific performance cannot be had for a personal services contract." *Allbritton v. Colonial Life & Accident Ins. Co.*, No. 3-98-CV-0645-BD(R), 2000 WL 769225, at \*7 (N.D. Tex. June 13, 2000); *see also Mission Indep. Sch. Dist. v. Diserens*, 188 S.W.2d 568, 569 (Tex. 1945) (holding that it is improper for a court to grant mandatory injunctions specifically enforcing service contracts). The Texas Supreme Court explained the reasoning behind this prohibition in *Mission Indep. Sch. Dist. v. Diserens*:

> [I]t is true that chancery courts have **refused to grant mandatory injunction specifically enforcing contracts for the performance of personal services.** It has been said that this refusal is based in part upon the difficulty of enforcement and of passing judgment upon the quality of performance and in part upon the undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone. **And in some cases, it has been observed, the decree would seem like the enforcement of an involuntary servitude.**

*Id*. (emphasis added). Texas courts' consistency in refusing requests for mandatory injunctions and/or to specifically enforce service agreements is steadfast. *See Berryman's S. Fork, Inc. v. J. Baxter Brinkmann Intern. Corp.*, 418 S.W.3d 172, 188 (Tex. App.—Dallas 2013, pet. denied) ("A contract for personal services is not specifically enforceable."); *Chain v. Pye*, 429 S.W.2d 630, 635 (Tex. Civ. App.—Beaumont 1968, writ ref'd n.r.e.) ("The document in question is one calling for personal services of [Defendant]. Such a contract is not specifically enforceable."); *T. E. Moor & Co. v. Hardcastle*, 421 S.W.2d 126, 130 (Tex. Civ. App.—Beaumont 1967, writ ref'd n.r.e.)

(discussing the Texas Supreme Court's decisions not to allow service agreements to be enforced by injunction).

Federal courts, both Texas and non-Texas alike, follow Texas's proscription of granting mandatory injunctions specifically enforcing service agreements. *See Allbritton v. Colonial Life & Accident Ins. Co.*, No. 3-98-CV-0645-BD(R), 2000 WL 769225, at *7 (N.D. Tex. June 13, 2000) ("It is hornbook contract law that specific performance cannot be had for a personal services contract."); *Burger King Corp. v. Agad*, 911 F. Supp. 1499, 1506 (S.D. Fla. 1995) (reasoning that franchise agreements are considered personal service contracts and as such are immune from a mandatory injunction requiring specific performance of the agreement); *Boise Cascade Intern., Inc. v. N. Minnesota Pulpwood Producers Ass'n*, 294 F. Supp. 1015, 1020 (D. Minn. 1968) (stating that "courts of equity have recognized the impossibility of enforcing a contract where personal services are involved, and have refused so to do.").

> (ii)     *W&T cannot obtain a mandatory injunction requiring AAIT to continue providing IT services.*

Here, AAIT and W&T agree that although there is no written services agreement, the parties have historically operated under an oral services agreement under which AAIT provides IT services on an at-will basis. By this lawsuit and its Emergency Motion for Protective Order, W&T seeks a mandatory injunction specifically enforcing the parties' service at will arrangement, requiring AAIT to continue providing W&T IT services against its will—this is forbidden under Texas law. *See Mission Indep. Sch. Dist.*, 188 S.W.2d at 569; *see also T.E. Moor & Co.*, 421 S.W.2d at 130 ("covenants for personal services … are not enforceable by injunction[.]"). As the Supreme Court of Texas explained, courts should consider the "undesirability of compelling the continuance of personal association after disputes have arisen and confidence and loyalty are gone." *See Mission Indep. Sch. Dist.*, 188 S.W.2d at 569. Here, disputes have arisen and confidence

7

between AAIT and W&T has vanished. Accordingly, it would be improper for the Court to grant W&T the relief it seeks—i.e., a mandatory injunction requiring AAIT to continue providing IT services. The Court should refuse to do so.

**B.** **W&T's request for a "Protective Order" seeks an impermissible _second_ extension of the TRO.**

      *(i)*      *Courts look to the substance of a pleading, not its title.*

Texas law provides that courts look to the *substance* of a pleading for relief to determine the nature of the pleading, not merely the form of title given to it by a party. *State Bar of Tex. v. Heard*, 603 S.W.2d 829, 833 (Tex. 1980) ("We look to the substance of a plea for relief to determine the nature of the pleading, not merely at the form of title given to it.") (citing TEX. R. CIV. P. 71).

Here, although W&T has titled its motion an "Emergency Motion for Protective Order", the *substance* of its motion is to ensure that the TRO, and AAIT's obligations thereunder, is *extended* until September 20, 2022, when the Court has set the temporary injunction hearing:

> with immediate and irreparable harm. Accordingly, W&T respectfully requests that this Court enter an Order prohibiting Defendants from ceasing to provide W&T with the same level of services that they have provided to date until at least the date of the temporary injunction hearing, set to be heard on September 20, 2022.

It is abundantly clear that the substance W&T's "Emergency Motion for Protective Order" is, in fact, a request that the Court extend the TRO from September 16, 2022, until September 20, 2022.

      *(ii)*     *W&T may not obtain another extension of the TRO.*

To be clear, W&T's decision to title its present motion an "Emergency Motion for a **_Protective Order_**" rather than, for example, an "Emergency Motion for **_Extension of TRO_**" was

not a mistake or a coincidental decision—it was a conscious decision and a veiled attempt to skirt around clear Texas law. As this Court is aware, Rule 680 provides that a temporary restraining order "shall expire by its terms within such time after signing, **not to exceed fourteen days**, as the court fixes[.]" Tex. R. Civ. P. 680 (emphasis added). And, absent the restrained party's consent, a temporary restraining order may only be extended a ***single time*** for a maximum of fourteen (14) days. *See* Tex. R. Civ. P. 680); *see also In re Tex. Nat. Res. Conservation Comm'n*, 85 S.W.3d 201, 204–05 (Tex. 2002) ("We hold that Rule 680 governs an extension of a temporary restraining order … and permits but **one extension** for no longer than fourteen days unless the restrained party agrees to a longer extension.") (emphasis added).

Here, W&T is requesting that the Court extend the TRO for a ***second*** time, despite Rule 680's clear proscription against such an extension. Because AAIT does not consent to any extension of the TRO, much less this most recent extension request, only one extension of the TRO is permissible, that being the extension of the TRO from September 2, 2022 to September 16, 2022.[9] W&T's request to extend the TRO for a second time from September 16, 2022 until September 20, 2022 is impermissible and should be rejected by this Court.

(iii)    *W&T's alleged concern over losing evidence is inconsistent with the facts.*

In W&T's First Supplement to its Emergency Motion for a Protective Order and Motion for Appointment of Master (filed September 7, 2022), W&T now insists that its "instant Emergency motion is **a request to preserve evidence**—i.e., evidence of the structure and function of [W&T]'s computer network. This evidence — which is necessary for [W&T] to facilitate an

---

[9] It is AAIT's position that the Extension Order, which forces AAIT to provide IT services beyond September 2, 2022—the date it was to terminate said services—impermissibly forces AAIT to continue a business relationship it wishes to exit.

9

effective transfer of its IT infrastructure to internal resources or to another service provider — would be irreparably lost if [AAIT] abruptly cease[s] providing IT services to [W&T]."[10]

The glaring issue with W&T's this assertion is that **<u>AAIT's cessation of IT services will not destroy or alter evidence in any fashion whatsoever</u>**. W&T's newest argument is merely another attempt to get this Court to force AAIT to continue providing IT services to W&T against AAIT's will in contravention of Texas law. *See Mission Indep. Sch. Dist.*, 188 S.W.2d at 569; *Berryman's S. Fork*, 418 S.W.3d at 188; *Chain*, 429 S.W.2d at 635; *Hardcastle*, 421 S.W.2d at 130.[11]  W&T's request for a "protective order" should be rejected.

## C.  The Appointment of a Special Master is Unnecessary.

A court may appoint a master only in exceptional cases when there is good cause. TEX. R. CIV. P. 171; *Simpson v. Canales*, 806 S.W.2d 802, 811 (Tex. 1991). The requirements of "exceptional cases" and "good cause" are not met merely because a case is **time-consuming or complicated**. *Id.* This case, however, is not an "exceptional" one and good cause does not exist for the appointment of a special master.

W&T's Motion describes this case as "exceptional" because it involves "the parties' obligations with respect to technically complex computer infrastructure to be adjudicated on a highly time-sensitive basis."[12] The issue with W&T's contention, however, is that this Court is perfectly equipped to handle this suit and make any and all rulings. The fact of the matter is that the parties' obligations are not overly complicated—AAIT has already provided lists to W&T of the services that AAIT provides, the equipment owned by AAIT and W&T, and has repeatedly

---

[10] *See* W&T's First Supplement to Emergency Motion for a Protective Order and Motion for Appointment of Master (filed September 7, 2022), at p. 2 (emphasis added).
[11] *See also Allbritton*, 2000 WL 769225, at *7; *Agad*, 911 F. Supp. at 1506; *Boise Cascade Intern.*, 294 F. Supp. at 1020.
[12] *See* W&T's Emergency Motion for Protective Order and Motion for Appointment of Master, at p. 5.

expressed its willingness to transfer W&T's data and information. In its most recent correspondence to AAIT's counsel, W&T even admits that AAIT has been offering since **July 28, 2022** to transfer W&T's data and information back to it, but *still* has not provided an avenue to receive the same:

> is not for AAIT to choose which service W&T finds more valuable at the moment. We appreciate your offer in your July 28 and August 6 letters to deliver to W&T its own data – and as we've confirmed in our August 8 response to your August 6 letter, we are working on the most efficient way to receive such data.[13]

It has been over a month since AAIT's counsel made the above-referenced "offer", and W&T has continued to drag its feet.

W&T further states that the proposed Transition Master would assist the Court by performing the following functions:

(1)  Evaluating the parties' forthcoming documentary and written discovery related to each party's claim of ownership and control of certain devices and programs comprising W&T's IT infrastructure;

(2)  Advising and instructing the parties on the most orderly and efficient manner for those devices and programs to be transferred or provided to W&T so that W&T may recover all information necessary for the transition; and

(3)  Proposing safeguards for the parties to implement that would most effectively secure and protect W&T's confidential and proprietary information, which currently resides in various locations within that infrastructure.[14]

It becomes blatantly obvious after reviewing these three points that what W&T truly wants is for the Court to order the Transition Master to force AAIT to continue to provide IT services by developing a transition strategy for W&T—an endeavor that AAIT has implored W&T to take for over a month. A special master is unnecessary.

---

[13] *See* Exhibit A, Letter from W. Ridgway to S. Ellis (dated September 2, 2022).
[14] *See* W&T's Emergency Motion for Protective Order and Motion for Appointment of Master, at pp. 5-6.

W&T next requests that this Court grant its proposed Transition Master the authority "to impose obligations on the parties to complete certain actions related to the transition; to require the parties' complete and timely compliance with those obligations; and to adjudicate any dispute between the parties arising from those obligations."[15] W&T, with full knowledge that no written agreement governs the parties relationship nor the transition of AAIT's IT services, asks that the Court appoint its Transition Master and vest him with the power to impose de facto contractual obligations upon AAIT. This is not an exceptional case wherein a special master is warranted, and the power that W&T seeks the Transition Master to have is not permissible under Texas law.

  *(ii)  In the alternative, AAIT should have a say in the Court-appointed master.*

In the unlikely event that the Court agrees with W&T that a special master is warranted and permissible in this matter, AAIT should be afforded an opportunity to review and have a hand in selecting said special master. To grant W&T the ability to unilaterally choose a special master without any input from AAIT whatsoever would be unfair and potentially prejudicial. Accordingly, AAIT respectfully requests that if the Court believes that a special master is needed, that AAIT be allowed to participate in his/her selection.

## <u>REQUEST FOR RELIEF</u>

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court deny W&T Offshore, Inc.'s Emergency Motion for a Protective Order and Motion for Appointment of Master, and that the Court award Defendants all further relief that they may show themselves justly entitled.

---

[15] *See* W&T's Emergency Motion for Protective Order and Motion for Appointment of Master, at p. 6.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

**GIBSON | WUNDER, P.C.**

By: _/s/ Ethan Gibson_
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS, ALL ABOUT IT, INC. AND SECURE CLOUD, LLC**

13

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 12, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants. | § | 151ST JUDICIAL DISTRICT |

**ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S REPLY IN SUPPORT OF ITS MOTION TO ENFORCE THE PARTIES' STIPULATED CONFIDENTIALITY ORDER**

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), file the following Reply in Support of its Motion to Enforce the Parties' Stipulated Confidentiality Order.

**I.**

Plaintiff, W&T Offshore, Inc.'s ("W&T") Response claims that there are two reasons why W&T should be permitted to violate the terms of the agreed *Stipulated* Confidentiality Order:

1. **'W&T's CIO is a Computer Expert.'**  W&T misses the point.  For purposes of this motion, AAIT does not dispute that Mr. Haynes is knowledgeable as to computer systems.  The point is that the Stipulated Confidentiality Order does not permit a W&T employee (even an employee who is knowledgeable about a particular subject) to review documents designated Attorneys' Eyes Only ("AEO"), much less an ***officer*** whose job it is to advance W&T's business interests.  Allowing an employee of the opposite side to access AEO documents just because they are knowledgeable on a topic would completely undermine the purpose of the AEO designation—to prevent employees of the opposition from reviewing confidential, trade secret information.

   The Stipulated Confidentiality Order is very clear that experts retained "**solely for the purpose of assisting in the preparation of this action for trial**" may review AEO documents—and AAIT does not dispute that W&T can provide AEO documents to its retained computer expert, Mr. John deCraen of Kroll Associates, Inc.[2]  But, the

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

[2] By this Reply, AAIT does not waive its rights to object to and/or challenge that Mr. deCraen satisfies the requirements of a testifying expert under Texas law.

Stipulated Confidentiality Order does not allow W&T to provide its employee, Mr. Alvin Haynes with such documents—whether Mr. Haynes is an expert or not.

2. **W&T's Objections to AAIT's AEO Designations.** If W&T has an objection to how AAIT designated any of the seventeen documents that AAIT designated AEO, W&T can certainly raise the objection and seek the Court's ruling as to the legitimacy of AAIT's designation—of course, after conferring in good faith with counsel for AAIT. Tellingly, prior to its Response, W&T never raised an issue with how AAIT designated its seventeen AEO-designated documents.

AAIT has spent millions of dollars and thousands of hours to create and implement a network for the Gulf of Mexico—a network that AAIT developed to service not only W&T, but several other AAIT customers in the Gulf. This information should not be given to AAIT's CIO to be used to recreate AAIT's proprietary network and work product.

## **REQUEST FOR RELIEF**

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court order Plaintiff, W&T Offshore, Inc., to comply with the Joint Stipulated Confidentiality Order and refrain from providing documents designated as Confidential-Attorneys' Eyes Only to any of its employees, including Mr. Alvin Haynes, and that the Court award All About IT, Inc. and Secure Cloud, LLC all further relief that they may show themselves justly entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  _/s/ Scott D. Ellis_
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

**GIBSON | WUNDER, P.C.**

By: _/s/ Ethan Gibson_____

Ethan Gibson
Texas Bar No. 24073131
ethan@gibsonwunder.com
4 Houston Center
1221 Lamar St. Ste. 1001
Houston, Texas 77010
Main: (713) 897-8008
Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

## CERTIFICATE OF SERVICE

This is to certify that on September 12, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

_Counsel for W&T Offshore, Inc._

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

3



# THE HALL LAW GROUP, PLLC

530 Lovett Boulevard   •   Houston, Texas 77006
Telephone: (713) 942-9600  •  Facsimile: (713) 942-9566

Benjamin L. Hall, III, Ph.D., J.D.
    Board Certified Personal Injury Trial Law
    Board Certified Civil Trial Law
    Texas Board of Legal Specialization

September 14, 2022

**VIA ELECTRONIC FILING**

Judge Mike Engelhart
Harris County Civil Courthouse
201 Caroline, 11th Floor
Houston, Texas 77002

RE:   Cause No. 2022-51667; *W&T Offshore, Inc. v. All About IT, Inc.*; In the 151st District
      Court of Harris County, Texas; W&T's TRO Violations.

Dear Judge Engelhart:

As requested by the Court in the prior hearing in this matter, Plaintiff provides the following requested items to you:

1. A short order specifying the termination date of the present TRO. *See* Ex. A.
2. A revised protective order appointing transition master. *See* Ex. B.
3. The names of two possible transition masters along with their resumes. *See* Ex. C.

Additionally, the Defendants have proposed two names for possible transition masters:

1. Paul Price, who's information can be found at the following link: http://www.integrity-partners.net/staff/price.html; and
2. Judge Gregg Costa

Please advise if anything more is needed or desired from my client or me at this time.

Very truly yours,

Benjamin L. Hall, III, Ph.D., J.D.








# EXHIBIT A

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC. | ) | IN THE DISTRICT COURT OF |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | HARRIS COUNTY, TEXAS |
| | ) | |
| ALL ABOUT IT, INC.; | ) | |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |

## ORDER CLARIFYING TERMINATION DATE OF EXTENDED TEMPORARY RESTRAINING ORDER

The Temporary Restraining Order entered in the Ancillary Court on August 19, 2022, at 4:16 p.m. was extended by this court's Order Extending TRO and Rescheduling Temporary Injunction Hearing dated August 26, 2022– which order did not contain an expiration date.  It is now **ORDERED** that the temporary restraining order entered in this case shall remain in effect through 11:59 pm Central Time on September 16, 2022

**DONE** this _____ day of September 2022.

_____

The Honorable Mike Engelhart, Presiding

2

# EXHIBIT B

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| _____ | ) | |
| W&T OFFSHORE, INC. | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | IN THE DISTRICT COURT OF |
| v. | ) | |
| | ) | |
| ALL ABOUT IT, INC.; | ) | HARRIS COUNTY, TEXAS |
| SECURE CLOUD, LLC | ) | |
| | ) | |
| *Defendants*. | ) | 151ST JUDICIAL DISTRICT |
| _____ | | |

### PROPOSED ORDER GRANTING PLAINTIFF W&T OFFSHORE, INC.'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION FOR <u>APPOINTMENT OF MASTER (REVISED)</u>

After considering Plaintiff W&T Offshore, Inc.'s ("W&T's") Emergency Motion for a Protective Order and Motion for Appointment of Master, the Defendants' Response, and all documents on file with the Court, and finding that good cause has been shown and that this case is an exceptional case warranting issuance of this Order, the Court **GRANTS** the Motion as follows:

1. Defendants All About IT, Inc. and Secure Cloud, LLC, and their owners, employees, representative, and agents ("Defendants") are prohibited from ceasing to provide the same level of services that Defendants were providing to W&T up to and including the date of June 30, 2022. Defendants shall continue to provide W&T with that same level of services until the 90th day following the date of this order.

2. W&T agrees to continue to pay Defendants at the same rate for the same services as were being provided and paid on June 30, 2022.

3. Neither W&T nor Defendants shall take any action or fail to perform any action that would interfere with, frustrate, or prejudice the interests of either party.

4. The Court appoints Andy Antunez as its master to supervise and adjudicate disputes related to the parties' ongoing efforts to transition W&T's information technology ("IT") systems back to internal resources at W&T (the "Transition Master.")

2

5.  The Transition Master shall ensure the orderly, efficient and timely return of W&T's possession and control over the trade secrets, equipment, data, electronic systems—including audio and telephonic systems and computer programs—and all other aspects of W&T's systems and data presently in the possession of or under the control of Defendants.

6.  The Transition Master shall have authority and power to require complete and timely compliance with his decisions.  Any party objecting to an instruction or decision of the Transition Master may raise the objection with the Court within two (2) business days of receiving notice of the issue, or the complaint will be deemed waived.  Responses to any objections brought to the Court are due not later than two (2) business days later.  The Court may rule on the complaint without a hearing to expedite resolution of the dispute.

7.  The costs for the services of the Transition Master shall be paid by W&T, except that if the Transition Master finds that Defendants have abused the process or frustrated the purposes of the Transition Master's appointment, the Transition Master may assign costs to Defendants as it deems appropriate.

**SO ORDERED.**

Signed on this the _____ day of _____ 2022.


_____
The Honorable Mike Engelhart, Presiding

3

# EXHIBIT C



---



## Andy Antunez, EnCE, P.I. (Texas)

Alvarez and Marsal LLC
Senior Director – Disputes and Investigations, LLC
2100 Ross Avenue, 21st Floor
Dallas, TX  75201
Office:  214.438.8438
Cell:     214.450.8717
aantunez@alvarezandmarsal.com

**Certifications**
-EnCase Certified Examiner (EnCE)

-Microsoft Certified Systems Engineer (MCSE)

-AccessData Certified Examiner (ACE)

-Cellebrite Certified Logical Operator (CCLO) and Certified Physical Analyst (CCPA)

**Professional Associations**
-Association of Latino Professionals in Finance and Accounting (ALPFA)

**Education**
-University of Dallas- Master of Business Administration (MBA)
-West Texas A&M University- Bachelor of Business Administration (BBA)

Andy Antunez is a Senior Director in Forensic Technology Services in the Disputes & Investigations practice at Alvarez and Marsal in Dallas, TX.  With over 24 years of experience, specializing in digital forensic investigations, complex preservation and data collections, eDiscovery consulting, and digital forensics expert testimony services.

Mr. Antunez is a licensed private investigator in the State of Texas, earned a Master's degree in Information Technology Management from the University of Dallas and a Bachelor's degree in Computer Information Systems from West Texas A&M University.

Mr. Antunez's areas of focus includes digital forensic analysis and expert testimony related to civil and federal litigations consisting of data destruction investigations, data manipulation investigations, employment and insider risk investigations (Data exfiltration\IP theft), fraud investigations, misappropriation of trade secrets investigations, and unauthorized data access investigations. In addition, Mr. Antunez has provided expert testimony in multiple Federal and State courts, including arbitrations since 2009.

During investigations, Mr. Antunez performs various types of digital forensic analyses (Windows, OSX, IOS, Android) including deleted files, connected USB devices, internet browsing history, file hash (MD5) comparison, Link files\shellbags, and cloud-based services (Dropbox, Box, iCloud). Mr. Antunez builds an exhaustive evidential record of these activities and the forensic analysis methodology supporting these findings through detailed expert reports and depositions.

Mr. Antunez has worked with various global clients in a wide range of industries, including Energy, Banking, Healthcare, Manufacturing, Insurance, Financial Services, Industrial Services, and Telecommunications. He has provided on-site forensic technology services on multiple Foreign Corrupt Practices Act (FCPA) investigations in various countries including China (Hong Kong & Mainland China), Japan, Singapore, United Kingdom, Germany, India, Canada, Mexico, Trinidad and Tobago, Guatemala, Brazil, and Argentina.

Prior to joining Alvarez & Marsal, Mr. Antunez provided forensic technology services at Grant Thornton LLP (2 years), Ernst & Young LLP (9 years), five years as a Regional Network Manager and four years as a Computer Forensics Manager. Additionally, Mr. Antunez spent five (5) years in the energy sector delivering Information Technology solutions at a large independent oil and natural gas company, Pioneer Natural Resources Company.

Mr. Antunez has received industry credentials including EnCase Certified Examiner (EnCE), AccessData Certified Examiner (ACE), Microsoft Certified Systems Engineer (MCSE), Microsoft Certified Professional (MCP) and Microsoft Certified Trainer (MCT).  Mr. Antunez holds two mobile device certifications including Cellebrite Certified Logical Operator (CCLO) and Cellebrite Certified Physical Analyst (CCPA). Mr. Antunez is a member of the Association of Latino Professionals in Finance and Accounting (ALPFA).  Mr. Antunez is also fluent in English and Spanish.



Andy Antunez, EnCE

## Trial and Testimony Experience

**August 22, 2022 – Testimony via Affidavit**
Compressor Engineering Corp., Plaintiff, vs.
Randy L. Anderson, Charles G. Ely, II and Cooper Machinery Services LLC, Defendants.
Case Nos.: 202252394
In the District Court of Harris, County, Texas 270th Judicial District

**May 31, 2022 – Testimony via Affidavit**
Gray Construction, Inc., a Kentucky Corporation, Plaintiff, vs.
Sofidel America Corp., a Florida Corporation, Defendant.
Case Nos.: 19-cv-00057-CVE-JFJ
In the United States District Court for the Northern District of Oklahoma

**March 15, 2022 – Testimony by Declaration**
Lula Jones, CNA, Plaintiff, vs.
Duval Medial Investors, LLC, d/b/a Life Care Centers of Jacksonville and Life Care Centers of America, Inc., Defendants.
Case Nos.: 3:20-cv-00488-TJC-PDB
In the United States District Court for the Middle District of Florida, Jacksonville Division

**January 27, 2022 – Testimony by Declaration**
Roberto Zayas, Jr., Plaintiff, vs.
Arta "Shaun" Noorian and Empower Clinic Services, LLC, Defendants.
Case Nos.: 2019-78001
In the District Court of Harris, County, Texas 295th Judicial District

**January 26, 2022 – Testimony by Oral Deposition 30(b)(6)**
Gray Construction, Inc., a Kentucky Corporation, Plaintiff, vs.
Sofidel America Corp., a Florida Corporation, Defendant.
Case Nos.: 19-cv-00057-CVE-JFJ
In the United States District Court for the Northern District of Oklahoma

**May 25, 2021 – Trial Testimony (Video)**
Colin Spencer, Complainant, vs.
Waste Connection, Inc., Respondent.
Case Nos.: 2020-CER-00002, 2020-SWD-00002
OSHA Arbitration- U.S. Department of Labor

**December 2, 2020 – Trial Testimony (Telephone)**
Colin Spencer, Complainant, vs.
Waste Connection, Inc., Respondent.
Case Nos.: 2020-CER-00002, 2020-SWD-00002
OSHA Arbitration- U.S. Department of Labor

**February 7, 2020 – Trial Testimony**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**October 10, 2019 – Testimony by Oral Deposition**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District

**May 30, 2019 – Testimony by Expert Report via Affidavit**
Downhole Technology LLC, Plaintiffs, vs.
James Duke VanLue, Defendant.,
No. 2018-47418
In the District Court of Harris, County, Texas 295th Judicial District
*Consolidated with*
James Duke VanLue, Plaintiff, vs.
Schoeller Bleckmann American, Inc., Defendant
No.2018-76666
In the District Court of Harris, County, Texas 127th Judicial District

**January 31, 2019 – Testimony by Supplemental Declaration**
Chemoil Corporation, Plaintiff, vs.
Apex Fuels, LLC, a Delaware limited Liability Company; Cunningham Holdings, INC., a
Delaware Corporation; Gregory S. Cunningham, individually; Apex Fuels INC., a California
corporation; Apex Energy Ventures, LLC, a California limited liability company, dba Apex
Fuels Stations, f/k/a Cunningham Holdings, LLC, a California limited liability company, dba
Apex Fuels Stations; Apex Tank Lines Inc., a Delaware Corporation; SHELLY Cunningham,
individually; Scott Cunningham, individually; Brian Cunningham, individually; and Rachel
Pust, individually; Bogart, LLC, a Wyoming limited liability company; Pacwest Financial
Services LLC, a California limited liability company; and Does 10 through 50, inclusive,
Defendants.
No. MCC1500325
Superior court of the state of California County of Riverside

**September 17, 2018 – Testimony by Declaration**
Chemoil Corporation, Plaintiff, vs.
Apex Fuels, LLC, a Delaware limited Liability Company; Cunningham Holdings, INC., a
Delaware Corporation; Gregory S. Cunningham, individually; Apex Fuels INC., a California
corporation; Apex Energy Ventures, LLC, a California limited liability company, dba Apex
Fuels Stations, f/k/a Cunningham Holdings, LLC, a California limited liability company, dba
Apex Fuels Stations; Apex Tank Lines Inc., a Delaware Corporation; SHELLY Cunningham,
individually; Scott Cunningham, individually; Brian Cunningham, individually; and Rachel
Pust, individually; Bogart, LLC, a Wyoming limited liability company; Pacwest Financial
Services LLC, a California limited liability company; and Does 10 through 50, inclusive,
Defendants.
No. MCC1500325
Superior court of the state of California County of Riverside



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**December 1, 2017 – Testimony by Oral Deposition**
Universal Engraving, Inc.,Plaintiff, vs.
Polsinelli PC, and Monica M. Fanning, Eric E. Packel, Anthony J. Romano, and
Donald C. Stevens, Defendants.
No. 1616-CV09292
The District Court of Jackson County, Missouri

**August 8, 2017 – Testimony by Appearance**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**July 18, 2017 – Testimony by Supplemental Expert Report**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**June 29, 2017 – Testimony by Oral Deposition**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**June 9, 2017 – Testimony by Supplemental Declaration**
D & D, LLP, Plaintiff, vs.
Goldfarb PLLC and H.P.L., Defendants.
No. DC 16-07193
The District Court of Dallas County, Texas, 116th Judicial District

**May 11, 2017 – Testimony by Declaration**
D & D, LLP, Plaintiff, vs.
Goldfarb PLLC and H.P.L., Defendants.
No. DC 16-07193
The District Court of Dallas County, Texas, 116th Judicial District

**April 28, 2017 – Testimony by Expert Report**
Timothy D. Leuliette; Claimant/Counterclaim Respondent, vs.
Visteon Corporation; Respondent/ Counterclaimant.
No. 01-16-0000-5692
American Arbitration Association

**April 11, 2017 – Testimony by Oral Deposition**
William T. Obeid, Directly and Derivatively on Behalf of Gemini Real Estate Advisors, LLC, et
al., Plaintiff, vs.
Christopher La Mack, et al., Defendants and Gemini Real Estate Advisors, LLC, et al.,
Nominal Defendants
No. 14-CV-06498-LTS
United States Southern District Court, for the District of New York, New York



Andy Antunez, EnCE

## Trial and Testimony Experience *(Continued)*

**February 27, 2017 – Testimony by Expert Report**
William T. Obeid, Directly and Derivatively on Behalf of Gemini Real Estate Advisors, LLC, et al., Plaintiff, vs.
Christopher La Mack, et al., Defendants and Gemini Real Estate Advisors, LLC, et al., Nominal Defendants
No. 14-CV-06498-LTS
United States Southern District Court, for the District of New York, New York

**September 2, 2016 – Testimony by Expert Report via Affidavit**
Ashley Tyler Hokanson, and Jamila Cutliff Hokanson, Plaintiff vs.
United Investexusa 2, LLC D/B/A New Western Acquisitions; Rodolfo Gonzales; and Zachary Steinberg, defendants.
No. CC-15-03602-B
The District Court of Dallas County, Texas, County Court at Law Number 2

**June 30, 2015 – Testimony by Expert Report via Affidavit**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
No. 2014cv31356
United States District Court, for the District of Denver County, Colorado

**March 9, 2015 – Testimony by Rebuttal Report**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
No. 2014cv31356
United States District Court, for the District of Denver County, Colorado

**January 19, 2015 – Testimony by Expert Report**
Premium Pet Health, Plaintiff, vs. All American Pet Protein, Defendants
2014cv31356
United States District Court, for the District of Denver County, Colorado

**April 11, 2012 - Trial Testimony**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**September 1, 2009 - Testimony by Supplemental Expert Report**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**August 14, 2009 - Testimony by Oral Deposition**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

**July 17, 2009 - Testimony by Expert Report**
Universal Engraving, Inc., Plaintiff, vs. Metal Magic and Charles R. Brown, Defendants
No. CV08-01944-PHX
United States District Court, for the District of Arizona

# DONALD D. WARDEN II

Dwarden@alvaka.net                                                      Cell: (615) 243-5510

## EXECUTIVE LEVEL TECHNOLOGY AND GENERAL MANAGEMENT

Don is a highly respected executive with a 30-year track record of Global leadership experience in technology and general management. He leverages a unique mix of technical skills with excellent business savvy to develop and execute strategies, processes, and programs for enterprise companies. Don is builder and leader, with "big picture" vision, an excellent grasp of new and emerging enterprise technologies, methodologies, and a history of consistently exceeding performance goals.

## CORE LEADERSHIP QUALIFICATIONS

| | | |
|---|---|---|
| • **Executive Leadership** | • **Territory Growth & Expansion** | • **Cross-Functional Leadership** |
| • **Technology Vision** | • **Client Acquisition & Retention** | • **Complex Digital Forensics** |
| • **New Business Development** | • **Team Building & Training** | • **P&L / Fiscal Management** |
| • **Contract Negotiation** | • **Cyber Incident Response** | • **Global Team Management** |
| • **IT Service Operations** | • **Cybersecurity Operations** | • **Managed Delivery** |

## PROFESSIONAL EXPERIENCE

Alvaka Networks, Irvine, CA                                              2020 to Present
*Specialized cybersecurity solutions and consulting.*

**SENIOR ASSOCIATE, CYBERSECURITY**
Don works in the cybersecurity threat response practice.
- Provides expert guidance on remediation and response efforts to clients affected by ransomware and other cybersecurity attacks.
- Cybersecurity incident response commander managing client communications, budget and team orchestration.

Cyber Guards USA, Memphis, TN                                           2020 to Present
*Managed Security Services Provider, Risk and Compliance, and Incident Response.*

**DIRECTOR OF OPERATIONS**
Don manages and tracks daily operational performance of the company.
- Leads reviews with clients to review security posture.
- Leads efforts in Governance and Risk Compliance (GRC) to assist clients in meeting their cybersecurity framework implementations.
- Subject matter expert in Digital Forensics and Incident Response cases.  Work with local, state and Federal law enforcement on cyber extortion, insider threat and other cybercrime cases involving corporations and high net worth family offices.
- Expert in cybersecurity threat hunting, analysis and remediation.
- Featured in monthly video blog for the EC-Council to discuss complex cybersecurity challenges.

CORTAC Group, Inc., Issaquah, WA                                        2020 to Present
*Business consulting, regulated business compliance, and cybersecurity.*

**SENIOR ASSOCIATE**
Don is a subject matter expert in complex cybersecurity, infrastructure design and regulated business compliance.
- Performs Cybersecurity Maturity Model Certification (CMMC) assessments and program design for regulated businesses.
- Aligns complex business problems with cybersecurity operations for companies in the Defense Industrial Base.
- Cybersecurity Subject Matter Expert (SME) for their client, Microsoft, working in the Quantum Computing Realm.

**Continued on Page 2**

**DONALD D. WARDEN II**                                                                     **Page 2**

TeamLogic IT of Middle Tennessee, Franklin, TN                                          2014 to 2020
*A franchised Managed Service Service Provider (MSP) and consulting firm that provides business technology solutions and managed IT and security services.*
**OWNER AND PRESIDENT/CEO**
Don started and operated this franchise business since inception. Directly managed 10 engineers and 2 administrative employees.
- Rookie of the Year recipient in 2016 – Highest revenue generated for first full year franchisees
- Acquired second franchise territory in 2017
- Year over year revenue growth of over 27%
- Million Dollar Club Initiate in 2017 – One of only 10 franchisees in the network

Core BTS Inc., Indianapolis, IN                                                          2012 to 2014
*A super-regional consulting firm that provides business technology solutions, managed services and cloud compute.*
**REGIONAL VICE PRESIDENT**
Don led a region comprised of 9 Central and Southern US States with a team of 10 sellers and 16 engineers. He had full responsibility for the direction and general management of all regional operations, market competitiveness, pricing, compensation, distribution and channel strategy that drove the company's achievement of its primary objectives and revenue goals.
- Took his region from **negative to positive revenue in six months** exceeding bottom line goals by 142% in 2013.
- Circle of Excellence winner in 2013
- Exceeded annual budget goal in two quarters in FY 2014.

AVANADE INC, Seattle, WA                                                                 2000 to 2012
*A subsidiary of Accenture LLP. with 15,500 globally and annual sales of $2.3 billion.*
**ACCOUNT GROUP EXECUTIVE/TERRITORY EXECUTIVE** *(2009-2012)*
Don directed and coordinated all aspects of sales, business development, and client service delivery with accounts located throughout the Tennessee, Alabama, and Mississippi region. Developed and executed strategies for maximizing growth with both new and existing accounts by providing sales and technology leadership, direction, and support to a geographically dispersed team of 5 sales representatives. Utilized a resource base of more than 3,000 diverse professionals across the US to ensure that client needs and expectations were consistently met or exceeded.
- Built territory from the **ground floor to more than $8 million** in average annual sales within 2 years.
- Expanded base of clients by more than 100% each year.

**CHIEF INFRASTRUCTURE ARCHITECT, EASTERN US** *(2010-2011)*
In this collateral duty role, Don reviewed technology approach and provided design reviews for projects in the Eastern US Operating Group.  Acted as a trusted advisor to clients.  Drew upon his extensive technical and business background to provide clients with thought leadership.
- Account Group of The Year Recipient
- In addition to his team goal, he **personally drove $5M in sales** and revenue assist while **providing 15% chargeability.**

**ACCOUNT PORTFOLIO DIRECTOR** *(2006-2009)*
Don managed all aspects of sales, business development, and service delivery with accounts in the oil, gas, and energy sectors. Served as primary client contact for all matters pertaining to sales, project performance, and client relations. In addition, Don managed the relationship with Microsoft in the Heartland region.
- Expanded footprint in the oil sector from just one relationship to a presence with every major oil company **world-wide** as well as with top oil services companies and energy producers.
- Surpassed sales and revenue goals each year, which included attainment of 117% of revenue, 129% of net income, and 158% of sales goals.

**SENIOR DIRECTOR, SYSTEMS ENGINEER** *(2000-2012)*
As a member of leadership team within the Technology Infrastructure practice, Don served as the go-to-market lead for enterprise messaging, storage, operations and high-availability solutions. While the company was in start-

**DONALD D. WARDEN II**                                                                    **Page 3**

up mode Don developed strategy, created assets, and provided sales support. Served as career mentor for more than 13 engineers.

- Served as lead for major Lotus Notes to Microsoft Exchange system migration impacting 83.000 Accenture employees. Invited to speak in Taipei, Taiwan at Asian Technology Summit to highlight best practices in complex messaging migrations.

- Led project team in the design of operations and store systems for Best Buy. Assisted with the acquisition and growth strategy for Geek Squad.

- Developed a comprehensive approach and work estimate for **upgrading 13,000 Windows servers**, affecting mission-critical applications for JP Morgan.

- Led team in performing a detailed analysis of current IT operations for Sainsburys, which provided the framework for a more efficient and resilient department that was more responsive to the company's needs during a period of explosive growth.

- Selected by Microsoft to participate in prestigious 6-week "Ranger" program for top messaging experts. Worked with Exchange product group in learning the product and internal processes from the ground up.

- Received "CEO Award" for outstanding project leadership.

**EARLY CAREER EXPERIENCE:**

Served 8 years in the U.S. Navy ending as an Information Systems Security Officer (ISSO). Highly decorated combat disabled veteran. Received Honorable Discharge.

## EDUCATION AND CERTIFICATIONS

**Master of Science, Cybersecurity and Information Assurance –** Western Governors University, 2021
**Bachelor of Science, Business Administration/Management** – COLORADO TECHNICAL UNIVERSITY, 2007

*Certifications:*
**EC-Council Certified Ethical Hacker (C|EH)**
**Mile2 Certified Digital Forensics Examiner (C)DFE**
**PMI Project Management Professional (PMP)**
**Fortinet Network Security Expert (NSE-3)**
**SentinelOne Partner Sales Engineer**
**SentinelOne IR Engineer (SiREN)**
**Accenture System Integration Solutions Architect (SISA)**
**Microsoft Certified Master (MCM)** – Exchange
**Microsoft Exchange Ranger**
**Microsoft Certified Systems Engineer (MCSE)**
**Information Technology Infrastructure Library (ITIL)** – Apprentice

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants. | § | 151ST JUDICIAL DISTRICT |

**ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO PERMIT PLAINTIFF'S COMPUTER EXPERT AND CHIEF INFORMATION OFFICER TO ACCESS RECORDS DESIGNATED "AEO" AND REQUEST TO EXPEDITE CONSIDERATION**

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (together, "AAIT"[1]), file the following Response to Plaintiff, W&T Offshore, Inc.'s ("W&T") Motion for Leave to Permit Plaintiff's Computer Expert and Chief Information Officer to Access Records Designated "AEO" and Request to Expedite Consideration (filed September 12, 2022).

**I.**

**SUMMARY OF RESPONSE**

**The Court got it right the first time**—W&T's Chief Information Officer, Mr. Alvin Haynes, should not be permitted to review "Confidential-Attorneys Eyes Only" ("AEO") information. Rather than rely on its previous argument that its CIO falls under the category of an "expert" retained solely for the purpose of preparing for trial, W&T now asks the Court to allow it to disclose AEO information to Mr. Haynes under the fallback provision in the Joint Stipulated Confidentiality Order (the "Confidentiality Order"). The very purpose of the AEO designation is

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

to prevent employees of the opposition from reviewing confidential, trade secret information. This purpose would be defeated if the Court were to allow W&T's CIO to review AEO information.

## II.
### PROCEDURAL BACKGROUND

As the Court is aware, the parties jointly requested entry of the Confidentiality Order, filed by W&T on September 2, 2022, which includes the following pertinent language:

> 1.    Except as otherwise provided in this or subsequent court orders, documents designated as "Confidential" shall not be disclosed or shown to anyone other than:
>
> (a)    The Parties, the employees of such Parties, or the agents of the Parties (or the parent or beneficial owner of such Party) to whom it is necessary that Confidential Information be shown for purposes of this proceeding;
>
> (b)    Outside counsel for the Parties, the employees of such attorneys, and agents of such attorneys, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;
>
> (c)    Inside counsel for each Party and the employees of such attorneys or support staff of inside counsel employed by the Parties themselves, including but not limited to paralegals and e-discovery collection staff, to whom it is necessary that Confidential Information be shown for purposes of this proceeding;
>
> (d)    Persons employed by any Party or its attorneys solely for the purpose of assisting in the preparation of this action for trial, including but not limited to experts, their staff, and support personnel to whom it is necessary that Confidential Information be shown for purposes of assisting in such preparation;
>
> (e)    The Court or persons employed by the Court and the jury;
>
> (f)    Duly qualified court reporters and videographers participating in these proceedings;
>
> (g)    Persons who were the authors or recipients of the documents in the ordinary course of business;
>
> (h)    Witnesses in preparation for or in the course of depositions or the trial of this matter; and
>
> (i)    Persons who, in addition to those identified above, are permitted access by order of the Court or upon stipulation of the Party that produced or disclosed the Confidential Information, after notice to all Parties and an opportunity has been had to object.
>
> 2.    In the event that documents or testimony are designated as "Confidential—Attorneys' Eyes Only," such information shall not be disclosed or shown to anyone other than the persons described in paragraph C.1(b), C.1(d), C.1(e), C.1(f), C.1(g) and C.1(i).

2

W&T has already tried, and failed, to provide Mr. Haynes access to AEO information under subsection (d) above. The Court correctly recognized, however, that subsection (d) applies to outside experts retained solely for the purpose of assisting in the preparation of this action for trial, such as Mr. John deCraen of Kroll Associates, Inc.[2], W&T's retained computer expert who was present at the September 12, 2022 hearing.

Now, W&T has requested this Court to allow it to give W&T's Chief Information Officer, Mr. Haynes, access to AEO information under subsection (i), a fallback provision in the Confidentiality Order merely recognizing the Court's authority to authorize access to AEO information, or the parties' ability to stipulate to the same:

> (i)   Persons who, in addition to those identified above, are permitted access by order of the Court or upon stipulation of the Party that produced or disclosed the Confidential Information, after notice to all Parties and an opportunity has been had to object.

W&T's repeated efforts to get its CIO access to AAIT's proprietary information are without legal basis and should be rejected by this Court.

### III.
### RESPONSE

While W&T's attempted avenue to have its CIO review AEO information has changed—from casting Mr. Haynes as an "expert" under subsection (d) to the fallback provision found under subsection (i)—the logic is the same as to why Mr. Haynes should not be permitted access to AEO information: the Stipulated Confidentiality Order does not permit a W&T employee to review AEO information, much less an *officer* whose job it is to advance W&T's business interests. Allowing the opposing side's employees to access AEO documents would completely undermine

---

[2] By this Response, AAIT does not waive its rights to object to and/or challenge that Mr. deCraen satisfies the requirements of a testifying expert under Texas law.

the purpose of the AEO designation—i.e., preventing employees of the opposition from reviewing confidential, trade secret information—and also render subsection (a) of the Confidentiality Order, which governs the parties and employees of the parties, such as W&T's CIO, entirely superfluous.

And while W&T argues that Mr. Haynes' computer expertise is pivotal to W&T's preparation of this case for trial, it undercuts its own argument by the fact that it has already retained a computer expert—Mr. deCraen—for this very purpose. W&T wants its CIO to gain access to AEO information so that W&T may recreate AAIT's confidential network design that AAIT has spent millions of dollars and thousands of hours to create and implement—a network that AAIT developed to service not only W&T, but several other of their customers in the Gulf. To allow Mr. Haynes to access AEO information would contradict the purpose of the Confidentiality Order.

Further, the sort of blanket release from the Confidentiality Order's AEO provisions that W&T seeks for its CIO is wholly improper. If W&T wishes to confer as to allowing its CIO to view particular AEO information, it should have that conversation on a case-by-case basis with AAIT, rather than seeking an order for the CIO to view *all* AEO information. AAIT respectfully requests that the Court deny W&T's Motion for Leave to Permit Plaintiff's Computer Expert and Chief Information Officer to Access Records Designated "AEO" and Request to Expedite Consideration.

## **REQUEST FOR RELIEF**

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC, respectfully request that the Court deny Plaintiff, W&T Offshore, Inc.'s Motion for Leave to Permit Plaintiff's Computer Expert and Chief Information Officer to Access Records Designated "AEO" and Request to Expedite Consideration; that the Court order W&T to refrain from providing documents

4

designated as Confidential-Attorneys' Eyes Only to any of its employees, including Mr. Alvin

Haynes, and that the Court award All About IT, Inc. and Secure Cloud, LLC all further relief that

they may show themselves justly entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By:  */s/ Scott D. Ellis*
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

**GIBSON | WUNDER, P.C.**

By:  */s/ Ethan Gibson*
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on September 14, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

Benjamin L. Hall
THE HALL LAW GROUP, PLLC
530 Lovett Blvd.
Houston, Texas 77006
bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

_/s/ Rey Rodriguez, IV_____
Rey Rodriguez, IV

6

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants. | § | 151ST JUDICIAL DISTRICT |

## ORDER

On this day, the Court considered Plaintiff, W&T Offshore, Inc.'s ("W&T") Motion for Leave to Permit Plaintiff's Computer Expert and Chief Information Officer to Access Records Designated "AEO" and Request to Expedite Consideration (filed September 12, 2022) (the "Motion"). After considering the Motion, the Response of Defendants, All About IT, Inc. and Secure Cloud, LLC (together, "AAIT"), and the arguments of counsel, the Court is of the opinion that the Motion should be DENIED.

It is, therefore, ORDERED that the Motion is DENIED.

It is further ORDERED that W&T shall not disclose documents designed by AAIT as "Confidential-Attorneys' Eyes Only" to W&T's employees and/or officers, including, but not limited to, Mr. Alvin Haynes.

It is further ORDERED that all relief not specifically addressed by this Order is hereby DENIED.

Signed this _____ day of _____, 2022.

_____
The Honorable Mike Engelhart, Presiding



**FOLEY & LARDNER LLP**

ATTORNEYS AT LAW

1000 LOUISIANA STREET, SUITE 2000
HOUSTON, TX  77002-2099
713.276.5500 TEL
713.276.5555 FAX
WWW.FOLEY.COM
sellis@foley.com

September 14, 2022

<u>**Via E-Filing**</u>

Judge Mike Engelhart
Keely Hodgins
Harris County Civil Courthouse
201 Caroline Street, 11th Floor
Houston, Texas 77002

Re:      Cause No. 2022-51667; *W&T Offshore, Inc. v. All About IT, Inc. and Secure Cloud, LLC*; in the 151st Judicial District Court of Harris County, Texas; Proposed Order.

Dear Judge Engelhart:

On September 12, 2022, the Court held a hearing on various motions, responses, and replies filed by W&T Offshore, Inc. ("W&T"), All About IT, Inc. ("AAIT"), and Secure Cloud LLC ("Secure Cloud") (collectively, the "Parties"). The Court directed the Parties to confer and provide the Court with proposed orders and the names of suggested transition masters. One such order requested was a proposed order on W&T's Emergency Motion for a Protective Order and Motion for Appointment of Master. Today, W&T filed a proposed order that does not accurately reflect the Court's directives at the September 12, 2022 hearing, and attempts to secure much greater relief than the Court had stated it was inclined to provide.

Accordingly, AAIT and Secure Cloud submit the attached proposed order, which more accurately reflects the Court's directives to the Parties.

Should the Court have any questions or need anything further, please let me know.

Sincerely,

*/s/ Scott D. Ellis*

Scott D. Ellis

cc:      Rey Rodriguez, IV (firm)
          Ethan Gibson (ethan@gibsonwunder.com)
          Hessam Parzivand (hp@parzfirm.com)

AUSTIN    DETROIT    MEXICO CITY    SACRAMENTO    TALLAHASSEE
BOSTON    HOUSTON    MIAMI    SALT LAKE CITY    TAMPA
CHICAGO    JACKSONVILLE    MILWAUKEE    SAN DIEGO    WASHINGTON, D.C.
DALLAS    LOS ANGELES    NEW YORK    SAN FRANCISCO    BRUSSELS
DENVER    MADISON    ORLANDO    SILICON VALLEY    TOKYO

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

**PROPOSED ORDER GRANTING, IN PART, PLAINTIFF W&T OFFSHORE, INC.'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION FOR APPOINTMENT OF MASTER**

After considering Plaintiff W&T Offshore, Inc.'s ("W&T") Emergency Motion for a Protective Order and Motion for Appointment of Master, the Response of Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud"), and all documents on file with the Court, and finding that good cause has been shown and that this case is an exceptional case warranting issuance of this Order, the Court **GRANTS** the Motion, in part, as follows:

1. The Court appoints _____ as its master to supervise and adjudicate disputes related to the parties' ongoing efforts to transition the information technology ("IT") services historically provided by AAIT to W&T to handle internally or for a third party to handle on behalf of W&T (the "Transition Master").

2. The Transition Master shall ensure the orderly and timely return to W&T, AAIT, and/or Secure Cloud's possession and control their respective trade secrets, equipment, data, electronic systems, programs, infrastructure—including audio, email and telephonic systems and computer programs—and all other aspects of W&T, AAIT, and/or Secure Cloud's systems and data.

3. Any party objecting to an instruction or decision of the Transition Master may raise the objection with the Court within two (2) business days of receiving notice of the issue, or the complaint will be deemed waived. Responses to any objections brought to the Court are due not later than two (2) business days later. The Court may rule on the complaint without a hearing to expedite resolution of the dispute.

4.  The costs for the services of the Transition Master shall be paid by W&T, except that if the Transition Master finds that AAIT and/or Secure Cloud have abused the process or frustrated the purposes of the Transition Master's appointment, the Transition Master may assign costs to AAIT and/or Secure as he deems appropriate.

SO ORDERED.

Signed on this the _____ day of _____ 2022.


_____

The Honorable Mike Engelhart, Presiding

2

CAUSE NO. 2022-51667

| | | |
|---|---|---|
| W&T OFFSHORE, INC., | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| ALL ABOUT IT, INC. and | § | |
| SECURE CLOUD, LLC, | § | |
| | § | |
| Defendants | § | 151ST JUDICIAL DISTRICT |

### DEFENDANTS ALL ABOUT IT, INC. AND SECURE CLOUD, LLC'S ORIGINAL ANSWER

Defendants, All About IT, Inc. ("AAIT") and Secure Cloud, LLC ("Secure Cloud") (sometimes collectively referred to herein for convenience, "AAIT"[1]), file this Original Answer to Plaintiff, W&T Offshore, Inc.'s ("W&T") Verified Original Petition and Application for a Temporary Restraining Order, Temporary Injunction, and Permanent Injunction.

### GENERAL DENIAL

As authorized by Rule 92 of the Texas Rules of Civil Procedure, AAIT denies each and every allegation contained in W&T's petition and demands that W&T prove its charges by a preponderance of the credible evidence, as is required by the Constitution and the laws of the State of Texas. AAIT reserves the right to amend and plead further, should such additional pleadings subsequently prove to be either desirable or necessary.

### AFFIRMATIVE AND OTHER DEFENSES

1.      W&T's claims are barred, in whole or in part, because W&T fails to state a claim upon which relief may be granted.

---

[1] While AAIT and Secure Cloud are separate and distinct entities, they are sister companies operated by the same management team.

2.    W&T's claims are barred, in whole or in part, because W&T's actions contributed, in whole or in part, to its alleged damages.

3.    W&T's claims are barred, in whole or in part, by its unclean hands.

4.    W&T's claims are barred, in whole or in part, by waiver.

5.    W&T's claims are barred, in whole or in part, by estoppel.

6.    W&T's claims are barred, in whole or in part, because they are preempted by Texas Civil Practice and Remedies Code § 134A.007(a).

7.    W&T's claims are barred, in whole or in part, by the Statute of Frauds.

8.    W&T's claims are barred, in whole or in part, by unconscionability.

9.    W&T's claims are barred, in whole or in part, by its failure to mitigate its alleged damaged.

10.   W&T's claims are barred, in whole or in part, by offset.

11.   W&T's claims are barred, in whole or in part, by its prior material breach of the parties' agreement(s).

12.   AAIT reserves the right to assert additional defenses as permitted by Texas law.

## <u>REQUEST FOR RELIEF</u>

Accordingly, Defendants, All About IT, Inc. and Secure Cloud, LLC respectfully request that Plaintiff, W&T Offshore, Inc. take nothing on its claims, and for all further relief that they may show themselves justly entitled.

Respectfully submitted,

**FOLEY & LARDNER LLP**

By: ___/s/ Scott D. Ellis_____
    Scott D. Ellis
    Texas Bar No. 24044606
    sellis@foley.com
    Rey Rodriguez, IV
    Texas Bar No. 24107357
    rrodrigueziv@foley.com
    1000 Louisiana Street, Suite 2000
    Houston, Texas 77002-2099
    Telephone:  (713) 276-5500
    Facsimile:  (713) 276-5555

**GIBSON | WUNDER, P.C.**

By: ___/s/ Ethan Gibson_____
    Ethan Gibson
    Texas Bar No. 24073131
    ethan@gibsonwunder.com
    4 Houston Center
    1221 Lamar St. Ste. 1001
    Houston, Texas 77010
    Main: (713) 897-8008
    Direct: (713) 897-8001

**ATTORNEYS FOR DEFENDANTS,
ALL ABOUT IT, INC. AND SECURE
CLOUD, LLC**

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on September 14, 2022, in accordance with the Texas Rules of Civil Procedure, the following counsel of record was provided a true and correct copy of the foregoing document:

> Benjamin L. Hall
> THE HALL LAW GROUP, PLLC
> 530 Lovett Blvd.
> Houston, Texas 77006
> bhall@thlf.us

*Counsel for W&T Offshore, Inc.*

> _/s/ Rey Rodriguez, IV_____
> Rey Rodriguez, IV

4