1             **IN THE UNITED STATES DISTRICT COURT**
               **FOR THE SOUTHERN DISTRICT OF TEXAS**
2                  **HOUSTON DIVISION**

3 W&T OFFSHORE, INC.           )      NO.  4:22-CV-03149
                       )
4                        )
   VS.                       )      Houston, Texas
5                        )      4:05 p.m.
                       )
6 ALL ABOUT IT, INC. AND     )      September 16, 2022
   SECURE CLOUD, LLC         )
7

8

9    ********************************************************

10                        **HEARING**

11        **BEFORE THE HONORABLE LYNN N. HUGHES**

12          **UNITED STATES DISTRICT JUDGE**

13               **VOLUME 1 OF 1**

14    ********************************************************

15 APPEARANCES:

16 FOR THE PLAINTIFF:

17       Mr. George Jacob Hittner
       The Hittner Group
18       PO Box 541189
       Houston, TX 77254
19       713-824-1270
       Email: George@thehittnergroup.com
20
       Mr. Daniel S. Mayerfeld
21       Skadden Arps
       1000 Louisiana Street, Suite 6800
22       Houston, Texas 77002
       713.655.5100
23       Email:  Daniel.mayerfeld@skadden.com

24

25

1 FOR THE DEFENDANT:

2      Mr. Reymundo G. Rodriguez, IV
       Foley Lardner, LLP
3      1000 Louisiana St., Suite 2000
       Houston, TX 77002
4      713-276-5145
       Email: Rrodrigueziv@foley.com
5
       Mr. Scott David Ellis
6      Gardere Wynne Sewell LLP
       1000 Louisiana Street, Suite 2000
7      Houston, TX 77002-5011
       713-276-5615
8      Email: Sellis@foley.com

9      Mr. Ethan Graham Gibson
       Gibson Wunder
10     4 Houston Center
       1221 Lamar Street, Suite 1001
11     Houston, TX 77010
       713-897-8008
12     Email: Ethan@gibsonwunder.com

13 ALSO PRESENT:

14     Mr. Jonathan Haynes
       Mr. Alvin Curth
15

16 COURT REPORTER:

17     Ms. Kathleen K. Miller, CSR, RMR, CRR
       515 Rusk, Room 8004
18     Houston, Texas  77002
       Tel:  713-250-5087
19

20 Proceedings recorded by mechanical stenography.

21 Transcript produced by computer-assisted transcription.

22

23

24

25

1                        P R O C E E D I N G S

2                 THE COURT:  Please be seated.  All right.

3 Would somebody explain the decision other than this?

4                 MR. GIBSON:  I -- may I give that a shot, Your

04:05:22   5 Honor?  I'm not sure if I can answer all of your questions,

6 but I'll try.

7                 THE COURT:  I haven't read it at all, other

8 than what I heard you all talk about so --

9                 MR. GIBSON:  What you have -- what was e-mailed

04:05:36  10 to the Court, as far as I understand it, we were just

11 copied on it, and I was trying to read it on my phone, is a

12 more formalized version of the terms and conditions that we

13 read into the record yesterday before we left.

14                      Unfortunately, the parties are still at

04:05:53  15 the same impasse where we believe that their number is too

16 low.  They believe that our number is too high.  Their

17 number is $13,000 per day; ours is $25,000 per day.  And

18 what we had -- our agreement appears to be today the same

19 as it was yesterday, effectively, which is we believe that

04:06:15  20 the Court can select their number, can select our number,

21 or could pick a number in-between.  But, unfortunately,

22 we're unable to bridge that gap ourselves, and we tried.

23 We pushed into it.

24                 MR. HITTNER:  We have reached agreement on

04:06:29  25 everything else.

1          MR. GIBSON:  We have reached agreement on
2 everything else, and the parties have agreed that they will
3 empower the Court to make that selection for this contract.
4               Now, if the Court is uncomfortable with
04:06:40  5 that, there is an alternative tier.
6          THE COURT:  No.  It's my problem.  We don't
7 normally shuffle each other stuff, so I am pleased to do
8 it.  Obviously, I always wish people would solve their own
9 problems, but then I would have to learn to play golf.  So
04:07:06 10 does each side want to make a presentation?
11          MR. GIBSON:  I believe so.  I think we were
12 just -- I mean, very briefly I think we would just present
13 our side, so you can understand the position that we're
14 taking and why.
04:07:20 15          THE COURT:  I have the agreed document?
16          MR. GIBSON:  Yes.  So the original contract
17 that we have been performing for some time, the number that
18 W&T keeps referencing, the 300,000, that is to maintain a
19 stable network.  Meaning those computers are out there; the
04:07:37 20 settings are installed; the computers are running.  We just
21 need to react when things break.
22               What they're asking for us to do now is
23 fundamentally different.  They want us to be their -- as
24 they said earlier today, their 24/7 service providers who
04:07:53 25 will be to perform all these services wherever they will

1 break out, while they are unplugging computers and plugging

2 them back in.  And these are platforms out in the ocean, so

3 when we lose connectivity, it's an emergency.

4                    So it is not a contract we're willing to

04:08:06  5 perform at the original just listening, you know, just

6 watching the phone and answering it when it rings kind of

7 rate.  So we have -- and they're asking us effectively to

8 transition all of our services over to them, and we have

9 agreed to do it, and they will need our help for this.  But

04:08:22 10 it does require our people travelling to over 100 platforms

11 out into the Gulf.  We have got to identify all kinds of

12 different configurations.

13                    It is going to be a lot of work.  And all

14 we're saying is we're not willing to do that monumental

04:08:36 15 level of work for the original price you have been paying

16 for a much-lower-intensity contract.  The original

17 contract, as I mentioned several times, was about $300,000

18 a month.  That comes out to about $10,000 a day.

19                    So we believe that their number, $13,000,

04:08:52 20 is -- does not include a sufficient premium for the

21 additional work that will be required to perform all this

22 -- all these steps.  We believe $25,000 is the more correct

23 number considering all of the work, and the attentiveness,

24 and the lack of -- we will have no idea where the outages

04:09:11 25 are going to be coming from because they are going to be

1 out there with their team shutting things down and trying

2 to move the data over.  It is going to be a very stressful

3 time for us, and we want to make sure that we are

4 compensated for that role that we will be performing.

04:09:23  5                        Originally, we had offered $250 per day

6 per platform.  That comes out to about $37,000 -- $37,500

7 per day.  So when we brought the price down to $25,000, we

8 believe we are offering a substantial discount over that

9 original offer, which I believe was fair, $250 for offshore

04:09:43  10 platform.

11                        So, I believe, $25,000 is fair.  I think

12 it's -- I think it properly compensates W&T for the work

13 that they will have to do, and it's a substantial amount of

14 work we are being asked to do under the terms of that

04:09:57  15 agreement.  Thank you, Your Honor.

16                        MR. HITTNER:  Thank you, Your Honor.  I do -- I

17 do believe that the parties have made a lot of progress,

18 and before we walked into the courtroom, both sides were

19 willing to let Judge Costa, or Judge Halbach, whoever ended

04:10:15  20 up being the adjudicator, determine what that daily rate

21 was going to be.  But when we walked in, we said, We're

22 happy to have the Judge do it as well.

23                        To be clear, the numbers of -- we're

24 paying $10,000 on average a day.  To be clear, the 13 and

04:10:34  25 the 25 that counsel is referencing was where we ended up

1  yesterday from our negotiations.  It's my understanding

2  that their last offer was $20,000 a day.  But be that as it

3  may, the services are currently being provided at $10,000 a

4  day.  Those services will decline over time, and decline

04:11:00  5  relatively quickly depending on how cooperative they are.

6                    So we don't want to create an incentive at

7  some high rate for this thing to be delayed.  We have set

8  up every contingency we can possibly think of to adjudicate

9  problems along the way with Judge Costa or Judge Halbach,

04:11:18  10  as the adjudicator, and we have also asked that this Court

11  retain jurisdiction until the time expires.

12                    So, again, we are here because we need our

13  data.  We need our platforms to be seamlessly transitioned;

14  but as soon as those transitions happen, you know, we're

04:11:41  15  done.  They are done.  And we built that into the

16  agreement.  So we think a two-and-a-half times premium, a

17  250 percent premium, on these services is way out of whack

18  with where we need to be just to transition services.

19                    They have made a lot of money.  We're

04:13:05  20  happy to pay a premium to make sure that this is seamlessly

21  done, but, again, we think $13,000 compared to the $10,000

22  we're paying per day is -- that's already a 30 percent

23  increase over what they're getting, and what they're asking

24  for is 250 percent.

04:12:22  25                    Again, we're here because they cut off all

1 of our access, and we don't believe were dealing in good

2 faith.  We're beyond that.  We have agreed on all terms

3 except for this one.  Thank you, Your Honor.

4                THE COURT:  And either side can choose who

04:12:42  5 wants to answer questions.  And so is it all right if I ask

6 some questions?

7                MR. GIBSON:  Yes.  Of course, Your Honor.

8                THE COURT:  I think if you had -- excuse me,

9 I'll speak up.  Anybody got a cup of coffee?  No, it's all

04:13:34  10 water.  Somebody is going to say, So is the coffee.

11                THE LAW CLERK:  Would you like some coffee,

12 Judge?

13                THE COURT:  No, that's okay.  It's too late.

14                These are hypothetical numbers that I just

04:13:53  15 wrote trying to get the concept correct, and if you -- at

16 the beginning they're apt to fly around more than they are

17 at the end.

18                MR. GIBSON:  Well, that depends entirely on how

19 successful --

04:14:15  20                THE COURT:  Pardon?

21                MR. GIBSON:  That depends entirely on how

22 successful the transition is.  The problem we have is there

23 is no -- and I think I understand the point the Court is

24 making, is --

04:14:24  25                THE COURT:  The point is easy.  Arithmetically

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 there are going to be fewer platforms every day.

2             MR. GIBSON:  Well, their agreement requires us

3 to maintain all their platforms until the end of the

4 agreement, until the end of the --

04:14:38   5             THE COURT:  But there are fewer to look at

6 again, you know, you have done them.

7             MR. GIBSON:  The way we addressed that, Your

8 Honor --

9             THE COURT:  Pardon?

04:14:49  10             MR. GIBSON:  The way we addressed that, Your

11 Honor, is that they have the ability to terminate the

12 agreement at any point.  So when they get to the point that

13 they feel like they don't need our services anymore, or the

14 services level has dropped below the point that they

04:15:01  15 shouldn't be paying the rate that they believe they are

16 paying us, they can terminate.

17             THE COURT:  Their next field may be enormously

18 productive, in which case it may -- just working on it, it

19 has -- well, first, you have got to set it up; and second,

04:15:21  20 it may have more trouble or more oil.  So my idea was that

21 to get out there, identify the one.  And once you undo it,

22 there's still a lot left.  But it would make sense maybe to

23 say, $20 from inception of repossession, or whatever you're

24 calling it, until it's complete, and that would give them

04:16:09  25 an incentive to do a whole bunch of good wells in a hurry,

1 and they get $20,000 to work on it.  And I might have that

2 dropping down to 15.  And the -- the idea is there that

3 these are all connected, and you can't be sure you won't

4 have to go back to some platform that you thought you were

04:16:43  5 finished with.

6              MR. GIBSON:  So let me see if I -- just to make

7 sure I understand --

8              THE COURT:  Sure.

9              MR. GIBSON:  -- that we have --

04:16:50  10             THE COURT:  I am thinking out loud.

11             MR. GIBSON:  No.  I think those -- that's

12 helpful and it actually fits fairly well in the structure

13 that we have in that agreement.  The first 60 days are --

14 everybody understands those are going to be the hardest 60

04:17:02  15 days.  There is going to be a lot of things happening, a

16 lot of transitions.

17                   So is the Court saying we would do 20,000

18 per day for the day rate for the first 60 days, but then

19 the final 60 days, because it's 120-day agreement, would be

04:17:14  20 at 15,000, and that's the time frame where they can cancel

21 within seven days notice under our agreement?  So if they

22 wanted -- if they still want those services, it will be

23 15,000 a day for the final 60 days.

24             THE COURT:  And could you recommend a number

04:17:35  25 that would do what I was doing inartfully?

1          MR. GIBSON:  I think --

2          THE COURT:  Twenty would cover the first sixty

3 days, and 15 the last.

4          MR. GIBSON:  So, yes, it would be $20,000 per

04:17:50  5 day for the first 60 days, followed by $15,000 per day for

6 the -- for the final 60 days, during -- that's the period

7 where they have the ability to cancel if they no longer

8 need our services.  I think that's -- is that -- okay.  We

9 can do it for that, Your Honor.

04:18:10  10          MR. HITTNER:  Your Honor, we believe those

11 numbers are still tremendously high.  We believe those

12 numbers are still tremendously high.  And we also

13 propose -- the agreement has 30, 30 and then terminating on

14 any seven-day notice.  So we would propose any kind of

04:18:31  15 decrease in the number be in the first 30 days, then the

16 lower number the second 30 days, and then a lower number to

17 cover any of the days that follow after that with the

18 understanding that most of the heavy lifting will be done

19 by our representatives.  I mean, I am happy to put -- yes,

04:18:54  20 sir.

21          THE COURT:  You have -- you have some problems;

22 he has some problems.

23          MR. HITTNER:  Your Honor, if I may, if we could

24 propose -- if we could -- if we could propose sixteen five

04:19:12  25 for the first 30 days, and then thirteen five for the next

1  30 days, and then anything after that could be at the

2  current rate because our incentive is to hurry up and get

3  this done.  We have every incentive to hurry up and get it

4  done.  Under the numbers that they're proposing, they have

04:19:36  5  every incentive to drag it out.

6             THE COURT:  So you see that there are phases?

7             MR. HITTNER:  Yes, sir.  30, 30, and then

8  everything that follows after that.

9             MR. GIBSON:  I guess I should probably --

04:19:53  10             THE COURT:  I don't much like it either, but --

11             MR. GIBSON:  Well, I guess just briefly

12  responding to that, I don't believe there are three phases.

13  The first phase is data transition.  It's moving the heavy

14  servers, the actual servers, unplugging all the wires, and

04:20:07  15  moving them to a new center.  So that -- that's -- and then

16  when you do that process, and we have -- we have asked for

17  a timeline of when they thought they could do it and they

18  are unable to give us one because they need to get in and

19  inventory all this.  So it is our understanding that is

04:20:20  20  probably going to be the work for the first 60 days.

21             THE COURT:  Thump your microphone.

22             MR. GIBSON:  Is that a little better?

23             THE COURT:  Much better.

24             MR. GIBSON:  So what I was saying is, we have

04:20:34  25  been asking them if they were able to give us a time frame

1 of when those server transfers would occur, and right now

2 they're unable to do that.  One of the things in our

3 agreement is to come up with a date of transition plan to

4 be able to move those servers from one location to another.

04:20:50  5 That's -- we have been assuming that is going to be a

6 60-day process.

7                    So I think there's an elegance to the

8 Court's original solution where you have a rate, and I

9 think 20,000 -- I think it's a little low from our

04:21:02  10 perspective, where we came from, but nobody wins in a

11 situation like this.  So 20,000 is certainly enough that we

12 can pay our bills and we can do the work that we need to do

13 to support this ongoing process during this transition.

14                    And then the -- the real time frame -- I

04:21:18  15 am not even 100-percent sure that we won't be moving

16 servers on day 61, or 62, or 63.  So that is sort of an

17 assumption, and I understand that.  But most likely those

18 transitions will occur by that day.  I will concede that.

19                    So, I think moving it down to 15,000, we

04:21:35  20 shouldn't need as much personnel to support that second

21 part of the contract, so I think that has some

22 justification.  But I wouldn't want to break it up any more

23 than that.  I think if they don't want to do this deal,

24 then they just terminate us.  They are the ones that are

04:21:47  25 asking us to do this job.  And so I think that's a fair

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 resolution, especially because on that second half, if they

2 don't want to continue, they have seven days notice and

3 they are out.

4          MR. HITTNER:  Your Honor, the entire reason

04:21:58 5 we're here is because we can't just terminate them.  We

6 have to have a seamless transition.  So we're also --

7 again, if the Court would prefer, we're happy to leave this

8 with the arbiter, but whatever you prefer.

9          But if I may, we are still very far apart

04:22:24 10 on the numbers, and his example of a higher rate at the

11 beginning, and then work following on after that, if that

12 happens to be the case, they have still been front-loaded

13 paid for the real heavy work on this stair step down.

14          THE COURT:  But getting paid to build the house

04:22:44 15 doesn't mean, well, you're also covered for tearing it

16 down.

17          MR. HITTNER:  And we understand there is going

18 to be a premium.  But, again, we believe most of the heavy

19 lifting is going to be on our team.  They just need to keep

04:22:57 20 the systems up and running, and do a little bit extra work.

21 We are willing to take on a lot of this work, and that's

22 covered in the agreement.  But the idea that we can just

23 terminate them is the entire reason we're here.

24          But, again, I think, 30 days followed by a

04:23:16 25 step down in the next 30 days, followed by the daily rate

1 after that.  I understand you don't agree with that but --

2                THE COURT:  Okay.  Wait a minute.

3                MR. HITTNER:  -- we paid for that work.

4                THE COURT:  Tell me what the offer is.

04:23:31  5                MR. HITTNER:  Your Honor, our position is for

6 the first 30 days, sixteen five; for the second 30 days,

7 thirteen five; and for every seven-day period after that,

8 the current daily rate of $10,000.

9                MR. GIBSON:  I guess the only thing that --

04:24:01  10 well, I mean, there's a lot of concerns about that because

11 that's effectively the same contract we have now.  I think

12 your -- your metaphor was good, that there's one price to

13 build the house.  There is another to come in and watch it

14 overnight.  And that's -- what they are trying to do is

04:24:18  15 apply the watch-it-over-night contract to the building, to

16 the tear it down, as you say.  So I don't really think --

17 and what I --

18                THE COURT:  But why isn't that their problem?

19                MR. GIBSON:  Because they want us to be there

04:24:30  20 to fix everything that they break along the way, and

21 it's -- and it's in a platform, in a real operation

22 environment.  While they do the transition, we're going to

23 be their support team responding to any emergency wherever

24 they may happen.

04:24:43  25                One thing I would also like to add, I

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 think when we submitted -- it's certainly on the record

2 yesterday -- the agreement was we will submit our price,

3 their price, and any price -- and then the Court can pick

4 either one of those, or the one in-between, but now they're

04:24:56  5 asking the Court to order less, which is 10,000.  I think

6 that is not our agreement that we have.  And so --

7                    But that aside, the big problem I have

8 with that is I -- I think the incentive is correct.  If

9 they think the contract is too rich, then they can

04:25:11  10 terminate it.  That's what we put in our agreement.  And

11 that way we're not being forced to work for a contract that

12 we think is underpaying us for the work that they are going

13 to cause us in the Gulf.

14                    And so I think it should be 25,000 for

04:25:25  15 each day of the -- of the 120 days; but at a minimum, I

16 understand that -- the Court's position to say, what if we

17 broke it down to 20,000 on the front end and 15 on the

18 back?  I think that's in the range that the parties agreed

19 to submit.

04:25:40  20                    THE COURT:  All right.  You're saying that

21 regardless of how you calculate the beginning cost and the

22 end cost that -- what is the largest number that you all

23 can live with?

24                    MR. GIBSON:  The largest number that we could

04:26:13  25 live with?  I would say -- I mean, 25,000, we think, is the

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1 right number.  That's the number where -- where especially

2 that first -- when you are talking about that first month.

3 I mean, they're literally going to go in and start

4 unplugging servers, and they are going to want our help

04:26:30 5 bringing them back up and moving data.  That's going to be

6 full on.

7                    So the 25,000, I think, is the right

8 number, I really think for the first 60 days, but I

9 understand if the Court would want to tier that down for

04:26:41 10 the third or fourth month.  But that's what -- so 25,000,

11 that number, when I put it out there, is sort of our

12 worst-case scenario.  That's where if what's happening out

13 there that we anticipate happening out there occurs, we

14 have enough staff, we have enough people, we can respond to

04:26:57 15 that.  We can pay our employees and contractors, because we

16 can't hire employees to do this, because it's only a

17 four-month contract, right?  We are going to need

18 contractors out there.

19                    So we are going to be paying into this

04:27:09 20 environment and things have gotten very expensive in the

21 oil field with inflation and all these different costs.

22 So, I guess when I say 25, the reason I say that, Judge, is

23 just because I don't want to be shortchanged.  I don't want

24 to get out there and do all this emergency work and find

04:27:24 25 out we're not making enough and losing money.  But I don't

1  think that risk is -- honestly, I don't think the 20,000 --

2  I think we are going to be able to make money on 20,000 as

3  well.  And I think we can start to taper off for months

4  three and four, hopefully, if their transition team is

04:27:37  5  doing their job.

6                    So I think that's a reasonable risk, the

7  20 and 15, but I still -- I still would push to the Court I

8  think 25 is the right number, just for all the

9  contingencies because, as you know, Judge, nothing in the

04:27:51  10  oil field ever goes the way you think it is going to go.

11  And when you start adding water --

12                    THE COURT:  It does if I invest in it.

13  (Laughter.)

14                    MR. GIBSON:  You start adding water and boats,

04:28:03  15  you know, then, who knows what is going to happen.  So I

16  just want to make sure that this is a fair contract if

17  we're being forced -- not really forced.  I know we're

18  negotiating and we have reached this agreement, but this is

19  going to be a high-intensity contract.

04:28:17  20                    MR. HITTNER:  Your Honor --

21                    THE COURT:  Yes, sir.

22                    MR. HITTNER:  -- the last stage of our

23  discussions today was a, This is the best we can do, from

24  my client to them.  I am happy to provide that number to

04:28:34  25  you, with the understanding that it was a complete blended

1 rate for every single day of this contract, and that number

2 was $15,000.  And we could not -- I would -- I would

3 imagine we were very close, but we could not get over the

4 hump by the time time expired.

04:28:57   5                    So there was no staggering down.  There

6 was nothing.  We said take it or leave it.  We are running

7 out of time.  $15,000.  They had appeared to have

8 originally taken it and then they said that there was some

9 confusion.

04:29:11   10                    MR. GIBSON:  Whoa, that's --

11                    MR. HITTNER:  I am -- there was some confusion,

12 and we ran out of time, so we submitted to the Court where

13 we were.  We are willing to pay that amount every single

14 day of the contract period.

04:29:30   15                    THE COURT:  All right.  And is that in this

16 agreed order?

17                    MR. HITTNER:  No, sir.  They did not accept

18 that number.

19                    THE COURT:  I know but I just want to have the

04:29:43   20 number right.

21                    MR. HITTNER:  It's 15 -- what we offered was

22 15,000 a day, and that's where we ran out of time, and

23 there was some confusion about whether or not it was

24 accepted.  We said, Okay.  Let's submit it to the Court,

04:29:58   25 and we will ask the Court to decide, or the arbiter.

KATHY MILLER, RMR, CRR  -  kathy@miller-reporting.com

1           THE COURT:  Stick this to a piece of paper, and

2 then photocopy it five times.  One for me and two for each

3 lead people.

4               I have overnight, but I was hoping you

04:32:01    5 wouldn't do it, I tried to think through some alternatives.

6 What about a contingent it costs too much at the beginning?

7 Because you'll know in seven days, right?

8           MR. GIBSON:  I think we talked about that.  So,

9 our negotiations really kind of leveled into that point

04:32:24   10 because what we would need to answer your question is more

11 information about their transition plan.  And every --

12 they -- and I think their position is they need some

13 information from us to be able to put that transition plan

14 together.  And so that's why we -- because we looked at it.

04:32:42   15 I think we even talked about what if there was a success

16 fee, if you got them transitioned 30 days, you know,

17 instead of 60 or 120, something that I had heard come up

18 once or twice.

19               So we went round and round thinking

04:32:55   20 through, and I have nothing but good things to say about

21 all the counsel that we have been working with because we

22 all thought outside the box.  The problem was with these

23 many uncertainties, the parties have to just assume the

24 worst, and the only way to do it was through a day rate

04:33:12   25 that we could negotiate.

1          THE COURT:  That is why I sloped the line,

2 was --

3          MR. GIBSON:  Okay.  So I read this, Your Honor,

4 to say 18,000 for the first 60 days of the parties agreed

04:33:32  5 orders -- 18,000 per day for the first 60 days followed by

6 15,000 per day for the second 60-day period?

7          THE COURT:  Fifteen for the first 60.  I mean,

8 18 for the first 60, 15 for the second 60.

9          MR. GIBSON:  Understood.  Thank you, Your

04:33:51 10 Honor.

11          THE COURT:  Now, that's my suggestion without

12 the slope.  I mean, there is -- you can make a slope out of

13 it, but --

14          MR. GIBSON:  We have already tendered the

04:34:07 15 order.  I imagine -- the interlineation, I am happy to look

16 it over, but with that inclusion of language that the

17 parties have requested the Court to make, I think we are

18 okay with the order being entered.  As a matter of fact, we

19 are okay with the Court entering that order.

04:34:21 20          MR. HITTNER:  Your Honor, it doesn't feel good,

21 but I will accept your order and go forward.

22          THE COURT:  So do you want it to slant inside

23 the weeks, or just do it week by week, since everything

24 else --

04:34:37 25          MR. GIBSON:  The agreement has the timing in

1 there.  It is all set up.  All we needed is the day rate

2 number to be plugged in.

3                    MR. HITTNER:  Your Honor, if I may, and this is

4 just for your consideration.  If we could agree to 18 for

04:34:49    5 the first 30 days, 15 for the next 30 days, and 13 for the

6 last 60, would that be possible?

7                    THE COURT:  I would rather you have a

8 contingency clause that if you're not finished by then

9 because of unavoidable circumstances, then it will be

04:35:21    10 twelve five.

11                    MR. GIBSON:  After the 120-day period?

12                    THE COURT:  Yes, sir.  And you are just going

13 to have to work out -- I mean, that is a base rate.  If you

14 can work it out otherwise...

04:35:48    15                    MR. GIBSON:  Thank you, Your Honor.

16                    THE COURT:  Have you written what it ought to

17 say?

18                    MR. GIBSON:  Yes.  So we have submitted the

19 order.  It is item 3 of the order, is the one section that

04:35:59    20 needed the input from the Court, and today's order should

21 fill in that needed detail, then at that point we have a

22 complete agreement.

23                    THE COURT:  All right.  But you want it to be

24 typed into this, the agreed order?

04:36:19    25                    MR. GIBSON:  That doesn't look like the agreed

1 order.

2                    THE COURT:  Better look at that one.

3                    MR. GIBSON:  May I approach?

4                    THE COURT:  Yes, sir.  Of course.

04:36:35    5                    MR. GIBSON:  I'm sorry.  My eyes aren't as good

6 as they used to be.  This is the agreed engagement letter.

7                    MR. ELLIS:  May I look at it as well?

8                    THE COURT:  Certainly.

9                    MR. HITTNER:  Your Honor, may I ask one more

04:37:02   10 question?

11                    THE COURT:  Wait until they finish translating.

12                    MR. HITTNER:  Your Honor, I will ask one more

13 consideration, then I won't press my luck any more.  Would

14 it be possible to do 18 for the first 30 days, and then

04:37:37   15 15 -- 15 for any day thereafter, period?

16                    MR. GIBSON:  I think that the 60 days is

17 correct.  Because we're -- if -- I -- we are going to be

18 moving servers.  We are going to be doing that heavy

19 lifting on the first 60 days.  So the Court's order has hit

04:37:59   20 it perfectly, I think.  And I know no one likes it.  We

21 would like more and they would like less.

22                    THE COURT:  I like the one we came up for --

23 with for addressing everybody.  And it is entirely within

24 both parties' hands to adjust how fast this one is done,

04:38:32   25 and that -- and cooperate with each other so you know where

1 the booby traps are.  The more of that that goes on, I

2 think y'all are man enough to lower the charge when some --

3 there's something --

4               MR. GIBSON:  I think -- I think the parties

04:38:56 5 just need to get to the problem.

6               THE COURT:  I can't put that in the order

7 because that order to do right worked yesterday.

8               MR. GIBSON:  Uh-huh.

9               THE COURT:  Remember, didn't we start this all

04:39:10 10 over a deposition?  They're dangerous things.  And there

11 may be extraordinary costs that they decide they would like

12 to renegotiate a few things, and that's up to you.

13               MR. GIBSON:  Thank you, Your Honor.

14               THE COURT:  Being trial lawyers, I assume you

04:39:44 15 have no plans for the weekend.

16               MR. GIBSON:  You know, we were just talking

17 about that while we were in the room yesterday.  My wife

18 was calling, she said, you know, you're supposed to be here

19 in 15 minutes, you know, we are meeting the teacher.  And I

04:39:58 20 said, I'm on the record, Honey.

21                   May we go off the record?

22               THE COURT:  Sure.

23 (Discussion off the record.)

24               MR. GIBSON:  May I approach to see the order?

04:41:56 25               THE COURT:  Sure.  So do we have a text

1 somewhere I have -- did we put the numbers in the blank?

2                    MR. GIBSON:  Your clerk has a copy of our order

3 and we have looked it over with the additional language.

4 It looks good.

04:46:39  5                    THE COURT:  All right.  So we're going to type

6 in the blanks and then make a lot of copies.

7                    MR. GIBSON:  Yes, that would be great.

8 (Proceedings recessed from 4:46 to 4:53.)

9                    THE COURT:  May I interrupt you a moment.  I

04:53:31  10 haven't seen what it says, but this case is still open.

11                    MR. GIBSON:  The case is still open.  We have a

12 release at the end.  So when the disagreement is over, we

13 have a mutual release in the agreement; so we will dismiss

14 the case at the end of the contract.

04:53:45  15                    THE COURT:  So you want me to just leave it

16 open now?

17                    MR. GIBSON:  Yes, sir.

18                    THE COURT:  That's fine.

19                    MR. GIBSON:  It will be necessary because there

04:53:51  20 are some provisions that the Court maintains jurisdiction

21 to make sure this agreement is enforced.  So, hopefully, we

22 never have to come back here; but if we do, we have a place

23 to go.

24 (Discussion off the record.)

04:58:13  25                    THE COURT:  All right.  It will be entered

1 before you find the buttons that work.

2        MR. GIBSON:  Thank you very much, Your Honor.

3 May we be excused?

4        MR. HITTNER:  Thank you.

04:58:28   5        THE COURT:  Yes.  And thank you, all of you.

6 It takes internal discussion as well as external discussion

7 to make these things work.  So I hope you never need me

8 again, but I'll be happy to see you.

9        MR. HITTNER:  Thank you, Judge.

10 (Concluded at 4:58 p.m.)

11        COURT REPORTER'S CERTIFICATE

12

13    I, Kathleen K. Miller, certify that the foregoing is a

14 correct transcript from the record of proceedings in the

15 above-entitled matter.

16

17 DATE:  Sept. 19, 2022   /s/   _Kathleen K. Miller

18                Kathleen K. Miller, RPR, RMR, CRR

19

20

21

22

23

24

25

## $

**$10,000** [5] - 5:18, 6:24, 7:3, 7:21, 15:8
**$13,000** [3] - 3:17, 5:19, 7:21
**$15,000** [3] - 11:5, 19:2, 19:7
**$20** [1] - 9:23
**$20,000** [3] - 7:2, 10:1, 11:4
**$25,000** [4] - 3:17, 5:22, 6:7, 6:11
**$250** [2] - 6:5, 6:9
**$300,000** [1] - 5:17
**$37,000** [1] - 6:6
**$37,500** [1] - 6:6

## /

**/s** [1] - 26:17

## 1

**1** [2] - 1:13
**10,000** [1] - 16:5
**100** [1] - 5:10
**100-percent** [1] - 13:15
**1000** [3] - 1:21, 2:3, 2:6
**1001** [1] - 2:10
**120** [2] - 16:15, 20:17
**120-day** [2] - 10:19, 22:11
**1221** [1] - 2:10
**13** [2] - 6:24, 22:5
**15** [10] - 10:2, 11:3, 16:17, 18:7, 19:21, 21:8, 22:5, 23:15, 24:19
**15,000** [5] - 10:20, 10:23, 13:19, 19:22, 21:6
**16** [1] - 1:6
**18** [3] - 21:8, 22:4, 23:14
**18,000** [2] - 21:4, 21:5
**19** [1] - 26:17

## 2

**20** [1] - 18:7
**20,000** [6] - 10:17, 13:9, 13:11, 16:17, 18:1, 18:2
**2000** [2] - 2:3, 2:6
**2022** [2] - 1:6, 26:17
**24/7** [1] - 4:24
**25** [3] - 6:25, 17:22, 18:8
**25,000** [4] - 16:14, 16:25, 17:7, 17:10
**250** [2] - 7:17, 7:24

## 3

**3** [1] - 22:19
**30** [17] - 7:22, 11:13, 11:15, 11:16, 11:25, 12:1, 12:7, 14:24, 14:25, 15:6, 20:16, 22:5, 23:14
**300,000** [1] - 4:18

## 4

**4** [1] - 2:10
**4:05** [1] - 1:5
**4:22-cv-03149** [1] - 1:3
**4:46** [1] - 25:8
**4:53** [1] - 25:8
**4:58** [1] - 26:10

## 5

**515** [1] - 2:17
**541189** [1] - 1:18

## 6

**60** [18] - 10:13, 10:14, 10:18, 10:19, 10:23, 11:5, 11:6, 12:20, 17:8, 20:17, 21:4, 21:5, 21:7, 21:8, 22:6, 23:16, 23:19
**60-day** [2] - 13:6, 21:6
**61** [1] - 13:16
**62** [1] - 13:16
**63** [1] - 13:16
**6800** [1] - 1:21

## 7

**713-250-5087** [1] - 2:18
**713-276-5145** [1] - 2:4
**713-276-5615** [1] - 2:7
**713-824-1270** [1] - 1:19
**713-897-8008** [1] - 2:11
**713.655.5100** [1] - 1:22
**77002** [3] - 1:22, 2:3, 2:18
**77002-5011** [1] - 2:7
**77010** [1] - 2:11
**77254** [1] - 1:18

## 8

**8004** [1] - 2:17

## A

**ability** [2] - 9:11, 11:7
**able** [4] - 12:25, 13:4, 18:2, 20:13
**ABOUT** [1] - 1:6
**above-entitled** [1] - 26:15
**accept** [2] - 19:17, 21:21
**accepted** [1] - 19:24
**access** [1] - 8:1
**actual** [1] - 12:14
**add** [1] - 15:25
**adding** [2] - 18:11, 18:14
**additional** [2] - 5:21, 25:3
**addressed** [2] - 9:7, 9:10
**addressing** [1] - 23:23
**adjudicate** [1] - 7:8
**adjudicator** [2] - 6:20, 7:10

**adjust** [1] - 23:24
**agree** [2] - 15:1, 22:4
**agreed** [10] - 4:2, 4:15, 5:9, 8:2, 16:18, 19:16, 21:4, 22:24, 22:25, 23:6
**agreement** [22] - 3:18, 3:24, 4:1, 6:15, 7:16, 9:2, 9:4, 9:12, 10:13, 10:19, 10:21, 11:13, 13:3, 14:22, 16:2, 16:6, 16:10, 18:18, 21:25, 22:22, 25:13, 25:21
**ALL** [1] - 1:6
**ALSO** [1] - 2:13
**alternative** [1] - 4:5
**alternatives** [1] - 20:5
**Alvin** [1] - 2:14
**amount** [2] - 6:13, 19:13
**AND** [1] - 1:6
**answer** [3] - 3:5, 8:5, 20:10
**answering** [1] - 5:6
**anticipate** [1] - 17:13
**apart** [1] - 14:9
**APPEARANCES** [1] - 1:15
**appeared** [1] - 19:7
**apply** [1] - 15:15
**approach** [2] - 23:3, 24:24
**apt** [1] - 8:16
**arbiter** [2] - 14:8, 19:25
**arithmetically** [1] - 8:25
**Arps** [1] - 1:21
**aside** [1] - 16:7
**assisted** [1] - 2:21
**assume** [2] - 20:23, 24:14
**assuming** [1] - 13:5
**assumption** [1] - 13:17
**attentiveness** [1] - 5:23
**average** [1] - 6:24

## B

**base** [1] - 22:13
**BEFORE** [1] - 1:11
**beginning** [4] - 8:16, 14:11, 16:21, 20:6
**below** [1] - 9:14
**best** [1] - 18:23
**better** [3] - 12:22, 12:23, 23:2
**between** [2] - 3:21, 16:4
**beyond** [1] - 8:2
**big** [1] - 16:7
**bills** [1] - 13:12
**bit** [1] - 14:20
**blank** [1] - 25:1
**blanks** [1] - 25:6
**blended** [1] - 18:25
**boats** [1] - 18:14
**booby** [1] - 24:1
**Box** [1] - 1:18
**box** [1] - 20:22
**break** [4] - 4:21, 5:1, 13:22, 15:20
**bridge** [1] - 3:22
**briefly** [2] - 4:12, 12:11

**bringing** [1] - 17:5
**broke** [1] - 16:17
**brought** [1] - 6:7
**build** [2] - 14:14, 15:13
**building** [1] - 15:15
**built** [1] - 7:15
**bunch** [1] - 9:25
**buttons** [1] - 26:1

## C

**calculate** [1] - 16:21
**cancel** [2] - 10:20, 11:7
**case** [6] - 9:18, 14:12, 17:12, 25:10, 25:11, 25:14
**center** [1] - 12:15
**Center** [1] - 2:10
**certainly** [3] - 13:11, 16:1, 23:8
**CERTIFICATE** [1] - 26:11
**certify** [1] - 26:13
**charge** [1] - 4:2
**choose** [1] - 8:4
**circumstances** [1] - 22:9
**clause** [1] - 22:8
**clear** [2] - 6:23, 6:24
**clerk** [1] - 25:2
**CLERK** [1] - 8:11
**client** [1] - 18:24
**close** [1] - 19:3
**CLOUD** [1] - 1:6
**coffee** [3] - 8:9, 8:10, 8:11
**coming** [1] - 5:25
**compared** [1] - 7:21
**compensated** [1] - 6:4
**compensates** [1] - 6:12
**complete** [3] - 9:24, 18:25, 22:22
**computer** [1] - 2:21
**computer-assisted** [1] - 2:21
**computers** [3] - 4:19, 4:20, 5:1
**concede** [1] - 13:18
**concept** [1] - 8:15
**concerns** [1] - 15:10
**Concluded** [1] - 26:10
**conditions** [1] - 3:12
**configurations** [1] - 5:12
**confusion** [3] - 19:9, 19:11, 19:23
**connected** [1] - 10:3
**connectivity** [1] - 5:3
**consideration** [2] - 22:4, 23:13
**considering** [1] - 5:23
**contingencies** [1] - 18:9
**contingency** [2] - 7:8, 22:8
**contingent** [1] - 20:6
**continue** [1] - 14:2
**contract** [16] - 4:3, 4:16, 5:4, 5:16, 5:17, 13:21, 15:11, 15:15, 16:9, 16:11, 17:17, 18:16, 18:19, 19:1, 19:14, 25:14
**contractors** [2] - 17:15, 17:18

**cooperate** [1] - 23:25
**cooperative** [1] - 7:5
**copied** [1] - 3:11
**copies** [1] - 25:6
**copy** [1] - 25:2
**correct** [5] - 5:22, 8:15, 16:8, 23:17, 26:14
**cost** [2] - 16:21, 16:22
**Costa** [2] - 6:19, 7:9
**costs** [3] - 17:21, 20:6, 24:11
**counsel** [2] - 6:25, 20:21
**course** [2] - 8:7, 23:4
**COURT** [58] - 1:1, 2:16, 3:2, 3:7, 4:6, 4:15, 8:4, 8:8, 8:13, 8:20, 8:25, 9:5, 9:9, 9:17, 10:8, 10:10, 10:24, 11:2, 11:21, 12:6, 12:10, 12:21, 12:23, 14:14, 15:2, 15:4, 15:18, 16:20, 18:12, 18:21, 19:15, 19:19, 20:1, 21:1, 21:7, 21:11, 21:22, 22:7, 22:12, 22:16, 22:23, 23:2, 23:4, 23:8, 23:11, 23:22, 24:6, 24:9, 24:14, 24:22, 24:25, 25:5, 25:9, 25:15, 25:18, 25:25, 26:5, 26:11
**Court** [19] - 3:10, 3:20, 4:3, 4:4, 7:10, 8:23, 10:17, 14:7, 16:3, 16:5, 17:9, 18:7, 19:12, 19:24, 19:25, 21:17, 21:19, 22:20, 25:20
**Court's** [3] - 13:8, 16:16, 23:19
**courtroom** [1] - 6:18
**cover** [2] - 11:2, 11:17
**covered** [2] - 14:15, 14:22
**create** [1] - 7:6
**CRR** [2] - 2:17, 26:18
**CSR** [1] - 2:17
**cup** [1] - 8:9
**current** [2] - 12:2, 15:8
**Curth** [1] - 2:14
**cut** [1] - 7:25

## D

**daily** [3] - 6:20, 14:25, 15:8
**dangerous** [1] - 24:10
**Daniel** [1] - 1:20
**daniel.mayerfeld@skadden.com** [1] - 1:23
**data** [4] - 6:2, 7:13, 12:13, 17:5
**date** [1] - 13:3
**DATE** [1] - 26:17
**David** [1] - 2:5
**days** [31] - 10:13, 10:15, 10:18, 10:19, 10:21, 10:23, 11:3, 11:5, 11:6, 11:15, 11:16, 11:17, 11:25, 12:1, 12:20, 14:2, 14:24, 14:25, 15:6, 16:15, 17:8, 20:7, 20:16, 21:4, 21:5, 22:5, 23:14, 23:16, 23:19
**deal** [1] - 13:23
**dealing** [1] - 8:1
**decide** [2] - 19:25, 24:11
**decision** [1] - 3:3
**decline** [2] - 7:4

**decrease** [1] - 11:15
**DEFENDANT** [1] - 2:1
**delayed** [1] - 7:7
**deposition** [1] - 24:10
**detail** [1] - 22:21
**determine** [1] - 6:20
**different** [3] - 4:23, 5:12, 17:21
**disagreement** [1] - 25:12
**discount** [1] - 6:8
**discussion** [3] - 25:24, 26:6
**Discussion** [1] - 24:23
**discussions** [1] - 18:23
**dismiss** [1] - 25:13
**DISTRICT** [3] - 1:1, 1:1, 1:12
**DIVISION** [1] - 1:2
**document** [1] - 4:15
**done** [8] - 7:15, 7:21, 9:6, 11:18, 12:3, 12:4, 23:24
**down** [1] - 6:1, 6:7, 10:2, 13:19, 14:13, 14:16, 14:25, 15:16, 16:17, 17:9, 19:5
**drag** [1] - 12:5
**dropped** [1] - 9:14
**dropping** [1] - 10:2
**during** [2] - 11:6, 13:13

## E

**e-mailed** [1] - 3:9
**easy** [1] - 8:25
**effectively** [3] - 3:19, 5:7, 15:11
**either** [3] - 8:4, 12:10, 16:4
**elegance** [1] - 13:7
**ELLIS** [1] - 23:7
**Ellis** [1] - 2:5
**Email** [5] - 1:19, 1:23, 2:4, 2:8, 2:12
**emergency** [3] - 5:3, 15:23, 17:24
**employees** [2] - 17:15, 17:16
**empower** [1] - 4:3
**end** [7] - 8:17, 9:3, 9:4, 16:17, 16:22, 25:12, 25:14
**ended** [2] - 6:19, 6:25
**enforced** [1] - 25:21
**engagement** [1] - 23:6
**enormously** [1] - 9:17
**entered** [2] - 21:18, 25:25
**entering** [1] - 21:19
**entire** [2] - 14:4, 14:23
**entirely** [3] - 8:18, 8:21, 23:23
**entitled** [1] - 26:15
**environment** [2] - 15:22, 17:20
**especially** [2] - 14:1, 17:1
**Ethan** [1] - 2:9
**ethan@gibsonwunder.com** [1] - 2:12
**example** [1] - 14:10
**except** [1] - 8:3
**excuse** [1] - 8:8
**excused** [1] - 26:3
**expensive** [1] - 17:20
**expired** [1] - 19:4

**expires** [1] - 7:11
**explain** [1] - 3:3
**external** [1] - 26:6
**extra** [1] - 14:20
**extraordinary** [1] - 24:11
**eyes** [1] - 23:5

## F

**fact** [1] - 21:18
**fair** [4] - 6:9, 6:11, 13:25, 18:16
**fairly** [1] - 10:12
**faith** [1] - 8:2
**far** [2] - 3:10, 14:9
**fast** [1] - 23:24
**fee** [1] - 20:16
**few** [1] - 24:12
**fewer** [2] - 9:1, 9:5
**field** [3] - 9:17, 17:21, 18:10
**Fifteen** [1] - 21:7
**fill** [1] - 22:21
**final** [3] - 10:19, 10:23, 11:6
**fine** [1] - 25:18
**finish** [1] - 23:11
**finished** [2] - 10:5, 22:8
**first** [20] - 9:19, 10:13, 10:18, 11:2, 11:5, 11:15, 11:25, 12:13, 12:20, 15:6, 17:2, 17:8, 21:4, 21:5, 21:7, 21:8, 22:5, 23:14, 23:19
**fits** [1] - 10:12
**five** [6] - 11:24, 11:25, 15:6, 15:7, 20:2, 22:10
**fix** [1] - 15:20
**fly** [1] - 8:16
**Foley** [1] - 2:2
**follow** [1] - 11:17
**followed** [4] - 11:5, 14:24, 14:25, 21:5
**following** [1] - 14:11
**follows** [1] - 12:8
**FOR** [3] - 1:1, 1:16, 2:1
**forced** [3] - 16:11, 18:17
**foregoing** [1] - 26:13
**formalized** [1] - 3:12
**forward** [1] - 21:21
**four** [2] - 17:17, 18:4
**four-month** [1] - 17:17
**fourth** [1] - 17:10
**frame** [3] - 10:20, 12:25, 13:14
**front** [2] - 14:12, 16:17
**front-loaded** [1] - 14:12
**full** [1] - 17:6
**fundamentally** [1] - 4:23

## G

**gap** [1] - 3:22
**Gardere** [1] - 2:6
**George** [1] - 1:17
**george@thehittnergroup.com** [1] -

1:19
**Gibson** [2] - 2:9, 2:9
**GIBSON** [48] - 3:4, 3:9, 4:1, 4:11, 4:16, 8:7, 8:18, 8:21, 9:2, 9:7, 9:10, 10:6, 10:9, 10:11, 11:1, 11:4, 12:9, 12:11, 12:22, 12:24, 15:9, 15:19, 16:24, 18:14, 19:10, 20:8, 21:3, 21:9, 21:14, 21:25, 22:11, 22:15, 22:18, 22:25, 23:3, 23:5, 23:16, 24:4, 24:8, 24:13, 24:16, 24:24, 25:2, 25:7, 25:11, 25:17, 25:19, 26:2
**golf** [1] - 4:9
**Graham** [1] - 2:9
**great** [1] - 25:7
**Group** [1] - 1:17
**guess** [4] - 12:9, 12:11, 15:9, 17:22
**Gulf** [2] - 5:11, 16:13

## H

**Halbach** [2] - 6:19, 7:9
**half** [2] - 7:16, 14:1
**hands** [1] - 23:24
**happy** [7] - 6:22, 7:20, 11:19, 14:7, 18:24, 21:15, 26:8
**hardest** [1] - 10:14
**Haynes** [1] - 2:14
**heard** [2] - 3:8, 20:17
**HEARING** [1] - 1:10
**heavy** [5] - 11:18, 12:13, 14:13, 14:18, 23:18
**help** [2] - 5:9, 17:4
**helpful** [1] - 10:12
**high** [5] - 3:16, 7:7, 11:11, 11:12, 18:19
**high-intensity** [1] - 18:19
**higher** [1] - 14:10
**hire** [1] - 17:16
**hit** [1] - 23:19
**Hittner** [2] - 1:17, 1:17
**HITTNER** [20] - 3:24, 6:16, 11:10, 11:23, 12:7, 14:4, 14:17, 15:3, 15:5, 18:20, 18:22, 19:11, 19:17, 19:21, 21:20, 22:3, 23:9, 23:12, 26:4, 26:9
**honestly** [1] - 18:1
**Honey** [1] - 24:20
**Honor** [22] - 3:5, 6:15, 6:16, 8:3, 8:7, 9:8, 9:11, 11:9, 11:10, 11:23, 14:4, 15:5, 18:20, 21:3, 21:10, 21:20, 22:3, 22:15, 23:9, 23:12, 24:13, 26:2
**HONORABLE** [1] - 1:11
**hope** [1] - 26:7
**hopefully** [2] - 18:4, 25:21
**hoping** [1] - 20:4
**house** [2] - 14:14, 15:13
**HOUSTON** [1] - 1:2
**houston** [1] - 1:4
**Houston** [7] - 1:18, 1:22, 2:3, 2:7, 2:10, 2:11, 2:18
**HUGHES** [1] - 1:11
**hump** [1] - 19:4

**hurry** [3] - 9:25, 12:2, 12:3
**hypothetical** [1] - 8:14

## I

**idea** [4] - 5:24, 9:20, 10:2, 14:22
**identify** [2] - 5:11, 9:21
**imagine** [2] - 19:3, 21:15
**impasse** [1] - 3:15
**IN** [1] - 1:1
**in-between** [2] - 3:21, 16:4
**inartfully** [1] - 10:25
**INC** [2] - 1:3, 1:6
**incentive** [6] - 7:6, 9:25, 12:2, 12:3, 12:5, 16:8
**inception** [1] - 9:23
**include** [1] - 5:20
**inclusion** [1] - 21:16
**increase** [1] - 7:23
**inflation** [1] - 17:21
**information** [2] - 20:11, 20:13
**input** [1] - 22:20
**inside** [1] - 21:22
**installed** [1] - 4:20
**instead** [1] - 20:17
**intensity** [2] - 5:16, 18:19
**interlineation** [1] - 21:15
**internal** [1] - 26:6
**interrupt** [1] - 25:9
**inventory** [1] - 12:19
**invest** [1] - 18:12
**IT** [1] - 1:6
**item** [1] - 22:19
**IV** [1] - 2:2

## J

**Jacob** [1] - 1:17
**job** [2] - 13:25, 18:5
**Jonathan** [1] - 2:14
**Judge** [9] - 6:19, 6:22, 7:9, 8:12, 17:22, 18:9, 26:9
**JUDGE** [1] - 1:12
**jurisdiction** [2] - 7:11, 25:20
**justification** [1] - 13:22

## K

**Kathleen** [4] - 2:17, 26:13, 26:17, 26:18
**keep** [1] - 14:19
**keeps** [1] - 4:18
**kind** [3] - 5:6, 11:14, 20:9
**kinds** [1] - 5:11
**knows** [1] - 18:15

## L

**lack** [1] - 5:24
**Lamar** [1] - 2:10
**language** [2] - 21:16, 25:3

**Lardner** [1] - 2:2
**largest** [2] - 16:22, 16:24
**last** [4] - 7:2, 11:3, 18:22, 22:6
**late** [1] - 8:13
**Laughter** [1] - 18:13
**LAW** [1] - 8:11
**lawyers** [1] - 24:14
**lead** [1] - 20:3
**learn** [1] - 4:9
**leave** [3] - 14:7, 19:6, 25:15
**left** [2] - 3:13, 9:22
**less** [2] - 16:5, 23:21
**letter** [1] - 23:6
**level** [2] - 5:15, 9:14
**leveled** [1] - 20:9
**lifting** [3] - 11:18, 14:19, 23:19
**likely** [1] - 13:17
**line** [1] - 21:1
**listening** [1] - 5:5
**literally** [1] - 17:3
**live** [2] - 16:23, 16:25
**LLC** [1] - 1:6
**LLP** [2] - 2:2, 2:6
**loaded** [1] - 14:12
**location** [1] - 13:4
**look** [5] - 9:5, 21:15, 22:25, 23:2, 23:7
**looked** [2] - 20:14, 25:3
**looks** [1] - 25:4
**lose** [1] - 5:3
**losing** [1] - 17:25
**loud** [1] - 10:10
**Louisiana** [3] - 1:21, 2:3, 2:6
**low** [2] - 3:16, 13:9
**lower** [4] - 5:16, 11:16, 24:2
**luck** [1] - 23:13
**LYNN** [1] - 1:11

## M

**mailed** [1] - 3:9
**maintain** [2] - 4:18, 9:3
**maintains** [1] - 25:20
**man** [1] - 24:2
**matter** [2] - 21:18, 26:15
**Mayerfeld** [1] - 1:20
**mean** [9] - 4:12, 11:19, 14:15, 15:10, 16:25, 17:3, 21:7, 21:12, 22:13
**meaning** [1] - 4:19
**mechanical** [1] - 2:20
**meeting** [1] - 24:19
**mentioned** [1] - 5:17
**metaphor** [1] - 15:12
**microphone** [1] - 12:21
**might** [1] - 10:1
**Miller** [4] - 2:17, 26:13, 26:17, 26:18
**minimum** [1] - 16:15
**minute** [1] - 15:2
**minutes** [1] - 24:19
**moment** [1] - 25:9

**money** [3] - 7:19, 17:25, 18:2
**month** [4] - 5:18, 17:2, 17:10, 17:17
**months** [1] - 18:3
**monumental** [1] - 5:14
**most** [3] - 11:18, 13:17, 14:18
**move** [2] - 6:2, 13:4
**moving** [6] - 12:13, 12:15, 13:15, 13:19, 17:5, 23:18
**MR** [69] - 3:4, 3:9, 3:24, 4:1, 4:11, 4:16, 6:16, 8:7, 8:18, 8:21, 9:2, 9:7, 9:10, 10:6, 10:9, 10:11, 11:1, 11:4, 11:10, 11:23, 12:7, 12:9, 12:11, 12:22, 12:24, 14:4, 14:17, 15:3, 15:5, 15:9, 15:19, 16:24, 18:14, 18:20, 18:22, 19:10, 19:11, 19:17, 19:21, 20:8, 21:3, 21:9, 21:14, 21:20, 21:25, 22:3, 22:11, 22:15, 22:18, 22:25, 23:3, 23:5, 23:7, 23:9, 23:12, 23:16, 24:4, 24:8, 24:13, 24:16, 24:24, 25:2, 25:7, 25:11, 25:17, 25:19, 26:2, 26:4, 26:9
**much-lower-intensity** [1] - 5:16
**mutual** [1] - 25:13

## N

**necessary** [1] - 25:19
**need** [16] - 4:21, 5:9, 7:12, 7:13, 7:18, 9:13, 11:8, 12:18, 13:12, 13:20, 14:19, 17:17, 20:10, 20:12, 24:5, 26:7
**needed** [3] - 22:1, 22:20, 22:21
**negotiate** [1] - 20:25
**negotiating** [1] - 18:18
**negotiations** [2] - 7:1, 20:9
**network** [1] - 4:19
**never** [2] - 25:22, 26:7
**new** [1] - 12:15
**next** [4] - 9:17, 11:25, 14:25, 22:5
**night** [1] - 15:15
**NO** [1] - 1:3
**nobody** [1] - 13:10
**normally** [1] - 4:7
**nothing** [3] - 18:9, 19:6, 20:20
**notice** [3] - 10:21, 11:14, 14:2
**number** [25] - 3:15, 3:16, 3:17, 3:20, 3:21, 4:17, 5:19, 5:23, 10:24, 11:15, 11:16, 16:22, 16:24, 17:1, 17:8, 17:11, 18:8, 18:24, 19:1, 19:18, 19:20, 22:2
**numbers** [7] - 6:23, 8:14, 11:11, 11:12, 12:4, 14:10, 25:1

## O

**obviously** [1] - 4:8
**occur** [2] - 13:1, 13:18
**occurs** [1] - 17:13
**ocean** [1] - 5:2
**OF** [2] - 1:1, 1:13
**offer** [3] - 6:9, 7:2, 15:4
**offered** [2] - 6:5, 19:21
**offering** [1] - 6:8

**OFFSHORE** [1] - 1:3
**offshore** [1] - 6:9
**oil** [3] - 9:20, 17:21, 18:10
**once** [2] - 9:21, 20:18
**one** [17] - 8:3, 9:21, 12:18, 13:2, 13:4, 15:12, 15:25, 16:4, 20:2, 22:19, 23:2, 23:9, 23:12, 23:20, 23:22, 23:24
**ones** [1] - 13:24
**ongoing** [1] - 13:13
**open** [3] - 25:10, 25:11, 25:16
**operation** [1] - 15:21
**order** [16] - 16:5, 19:16, 21:15, 21:18, 21:19, 21:21, 22:19, 22:20, 22:24, 23:1, 23:19, 24:6, 24:7, 24:24, 25:2
**orders** [1] - 21:5
**original** [6] - 4:16, 5:5, 5:15, 5:16, 6:9, 13:8
**originally** [2] - 6:5, 19:8
**otherwise..** [1] - 22:14
**ought** [1] - 22:16
**ourselves** [1] - 3:22
**outages** [1] - 5:24
**outside** [1] - 20:22
**overnight** [2] - 15:14, 20:4
**own** [1] - 4:8

## P

**p.m** [2] - 1:5, 26:10
**paid** [3] - 14:13, 14:14, 15:3
**paper** [1] - 20:1
**pardon** [2] - 8:20, 9:9
**part** [1] - 13:21
**parties** [8] - 3:14, 4:2, 6:17, 16:18, 20:23, 21:4, 21:17, 24:4
**parties'** [1] - 23:24
**pay** [4] - 7:20, 13:12, 17:15, 19:13
**paying** [6] - 5:15, 6:24, 7:22, 9:15, 9:16, 17:19
**people** [4] - 4:8, 5:10, 17:14, 20:3
**per** [7] - 3:17, 6:5, 6:6, 6:7, 7:22, 10:18, 11:4, 11:5, 21:5, 21:6
**percent** [3] - 7:17, 7:22, 7:24
**perfectly** [1] - 23:20
**perform** [3] - 4:25, 5:5, 5:21
**performing** [2] - 4:17, 6:4
**period** [6] - 11:6, 15:7, 19:14, 21:6, 22:11, 23:15
**personnel** [1] - 13:20
**perspective** [1] - 13:10
**phase** [1] - 12:13
**phases** [2] - 12:6, 12:12
**phone** [2] - 3:11, 5:6
**photocopy** [1] - 20:2
**pick** [2] - 3:21, 16:3
**piece** [1] - 20:1
**place** [1] - 25:22
**PLAINTIFF** [1] - 1:16
**plan** [3] - 13:3, 20:11, 20:13

**plans** [1] - 24:15
**platform** [4] - 6:6, 6:10, 10:4, 15:21
**platforms** [5] - 5:2, 5:10, 7:13, 9:1, 9:3
**play** [1] - 4:9
**pleased** [1] - 4:7
**plugged** [1] - 22:2
**plugging** [1] - 5:1
**PO** [1] - 1:18
**point** [7] - 8:23, 8:25, 9:12, 9:14, 20:9, 22:21
**position** [4] - 4:13, 15:5, 16:16, 20:12
**possible** [2] - 22:6, 23:14
**possibly** [1] - 7:8
**prefer** [2] - 14:7, 14:8
**premium** [5] - 5:20, 7:16, 7:17, 7:20, 14:18
**present** [1] - 4:12
**PRESENT** [1] - 2:13
**presentation** [1] - 4:10
**press** [1] - 23:13
**price** [6] - 5:15, 6:7, 15:12, 16:2, 16:3
**problem** [6] - 4:6, 8:22, 15:18, 16:7, 20:22, 24:5
**problems** [4] - 4:9, 7:9, 11:21, 11:22
**proceedings** [2] - 2:20, 26:14
**Proceedings** [1] - 25:8
**process** [3] - 12:16, 13:6, 13:13
**produced** [1] - 2:21
**productive** [1] - 9:18
**progress** [1] - 6:17
**properly** [1] - 6:12
**propose** [4] - 11:13, 11:14, 11:24
**proposing** [1] - 12:4
**provide** [1] - 18:24
**provided** [1] - 7:3
**providers** [1] - 4:24
**provisions** [1] - 25:20
**push** [1] - 18:7
**pushed** [1] - 3:23
**put** [6] - 11:19, 16:10, 17:11, 20:13, 24:6, 25:1

## Q

**questions** [3] - 3:5, 8:5, 8:6
**quickly** [1] - 7:5

## R

**ran** [2] - 19:12, 19:22
**range** [1] - 16:18
**rate** [14] - 5:7, 6:20, 7:7, 9:15, 10:18, 12:2, 13:8, 14:10, 14:25, 15:8, 19:1, 20:24, 22:1, 22:13
**rather** [1] - 22:7
**reached** [3] - 3:24, 4:1, 18:18
**react** [1] - 4:21
**read** [4] - 3:7, 3:11, 3:13, 21:3
**real** [3] - 13:14, 14:13, 15:21

**really** [4] - 15:16, 17:8, 18:17, 20:9
**reason** [3] - 14:4, 14:23, 17:22
**reasonable** [1] - 18:6
**recessed** [1] - 25:8
**recommend** [1] - 10:24
**record** [7] - 3:13, 16:1, 24:20, 24:21, 24:23, 25:24, 26:14
**recorded** [1] - 2:20
**referencing** [2] - 4:18, 6:25
**regardless** [1] - 16:21
**relatively** [1] - 7:5
**release** [2] - 25:12, 25:13
**remember** [1] - 24:9
**renegotiate** [1] - 24:12
**REPORTER** [1] - 2:16
**REPORTER'S** [1] - 26:11
**repossession** [1] - 9:23
**representatives** [1] - 11:19
**requested** [1] - 21:17
**require** [1] - 5:10
**required** [1] - 5:21
**requires** [1] - 9:2
**resolution** [1] - 14:1
**respond** [1] - 17:14
**responding** [2] - 12:12, 15:23
**retain** [1] - 7:11
**Reymundo** [1] - 2:2
**rich** [1] - 16:9
**rings** [1] - 5:6
**risk** [2] - 18:1, 18:6
**RMR** [2] - 2:17, 26:18
**Rodriguez** [1] - 2:2
**role** [1] - 6:4
**room** [1] - 24:17
**Room** [1] - 2:17
**round** [2] - 20:19
**RPR** [1] - 26:18
**rrodrigueziv@foley.com** [1] - 2:4
**running** [3] - 4:20, 14:20, 19:6
**Rusk** [1] - 2:17

## S

**scenario** [1] - 17:12
**Scott** [1] - 2:5
**seamless** [1] - 14:6
**seamlessly** [2] - 7:13, 7:20
**seated** [1] - 3:2
**second** [7] - 9:19, 11:16, 13:20, 14:1, 15:6, 21:6, 21:8
**section** [1] - 22:19
**SECURE** [1] - 1:6
**see** [4] - 10:6, 12:6, 24:24, 26:8
**select** [2] - 3:20
**selection** [1] - 4:3
**sellis@foley.com** [1] - 2:8
**sense** [1] - 9:22
**Sept** [1] - 26:17
**September** [1] - 1:6

**server** [1] - 13:1
**servers** [6] - 12:14, 13:4, 13:16, 17:4, 23:18
**service** [1] - 4:24
**services** [10] - 4:25, 5:8, 7:3, 7:4, 7:17, 7:18, 9:13, 9:14, 10:22, 11:8
**set** [3] - 7:7, 9:19, 22:1
**settings** [1] - 4:20
**seven** [5] - 10:21, 11:14, 14:2, 15:7, 20:7
**seven-day** [2] - 11:14, 15:7
**several** [1] - 5:17
**Sewell** [1] - 2:6
**shortchanged** [1] - 17:23
**shot** [1] - 3:4
**shuffle** [1] - 4:7
**shutting** [1] - 6:1
**side** [3] - 4:10, 4:13, 8:4
**sides** [1] - 6:18
**single** [2] - 19:1, 19:13
**situation** [1] - 13:11
**sixteen** [2] - 11:24, 15:6
**sixty** [1] - 11:2
**Skadden** [1] - 1:21
**slant** [1] - 21:22
**slope** [2] - 21:12
**sloped** [1] - 21:1
**solution** [1] - 13:8
**solve** [1] - 4:8
**somewhere** [1] - 25:1
**soon** [1] - 7:14
**sorry** [1] - 23:5
**sort** [2] - 13:16, 17:11
**SOUTHERN** [1] - 1:1
**St** [1] - 2:3
**stable** [1] - 4:19
**staff** [1] - 17:14
**stage** [1] - 18:22
**staggering** [1] - 19:5
**stair** [1] - 14:13
**start** [5] - 17:3, 18:3, 18:11, 18:14, 24:9
**STATES** [2] - 1:1, 1:12
**stenography** [1] - 2:20
**step** [2] - 14:13, 14:25
**steps** [1] - 5:22
**stick** [1] - 20:1
**still** [11] - 3:14, 9:22, 10:22, 11:11, 11:12, 14:9, 14:12, 18:7, 25:10, 25:11
**Street** [3] - 1:21, 2:6, 2:10
**stressful** [1] - 6:2
**structure** [1] - 10:12
**stuff** [1] - 4:7
**submit** [3] - 16:2, 16:19, 19:24
**submitted** [3] - 16:1, 19:12, 22:18
**substantial** [2] - 6:8, 6:13
**success** [1] - 20:15
**successful** [2] - 8:19, 8:22
**sufficient** [1] - 5:20
**suggestion** [1] - 21:11

**Suite** [4] - 1:21, 2:3, 2:6, 2:10
**support** [3] - 13:13, 13:20, 15:23
**supposed** [1] - 24:18
**systems** [1] - 14:20

## T

**taper** [1] - 18:3
**teacher** [1] - 24:19
**team** [4] - 6:1, 14:19, 15:23, 18:4
**tear** [1] - 15:16
**tearing** [1] - 14:15
**Tel** [1] - 2:18
**tendered** [1] - 21:14
**terminate** [6] - 9:11, 9:16, 13:24, 14:5, 14:23, 16:10
**terminating** [1] - 11:13
**terms** [3] - 3:12, 6:14, 8:2
**TEXAS** [1] - 1:1
**Texas** [3] - 1:4, 1:22, 2:18
**text** [1] - 24:25
**THE** [61] - 1:1, 1:1, 1:11, 1:16, 2:1, 3:2, 3:7, 4:6, 4:15, 8:4, 8:8, 8:11, 8:13, 8:20, 8:25, 9:5, 9:9, 9:17, 10:8, 10:10, 10:24, 11:2, 11:21, 12:6, 12:10, 12:21, 12:23, 14:14, 15:2, 15:4, 15:18, 16:20, 18:12, 18:21, 19:15, 19:19, 20:1, 21:1, 21:7, 21:11, 21:22, 22:7, 22:12, 22:16, 22:23, 23:2, 23:4, 23:8, 23:11, 23:22, 24:6, 24:9, 24:14, 24:22, 24:25, 25:5, 25:9, 25:15, 25:18, 25:25, 26:5
**thereafter** [1] - 23:15
**thinking** [2] - 10:10, 20:19
**third** [1] - 17:10
**thirteen** [2] - 11:25, 15:7
**three** [2] - 12:12, 18:4
**thump** [1] - 12:21
**tier** [2] - 4:5, 17:9
**timeline** [1] - 12:17
**timing** [1] - 21:25
**today** [3] - 3:18, 4:24, 18:23
**today's** [1] - 22:20
**together** [1] - 20:14
**transcript** [1] - 26:14
**Transcript** [1] - 2:21
**transcription** [1] - 2:21
**transfers** [1] - 13:1
**transition** [11] - 5:8, 7:18, 8:22, 12:13, 13:3, 13:13, 14:6, 15:22, 18:4, 20:11, 20:13
**transitioned** [2] - 7:13, 20:16
**transitions** [3] - 7:14, 10:16, 13:18
**translating** [1] - 23:11
**traps** [1] - 24:1
**travelling** [1] - 5:10
**tremendously** [2] - 11:11, 11:12
**trial** [1] - 24:14
**tried** [2] - 3:22, 20:5
**trouble** [1] - 9:20

**try** [1] - 3:6
**trying** [4] - 3:11, 6:1, 8:15, 15:14
**twelve** [1] - 22:10
**Twenty** [1] - 11:2
**twice** [1] - 20:18
**two** [2] - 7:16, 20:2
**two-and-a-half** [1] - 7:16
**TX** [4] - 1:18, 2:3, 2:7, 2:11
**type** [1] - 25:5
**typed** [1] - 22:24

## U

**unable** [3] - 3:22, 12:18, 13:2
**unavoidable** [1] - 22:9
**uncertainties** [1] - 20:23
**uncomfortable** [1] - 4:4
**under** [3] - 6:14, 10:21, 12:4
**underpaying** [1] - 16:12
**understood** [1] - 21:9
**undo** [1] - 9:21
**unfortunately** [2] - 3:14, 3:21
**UNITED** [2] - 1:1, 1:12
**unplugging** [3] - 5:1, 12:14, 17:4
**up** [15] - 6:20, 6:25, 7:8, 8:9, 9:19, 12:2, 12:3, 13:3, 13:22, 14:20, 17:5, 20:17, 22:1, 23:22, 24:12

## V

**version** [1] - 3:12
**VOLUME** [1] - 1:13
**VS** [1] - 1:4

## W

**W&T** [3] - 1:3, 4:18, 6:12
**wait** [2] - 15:2, 23:11
**walked** [2] - 6:18, 6:21
**wants** [1] - 8:5
**watch** [2] - 15:13, 15:15
**watch-it-over-night** [1] - 15:15
**watching** [1] - 5:6
**water** [3] - 8:10, 18:11, 18:14
**week** [2] - 21:23
**weekend** [1] - 24:15
**weeks** [1] - 21:23
**wells** [1] - 9:25
**whack** [1] - 7:17
**whoa** [1] - 19:10
**whole** [1] - 9:25
**wife** [1] - 24:17
**willing** [5] - 5:4, 5:14, 6:19, 14:21, 19:13
**wins** [1] - 13:10
**wires** [1] - 12:14
**wish** [1] - 4:8
**worst** [2] - 17:12, 20:24
**worst-case** [1] - 17:12
**written** [1] - 22:16
**wrote** [1] - 8:15

**Wunder** [1] - 2:9
**Wynne** [1] - 2:6

## Y

**y'all** [1] - 24:2
**yesterday** [6] - 3:13, 3:19, 7:1, 16:2, 24:7, 24:17